# EXHIBIT A-52

**KLINE & SPECTER, P.C.**
THOMAS R. KLINE, ESQUIRE
Attorney I.D. No. 28895
TOBIAS MILLROOD, ESQUIRE
Attorney I.D. No. 77764
ELIZABETH CRAWFORD, ESQUIRE
Attorney I.D. No. 313702
MELISSA MERK, ESQUIRE
Attorney I.D. No. 90363
TIMOTHY A. BURKE, ESQUIRE
Attorney I.D. No. 320927
1525 Locust Street
19th Floor
Philadelphia, PA 19102
(215) 772-1000/(215) 772-1359 fax.          Attorney for Plaintiffs



Filed and Attested by the
Office of Judicial Records
18 OCT 2023 12:46 pm
G. IMPERATO

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION - CIVIL

HOLLI CARTER, on her own behalf and as
Parent and Natural Guardian of J.C., a Minor,

*Plaintiff*,

v.

MEAD JOHNSON & COMPANY, LLC, et al.,

*Defendants.*

| |
|---|
| **IN THE COURT OF COMMON PLEAS PHILADELPHIA COUNTY** |
| **CIVIL TRIAL DIVISION** |
| **MARCH TERM 2022** |
| **NO. 2588** |

## PRAECIPE TO ATTACH VERIFICATION TO AMENDED COMPLAINT

Please attach Plaintiff's Verifications to the Amended Complaint filed of record on

September 8, 2023, with regard to the above-captioned matter.

Respectfully submitted,

**KLINE & SPECTER, P.C.**

Dated: October 18, 2023

s/ Timothy A. Burke
TIMOTHY A. BURKE, ESQ.
Attorneys for Plaintiffs

Case ID: 220302588

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 18, 2023, I caused a true and correct copy of the

foregoing document to be served by electronic filing to all counsel of record.


Dated: October 18, 2023     /s/ Timothy A. Burke  
              TIMOTHY A. BURKE

**VERIFICATION**

I, _Holli Carter_____, verify that the statements made in Plaintiff's

Amended Complaint are true and correct to the best of my knowledge, information, and belief. I

understand that false statements made herein are subject to the penalties of 18 Pa. C.S. § 4904,

relating to unsworn falsification to authorities.

Dated: October __17__, 2023      By: _____

DocuSigned by:

69CBD05AF5034470...

# EXHIBIT A-53

FILED
18 OCT 2023 12:52 pm
Civil Administration
C. ARTWELL

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION - CIVIL

HOLLI CARTER, on her behalf and as Parent
and Natural Guardian of J.C., a minor,

        Plaintiff,

    v.

MEAD JOHNSON & COMPANY, LLC,
et al.

        Defendants.

March Term, 2022

No. 02588

JURY TRIAL DEMANDED

## **ORDER**

AND NOW this the _____ day of _____, 2023, upon consideration of Defendants The Pennsylvania Hospital of the University of Pennsylvania Health System and the Trustees of the University of Pennsylvania's Preliminary Objections to the Plaintiffs' Amended Complaint, Plaintiffs' Answer thereto, and all other appropriate considerations, it is hereby ORDERED, ADJUDGED and DECREED that Defendants' Preliminary Objections are OVERRULED.

                BY THE COURT

                _____
                       J.

**KLINE & SPECTER, P.C.**
THOMAS R. KLINE, ESQUIRE
Attorney I.D. No. 28895
TOBIAS MILLROOD, ESQUIRE
Attorney I.D. No. 77764
ELIZABETH CRAWFORD, ESQUIRE
Attorney I.D. No. 313702
MELISSA MERK, ESQUIRE
Attorney I.D. No. 90363
TIMOTHY A. BURKE, ESQUIRE
Attorney I.D. 320927
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000/(215) 772-1359 fax.                    Attorney for Plaintiffs

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION - CIVIL

| | |
|---|---|
| HOLLI CARTER, on her behalf and as Parent and Natural Guardian of J.C., a minor, | |
| | March Term, 2022 |
| Plaintiff, | |
| | No. 02588 |
| v. | |
| MEAD JOHNSON & COMPANY, LLC, et al. | JURY TRIAL DEMANDED |
| Defendants. | |

**PLAINTIFFS' REPSONSE TO PRELMINIARY OBJECTIONS OF DEFENDANTS THE PENNSYLVANIA HOSPITAL OF THE UNVIERSITY OF PENNSYLVANIA HEALTH SYSTEM AND THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA TO PLAINTIFFS' AMENDED COMPLAINT**

Plaintiffs, by and through their counsel, Kline & Specter, P.C., hereby oppose Defendants' Preliminary Objections and responds to Defendants' Preliminary Objections and Evidentiary Exhibits as follows:

1

Case ID: 220302588
Control No.: 23096253

1.      Admitted.

2.      Denied. The instant Plaintiffs have only one pending lawsuit in this Commonwealth related to Minor J.C. development of NEC after ingesting co-Defendants Abbot and Mead's milk-based infant formula.

3.      Admitted. By way of further response, see Plaintiffs' attached memorandum of law.

4.      Admitted only that Plaintiffs have asserted Product Liability claims against Manufacturing Defendants Mead and Abbott, and theories of Failure to Warn and Corporate Liability against the Moving Hospital Defendants. Plaintiffs deny Defendants' footnote regarding supposed conclusions of the FDA. By way of further response, see Plaintiffs' attached memorandum of law.

5.      Admitted. By way of further response, see Plaintiffs' attached memorandum of law.

6.      Admitted. By way of further response, see Plaintiffs' attached memorandum of law.

7.      Admitted. By way of further response, see Plaintiffs' attached memorandum of law.

8.      Denied. Plaintiff's Complaint is a written document that speaks for itself. All characterizations thereof are denied.

9.      Admitted only the Moving Defendants have filed the instant Preliminary Objections.  By way of further response, see Plaintiffs' attached memorandum of law.

10.     Denied. Plaintiff's Complaint is a written document that speaks for itself. All characterizations thereof are denied.

11.     Denied. Plaintiff's Complaint is a written document that speaks for itself. All characterizations thereof are denied.

12.     Denied. Plaintiff's Complaint is a written document that speaks for itself. All characterizations thereof are denied.

Case ID: 220302588
Control No.: 23096253

13.     Denied as a conclusion of law to which no response is required. By way of further response, Plaintiff's Complaint alleges that Defendant HUP failed to warn medical professionals and parents of infants of the increased risk of a serious and potentially fatal disease posed by the infant formula they supplied.

14.     Denied as a conclusion of law to which no response is required.

15.     Denied as a conclusion of law to which no response is required. By way of further response, a supplier of goods will be liable for their negligent failure to warn foreseeable users of a chattel under Section 388 of the Second Restatement of Torts, which has been incorporated into Pennsylvania law, if:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for the physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier:
>
> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied; and
>
> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition; and
>
> (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.
>
> RST 2 § 388.

*See, e.g.*, *Binder v. Jones & Laughlin Steel Corp.*, 360 Pa. Super. 390, 396 (1987) (applying RST 2 § 388 to a metal part supplier).

16.     Denied as a conclusion of law to which no response is required. By way of further response, the threshold inquiry is whether the product is unreasonably dangerous for the use for which it is supplied. RST 2 § 388; *Binder v. Jones & Laughlin Steel Corp.*, 360 Pa. Super. 390, 396 (1987). A supplier under this Section will be liable if they supply a chattel for use, which they know or should have known is dangerous, and they fail to warn the user of that danger and to

3

Case ID: 220302588
Control No.: 23096253

advise proper precautions. *See Hopkins v. E.I. Du Pont De Nemours & Co.*, 199 F.2d 930, 932-33 (3d Cir. 1952) (applying Pennsylvania law) (citing *Maize*, 352 Pa. at 55). Under this Section, a supplier's disclosures will be insufficient if they fall below the standard of care that would be taken by a "reasonable man in a similar situation." *Binder*, 360 Pa. Super. at 398. The greater the potential danger of the instrumentality, the greater the duty to warn against foreseeable and known dangers. *See Thomas v. Arvon Prod's*, 424 Pa. 365, 369-70 (1967); 352 Pa. at 56. "[T]he care to be exercised in a particular case must always be proportionate to the seriousness of the consequences which are *reasonably* to be anticipated as a result of the conduct in question." 360 Pa. Super. at 398 (citations omitted) (emphasis in original). When another actor "acts as the nexus between the supplier and the actual user of the dangerous chattel," the supplier cannot "escape the duty to disclose by cavalierly relying on the [other actor] to somehow pass the information along to the actual user." *Id.*

      17.     Denied as a conclusion of law to which no response is required.

      18.     Denied as a conclusion of law to which no response is required.

      19.     Denied as a conclusion of law to which no response is required. By way of further response, in reviewing whether to sustain preliminary objections in the nature of a demurrer, all material facts properly pled in the complaint, as well as all inferences reasonably deducible therefrom, are to be deemed as admitted. *Kohler v. McCrory Stores*, 532 Pa. 130, 135 (1992). If a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling the demurrer. *Mahoney v. Furches*, 503 Pa. 60, 66 (1983) (citing *Birl v. Phila. Elec. Co.*, 402 Pa. 297, 302 (1960)). Plaintiff's Complaint contains properly pled material facts that numerous academic and scientific studies, which were known to Defendants, have established the

Case ID: 220302588
Control No.: 23096253

link between bovine-based formula and increased risk of NEC in premature infants. These well-pled facts must be taken as true at this stage; thus, Defendant's demurrer should be denied.

20.     Denied as a conclusion of law to which no response is required. By way of further response, in reviewing whether to sustain preliminary objections in the nature of a demurrer, all material facts properly pled in the complaint, as well as all inferences reasonably deducible therefrom, are to be deemed as admitted. *Kohler v. McCrory Stores*, 532 Pa. 130, 135 (1992). If a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling the demurrer. *Mahoney v. Furches*, 503 Pa. 60, 66 (1983) (citing *Birl v. Phila. Elec. Co.*, 402 Pa. 297, 302 (1960)). Plaintiff's Complaint contains properly pled material facts that numerous academic and scientific studies, which were known to Defendants, have established the link between bovine-based formula and increased risk of NEC in premature infants. These well-pled facts must be taken as true at this stage; thus, Defendant's demurrer should be denied.

21.     Denied as a conclusion of law to which no response is required.

22.     Denied as a conclusion of law to which no response is required. By way of further response, Section 388 applies to any supplier of a chattel to another, as explained in Section 388's accompanying comment:

> c. Persons included as "suppliers." The rules stated in this Section and throughout this Topic apply to determine the liability of any person who for any purpose or in any manner gives possession of a chattel for another's use, or who permits another to use or occupy it while it is in his own possession or control, without disclosing his knowledge that the chattel is dangerous for the use for which it is supplied or for which it is permitted to be used. These rules, therefore, apply to sellers, lessors, donors, or lenders, irrespective of whether the chattel is made by them or by a third person. They apply to all kinds of bailors, irrespective of whether the bailment is for a reward or gratuitous, and irrespective of whether the bailment is for use, transportation, safekeeping, or repair. They also apply to one who undertakes the repair of a chattel and who delivers it back with knowledge that it is defective because of the work which he is employed to do upon it. (See § 403.)

RST 2 § 388 cmt. c.

Case ID: 220302588
Control No.: 23096253

*See also Maize v. Atlantic Refin. Co.*, 352 Pa. 51, 56 (1945) ("This court has laid down the rule that any one who is responsible for the existence of any dangerous instrumentality or substance with which persons are likely to come in contact must 'impose a measure of control that is adequate to the protection of human beings' from it.").

23.     Denied, Plaintiffs incorporate their response to the above paragraph.

24.     Denied, Plaintiffs incorporate their response to ¶ 22.

25.     Denied as a conclusion of law to which no response is required. In this case, Defendants failed to adequately communicate the facts, risks, benefits, and alternatives associated with the use of bovine-based formula to preterm infants' parents, so that could knowingly choose whether to consent on behalf of preterm infants. Defendants' duty to warn was even greater by virtue of the fact that parents could not be expected to know the risk of NEC associated with bovine-based formula and given the seriousness of NEC as a disease.

26.     Denied as a conclusion of law, Plaintiffs incorporate their response to ¶ 25.

27.     Denied as a conclusion of law, Plaintiffs incorporate their response to ¶ 25.

28.     Denied as a conclusion of law, Plaintiffs incorporate their response to ¶ 25.

29.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

30.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

31.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

32.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

Case ID: 220302588
Control No.: 23096253

33. Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

34. Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

35. Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

36. Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

37. Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

38. Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

39. Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

40. Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

41. Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

42. Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

43. Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

Case ID: 220302588
Control No.: 23096253

44. Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

45. Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

46. Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

47. Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

48. Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

49. Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

50. Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

51. Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

52. Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

53. Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

54. Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

Case ID: 220302588
Control No.: 23096253

55.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

56.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

57.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

58.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

59.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

60.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

61.     Denied. Instant Plaintiffs have one lawsuit.

62.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

63.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

64.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

65.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

66.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

Case ID: 220302588
Control No.: 23096253

67.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

68.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

69.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

70.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

71.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

72.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

73.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

74.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

75.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

76.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

77.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

Case ID: 220302588
Control No.: 23096253

78.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

79.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

80.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

81.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

82.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

83.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

84.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

85.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

86.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

87.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

88.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

Case ID: 220302588
Control No.: 23096253

89.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

90.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

91.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

92.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

93.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

94.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

95.     Denied. Plaintiffs have filed a praecipe to supplement the necessary verification which is docked and added to Plaintiffs' Amended Complaint.

96.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

WHEREFORE, for the reasons more fully set forth in Plaintiff's accompanying Memorandum of Law, Plaintiff respectfully requests that this Honorable Court deny Defendants' Preliminary Objections, or, in the alternative, Order that Plaintiff is permitted leave to amend their Complaint.

Respectfully submitted,

**KLINE & SPECTER**,
A Professional Corporation

Date: October 18, 2023              By:     _/s/Timothy A. Burke, Esquire_

THOMAS KLINE, ESQUIRE

12

Case ID: 220302588
Control No.: 23096253

TOBI MILLROOD, ESQUIRE
ELIZABETH CRAWFORD, ESQUIRE
TIMOTHY BURKE, ESQUIRE
*Attorneys for Plaintiffs*

**KELLER POSTMAN**
BEN WHITING, ESQUIRE (*Pro Hac Vice*)
MARK WEINSTEIN, ESQURIE
*Attorneys for Plaintiffs*

Case ID: 220302588
Control No.: 23096253

**KLINE & SPECTER, P.C.**
THOMAS R. KLINE, ESQUIRE
Attorney I.D. No. 28895
TOBIAS MILLROOD, ESQUIRE
Attorney I.D. No. 77764
ELIZABETH CRAWFORD, ESQUIRE
Attorney I.D. No. 313702
MELISSA MERK, ESQUIRE
Attorney I.D. No. 90363
TIMOTHY A. BURKE, ESQUIRE
Attorney I.D. 320927
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000/(215) 772-1359 fax.           Attorney for Plaintiffs

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION - CIVIL

| | |
|---|---|
| HOLLI CARTER, on her behalf and as Parent and Natural Guardian of J.C., a minor, | March Term, 2022 |
| Plaintiff, | No. 02588 |
| v. | |
| MEAD JOHNSON & COMPANY, LLC, et al. | JURY TRIAL DEMANDED |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR REPSONSE TO PRELMINIARY OBJECTIONS OF DEFENDANTS THE PENNSYLVANIA HOSPITAL OF THE UNVIERSITY OF PENNSYLVANIA HEALTH SYSTEM AND THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA TO PLAINTIFFS' AMENDED COMPLAINT**

I.     **Matter Before the Court**

Plaintiffs, by and through their counsel, Kline & Specter, P.C., hereby oppose Defendants'

Preliminary Objections and respond to the Defendants' Preliminary Objections and Evidentiary

Exhibits as follows:

1

Case ID: 220302588
Control No.: 23096253

## II.  **Counter Statement of Questions Involved**

1. Whether this Honorable Court should deny Defendants' Preliminary Objections as to Plaintiffs' "Failure to Warn" claims where Plaintiffs have adequately alleged that bovine-based formula is unreasonably dangerous and substantially increases the risk for the development of NEC in preterm infants, and where Plaintiffs are not required under the pleading standard to cite to evidence (such as medical studies) in their Complaint in support of ultimate issues that will have to be proven at trial?

   *Suggested answer in the affirmative.*

2. Whether this Honorable Court should deny Defendants' Preliminary Objections as to Plaintiffs' "Failure to Warn" claims where Plaintiffs have adequately alleged Defendants breached their duty as the hospital system and/or healthcare provider by failing to adequately communicate the facts, risks, benefits, and alternatives associated with the use of bovine-based formula to preterm infants' parents, so that the parents could knowingly choose whether to consent on behalf of preterm infants?

   *Suggested answer in the affirmative.*

3. Whether this Honorable Court should deny Defendants' Preliminary Objections as to Plaintiffs' "Corporate Negligence" cause of action where Defendant hospital systems engaged in systemic negligence by failing to enact policies and procedures to prevent bovine-milk based formula from being fed to pre-term infants.

   *Suggested answer in the affirmative.*

4. Whether this Honorable Court should deny Defendants' Preliminary Objections as to Plaintiffs' "Corporate Negligence" cause of action where Defendant Trustees of the University of Pennsylvania are a governing body and overseer of the Hospital of the

2

University of Pennsylvania ("HUP"), who are in charge of enacting the HUP policies and procedures at issue in Plaintiffs' Amended Complaint, subjecting them to Plaintiffs' Corporate Negligence claims.

*Suggested answer in the affirmative.*

5.  Whether this Honorable Court should deny Defendants Preliminary Objections as to sufficiency of the pleadings where Plaintiffs have sufficient and adequately summarized material facts that inform and notify the Defendants of the claims which they must defendant?

    *Suggested answer in the affirmative.*

6.  Whether this Honorable Court should deny Defendants Preliminary Objections as to punitive damages where Plaintiffs have adequately plead facts providing a basis for punitive damages?

    *Suggested answer in the affirmative.*

7.  Whether this Honorable Court should deny Defendants Preliminary Objections for Plaintiff Parents claims where the Plaintiff parents have sufficient plead counts for individual harm as well as the harm on behalf of the Minor Plaintiff in the Amended Complaint and where those claims are not barred by the statute of limitations?

    *Suggested answer in the affirmative.*

8.  Whether this Honorable Court should deny Defendants Preliminary Objections where Plaintiff's necessary verification has been filed by way of a praecipe to attach to Plaintiffs' Amended Complaint?

    *Suggested answer in the affirmative.*

Case ID: 220302588
Control No.: 23096253

### III.     Plaintiffs Have Sufficiently Alleged that Pennsylvania Hospital and HUP Failed to Warn Healthcare Professionals and Parents of the Unreasonable Risk of NEC Posed by Bovine-Based Formula to Premature Infants under Count VI.

The moving Hospital Defendants failed to warn parents of premature infants, and their guardian parents, of the risk associated with goods they were supplying to those infants while under their care. A supplier of goods will be liable for their negligent failure to warn foreseeable users of that chattel under Section 388 of the Second Restatement of Torts, which has been incorporated into Pennsylvania law, if:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for the physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
>
> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied; and
>
> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition; and
>
> (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

RST 2 § 388.

*See, e.g.*, *Binder v. Jones & Laughlin Steel Corp.*, 360 Pa. Super. 390, 396 (1987) (applying RST 2 § 388 to a metal part supplier). Section 388 applies to any supplier of a chattel to another, as explained in Section 388's accompanying comment:

> c. Persons included as "suppliers." The rules stated in this Section and throughout this Topic apply to determine the liability of any person who for any purpose or in any manner gives possession of a chattel for another's use, or who permits another to use or occupy it while it is in his own possession or control, without disclosing his knowledge that the chattel is dangerous for the use for which it is supplied or for which it is permitted to be used. These rules, therefore, apply to sellers, lessors, donors, or lenders, irrespective of whether the chattel is made by them or by a third person. They apply to all kinds of bailors, irrespective of whether the bailment is for a reward or gratuitous, and irrespective of whether the bailment is for use, transportation, safekeeping, or repair. They also apply to one who undertakes the repair of a chattel and who delivers it back with knowledge that it is defective because of the work which he is employed to do upon it.

Case ID: 220302588
Control No.: 23096253

*See* § 403 RST 2 § 388 cmt. C; *see also Maize v. Atlantic Refin. Co.*, 352 Pa. 51, 56 (1945) ("This court has laid down the rule that anyone who is responsible for the existence of any dangerous instrumentality or substance with which persons are likely to come in contact must 'impose a measure of control that is adequate to the protection of human beings' from it.").

A supplier under this Section will be liable if they supply a chattel for use, which they know or should have known is dangerous, and they fail to warn the user of that danger and to advise proper precautions. *See Hopkins v. E.I. Du Pont De Nemours & Co.*, 199 F.2d 930, 932-33 (3d Cir. 1952) (applying Pennsylvania law) (citing *Maize*, 352 Pa. at 55). Under this Section, a supplier's disclosures will be insufficient if they fall below the standard of care that would be taken by a "reasonable man in a similar situation." *Binder*, 360 Pa. Super. at 398. The greater the potential danger of the instrumentality, the greater the duty to warn against foreseeable and known dangers. *See Thomas v. Arvon Prod's*, 424 Pa. 365, 369-70 (1967); 352 Pa. at 56. "[T]he care to be exercised in a particular case must always be proportionate to the seriousness of the consequences which are *reasonably* to be anticipated as a result of the conduct in question." 360 Pa. Super. at 398 (citations omitted) (emphasis in original). When another actor "acts as the nexus between the supplier and the actual user of the dangerous chattel," the supplier cannot "escape the duty to disclose by cavalierly relying on the [other actor] to somehow pass the information along to the actual user." *Id.*

In this case, Defendants failed to adequately communicate the facts, risks, benefits, and alternatives associated with the use of bovine-based formula to preterm infants' parents, so that could knowingly choose whether to consent on behalf of preterm infants. Defendants' duty to warn was even greater by virtue of the fact that parents could not be expected to know the risk of NEC associated with bovine-based formula and given the seriousness of NEC as a disease.

Case ID: 220302588
Control No.: 23096253

Defendants Pennsylvania Hospital and Hospital of the University of Pennsylvania argue that Plaintiff cannot state a claim for failure to warn because they were not a manufacturer of formula. However, since Plaintiffs' claims sounds in negligence, Defendant does not need to be a commercial manufacturer. Here, Defendants were responsible for providing the infant formula to medical practitioners and the NICU at their hospitals and by extension, to patients, and were therefore, suppliers for purposes of Section 388. Moreover, Plaintiff has alleged that the formula caused an increased risk when fed to infants, in other words, when it was used for its intended usage. Plaintiffs' Amended Complaint alleges that hospitals, including HUP, entered into financially advantageous relationships with codefendant manufacturers Abbott and Mead at various times to purchase, supply, and distribute bovine-based formula to their medical professionals, knowing that these products would then be provided to infants being treated by these providers in their facilities. Hence, Defendants knowingly supplied these instrumentalities to end users, who were not merely foreseeable, but the intended recipients of the formula. Further, the Hospitals' liability is not negated by the fact that others acted as intermediaries when they negligently failed to warn their own providers of these risks and facilitated their providers receiving inaccurate information, which inaccurately downplayed the risk of NEC, from the manufacturers' sales personnel. Moreover, as shown by their own internal correspondence and the relevant academic and medical literature surrounding NEC and bovine-formula in pre-term infants, Defendants knew or should have known that bovine-based formula posed an increased risk of NEC to premature infants. Since NEC is a dangerous and potentially fatal disease, there was an even greater duty on Defendants to adequately warn foreseeable users of this known risk or take steps to make sure that the intermediaries they controlled, namely medical professionals, reliably communicated these risks to parents. Hence, the Hospitals failed to warn parents of the dangerous

6

conditions associated with the formula, which parents had no reason to suspect, while supplying this formula for purposes of Section 388.

IV.  **Plaintiffs' Complaint Sufficiently Alleges Facts That Support Their Claims of Corporate Liability of The Moving Health Care Provers, Thus These Claims Should not Be Dismissed**

In *Thompson v. Nason Hospital*, 591 A.2d 703, 708 (Pa. 1991), the Pennsylvania Supreme Court recognized the doctrine of corporate liability, holding that a hospital may be found directly liable for negligence if it fails to meet any of the following four duties: (1) a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) a duty to select and retain only competent physicians; (3) a duty to oversee all persons who practice medicine within its walls as to patient care; and (4) a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for patients.

In considering whether the plaintiff could sustain corporate negligence claims based on these allegations, the *Edwards* court analyzed the *Thompson* decision and delineated the standards required to sustain such a claim:

> The Thompson theory of corporate liability will not be triggered every time something goes wrong in a hospital which harms a patient . . . To establish corporate negligence, a plaintiff must show more than an act of negligence by an individual for whom the hospital is responsible. Rather, *Thompson* requires a plaintiff to show that **the hospital itself is breaching a duty and is somehow substandard**…Thompson contemplates a **kind of 'systemic negligence'**…

*Id*. at 1386-87 (citations omitted and emphasis added).

The facts and allegations in Plaintiffs' complaint clearly and succinctly articulate claims of a "systemic negligence" taking place at Penn and HUP, namely that the hospital engaged in a practice of entering into financially advantageous relationships with codefendant manufacturers Abbott and Mead at various times to purchase, supply, and distribute bovine-based formula to their medical professionals, knowing that these products would then be provided to infants being treated

7

by these providers in their facilities. Hence, Defendants knowingly supplied these instrumentalities to end users, who were not merely foreseeable, but the intended recipients of the formula. Further, the Hospitals' liability is not negated by the fact that others acted as intermediaries when they negligently failed to warn their own providers of these risks and facilitated their providers receiving inaccurate information, which inaccurately downplayed the risk of NEC, from the manufacturers' sales personnel, because it is alleged that the hospitals themselves decided which formula product would be stocked and supplied in their respective NICU's and pre-term infant hospital facilities.

Further, Plaintiffs allege in their Amended Complaint that:

A reasonable hospital under the same or similar circumstances would have overseen and managed its healthcare professionals and medical staff to ensure that they received proper training and updating on the risks associated with feeding cow's milk-based formula to premature infants. Had Penn Medicine and Pennsylvania Hospital exercised reasonable care by satisfying its duty to oversee its healthcare professionals and medical staff who provide patient care, the Injured Infant would not have been exposed to the Defendant Manufacturers' cow's milk-based products. As a direct and proximate result of Penn Medicine and Pennsylvania Hospital's failure to oversee its healthcare professionals and medical staff on the danger posed by the Defendant Manufacturers' unreasonably dangerous cow's milk-based products, the Injured Infant was fed the Defendant Manufacturers' cow's milk-based products, which caused and/or increased the risk of developing NEC and significant injuries.

*See* Plaintiffs' Amended Complaint, at ¶¶162-164.

Moreover, as shown by their own internal correspondence and the relevant academic and medical literature surrounding NEC and bovine-formula in pre-term infants, Defendants knew or should have known that bovine-based formula posed an increased risk of NEC to premature infants.

Finally, corporate liability can attach to a hospital system when there is a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for patients. Here Moving

Case ID: 220302588
Control No.: 23096253

Defendants are the responsible corporate entities of Pennsylvania Hospital and Hospital of the University of Pennsylvania (HUP). Defendants had the duty to formulate, adopt, and enforce adequate rules and policies regarding the administration of certain formulations of baby formulas to pre-term infants in their care, and to not supply and/or have a policy of not administering bovine based formula to preterm infants which is shown in the literature to increase risk of developing NEC to those patients. Therefore, Plaintiffs' Corporate Liability claims should not be dismissed.

### V. Plaintiffs' Complaint Sufficiently Alleges that Defendant Colluded to Distribute and Sell Dangerous Products, and Failed to Warn Medical Practitioners of these Risks. Plaintiffs' Claims for Punitive Damages Should Therefore Not be Dismissed.

Punitive damages may be awarded for "'conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.' " *Hutchison v. Luddy*, 582 Pa. 114, 121 (2005) (quoting *Feld v. Merriam*, 506 Pa. 383, 395 (1984)). Punitive damages must be based on conduct that is "wanton," "willful," or "reckless." 582 Pa. at 121. As such, in Pennsylvania, to withstand preliminary objections, a plaintiff must allege that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk. *Id.* Pennsylvania courts have repeatedly held that a jury should determine whether punitive damages are warranted. *SHV Coal, Inc. v. Cont'l Grain Co.*, 526 Pa. 489, 495 (1991) ("The determination of whether a person's actions arise to outrageous conduct lies within the sound discretion of the fact-finder and will not be disturbed by an appellate court so long as that discretion has not been abused."). Furthermore, to the extent that there is any doubt about whether the standard for punitive damages has been met, that doubt must be resolved in the Plaintiff's favor at this stage. *See Theodore v. Del. Valley Sch. Dist.*, 575 Pa. 321, 333 (2003).

Case ID: 220302588
Control No.: 23096253

For example, in *Hall v. Episcopal Long Term Care*, plaintiffs alleged that the neglect of a nursing home's staff led to the plaintiff-decedent's death. 54 A.3d 381, 394-95 (Pa. Super. 2012). The plaintiff argued that the "evidence of understaffing, falsification of records, substandard facility conditions, and improper treatment of the deceased's pain, all of which Episcopal failed to correct despite knowledge of such" demonstrated sufficiently knowing conduct to underly punitive damages. *Id.* at 394-95. The trial court concluded that punitive damages were not warranted because the nursing home's negligence "did not rise to the level of reckless disregard." *Id.* at 397 (quoting the trial court opinion). The Superior court reversed the trial court's directed verdict on the issue of punitive damages and held that the issue of punitive damages should have proceeded to the jury as "the Estate presented evidence establishing Episcopal acted in an outrageous fashion in reckless disregard to the rights of others and created an unreasonable risk of physical harm to the residents of the nursing home." *Id.* at 396-97. In so holding, the Court discussed *Scampone*, where the Superior Court likewise held that the issue of punitive damages against one defendant should have proceeded to a jury, since they jointly engaged in conduct with a codefendant that warranted punitive damages against that defendant. *Scampone v. Grane Healthcare Co.*, 169 A.3d 600, 627 (Pa. Super. 2017) ("the punitive damages trial must include Highland since, according to Mr. Scampone's evidence, its employees colluded with Grane employees in some of the actions that warranted imposition of punitive damages, i.e., the alteration of patient records.").

In this case, Plaintiff has alleged that Penn Medicine and HUP purchased, supplied, and distributed bovine-based products, manufactured by codefendants Abbott and Mead, which they knew posed an increased risk of a serious and deadly disease to infants, in order to cut costs. The Hospital Defendants colluded with codefendants to supply Abbott and Mead's products to medical

Case ID: 220302588
Control No.: 23096253

professionals at HUP and failed to warn these professionals about the known risks of these products. Defendants failed to warn healthcare professionals of the known risks of NEC posed by these products, and failed to establish a practice or policy of ensuring that these products were not fed to premature infants, as established in scientific literature, and instead arranged for these treaters to interact with Abbott and Mead salespersons. They then failed to prevent codefendants' sales representatives from making misrepresentations about the increased risk of NEC posed by bovine, instead of human-nutrition based products, and failed to correct these misrepresentations. As a result, Defendants knowingly distributed codefendants' products to practitioners who they knew would provide them to patients, in order to save costs to the Hospitals. Hence, Defendants colluded to pose an unreasonable risk of harm to minor Plaintiff and other infants.

## VI.     **Plaintiff Has Adequately Pled the Facts and Damages at Issue**

Defendant asserts that Plaintiffs' Amended Complaint fails to adequately plead facts regarding liability and injuries claimed. Defendant is wrong and their Preliminary Objections should be overruled. A complaint must give a defendant fair notice of the plaintiff's claims and a summary of the material facts that support those claims. Pa. R.C.P. 1019(a). As the Superior Court has noted:

> Rule 1019(a) requires fact pleading. The purpose of 1019(a) is to require the pleader to disclose the material facts **sufficient to enable the adverse party to prepare his case**. A complaint therefore must do more than give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. It should formulate the issues by fully summarizing the material facts. Material facts are ultimate facts, i.e., those facts essential to support the claim. **Evidence from which such facts <u>may be inferred not only need not but should not be alleged</u>. Allegations will withstand challenge under 1019(a) if (1) they contain averments of all of the facts a plaintiff will eventually have to prove in order to recover, and (2) they are sufficiently specific so as to enable defendant to prepare his defense.**

*Baker v. Rangos*, 324 A.2d 498, 505-506 (Pa. Super. 1974) (citations and internal quotations omitted)(emphasis added).

Case ID: 220302588
Control No.: 23096253

In assessing whether particular paragraphs in a complaint satisfy this requirement, they must be read in context with all other allegations in the complaint to determine whether the defendant has been provided adequate notice of the claim against which it must defend. *Yacoub v. Lehigh Valley Med. Associates*, P.C., 805 A.2d 579, 589 (Pa. Super. Ct. 2002). When determining whether certain allegations are sufficiently specific, Pennsylvania Law requires that the allegation be read in the context of the entire Complaint and not in a vacuum. *Hook v. L.B. Smith, Inc*., 69 D&C 2d 420 (1974); *Duchess Underwear Co. V. Sivan Manuf. Co.,* 75 D&C 185 (1950); accord *Cmwlth v. Bell Tel Co.*, 121 Pa. Cmwlth 642, 649, 551 A2d 602 (1988). The Court must determine "whether the complaint is sufficiently clear to enable the Defendant to prepare his defense or [if it] informs the Defendant with accuracy and 3 completeness of the specific basis on which recovery is sought so that he may know without question upon what grounds to make his defense." *McNeil v. Jordan*, 814 A.2d 234, 237-38 (Pa. Super. 2002).

Defendants advance several arguments regarding the alleged deficiencies of facts and injuries, all of which are incorrect:

- Defendants assert that Plaintiffs' Amended Complaint does not state whether the infant actually ingested the product at issue. In contrast, Plaintiffs have pled that the infant "was fed Similac and/or Enfamil cow's milk-based products" and developed NEC "after ingesting Defendant Manufacturers' products." See Plaintiff's Second Amended Complaint at ¶¶ 11-12.

- Defendants assert that Plaintiffs' Amended Complaint does not indicate which product was ingested. However, Plaintiff has pled that the infant was fed the Defendant's products "Similac and/or Enfamil cow's milk-based products." Id. at ¶ 11. Absent discovery, Plaintiff is limited to the detail provided in the medical records, the details of which are included in Plaintiff's Complaint. As advanced previously at oral argument, Plaintiff must be allowed to conduct full discovery to determine which manufacturer and brand each Hospital system had a distribution agreement with during certain periods of time, as that information, such as brand, is not often elicited in the medical records. Further, the Defendants themselves are the ones with the information such as purchasing receipts and or purchasing agreements with either Abbott or Mead.

Case ID: 220302588
Control No.: 23096253

- Defendants argue that Plaintiffs have not met their burden under fact pleading to show that the product was unreasonably dangerous because allegedly plaintiffs' claims are "unsupported by any specific studies or trials in the Amended Complaint." See Def. Preliminary Objections, at 8. However, as noted above, the Superior Court has ruled that in relation to pleading facts, "evidence from which such facts may be inferred not only need not but should not be alleged," which is entirely contrary to Defendants' arguments herein. See *Baker v. Rangos*, 324 A.2d 498, 505-506 (Pa. Super. 1974)

- Defendants assert that Plaintiff has not pled the period of time during which the product at issue was ingested.  However, Plaintiff alleged in the Complaint that the infant "was fed Similac and/or Enfamil cow's milk-based products by [hospital staff] after her birth." Id. Plaintiff's birth date is included in the Complaint.

- Defendants assert that Plaintiff failed to plead when the minor was diagnosed with NEC. However, Plaintiff pled that the infant's "diagnosis of NEC occurred during [the infant's] course of treatment at Defendant Hospital's NICU." *Id*. at ¶ 13. Plaintiffs averments adequately summarize the material facts necessary such that the Defendants are on notice of the claim of which they must defend, and notably the moving Defendants are the exact hospitals where the Plaintiff was initially treated for NEC, thus they have access to the exact same medical as the Plaintiffs which show the exact dates of treatment which are summarily referred to in Plaintiffs' Amended Complaint.

- Defendants assert that Plaintiffs did not plead the treatment the infant received following the ingestion of the NEC and resulting injuries. Defendant cites no authority for the proposition that a plaintiff must describe the specific treatment an injured party underwent following injuries resulting from the tortious conduct of a defendant.

- Defendants assert that Plaintiffs have not adequately pled the injuries suffered as a result of the product.  Plaintiff has adequately pled the injuries suffered by the infant who ingested Defendant's product, specifically "a diagnosis of NEC, treatment with antibiotics, blood transfusions and surgery, feeding difficulties, developmental delays, neurological issues, gastrointestinal issues, growth issues, short bowel syndrome, heart/lung/liver/kidney issues, mobility and walking difficulties, learning disabilities." Id. at ¶ 13.

Accordingly, Defendant's Preliminary Objections should be overruled as Plaintiffs Allegations should withstand challenge under 1019(a) because they contain averments of all of the facts a plaintiff will eventually have to prove in order to recover, and they are sufficiently specific so as to enable Defendants to prepare their defense.

13

Case ID: 220302588
Control No.: 23096253

**VII.**     **Plaintiff-Parents' Claims Against Penn Medicine and HUP Are Not Time-Barred And Should Not Be Dismissed**

Plaintiffs have clearly plead claims sounding in negligence on behalf of all plaintiffs, not just the injured minor plaintiff. Indeed, in the complaint, Plaintiff lists under Counts VI and VII, that "As a further direct and proximate result of Penn Medicine and Pennsylvania Hospital's negligent and reckless conduct, the Plaintiff Parent suffered significant emotional distress, loss of income, and/or other harms. Her life has been significantly affected by the Injured Infant's injuries." See Plaintiffs' Amended Complaint at ¶144, 165. Therefore, Defendants no additional specificity needs to be plead as to which claims apply which Plaintiffs, and Plaintiffs' Amended Complaint complies with Pa.R.C.P. 1020, which does not require Plaintiff Parents and Plaintiffs Minors to plead separate claims for sperate Plaintiffs as Defendant suggests.

Further, Plaintiff-parents' claims are not barred by the discovery rule on two distinct grounds. The discovery rule is an exception [to the statute of limitations] that tolls the statute of limitations when an injury or its cause is not reasonably knowable." *In re Risperdal Litig.*, 656 Pa. 649, 661 (2019). "Under the "discovery rule," the statute of limitations begins to run when a plaintiff knows, or reasonably should have known, that: (1) an injury has been sustained; and (2) the injury has been caused by another party's conduct." *Ward v. Rice*, 828 A.2d 1118, 1121 (Pa. Super. 2003) (citing *Citsay v. Reich*, 380 Pa. Super. 366, 369 (1988)). For the discovery rule to apply, the plaintiff must have exercised the due diligence that would be expected of a reasonable person in the plaintiff's position. 828 A.2d at 1121. A plaintiff must begin exercising reasonable diligence once they know the "the salient facts concerning the occurrence of his injury and *who or what caused it*." *Romah v. Hygienic Sanitation Co.*, 705 A.2d 841, 857 (Pa. Super. 1997) (emphasis added). While reasonable diligence is an objective standard, "it is also flexible […] to take into account differences between persons, their capacity to meet certain situations and circumstances

14

Case ID: 220302588
Control No.: 23096253

confronting them at the time in question. In short, the standard of conduct required is a uniform one which takes "into account the fallibility of human beings."" 828 A.2d at 1121-22 (quoting RST 2d § 283 cmt's b-c). Whether someone has exercised reasonable diligence "may be best determined by the collective judgment, wisdom, and experience of jurors who have been selected at random from the community whose standard is to be applied." *Petri v. Smith*, 307 Pa. Super. 261, 271-72 (1982).

Under the discovery rule, if a plaintiff's delay is because the assurances of their physicians lull the patient into a false sense of security, this may toll the statute of limitations. *See Acker v. Palena*, 260 Pa. Super. 214, 222 (1978); *Barshady v. Schlosser*, 226 Pa. Super. 260, 263-64 (1973). The Pennsylvania Supreme Court has "expressly declined to hold, as a matter of law, that a layperson may be charged with knowledge greater than that which was communicated to her by the medical professionals who provided treatment and diagnosis." *In re Risperdal Litig.*, 656 Pa. at 662 (citing *Wilson v. El-Daief*, 600 Pa. 161, 179-180 (2009)). If a plaintiff alleges that their delay was due to their reasonably relying upon the reassurances of their physicians, then, while construing the pleadings in the light most favorable to the moving party, a plaintiff's claims will not be time-barred. *Acker v. Palena*, 260 Pa. Super. 214, 223-24 (1978).

Likewise, the under the similar but distinct doctrine of fraudulent concealment, a form of equitable estoppel, the statute of limitations will be tolled if a plaintiff's delay is induced by reliance on the fraudulent concealment of the defendant. *Nesbitt v. Erie Coach Co.*, 416 Pa. 89, 95-96 (1964). If, "through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry, the defendant is estopped from invoking the bar of the statute of limitations." *Romah*, 705 A.2d at 857 (internal quotations omitted). A defendant does not need to intentionally deceive a plaintiff for the doctrine of fraudulent concealment to apply;

Case ID: 220302588
Control No.: 23096253

instead, fraudulent concealment encompasses "fraud in the broadest sense which includes an unintentional deception." 416 Pa. at 96 (citation omitted). It is for the factfinder to determine whether a defendant made representations that could have induced this reliance on the part of the plaintiff. *Id.* For example, in *Romah*, the Superior Court held that the issue of whether the plaintiff's claims for gross negligence and punitive damages were tolled because the defendant concealed studies and other information from the EPA and the public that showed that the defendant's product caused increased risk of blood cell depression in men was a factual issue for the jury. 705 A.2d at 861.

Plaintiffs have alleged that all of the medical providers that Plaintiff-parents interacted with at the Hospital failed to provide them with any information regarding the increased risk of NEC to premature infants posed by the bovine-based formula that the practitioners provided. Likewise, plaintiffs have alleged that the parents were not presented with the comparative risk of NEC of these products as compared to any other alternatives. Plaintiff-parents relied upon the representations, or lack thereof, provided by the medical professionals who were treating their infant. Further, Plaintiff alleged that Plaintiff-parents had no medical background or training and therefore could not be expected to have greater medical knowledge than these providers. Plaintiff-parents thereby reasonably relied upon, and were lulled into a false sense of security by, the assurances of the physicians treating their children. Moreover, Plaintiff has alleged that Defendants made false representations, in line with their financially advantageous relationship that they possessed with codefendant manufacturers Abbott and Mead, about the relative risks of bovine-based formula, in order to induce reliance on the part of Plaintiff-parents and thereby conceal the true source and cause of their infant's injury. Defendant hospitals facilitated interactions between medical providers and codefendant manufacturers' sales personnel, who Defendant hospital knew

16

Case ID: 220302588
Control No.: 23096253

would mislead medical providers about the risk of NEC posed by its products. Thus, under both the discovery rule and doctrine of fraudulent concealment, Plaintiff-parents' claims are not time-barred.

**VIII.** **Plaintiffs Have Filed the Proper Verifications For Their Amended Complaint**

Pennsylvania Rule of Civil Procedure 1024 requires that pleadings containing averments of fact not appearing of record in the action shall state that the averment is true upon the signer's personal knowledge or information and belief and shall be verified. *See* Pa.R.C.P. 1024. Plaintiff has obtained and produced proper verification as required by the Rules. Accordingly, Defendants' objection should be overruled. All such verifications have been or will be attached by way of a praecipe to attach filed to Plaintiffs' Amended Complaint.

**IX.** **Request In The Alternative To Amend The Complaint**

Although Plaintiff strenuously maintains the sufficiency of all of the Counts contained within the Complaint, should this Court be inclined to grant any of Defendants' specific Preliminary Objections, Plaintiff respectfully requests permission to amend the pleadings.

**WHEREFORE**, for the reasons more fully set forth in Plaintiff's accompanying Memorandum of Law, Plaintiff respectfully requests that this Honorable Court deny Defendants' Preliminary Objections, or, in the alternative, Order that Plaintiff is permitted leave to amend their Complaint.

Respectfully submitted,

**KLINE & SPECTER**,
A Professional Corporation

Date: October 18, 2023          By:     */s/Timothy A. Burke, Esquire*

THOMAS KLINE, ESQUIRE

17

TOBI MILLROOD, ESQUIRE
ELIZABETH CRAWFORD, ESQUIRE
TIMOTHY BURKE, ESQUIRE
*Attorneys for Plaintiffs*


**KELLER POSTMAN**
BEN WHITING, ESQUIRE (*Pro Hac Vice*)
MARK WEINSTEIN, ESQURIE
*Attorneys for Plaintiffs*

Case ID: 220302588
Control No.: 23096253

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 18, 2023, I caused a true and correct copy of the foregoing

document to be served by electronic filing to all counsel of record.

Respectfully submitted,

**KLINE & SPECTER**,
A Professional Corporation

Date: October 18, 2023      By:     */s/Timothy A. Burke, Esquire*

                                   TIMOTHY A. BURKE, ESQUIRE

Case ID: 220302588
Control No.: 23096253

# EXHIBIT A-54

**FILED**
19 OCT 2023 10:30 am
Civil Administration
C. ARTWELL

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION - CIVIL

| | |
|---|---|
| HOLLI CARTER, et al., <br> Plaintiff, <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> Defendants. | : <br> : MARCH TERM, 2022 <br> : No. 220302588 <br> : <br> : |
| BRANDY GOODMOND, et al., <br> Plaintiff, <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> Defendants. | : <br> : APRIL TERM, 2022 <br> : No. 220400208 <br> : <br> : |
| BRANDY GOODMOND, et al., <br> Plaintiff, <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> Defendants. | : <br> : APRIL TERM, 2022 <br> : No. 220400212 <br> : <br> : |
| JANEE HENDERSON, et al., <br> Plaintiff, <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> Defendants. | : <br> : APRIL TERM, 2022 <br> : No. 220400127 <br> : <br> : |
| KRISTEN KAJUFFA, et al., <br> Plaintiff, <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> Defendants. | : <br> : MARCH TERM, 2022 <br> : No. 220302978 <br> : <br> : |
| NAFEESAH MAYS, et al., <br> Plaintiff, <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> Defendants. | : <br> : MARCH TERM, 2022 <br> : No. 220302963 <br> : <br> : |
| CATHERINE McMILLIAN, et al., <br> Plaintiff, <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> Defendants. | : <br> : APRIL TERM, 2022 <br> : No. 220400140 <br> : <br> : |
| DAMEKA MOMENT, et al., | : |

|  |  |
|---|---|
| Plaintiff, | : APRIL TERM, 2022 |
| v. | : No. 220400142 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |

|  |  |
|---|---|
| NYDIA PARKER, et al., | : |
| Plaintiff, | : MARCH TERM, 2022 |
| v. | : No. 220302983 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |

|  |  |
|---|---|
| ALEXANDRIA ROSS, et al., | : |
| Plaintiff, | : MARCH TERM, 2022 |
| v. | : No. 220302981 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |

|  |  |
|---|---|
| LOREN SANDERS, et al., | : |
| Plaintiff, | : APRIL TERM, 2022 |
| v. | : No. 220400153 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |

|  |  |
|---|---|
| SAMAYA SHORT, et al., | : |
| Plaintiff, | : APRIL TERM, 2022 |
| v. | : No. 220400159 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |

|  |  |
|---|---|
| ALICE STILLS, et al., | : |
| Plaintiff, | : MARCH TERM, 2022 |
| v. | : No. 220302617 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |

|  |  |
|---|---|
| NATISHA THOMAS, et al., | : |
| Plaintiff, | : MARCH TERM, 2022 |
| v. | : No. 220400158 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |

|  |  |
|---|---|
| TRINA WALKER-SAVAGE and CLIFTON ISAIAH SAVAGE, JR., et al., | : |
| Plaintiff, | : MARCH TERM, 2022 |
| v. | : No. 220400156 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |

|  |  |
|---|---|
| JEANNATE WATSON, et al., | : |
| Plaintiff, | : MARCH TERM, 2022 |

|  |  |  |
|---|---|---|
| v. | : | No. 220302967 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |  |
| Defendants. | : |  |

|  |  |  |
|---|---|---|
| GINA WIEGER, et al., | : |  |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302614 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |  |
| Defendants. | : |  |

|  |  |  |
|---|---|---|
| GINA WIEGER, et al., | : |  |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302601 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |  |
| Defendants. | : |  |

|  |  |  |
|---|---|---|
| SHANITA WIGGINS, et al., | : |  |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302986 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |  |
| Defendants. | : |  |

|  |  |  |
|---|---|---|
| MELVENIA WILLIAMS, et al., | : |  |
| Plaintiff, | : | APRIL TERM, 2022 |
| v. | : | No. 220400141 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |  |
| Defendants. | : |  |

## **ORDER**

AND NOW this the _____ day of _____, 2023, upon consideration of Defendant Abbott Laboratories' Preliminary Objections to the Plaintiffs' Amended Complaint, Plaintiffs' Answer thereto, and all other appropriate considerations, it is hereby ORDERED, ADJUDGED and DECREED that Defendants' Preliminary Objections are OVERRULED.

BY THE COURT

_____
J.

**KLINE & SPECTER, P.C.**
THOMAS R. KLINE, ESQUIRE
Attorney I.D. No. 28895
TOBIAS MILLROOD, ESQUIRE
Attorney I.D. No. 77764
ELIZABETH CRAWFORD, ESQUIRE
Attorney I.D. No. 313702
MELISSA MERK, ESQUIRE
Attorney I.D. No. 90363
TIMOTHY A. BURKE, ESQUIRE
Attorney I.D. No.320927
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000/(215) 772-1359 fax.
Attorneys for Plaintiffs

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION - CIVIL

| | | |
|---|---|---|
| HOLLI CARTER, et al., | : | |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302588 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |
| BRANDY GOODMOND, et al., | : | |
| Plaintiff, | : | APRIL TERM, 2022 |
| v. | : | No. 220400208 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |
| BRANDY GOODMOND, et al., | : | |
| Plaintiff, | : | APRIL TERM, 2022 |
| v. | : | No. 220400212 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |
| JANEE HENDERSON, et al., | : | |
| Plaintiff, | : | APRIL TERM, 2022 |
| v. | : | No. 220400127 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |
| KRISTEN KAJUFFA, et al., | : | |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302978 |

1

Case ID: 220302588
Control No.: 23096752

MEAD JOHNSON & COMPANY, LLC, et al.,    :
    Defendants.    :

NAFEESAH MAYS, et al.,    :
    Plaintiff,    :   MARCH TERM, 2022
    v.    :   No. 220302963
MEAD JOHNSON & COMPANY, LLC, et al.,    :
    Defendants.    :

CATHERINE McMILLIAN, et al.,    :
    Plaintiff,    :   APRIL TERM, 2022
    v.    :   No. 220400140
MEAD JOHNSON & COMPANY, LLC, et al.,    :
    Defendants.    :

DAMEKA MOMENT, et al.,    :
    Plaintiff,    :   APRIL TERM, 2022
    v.    :   No. 220400142
MEAD JOHNSON & COMPANY, LLC, et al.,    :
    Defendants.    :

NYDIA PARKER, et al.,    :
    Plaintiff,    :   MARCH TERM, 2022
    v.    :   No. 220302983
MEAD JOHNSON & COMPANY, LLC, et al.,    :
    Defendants.    :

ALEXANDRIA ROSS, et al.,    :
    Plaintiff,    :   MARCH TERM, 2022
    v.    :   No. 220302981
MEAD JOHNSON & COMPANY, LLC, et al.,    :
    Defendants.    :

LOREN SANDERS, et al.,    :
    Plaintiff,    :   APRIL TERM, 2022
    v.    :   No. 220400153
MEAD JOHNSON & COMPANY, LLC, et al.,    :
    Defendants.    :

SAMAYA SHORT, et al.,    :
    Plaintiff,    :   APRIL TERM, 2022
    v.    :   No. 220400159
MEAD JOHNSON & COMPANY, LLC, et al.,    :
    Defendants.    :

ALICE STILLS, et al.,    :
    Plaintiff,    :   MARCH TERM, 2022
    v.    :   No. 220302617
MEAD JOHNSON & COMPANY, LLC, et al.,    :
    Defendants.    :

Case ID: 220302588
Control No.: 23096752

| | |
|---|---|
| NATISHA THOMAS, et al., : <br> Plaintiff, : <br> v. : <br> MEAD JOHNSON & COMPANY, LLC, et al., : <br> Defendants. : | MARCH TERM, 2022 <br> No. 220400158 |
| TRINA WALKER-SAVAGE and CLIFTON : <br> ISAIAH SAVAGE, JR., et al., : <br> Plaintiff, : <br> v. : <br> MEAD JOHNSON & COMPANY, LLC, et al., : <br> Defendants. : | MARCH TERM, 2022 <br> No. 220400156 |
| JEANNATE WATSON, et al., : <br> Plaintiff, : <br> v. : <br> MEAD JOHNSON & COMPANY, LLC, et al., : <br> Defendants. : | MARCH TERM, 2022 <br> No. 220302967 |
| GINA WIEGER, et al., : <br> Plaintiff, : <br> v. : <br> MEAD JOHNSON & COMPANY, LLC, et al., : <br> Defendants. : | MARCH TERM, 2022 <br> No. 220302614 |
| GINA WIEGER, et al., : <br> Plaintiff, : <br> v. : <br> MEAD JOHNSON & COMPANY, LLC, et al., : <br> Defendants. : | MARCH TERM, 2022 <br> No. 220302601 |
| SHANITA WIGGINS, et al., : <br> Plaintiff, : <br> v. : <br> MEAD JOHNSON & COMPANY, LLC, et al., : <br> Defendants. : | MARCH TERM, 2022 <br> No. 220302986 |
| MELVENIA WILLIAMS, et al., : <br> Plaintiff, : <br> v. : <br> MEAD JOHNSON & COMPANY, LLC, et al., : <br> Defendants. : | APRIL TERM, 2022 <br> No. 220400141 |

**PLAINTIFFS' REPSONSE TO ABBOTT LABORATORIES' PRELMINIARY OBJECTIONS TO PLAINTIFFS' AMENDED COMPLAINT**

Case ID: 220302588 <br> Control No.: 23096752

Plaintiffs, by and through their counsel, Kline & Specter, P.C., hereby oppose Defendant Abbott Laboratories' Preliminary Objections and responds to Defendant's Preliminary Objections and Evidentiary Exhibits as follows:

1.      Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs'' attached memorandum of law.

2.      Admitted.

3.      Admitted.

4.      Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs'' attached memorandum of law.

5.      Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs'' attached memorandum of law. Plaintiffs amended complaints contain additional factual pleadings that were not contained in the initially filed Complaints.

6.      Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs'' attached memorandum of law.

7.      This is an incorporation paragraph to which no response is required.

8.      Denied as a conclusion of law to which no response is required.  To the extent a response is required, Preliminary Objections may be sustained only when it appears with certainty that the law permits no recovery according to the facts averred, and any doubts in that determination must be resolved in favor of overruling the objections. Powell v. Drumheller, 539 Pa. 484, 489, 653 A.2d 619, 621 (1995).  By way of further response, Plaintiff has adequately pled that the product at issue is unreasonably dangerous.  Defendant's Preliminary Objections should be overruled.

9. Denied as a conclusion of law to which no response is required. To the extent a response is required, Preliminary Objections may be sustained only when it appears with certainty that the law permits no recovery according to the facts averred, and any doubts in that determination must be resolved in favor of overruling the objections. Powell v. Drumheller, 539 Pa. 484, 489, 653 A.2d 619, 621 (1995). By way of further response, Plaintiff has adequately pled that the product at issue is unreasonably dangerous. Defendant's Preliminary Objections should be overruled.

10. Denied. By way of further response, Defendant's assertion that Plaintiff's Second Amended Complaint is "devoid of any facts showing" Defendant's products are "unreasonably dangerous" is patently incorrect. Plaintiff's Second Amended Complaint includes dozens of paragraphs explaining the dangers of Defendant's product, including an entire section of the Complaint titled "*Cow's Milk-Based Feeding Products Are Known to Cause NEC.*" For example, Plaintiff pleads that there is an "elevated risk of NEC associated with cow's milk-based products" and that "the science clearly demonstrated to Defendants that these products cause NEC and greatly increase the likelihood that a baby will develop NEC, leading to severe injury and often death." See Plaintiff's Second Amended Complaint at ¶ ¶ 17, 20. Further, as relates the user's awareness of the danger, Plaintiff's Complaint details how Defendant's product labels failed to warn doctor and parents of the increased risk of NEC. Finally, Plaintiff's Complaint details several safer alternative designs that also speak to the manufacturer's ability to eliminate the danger, including donor breast milk, pasteurized breast milk, breast milk fortifiers, and breast milk-based products designed for pre-term infants. Id. at ¶ ¶ 16-20, 86-88. Accordingly, Defendant's Preliminary Objections should be denied.

Case ID: 220302588
Control No.: 23096752

11.     Denied as a conclusion of law to which no response is required.  To the extent a response is required, Preliminary Objections may be sustained only when it appears with certainty that the law permits no recovery according to the facts averred, and any doubts in that determination must be resolved in favor of overruling the objections. Powell v. Drumheller, 539 Pa. 484, 489, 653 A.2d 619, 621 (1995).  By way of further response, Plaintiff has adequately pled that the product at issue is unreasonably dangerous.  Defendant's Preliminary Objections should be overruled.

12.     This is an incorporation paragraph to which no response is required.

13.     Denied as a conclusion of law to which no response is required.  To the extent a response is required, Preliminary Objections may be sustained only when it appears with certainty that the law permits no recovery according to the facts averred, and any doubts in that determination must be resolved in favor of overruling the objections. Powell v. Drumheller, 539 Pa. 484, 489, 653 A.2d 619, 621 (1995).  By way of further response, Plaintiff has adequately identified the product that caused the injury at issue.  Defendant's Preliminary Objections should be overruled.

14.     Denied as a conclusion of law to which no response is required.  To the extent a response is required, Preliminary Objections may be sustained only when it appears with certainty that the law permits no recovery according to the facts averred, and any doubts in that determination must be resolved in favor of overruling the objections. Powell v. Drumheller, 539 Pa. 484, 489, 653 A.2d 619, 621 (1995).  By way of further response, Plaintiff has adequately identified the product that caused the injury at issue.  Specifically, Plaintiff has pled that the infant was fed the Defendant's products "Similac and/or Enfamil cow's milk-based products."  See Plaintiff's Second Amended Complaint at ¶¶ 11.  Absent discovery, Plaintiff is limited to the detail

Case ID: 220302588
Control No.: 23096752

provided in the medical records, all of which are included in Plaintiff's Complaint. Defendant cites <u>Cummins v. Firestone Tire & Rubber Co.</u> in support of their position. 495 A.2d 963 (Pa. Super. Ct. 1985). In <u>Cummins</u>, preliminary objections were sustained because the "manufacturer or seller" could not be determined, even if the plaintiff were afforded discovery. <u>Id.</u> at 968. Here, the manufacturer or seller is identified in Plaintiff's Complaint, the products at issue are also identified, and discovery will likely reveal even further detail about those products. As such, Defendant's Preliminary Objections should be overruled. This is an incorporation paragraph to which no response is required.

    15.    Denied as a conclusion of law to which no response is required. To the extent a response is required, Preliminary Objections may be sustained only when it appears with certainty that the law permits no recovery according to the facts averred, and any doubts in that determination must be resolved in favor of overruling the objections. <u>Powell v. Drumheller</u>, 539 Pa. 484, 489, 653 A.2d 619, 621 (1995). By way of further response, Plaintiff has adequately identified the product that caused the injury at issue. Specifically, Plaintiff has pled that the infant was fed the Defendant's products "Similac and/or Enfamil cow's milk-based products." <u>See</u> Plaintiff's Second Amended Complaint at ¶¶ 11. Absent discovery, Plaintiff is limited to the detail provided in the medical records, all of which are included in Plaintiff's Complaint. Defendant cites <u>Cummins v. Firestone Tire & Rubber Co.</u> in support of their position. 495 A.2d 963 (Pa. Super. Ct. 1985). In <u>Cummins</u>, preliminary objections were sustained because the "manufacturer or seller" could not be determined, even if the plaintiff were afforded discovery. <u>Id.</u> at 968. Here, the manufacturer or seller is identified in Plaintiff's Complaint, the products at issue are also identified, and discovery will likely reveal even further detail about those products. As such, Defendant's Preliminary Objections should be overruled.

Case ID: 220302588
Control No.: 23096752

16.     Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs'' attached memorandum of law.

17.     This is an incorporation paragraph to which no response is required.

18.     Denied as a conclusion of law to which no response is required.  To the extent a response is required, Preliminary Objections may be sustained only when it appears with certainty that the law permits no recovery according to the facts averred, and any doubts in that determination must be resolved in favor of overruling the objections. Powell v. Drumheller, 539 Pa. 484, 489, 653 A.2d 619, 621 (1995).  By way of further response, Plaintiff has adequately identified the product that caused the injury at issue.  Defendant's Preliminary Objections should be overruled.

19.     Denied as a conclusion of law to which no response is required.  To the extent a response is required, Preliminary Objections may be sustained only when it appears with certainty that the law permits no recovery according to the facts averred, and any doubts in that determination must be resolved in favor of overruling the objections. Powell v. Drumheller, 539 Pa. 484, 489, 653 A.2d 619, 621 (1995).  By way of further response, Plaintiff has adequately identified the product that caused the injury at issue.  Specifically, Plaintiff pled that the infant was fed the Defendant's products "Similac and/or Enfamil cow's milk-based products."  See Plaintiff's Second Amended Complaint at ¶ 11.  Absent discovery, Plaintiff is limited to the detail provided in the medical records, all of which are included in Plaintiff's Complaint.  Defendant cites Cummins v. Firestone Tire & Rubber Co. in support of their position. 495 A.2d 963 (Pa. Super. Ct. 1985).  In Cummins, preliminary objections were sustained because the "manufacturer or seller" could not be determined, even if the plaintiff were afforded discovery. Id. at 968.  Here, the manufacturer or seller is identified in Plaintiff's Complaint, the products at issue are also

8

Case ID: 220302588
Control No.: 23096752

identified, and discovery will likely reveal even further detail about those products. As such, Defendant's Preliminary Objections should be overruled.

20.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

21.     This is an incorporation paragraph to which no response is required.

22.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

23.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

24.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

25.     This is an incorporation paragraph to which no response is required.

26.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

27.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

28.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

29.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

30.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

Case ID: 220302588
Control No.: 23096752

31.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

32.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

33.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

34.     This is an incorporation paragraph to which no response is required.

35.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

36.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

37.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

38.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

39.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

40.     This is an incorporation paragraph to which no response is required.

41.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

42.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

Case ID: 220302588
Control No.: 23096752

43.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

44.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

45.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

46.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

47.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

48.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

49.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

50.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

51.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

52.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

WHEREFORE, for the reasons more fully set forth in Plaintiff's accompanying Memorandum of Law, Plaintiff respectfully requests that this Honorable Court deny Defendant's Preliminary Objections, or, in the alternative, Order that Plaintiff is permitted leave to amend their Complaint.

Case ID: 220302588
Control No.: 23096752

Respectfully submitted,

**KLINE & SPECTER**,
A Professional Corporation

Date: October 19, 2023                    By:    _/s/Timothy A. Burke, Esquire_

THOMAS KLINE, ESQUIRE
TOBI MILLROOD, ESQUIRE
ELIZABETH CRAWFORD, ESQUIRE
TIMOTHY BURKE, ESQUIRE
_Attorneys for Plaintiffs_


**KELLER POSTMAN**
BEN WHITING, ESQUIRE (_Pro Hac Vice_)
MARK WEINSTEIN, ESQURIE
_Attorneys for Plaintiffs_

12

Case ID: 220302588
Control No.: 23096752

**KLINE & SPECTER, P.C.**
THOMAS R. KLINE, ESQUIRE
Attorney I.D. No. 28895
TOBIAS MILLROOD, ESQUIRE
Attorney I.D. No. 77764
ELIZABETH CRAWFORD, ESQUIRE
Attorney I.D. No. 313702
MELISSA MERK, ESQUIRE
Attorney I.D. No. 90363
TIMOTHY A. BURKE, ESQUIRE
Attorney I.D. No.320927
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000/(215) 772-1359 fax.
Attorneys for Plaintiffs

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION - CIVIL

| | |
|---|---|
| HOLLI CARTER, et al., : | |
| Plaintiff, : | MARCH TERM, 2022 |
| v. : | No. 220302588 |
| MEAD JOHNSON & COMPANY, LLC, et al., : | |
| Defendants. : | |
| BRANDY GOODMOND, et al., : | |
| Plaintiff, : | APRIL TERM, 2022 |
| v. : | No. 220400208 |
| MEAD JOHNSON & COMPANY, LLC, et al., : | |
| Defendants. : | |
| BRANDY GOODMOND, et al., : | |
| Plaintiff, : | APRIL TERM, 2022 |
| v. : | No. 220400212 |
| MEAD JOHNSON & COMPANY, LLC, et al., : | |
| Defendants. : | |
| JANEE HENDERSON, et al., : | |
| Plaintiff, : | APRIL TERM, 2022 |
| v. : | No. 220400127 |
| MEAD JOHNSON & COMPANY, LLC, et al., : | |
| Defendants. : | |
| KRISTEN KAJUFFA, et al., : | |
| Plaintiff, : | MARCH TERM, 2022 |
| v. : | No. 220302978 |

Case ID: 220302588
Control No.: 23096752

| | |
|---|---|
| MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　　　Defendants. | :<br>: |
| NAFEESAH MAYS, et al.,<br>　　　　　　Plaintiff,<br>　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　　　Defendants. | :<br>: MARCH TERM, 2022<br>: No. 220302963<br>:<br>: |
| CATHERINE McMILLIAN, et al.,<br>　　　　　　Plaintiff,<br>　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　　　Defendants. | :<br>: APRIL TERM, 2022<br>: No. 220400140<br>:<br>: |
| DAMEKA MOMENT, et al.,<br>　　　　　　Plaintiff,<br>　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　　　Defendants. | :<br>: APRIL TERM, 2022<br>: No. 220400142<br>:<br>: |
| NYDIA PARKER, et al.,<br>　　　　　　Plaintiff,<br>　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　　　Defendants. | :<br>: MARCH TERM, 2022<br>: No. 220302983<br>:<br>: |
| ALEXANDRIA ROSS, et al.,<br>　　　　　　Plaintiff,<br>　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　　　Defendants. | :<br>: MARCH TERM, 2022<br>: No. 220302981<br>:<br>: |
| LOREN SANDERS, et al.,<br>　　　　　　Plaintiff,<br>　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　　　Defendants. | :<br>: APRIL TERM, 2022<br>: No. 220400153<br>:<br>: |
| SAMAYA SHORT, et al.,<br>　　　　　　Plaintiff,<br>　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　　　Defendants. | :<br>: APRIL TERM, 2022<br>: No. 220400159<br>:<br>: |
| ALICE STILLS, et al.,<br>　　　　　　Plaintiff,<br>　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　　　Defendants. | :<br>: MARCH TERM, 2022<br>: No. 220302617<br>:<br>: |

2

Case ID: 220302588<br>Control No.: 23096752

| | |
|---|---|
| NATISHA THOMAS, et al., | : |
|         Plaintiff, | : MARCH TERM, 2022 |
|      v. | : No. 220400158 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
|         Defendants. | : |

| | |
|---|---|
| TRINA WALKER-SAVAGE and CLIFTON | : |
| ISAIAH SAVAGE, JR., et al., | : MARCH TERM, 2022 |
|         Plaintiff, | : No. 220400156 |
|      v. | : |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
|         Defendants. | : |

| | |
|---|---|
| JEANNATE WATSON, et al., | : |
|         Plaintiff, | : MARCH TERM, 2022 |
|      v. | : No. 220302967 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
|         Defendants. | : |

| | |
|---|---|
| GINA WIEGER, et al., | : |
|         Plaintiff, | : MARCH TERM, 2022 |
|      v. | : No. 220302614 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
|         Defendants. | : |

| | |
|---|---|
| GINA WIEGER, et al., | : |
|         Plaintiff, | : MARCH TERM, 2022 |
|      v. | : No. 220302601 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
|         Defendants. | : |

| | |
|---|---|
| SHANITA WIGGINS, et al., | : |
|         Plaintiff, | : MARCH TERM, 2022 |
|      v. | : No. 220302986 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
|         Defendants. | : |

| | |
|---|---|
| MELVENIA WILLIAMS, et al., | : |
|         Plaintiff, | : APRIL TERM, 2022 |
|      v. | : No. 220400141 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
|         Defendants. | : |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR REPSONSE TO ABBOTT LABORATORIES' PRELMINIARY OBJECTIONS TO PLAINTIFFS' AMENDED COMPLAINT**

3

Case ID: 220302588
Control No.: 23096752

I. **Matter Before the Court**

Plaintiffs, by and through their counsel, Kline & Specter, P.C., hereby oppose Defendant's Preliminary Objections and respond to the Defendants' Preliminary Objections and Evidentiary Exhibits as follows:

II. **Counter Statement of Questions Involved**

1. Whether this Honorable Court should deny Defendant's Preliminary Objections as to Plaintiffs' Counts I-V where Plaintiffs have adequately plead and alleged that bovine-based formula is unreasonably dangerous and substantially increases the risk for the development of NEC in preterm infants, and where Plaintiffs are not required under the pleading standard to cite to evidence (such as medical studies) in their Complaint in support of ultimate issues that will have to be proven at trial?

   *Suggested answer in the affirmative.*

2. Whether this Honorable Court should deny Defendant's Preliminary Objections as to Plaintiffs' strict liability claims (Counts I and II) where Plaintiffs' claims are properly plead and legally sufficient?

   *Suggested answer in the affirmative.*

3. Whether this Honorable Court should deny Defendant's Preliminary Objections as to Plaintiffs' negligence claim (Count III) where Plaintiffs' claim is properly plead and legally sufficient.

   *Suggested answer in the affirmative.*

4. Whether this Honorable Court should deny Defendant's Preliminary Objections as to Plaintiffs' negligent misrepresentation claims (Counts IV and V) where Plaintiffs' claim is properly plead and legally sufficient?

Case ID: 220302588
Control No.: 23096752

*Suggested answer in the affirmative.*

5. Whether this Honorable Court should deny Defendant's Preliminary Objections as to Plaintiffs' Amended Complaint wherein Plaintiff does not need to differentiate between the Defendants when the tortious conduct alleged to have been perpetrated by the two manufacturing Defendants is identical in nature and actions?

*Suggested answer in the affirmative.*

6. Whether this Honorable Court should deny Defendants Preliminary Objections as to the Plaintiff Parents claims for Negligent Infliction of Emotional Distress where those claims are tolled and therefore not barred by the statute of limitations?

*Suggested answer in the affirmative.*

7. Whether this Honorable Court should deny Defendants Preliminary Objections as to Plaintiffs' Punitive Damages claims in Counts I through V of the Amended Complaint where Plaintiffs have adequately plead conduct which is sufficiently plead and adequate for a subsequent finding by a jury for Punitive Damages?

*Suggested answer in the affirmative.*

8. Whether this Honorable Court should deny Defendants Preliminary Objections where Plaintiffs' necessary verifications have been filed by way of a praecipe to attach to Plaintiffs' Amended Complaints?

*Suggested answer in the affirmative.*

III. **Plaintiff has Adequately Plead That Defendant's Products Are Unreasonably Dangerous**

Case ID: 220302588
Control No.: 23096752

Defendant asserts that Plaintiff's Amended Complaint fails to plead that Defendant's products are "unreasonably dangerous." Defendant is incorrect in this assertion, and their Preliminary Objections should be overruled.

Defendant's Preliminary Objections on this argument seem to rely heavily on their distrust of the science cited by Plaintiff regarding the dangers of their products. This argument is inappropriate at the Preliminary Objections stage. Rather, a complaint must only give a defendant only fair notice of the plaintiff's claims and a summary of the material facts that support those claims. Pa. R.C.P. 1019(a). In arguing that Plaintiffs' studies cited in their amended complaint are somehow inadequate to show the product is unreasonably dangers, Defendants fail to realize that Pennylvania law does require Plaintiffs to support any pleadings with evidence to pass preliminary objection. Indeed, the Superior Court has previously held that **"**[e]vidence from which such facts [alleged in a complaint] may be inferred <u>not only need not but should not be alleged</u>. Allegations will withstand challenge under 1019(a) if (1) they contain averments of all of the facts a plaintiff will eventually have to prove in order to recover, and (2) they are sufficiently specific so as to enable defendant to prepare his defense." *Baker v. Rangos*, 324 A.2d 498, 505-506 (Pa. Super. 1974) (citations and internal quotations omitted)(emphasis added).

Further, in assessing whether particular paragraphs in a complaint satisfy this requirement, they must be read in context with all other allegations in the complaint to determine whether the defendant has been provided adequate notice of the claim against which it must defend. *Yacoub v. Lehigh Valley Med. Associates*, P.C., 805 A.2d 579, 589 (Pa. Super. Ct. 2002). When determining whether certain allegations are sufficiently specific, Pennsylvania Law requires that the allegation be read in the context of the entire Complaint and not in a vacuum. *Hook v. L.B. Smith, Inc*., 69 D&C 2d 420 (1974); *Duchess Underwear Co. V. Sivan Manuf. Co.*, 75 D&C 185 (1950); accord

Case ID: 220302588
Control No.: 23096752

*Cmwlth v. Bell Tel Co.,* 121 Pa. Cmwlth 642, 649, 551 A2d 602 (1988). The Court must determine "whether the complaint is sufficiently clear to enable the Defendant to prepare his defense or [if it] informs the Defendant with accuracy and 3 completeness of the specific basis on which recovery is sought so that he may know without question upon what grounds to make his defense." *McNeil v. Jordan*, 814 A.2d 234, 237-38 (Pa. Super. 2002).

Defendant's assertion that Plaintiffs' Amended Complaint is "devoid of any facts showing" Defendant's products are "unreasonably dangerous" is patently incorrect. Plaintiffs' Amended Complaint includes dozens of paragraphs explaining the dangers of Defendant's product.

In determining whether a product is "unreasonably dangerous," the Court must consider seven factors:

> (1) The usefulness and desirability of the product—its utility to the user and to the public as a whole.
> (2) The safety aspects of a product—the likelihood that it will cause injury, and the probable seriousness of the injury.
> (3) The availability of a substitute product which would meet the same need and not be as unsafe.
> (4) The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.
> (5) The user's ability to avoid danger by the exercise of care in the use of the product.
> (6) The user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions.
> (7) The feasibility on the part of the manufacturer, of spreading the loss of setting the price of the product or carrying liability insurance.

*Riley v. Warren Mfg., Inc.,* 688 A.2d 221, 225 (1997). The Court need not make a finding on all seven factors to determine that a product is unreasonably dangerous. *Id.*

Here, Plaintiff's Second Amended Complaint has adequately pled that the products at issue are unreasonably dangerous. For example, Plaintiff's Second Amended Complaint includes an

Case ID: 220302588
Control No.: 23096752

entire section titled "***Cow's Milk-Based Feeding Products Are Known to Cause NEC.***" Further, Plaintiff pleads that there is an "elevated risk of NEC associated with cow's milk-based products" and that "the science clearly demonstrated to Defendants that these products cause NEC and greatly increase the likelihood that a baby will develop NEC, leading to severe injury and often death." See Plaintiff's Second Amended Complaint at ¶¶ 17, 20. Further, as relates the user's awareness of the danger, Plaintiff's Complaint details how Defendant, including through their product labels, failed to warn doctor and parents of the increased risk of NEC. Finally, Plaintiff's Complaint details several safer alternative designs that also speak to the manufacturer's ability to eliminate the danger, including donor breast milk, pasteurized breast milk, breast milk fortifiers, and breast milk-based products designed for pre-term infants. *Id*. at ¶¶ 16-20, 86-88.

Defendant cites *Orange Stones Co. v. City of Reading*, a case involving violation of an ordinance by a business in support of its contentions that Plaintiffs have not adequately plead that their products are unreasonably dangerous. There, the party filing preliminary objections claimed that plaintiff's complaint was deficient because it provided no facts to support its contention that the defendant acted "maliciously," "without probable cause," and "with the specific intent. *Orange Stones Co. v. City of Reading,* 87 A.3d 1014, 1025 (Pa. Commw. Ct. 2014). The trial court sustained the preliminary objections, agreeing that the plaintiff had pled <u>no facts</u> to support this contention. *Id*. at 10126. Thus, the Court reasoned, these contentions were "bald assertions." *Id.*

Here, the instant Plaintiffs' allegations are not merely bald assertions. As discussed above, Plaintiffs have pled dozens of paragraphs to support their contention that the products at issue are "unreasonably dangerous" and specifically plead that medical studies show that feeding preterm infants cow's milk-based formula, as opposed to human breast milk (donor or otherise), substantially increases the risk of them developing NEC and possibly dying or being otherwise

Case ID: 220302588
Control No.: 23096752

seriously injured. Accordingly, because Plaintiffs' Amended Complaint adequately pleads that Defendant's products are unreasonably dangerous, Defendant's Preliminary Objections should be denied.

**IV.**     **Plaintiffs' Amended Complaints Have Adequately Identified The Products At Issue For Both Their Product Liability and Negligence Claims**

Defendant asserts that Plaintiff's Second Amended Complaint fails to identify the product at issue. Defendant is wrong and their Preliminary Objections should be overruled.

A complaint must give a defendant only fair notice of the plaintiff's claims and a summary of the material facts that support those claims. Pa. R.C.P. 1019(a). In assessing whether particular paragraphs in a complaint satisfy this requirement, they must be read in context with all other allegations in the complaint to determine whether the defendant has been provided adequate notice of the claim against which it must defend. *Yacoub v. Lehigh Valley Med. Associates, P.C.,* 805 A.2d 579, 589 (Pa. Super. Ct. 2002). When determining whether certain allegations are sufficiently specific, Pennsylvania Law requires that the allegation be read in the context of the entire Complaint and not in a vacuum. *Hook v. L.B. Smith, Inc.,* 69 D&C 2d 420 (1974); *Duchess Underwear Co. V. Sivan Manuf. Co.,* 75 D&C 185 (1950); accord *Cmwlth v. Bell Tel Co.,* 121 Pa. Cmwlth 642, 649, 551 A2d 602 (1988). The Court must determine "whether the complaint is sufficiently clear to enable the Defendant to prepare his defense or [if it] informs the Defendant with accuracy and completeness of the specific basis on which recovery is sought so that he may know without question upon what grounds to make his defense." *McNeil v. Jordan*, 814 A.2d 234, 237-38 (Pa. Super. 2002).

Plaintiff has clearly and adequately identified the product that caused the injury at issue to the best of their ability at this time. Specifically, Plaintiff pled that the infant was fed the Defendants' specific "Similac and/or Enfamil cow's milk-based products." *See* Plaintiffs'

Case ID: 220302588
Control No.: 23096752

Amended Complaint at ¶ 11. Absent discovery on the supply of each particular brand to each particular hospital, Plaintiff is limited to the detail provided in the medical records and the Plaintiff parents recollection, all of which are included in Plaintiff's Complaint. As advanced previously at oral argument, Plaintiffs must be allowed to conduct full discovery to determine which of the two manufacturers' brand of cow's milk-based formula each Hospital system had a supply agreement with during certain periods of time, as that information, such as the formula brand, is not often elicited in the medical records. In fact, the hospital Defendants themselves are the ones with the best access to the information needed such as purchasing receipts and or purchasing agreements with either Abbott or Mead.

Defendant cites *Cummins v. Firestone Tire & Rubber Co.* in support of their position that Plaintiffs have not adequately identified the product at issue. 495 A.2d 963 (Pa. Super. Ct. 1985). In *Cummins*, preliminary objections were sustained because the **"manufacturer or seller"** could not be determined, *even if the plaintiff were afforded discovery*. *Id.* at 968. Here, the manufacturer or seller is identified in Plaintiff's Complaint, the products at issue are also identified, and discovery will likely reveal even further detail about those products and which brand was fed to the Plaintiff during certain period of time, namely around the birth of each Plaintiff. As such, Defendant's Preliminary Objections should be overruled.

## V. Plaintiffs Have Plead Their Misrepresentation Claims With Adequate Specificity, They Therefore Should Not Be Dismissed

The requirements of Pennsylvania's rules as to the sufficiency of pleadings with relation to a misrepresentation claim are satisfied if a plaintiff pleads facts sufficient to permit defendants to prepare a defense. *Commonwealth v. National Apartment Leasing Company,* 108 Pa.Commonwealth Ct. 300, 529 A.2d 1157 (1987); *see also McGinn v. Valloti,* 363 Pa.Superior Ct. 88, 525 A.2d 732 (1987); *see also Foster v. Peat Marwick Main & Co.*, 138 Pa. Cmwlth. 147,

Case ID: 220302588
Control No.: 23096752

156, 587 A.2d 382, 387 (1991), *aff'd sub nom. Foster v. Mut. Fire, Marine & Inland Ins. Co.*, 544

Pa. 387, 676 A.2d 652 (1996). Here, when the complaint is examined in its entirety, it clearly

describes a course of conduct alleged to be fraudulent or misrepresentative sufficient to notify

Abbott for purposes of defending the claim. *National Apartment Leasing.* In fact, Plaintiffs devotes

several pages of their Amended Complaint to facts describing the misrepresentation conduct of

Defendant Abbott wherein they allege, inter alia, that:

> Prior to [Plaintiff's] birth, Abbott sent sales representatives to Defendant
> Hospital. Those sales representatives provided information about Abbott's
> products to Defendant Hospital's staff via conversations, presentations, and
> written pamphlets. ***This information indicated that Abbott's products were
> safe*** to give to preterm infants like [Plaintiffs]. Abbott maintains call logs
> that detail which sales representatives visited the hospitals, which days they
> visited, and which products they discussed. ***These sales representatives did
> not disclose that Abbott's products could cause NEC in preterm infants***…
> Mead Johnson and Abbott believed and intended that the misrepresentations
> that its sale representatives shared with Defendant Hospital would be used
> to make feeding decisions for preterm infants like [Plaintiff]… ***Despite
> knowing of the risk of NEC, Abbott did not warn of the significantly
> increased risk of NEC*** (and resulting medical conditions, and/or death)
> associated with its products, or of the magnitude of this increased risk.
> Abbott likewise did not provide instructions or guidance for how to avoid
> NEC.

*See* Plaintiffs' Amended Complaint, at ¶¶ 60-62, 72 (emphasis added).

Clearly, Plaintiffs have articulated their misrepresentation claims with sufficient

particularity to allow for Defendant Abbott to have adequate notice of their claim and know the

material facts such that they can formulate a defense. As seen above, Plaintiffs' Amended

Complaint states 1)  the misrepresentations of safety that were relayed by Abbott, 2) that those

misrepresentations were made by Abbott to the Plaintiffs' healthcare providers, and thereafter to

the Plaintiff Parents, 3) who then relied upon the misrepresentation of safety to decide what

formula to feed their children, and finally 4) that Abbott was aware of the potential for their

Case ID: 220302588
Control No.: 23096752

formula to case NEC prior to the misrepresentations being made. Defendants' arguments that Plaintiffs have failed to articulate what misrepresentations were made such that they can adequately form a defense are spurious, and their preliminary objections should be summarily denied.

VI. **Plaintiffs Have Adequately Pleaded Facts Against Both Mead and Abbott For Conduct Which Is Sufficiently Similar Between The Two Manufacturing Defendants Such That They Are On Notice Of Plaintiffs' Claims Against Them**

Defendant argues in its Preliminary Objections that Plaintiffs' Amended Complaint fails to plead with particularity facts that differentiate between the two manufacturing Defendants, Abbott and Mead. In support of this contention, Defendant cites to *Coyne v. Holy Fam. Apartments*. *See Coyne v. Holy Fam. Apartments*, No. CV 19-4583, 2020 WL 2063475, at *4 (E.D. Pa. Apr. 29, 2020). However, when one references the case cited by Defendant, and examines the *entire* quote from the Court, which is notably absent from Defendant's brief, one sees that the *Coyne* Court held that, "even under the most liberal notice pleading requirements of Rule 8(a), a plaintiff must differentiate between defendants[,] *[and] [a]n allegation against multiple defendants that is bereft of specific wrongdoing by those proposed defendants is insufficient to state a claim*." *Id.,* at 4.

Here, although Plaintiffs' Complaints do often refer to both Abbott and Mead throughout their complaint in tandem, this is because Plaintiffs allege that *both* Abbott and Mead engaged in nearly identical conduct of concealing and misrepresenting the harmfulness of their bovine-based infant formula, and instead marketed those products to hospitals and parents as a safe formula to be fed to premature infants, despite knowing its propensity to increase the risk of development of NEC in preterm infants. *See* Plaintiffs' Amended Complaint, generally. In a situation such as this, where both Defendants engaged in the same tortious activity, there is no pleading requirement that

Case ID: 220302588
Control No.: 23096752

Plaintiff plead the conduct of each Defendant separately by "differentiating" their claims between each Defendant as Abbott suggests. Indeed, as the Court in *Coyne* noted, where a Plaintiff has pleaded allegations against multiple defendants that include specific wrongdoing attributable to each of those proposed Defendants, the Plaintiff's claims should not be dismissed as Defendants are **both** adequately on notice of the Claims that they **both** must defend, respectively.

**VII.** **Plaintiffs' Complaint Sufficiently Alleges that Defendant Consciously Disregarded the Risks Posed by the Products that they Manufactured, Distributed, and Sold Absent Adequate Warnings, Supporting Punitive Damages**

Punitive damages may be awarded for "'conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.' " *Hutchison v. Luddy*, 582 Pa. 114, 121 (2005) (quoting *Feld v. Merriam*, 506 Pa. 383, 395 (1984)). Punitive damages must be based on conduct that is "wanton," "willful," or "reckless." 582 Pa. at 121. As such, in Pennsylvania, to survive preliminary objections, a plaintiff must allege that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk. *Id*. For instance, in *Engle v. BT* Indus. AB, 41 Pa. D. & C.4th 25, 26, 33-34 (Pa.C.P. 1999), plaintiffs brought a products liability suit based on the manufacturers' negligence, strict liability claims, and breach of warranty. The defendant's motion to strike the plaintiff's punitive damages claim was denied. In denying the defendant's motion, the Court stated that the "plaintiff has alleged that the defendants introduced a defective product into the stream of commerce with the knowledge of defects and the possible harm that they would cause. Such conduct, if proven, may well be interpreted as exhibiting the type of reckless indifference that may trigger punitive damages." *Id*. Hence, when a manufacturer has a subjective appreciation of the risk of harm posed by a product, and then introduces said product into the stream of commerce regardless, this conduct may rise to the level of conscious disregard required to warrant punitive damages. Further, to the extent that there is any doubt about

13

Case ID: 220302588
Control No.: 23096752

whether the standard for punitive damages is met, that doubt must be resolved in the Plaintiff's favor at this stage. See *Theodore v. Del. Valley Sch. Dist.*, 575 Pa. 321, 333 (2003).

Plaintiffs have alleged that Abbott and Mead knowingly distributed a product that they knew posed an extreme danger to infants for profit. Abbott and Mead knew that the bovine-based products they supplied posed an increased risk of NEC, an extremely serious disease which can cause death, to premature infants, as compared to other economically and technologically feasible alternatives, such as human nutrition-based alternatives. Instead, Abbott and Mead chose to continue to produce bovine-based products, marketing them specifically towards pre-term infants, and not formulate alternatives that they knew would reduce the risk of NEC to premature infants. Hence, Abbott and Mead knowingly produced products that they knew could cause harm to infants and chose to place them into the stream of commerce, in some cases marketing those products for use with pre-term infants, in conscious disregard of the risk posed to infants.

Abbott and Mead also knew that the ordinary consumer would not expect these products to pose an increased risk of NEC and despite this, failed to warn consumers about the increased risk of NEC posed by their bovine-based products. Plaintiff alleges that Abbott and Mead failed to provide warnings to consumers that adequately and thoroughly described the increased risk of NEC posed by their products, as demonstrated by significant scientific evidence, in a way that was reasonably calculated to communicate these risks to parents of infants. Similarly, this failure to disclose substantial risks and communicate them in a way that would adequately inform parents was knowing and intentional conduct on the part of Abbott and Mead that evinces a conscious disregard of the risk posed by their products. Therefore, these allegations rise to the level of conscious disregard required to justify the issue of punitive damages proceeding at this stage.

## VIII. <u>Plaintiff-Parents' Claims Against Defendants Are Not Time-Barred And Should Not Be Dismissed</u>

Case ID: 220302588
Control No.: 23096752

Defendants' Preliminary Objections should be denied because Plaintiff's negligent infliction of emotional distress ("NIED") claim, brought under the bystander theory of liability, conforms with Pennsylvania legal precedent. Plaintiff-Parents contemporaneously observed a traumatic event injuring their child which satisfies the requisite element of an NIED claim.

Under Pennsylvania law, a plaintiff may pursue a claim for NIED in four different situations: "(1) where the defendant had a contractual or fiduciary duty toward the plaintiff; (2) where the plaintiff was subjected to a physical impact; (3) where the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) where the plaintiff observed a tortious injury to a close relative." *Toney v. Chester County Hosp.*, 961 A.2d 192, 197–98 (Pa. Super. 2008), *aff'd*, 36 A.3d 83 (Pa. 2011). The fourth scenario—the "bystander" theory of liability—arises where the plaintiff's distress is a foreseeable result of witnessing a loved one's injury. *See Sinn v. Burd*, 404 A.2d 672, 686 (Pa. 1979).

Based on the precedent set forth in *Sinn v. Burd*, Pennsylvania courts permit a plaintiff to recover for NIED as a "bystander" if the plaintiff's injury was reasonably foreseeable in light of three factors: "(1) whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it, (2) whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence, and (3) whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship." *Sinn*, 404 A.2d at 685 (quoting *Dillon v. Legg*, 441 P.2d 912, 920 (Cal. 1968)). To prevail, the plaintiff must show some form of "discrete and identifiable traumatic event" which caused the plaintiff's distress. *Turner v. Med. Ctr., Beaver, PA, Inc.*, 686 A.2d 830, 832–33 (Pa. Super. 1996) (quoting *Love v. Cramer*, 606 A.2d 1175, 1177 (Pa. Super.

15

Case ID: 220302588
Control No.: 23096752

1992)). While interpreting *Sinn*, the Pennsylvania Superior Court has held the definition of "sensory and contemporaneous observance" depends on "whether the emotional shock was immediate and direct rather than distant and indirect, and not upon the sense employed in seeing the accident." *Krysmalski by Krysmalski v. Tarasovich*, 622 A.2d 298, 303 (Pa. Super. 1993). The plaintiff alleging NIED must also assert a physical manifestation of the emotional harm. *See Banyas v. Lower Bucks County Hospital*, 437 A.2d 1236, 1239–40 (Pa. Super. 1981).

Here, Plaintiff has satisfied all prongs of the "bystander" theory of NIED. First, they were physically present to witness the severely deteriorated and near-death state of their child resulting from Defendants' negligence. Second, Plaintiffs' shock was a direct emotional impact from their contemporaneous observance of their child in the hospital. Finally, Plaintiffs and their child are obviously closely related. Plaintiffs' emotional distress from this negligence was completely foreseeable and has resulted in physical manifestations including depression and other harms.

In their Preliminary Objections, Defendants argue that Plaintiff did not assert a specific cause of action. However, Defendants fail to recognize it is well-settled Pennsylvania law that a complaint that contains facts that support a specific cause of action does, in fact, assert said action. *Bartanus v. Lis*, 480 A.2d 1178, 1182 (Pa. Super. 1984) (ruling that "[e]ven though appellant did not separate his factual allegations into separate counts specifying the legal theories underlying the complaint, the trial court was obligated to consider what causes of action were supported by the facts alleged" because "the complainant need only state the material facts upon which a cause of action is based").

Pennsylvania is a fact pleading state whereby the Complaint must provide defendants with notice of the basis of the claim and a summary of the facts essential to support that claim. *Alpha Tau Omega Fraternity*, 464 A.2d at 1352. Under the Pennsylvania Rules of Civil Procedure, a

16

complainant must list the material facts underlying his claim "in a concise and summary form." Pa.R.C.P. 1019(a); *see Thompson Coal Co. v. Pike Cole Co.*, 412 A.2d 466, 468 (Pa. 1979).

When read in the context of the Complaint as a whole, as required by law, Plaintiff clearly asserts an NIED claim. Notably, Plaintiff includes extensive factual allegations in paragraphs eleven (11) through eighty-two (82), the entirety of which must be considered when interpreting every other paragraph of the Complaint. *See* Plaintiff's Complaint at 11–82. Within those extensive factual allegations, the "bystander" theory of liability is clearly asserted as the plaintiff-parents' distress is a foreseeable result of witnessing the injury of their child resulting from Defendants' negligence. *See Sinn v. Burd*, 404 A.2d 672, 686 (Pa. 1979).

In sum, Plaintiff's NIED claim under a "bystander" theory of liability is sufficiently pled. Plaintiffs were physically present to witness the severely deteriorated and near-death state of their child resulting from Defendants' negligence. There was a direct emotional impact from this contemporaneous observance of their child in the hospital.

Further, Plaintiff-parents' claims are not time-barred because Defendant Abbott prevented Plaintiff-parents from learning the true cause of their infant's injury. The discovery rule is an exception [to the statute of limitations] that tolls the statute of limitations when an injury or its cause is not reasonably knowable." In re Risperdal Litig., 656 Pa. 649, 661 (2019). "Under the "discovery rule," the statute of limitations begins to run when a plaintiff knows, or reasonably should have known, that: (1) an injury has been sustained; and (2) the injury has been caused by another party's conduct." *Ward v. Rice*, 828 A.2d 1118, 1121 (Pa. Super. 2003) (citing *Citsay v. Reich*, 380 Pa. Super. 366, 369 (1988)). For the discovery rule to apply, the plaintiff must have exercised the due diligence that would be expected of a reasonable person in the plaintiff's position. 828 A.2d at 1121. A plaintiff must begin exercising reasonable diligence once they know

Case ID: 220302588
Control No.: 23096752

the "the salient facts concerning the occurrence of his injury and who or what caused it." *Romah v. Hygienic Sanitation Co.,* 705 A.2d 841, 857 (Pa. Super. 1997) (emphasis added). While reasonable diligence is an objective standard, "it is also flexible [...] to take into account differences between persons, their capacity to meet certain situations and circumstances confronting them at the time in question. In short, the standard of conduct required is a uniform one which takes "into account the fallibility of human beings."" 828 A.2d at 1121-22 (quoting RST 2d § 283 cmt's b-c). Whether someone has exercised reasonable diligence "may be best determined by the collective judgment, wisdom, and experience of jurors who have been selected at random from the community whose standard is to be applied." *Petri v. Smith*, 307 Pa. Super. 261, 271-72 (1982).

Under the discovery rule, if a plaintiff's delay is because the assurances of their physicians lull the patient into a false sense of security, this may toll the statute of limitations. *See Acker v. Palena*, 260 Pa. Super. 214, 222 (1978); *Barshady v. Schlosser*, 226 Pa. Super. 260, 263-64 (1973). The Pennsylvania Supreme Court has "expressly declined to hold, as a matter of law, that a layperson may be charged with knowledge greater than that which was communicated to her by the medical professionals who provided treatment and diagnosis." In re Risperdal Litig., 656 Pa. at 662 (citing *Wilson v. El-Daief*, 600 Pa. 161, 179-180 (2009)). If a plaintiff alleges that their delay was due to their reasonably relying upon the reassurances of their physicians, then, while construing the pleadings in the light most favorable to the moving party, a plaintiff's claims will not be time-barred. *Acker v. Palena*, 260 Pa. Super. 214, 223-24 (1978).

Likewise, the under the similar but distinct doctrine of fraudulent concealment, a form of equitable estoppel, the statute of limitations will be tolled if a plaintiff's delay is induced by reliance on the fraudulent concealment of the defendant. *Nesbitt v. Erie Coach Co.*, 416 Pa. 89,

Case ID: 220302588
Control No.: 23096752

95-96 (1964). If, "through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry, the defendant is estopped from invoking the bar of the statute of limitations." *Romah*, 705 A.2d at 857 (internal quotations omitted). A defendant does not need to intentionally deceive a plaintiff for the doctrine of fraudulent concealment to apply; instead, fraudulent concealment encompasses "fraud in the broadest sense which includes an unintentional deception." *Nesbitt, supra*, 416 Pa. at 96 (citation omitted). It is for the factfinder to determine whether a defendant made representations that could have induced this reliance on the part of the plaintiff. Id. For example, in Romah, the Superior Court held that the issue of whether the plaintiff's claims for gross negligence and punitive damages were tolled because the defendant concealed studies and other information from the EPA and the public that showed that the defendant's product caused increased risk of blood cell depression in men was a factual issue for the jury. *Romah, supra*, 705 A.2d at 861.

Plaintiffs have alleged that manufacturers Abbott and Mead took numerous steps to prevent Plaintiff-parents from learning the cause of their infant's injuries. Defendants disseminated materials to the public that intentionally misled parents about the risk of NEC posed by their products, which affirmatively stated, and still state, that their products do not cause the disease, or worse still, may reduce the risk of NEC. For instance, Abbott published numerous misleading statements on its publicly available website that misrepresented the link between its bovine-based formula and the risk of NEC in premature infants. In addition, Defendant manufacturers trained and directed its sales personnel to mislead medical providers about the risk of NEC posed by its products. Further, Defendant manufacturers did not provide warnings on their packaging or products, thereby also concealing the known risk of NEC from parents. Thus, under both the

Case ID: 220302588
Control No.: 23096752

discovery rule and doctrine of fraudulent concealment, Plaintiff-parents' claims are not time-barred.

**IX.**     <u>**Plaintiffs Have Filed the Proper Verifications For Their Amended Complaints**</u>

Pennsylvania Rule of Civil Procedure 1024 requires that pleadings containing averments of fact not appearing of record in the action shall state that the averment is true upon the signer's personal knowledge or information and belief and shall be verified. *See* Pa.R.C.P. 1024. Plaintiff has obtained and produced proper verification as required by the Rules. Accordingly, Defendants' objection should be overruled. All such verifications have been and/or will immediately be attached by way of a praecipe to attach filed to Plaintiffs' Amended Complaint.

**X.**     <u>**Request In The Alternative To Amend The Complaint**</u>

Although Plaintiff strenuously maintains the sufficiency of all of the Counts contained within the Complaint, should this Court be inclined to grant any of Defendants' specific Preliminary Objections, Plaintiff respectfully requests permission to amend the pleadings.

**WHEREFORE**, for the reasons more fully set forth in Plaintiff's accompanying Memorandum of Law, Plaintiff respectfully requests that this Honorable Court deny Defendants' Preliminary Objections, or, in the alternative, Order that Plaintiff is permitted leave to amend their Complaint.

Respectfully submitted,

**KLINE & SPECTER**,
A Professional Corporation

Date: October 19, 2023      By:     <u>*/s/Timothy A. Burke, Esquire*</u>

THOMAS KLINE, ESQUIRE
TOBI MILLROOD, ESQUIRE
ELIZABETH CRAWFORD, ESQUIRE

Case ID: 220302588
Control No.: 23096752

TIMOTHY BURKE, ESQUIRE
*Attorneys for Plaintiffs*


**KELLER POSTMAN**
BEN WHITING, ESQUIRE (*Pro Hac Vice*)
MARK WEINSTEIN, ESQURIE
*Attorneys for Plaintiffs*

21

Case ID: 220302588
Control No.: 23096752

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 19, 2023, I caused a true and correct copy of the foregoing document to be served by electronic filing to all counsel of record.

Respectfully submitted,

**KLINE & SPECTER**,
A Professional Corporation

Date: October 19, 2023      By:    */s/Timothy A. Burke, Esquire*

TIMOTHY A. BURKE, ESQUIRE

22

Case ID: 220302588
Control No.: 23096752

# EXHIBIT A-55

**FILED**
19 OCT 2023 02:12 pm
Civil Administration
**A. CLARKE**

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION - CIVIL

| | |
|---|---|
| HOLLI CARTER, et al., | : |
| Plaintiff, | : MARCH TERM, 2022 |
| v. | : No. 220302588 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |

| | |
|---|---|
| BRANDY GOODMOND, et al., | : |
| Plaintiff, | : APRIL TERM, 2022 |
| v. | : No. 220400208 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |

| | |
|---|---|
| BRANDY GOODMOND, et al., | : |
| Plaintiff, | : APRIL TERM, 2022 |
| v. | : No. 220400212 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |

| | |
|---|---|
| JANEE HENDERSON, et al., | : |
| Plaintiff, | : APRIL TERM, 2022 |
| v. | : No. 220400127 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |

| | |
|---|---|
| KRISTEN KAJUFFA, et al., | : |
| Plaintiff, | : MARCH TERM, 2022 |
| v. | : No. 220302978 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |

| | |
|---|---|
| NAFEESAH MAYS, et al., | : |
| Plaintiff, | : MARCH TERM, 2022 |
| v. | : No. 220302963 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |

| | |
|---|---|
| CATHERINE McMILLIAN, et al., | : |
| Plaintiff, | : APRIL TERM, 2022 |
| v. | : No. 220400140 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |

| | |
|---|---|
| DAMEKA MOMENT, et al., | : |

|                                                              |     |                                      |
|--------------------------------------------------------------|-----|--------------------------------------|
| Plaintiff,                                                   | :   | APRIL TERM, 2022                     |
| v.                                                           | :   | No. 220400142                        |
| MEAD JOHNSON & COMPANY, LLC, et al.,                         | :   |                                      |
| Defendants.                                                  | :   |                                      |

|                                                              |     |                                      |
|--------------------------------------------------------------|-----|--------------------------------------|
| NYDIA PARKER, et al.,                                        |     |                                      |
| Plaintiff,                                                   | :   | MARCH TERM, 2022                     |
| v.                                                           | :   | No. 220302983                        |
| MEAD JOHNSON & COMPANY, LLC, et al.,                         | :   |                                      |
| Defendants.                                                  | :   |                                      |

|                                                              |     |                                      |
|--------------------------------------------------------------|-----|--------------------------------------|
| ALEXANDRIA ROSS, et al.,                                     | :   |                                      |
| Plaintiff,                                                   | :   | MARCH TERM, 2022                     |
| v.                                                           | :   | No. 220302981                        |
| MEAD JOHNSON & COMPANY, LLC, et al.,                         | :   |                                      |
| Defendants.                                                  | :   |                                      |

|                                                              |     |                                      |
|--------------------------------------------------------------|-----|--------------------------------------|
| LOREN SANDERS, et al.,                                       | :   |                                      |
| Plaintiff,                                                   | :   | APRIL TERM, 2022                     |
| v.                                                           | :   | No. 220400153                        |
| MEAD JOHNSON & COMPANY, LLC, et al.,                         | :   |                                      |
| Defendants.                                                  | :   |                                      |

|                                                              |     |                                      |
|--------------------------------------------------------------|-----|--------------------------------------|
| SAMAYA SHORT, et al.,                                        | :   |                                      |
| Plaintiff,                                                   | :   | APRIL TERM, 2022                     |
| v.                                                           | :   | No. 220400159                        |
| MEAD JOHNSON & COMPANY, LLC, et al.,                         | :   |                                      |
| Defendants.                                                  | :   |                                      |

|                                                              |     |                                      |
|--------------------------------------------------------------|-----|--------------------------------------|
| ALICE STILLS, et al.,                                        | :   |                                      |
| Plaintiff,                                                   | :   | MARCH TERM, 2022                     |
| v.                                                           | :   | No. 220302617                        |
| MEAD JOHNSON & COMPANY, LLC, et al.,                         | :   |                                      |
| Defendants.                                                  | :   |                                      |

|                                                              |     |                                      |
|--------------------------------------------------------------|-----|--------------------------------------|
| NATISHA THOMAS, et al.,                                      | :   |                                      |
| Plaintiff,                                                   | :   | MARCH TERM, 2022                     |
| v.                                                           | :   | No. 220400158                        |
| MEAD JOHNSON & COMPANY, LLC, et al.,                         | :   |                                      |
| Defendants.                                                  | :   |                                      |

|                                                              |     |                                      |
|--------------------------------------------------------------|-----|--------------------------------------|
| TRINA WALKER-SAVAGE and CLIFTON                              | :   |                                      |
| ISAIAH SAVAGE, JR., et al.,                                  | :   | MARCH TERM, 2022                     |
| Plaintiff,                                                   | :   | No. 220400156                        |
| v.                                                           | :   |                                      |
| MEAD JOHNSON & COMPANY, LLC, et al.,                         | :   |                                      |
| Defendants.                                                  | :   |                                      |

|                                                              |     |                                      |
|--------------------------------------------------------------|-----|--------------------------------------|
| JEANNATE WATSON, et al.,                                     | :   |                                      |
| Plaintiff,                                                   | :   | MARCH TERM, 2022                     |

|  | : | No. 220302967 |
| --- | --- | --- |
| v. | : | |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |

| GINA WIEGER, et al., | : | |
| --- | --- | --- |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302614 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |

| GINA WIEGER, et al., | : | |
| --- | --- | --- |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302601 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |

| SHANITA WIGGINS, et al., | : | |
| --- | --- | --- |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302986 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |

| MELVENIA WILLIAMS, et al., | : | |
| --- | --- | --- |
| Plaintiff, | : | APRIL TERM, 2022 |
| v. | : | No. 220400141 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |

## **ORDER**

AND NOW this the _____ day of _____, 2023, upon consideration of Defendant Mead Johnson & Company, LLC and Mead Johnson Nutrition Company's (collectively referred to as, "Mead Johnson" or "Moving Defendants") Preliminary Objections to the Plaintiffs' Amended Complaint, Plaintiffs' Answer thereto, and all other appropriate considerations, it is hereby ORDERED, ADJUDGED and DECREED that Moving Defendants' Preliminary Objections are OVERRULED.

BY THE COURT

_____
J.

**KLINE & SPECTER, P.C.**
THOMAS R. KLINE, ESQUIRE
Attorney I.D. No. 28895
TOBIAS MILLROOD, ESQUIRE
Attorney I.D. No. 77764
ELIZABETH CRAWFORD, ESQUIRE
Attorney I.D. No. 313702
MELISSA MERK, ESQUIRE
Attorney I.D. No. 90363
TIMOTHY A. BURKE, ESQUIRE
Attorney I.D. No.320927
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000/(215) 772-1359 fax.
Attorneys for Plaintiffs

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION - CIVIL

| | | |
|---|---|---|
| HOLLI CARTER, et al., | : | |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302588 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |
| BRANDY GOODMOND, et al., | : | |
| Plaintiff, | : | APRIL TERM, 2022 |
| v. | : | No. 220400208 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |
| BRANDY GOODMOND, et al., | : | |
| Plaintiff, | : | APRIL TERM, 2022 |
| v. | : | No. 220400212 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |
| JANEE HENDERSON, et al., | : | |
| Plaintiff, | : | APRIL TERM, 2022 |
| v. | : | No. 220400127 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |
| KRISTEN KAJUFFA, et al., | : | |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302978 |

1

Case ID: 220302588
Control No.: 23063373

MEAD JOHNSON & COMPANY, LLC, et al., :
        Defendants. :

NAFEESAH MAYS, et al., :
        Plaintiff, : MARCH TERM, 2022
    v. : No. 220302963
MEAD JOHNSON & COMPANY, LLC, et al., :
        Defendants. :

CATHERINE McMILLIAN, et al., :
        Plaintiff, : APRIL TERM, 2022
    v. : No. 220400140
MEAD JOHNSON & COMPANY, LLC, et al., :
        Defendants. :

DAMEKA MOMENT, et al., :
        Plaintiff, : APRIL TERM, 2022
    v. : No. 220400142
MEAD JOHNSON & COMPANY, LLC, et al., :
        Defendants. :

NYDIA PARKER, et al., :
        Plaintiff, : MARCH TERM, 2022
    v. : No. 220302983
MEAD JOHNSON & COMPANY, LLC, et al., :
        Defendants. :

ALEXANDRIA ROSS, et al., :
        Plaintiff, : MARCH TERM, 2022
    v. : No. 220302981
MEAD JOHNSON & COMPANY, LLC, et al., :
        Defendants. :

LOREN SANDERS, et al., :
        Plaintiff, : APRIL TERM, 2022
    v. : No. 220400153
MEAD JOHNSON & COMPANY, LLC, et al., :
        Defendants. :

SAMAYA SHORT, et al., :
        Plaintiff, : APRIL TERM, 2022
    v. : No. 220400159
MEAD JOHNSON & COMPANY, LLC, et al., :
        Defendants. :

ALICE STILLS, et al., :
        Plaintiff, : MARCH TERM, 2022
    v. : No. 220302617
MEAD JOHNSON & COMPANY, LLC, et al., :
        Defendants. :

Case ID: 220302588
Control No.: 23063373

| | |
|---|---|
| NATISHA THOMAS, et al.,<br>        Plaintiff,<br>    v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>        Defendants. | :<br>:<br>:<br>:<br>: | MARCH TERM, 2022<br>No. 220400158 |
| TRINA WALKER-SAVAGE and CLIFTON<br>ISAIAH SAVAGE, JR., et al.,<br>        Plaintiff,<br>    v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>        Defendants. | :<br>:<br>:<br>:<br>:<br>: | MARCH TERM, 2022<br>No. 220400156 |
| JEANNATE WATSON, et al.,<br>        Plaintiff,<br>    v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>        Defendants. | :<br>:<br>:<br>:<br>: | MARCH TERM, 2022<br>No. 220302967 |
| GINA WIEGER, et al.,<br>        Plaintiff,<br>    v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>        Defendants. | :<br>:<br>:<br>:<br>: | MARCH TERM, 2022<br>No. 220302614 |
| GINA WIEGER, et al.,<br>        Plaintiff,<br>    v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>        Defendants. | :<br>:<br>:<br>:<br>: | MARCH TERM, 2022<br>No. 220302601 |
| SHANITA WIGGINS, et al.,<br>        Plaintiff,<br>    v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>        Defendants. | :<br>:<br>:<br>:<br>: | MARCH TERM, 2022<br>No. 220302986 |
| MELVENIA WILLIAMS, et al.,<br>        Plaintiff,<br>    v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>        Defendants. | :<br>:<br>:<br>:<br>: | APRIL TERM, 2022<br>No. 220400141 |

## PLAINTIFFS' REPSONSE TO MEAD JOHNSON'S PRELMINIARY OBJECTIONS TO PLAINTIFFS' AMENDED COMPLAINT

Plaintiffs, by and through their counsel, Kline & Specter, P.C., hereby oppose Defendant

Mead Johnson & Company, LLC and Mead Johnson Nutrition Company's (collectively referred

Case ID: 220302588<br>Control No.: 23063373

to as, "Mead Johnson" or "Moving Defendants") Preliminary Objections and responds to Defendant's Preliminary Objections and Evidentiary Exhibits as follows:

1.      Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

2.      Admitted.

3.      Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs'' attached memorandum of law.

4.      Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs'' attached memorandum of law.

5.      Denied as a conclusion of law to which no response is required. By way of further response, see Plaintiffs'' attached memorandum of law. Plaintiffs amended complaints contain additional factual pleadings that were not contained in the initially filed Complaints.

6.      Denied as Plaintiffs' Amended Complaint is a written document that speaks for itself, and therefore no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

7.      Denied as Plaintiffs' Amended Complaint is a written document that speaks for itself, and therefore no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

8.      Denied as Plaintiffs' Amended Complaint is a written document that speaks for itself, and therefore no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

Case ID: 220302588
Control No.: 23063373

9.    Denied as Plaintiffs' Amended Complaint is a written document that speaks for itself, and therefore no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

10.    Denied as Plaintiffs' Amended Complaint is a written document that speaks for itself, and therefore no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

11.    Denied as Plaintiffs' Amended Complaint is a written document that speaks for itself, and therefore no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

12.    Denied as Plaintiffs' Amended Complaint is a written document that speaks for itself, and therefore no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

13.    Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

14.    Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

15.    Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

16.    Denied as Plaintiffs' Amended Complaint is a written document that speaks for itself, and therefore no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

Case ID: 220302588
Control No.: 23063373

17.     Denied as Plaintiffs' Amended Complaint is a written document that speaks for itself, and therefore no response is required. By way of further response, see Plaintiffs' attached memorandum of law.

18.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

19.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

20.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

21.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

22.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

23.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

24.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

25.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

26.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

27.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

Case ID: 220302588
Control No.: 23063373

28.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

29.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

30.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

31.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

32.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

33.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

34.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

35.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

36.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

37.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

38.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

Case ID: 220302588
Control No.: 23063373

39.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

40.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

41.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

42.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

43.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

44.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

45.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

46.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

47.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

48.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

49.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

Case ID: 220302588
Control No.: 23063373

50.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

51.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

52.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

53.     Denied as a conclusion of law to which no response, is required. By way of further response, see Plaintiffs' attached memorandum of law.

WHEREFORE, for the reasons more fully set forth in Plaintiffs' accompanying Memorandum of Law, Plaintiffs respectfully request that this Honorable Court deny Defendant's Preliminary Objections, or, in the alternative, Order that Plaintiffs are permitted leave to amend their Complaint.

Respectfully submitted,

**KLINE & SPECTER**,
A Professional Corporation

Date: October 19, 2023        By:     */s/Timothy A. Burke, Esquire*

THOMAS KLINE, ESQUIRE
TOBI MILLROOD, ESQUIRE
ELIZABETH CRAWFORD, ESQUIRE
TIMOTHY BURKE, ESQUIRE
*Attorneys for Plaintiffs*

**KELLER POSTMAN**
BEN WHITING, ESQUIRE (*Pro Hac Vice*)
MARK WEINSTEIN, ESQURIE
*Attorneys for Plaintiffs*

9

Case ID: 220302588
Control No.: 23063373

Case ID: 220302588
Control No.: 23063373

**KLINE & SPECTER, P.C.**
THOMAS R. KLINE, ESQUIRE
Attorney I.D. No. 28895
TOBIAS MILLROOD, ESQUIRE
Attorney I.D. No. 77764
ELIZABETH CRAWFORD, ESQUIRE
Attorney I.D. No. 313702
MELISSA MERK, ESQUIRE
Attorney I.D. No. 90363
TIMOTHY A. BURKE, ESQUIRE
Attorney I.D. No.320927
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000/(215) 772-1359 fax.
Attorneys for Plaintiffs

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION - CIVIL

| | |
|---|---|
| HOLLI CARTER, et al.,        : | |
|       Plaintiff,        : | MARCH TERM, 2022 |
|       v.        : | No. 220302588 |
| MEAD JOHNSON & COMPANY, LLC, et al.,   : | |
|       Defendants.        : | |
| BRANDY GOODMOND, et al.,     : | |
|       Plaintiff,        : | APRIL TERM, 2022 |
|       v.        : | No. 220400208 |
| MEAD JOHNSON & COMPANY, LLC, et al.,   : | |
|       Defendants.        : | |
| BRANDY GOODMOND, et al.,     : | |
|       Plaintiff,        : | APRIL TERM, 2022 |
|       v.        : | No. 220400212 |
| MEAD JOHNSON & COMPANY, LLC, et al.,   : | |
|       Defendants.        : | |
| JANEE HENDERSON, et al.,     : | |
|       Plaintiff,        : | APRIL TERM, 2022 |
|       v.        : | No. 220400127 |
| MEAD JOHNSON & COMPANY, LLC, et al.,   : | |
|       Defendants.        : | |
| KRISTEN KAJUFFA, et al.,     : | |
|       Plaintiff,        : | MARCH TERM, 2022 |
|       v.        : | No. 220302978 |

1

MEAD JOHNSON & COMPANY, LLC, et al.,
    Defendants.                :
                                          :

NAFEESAH MAYS, et al.,
            Plaintiff,         :   MARCH TERM, 2022
        v.                :   No. 220302963
MEAD JOHNSON & COMPANY, LLC, et al.,
    Defendants.              :

CATHERINE McMILLIAN, et al.,
            Plaintiff,         :   APRIL TERM, 2022
        v.                :   No. 220400140
MEAD JOHNSON & COMPANY, LLC, et al.,
    Defendants.              :

DAMEKA MOMENT, et al.,
            Plaintiff,         :   APRIL TERM, 2022
        v.                :   No. 220400142
MEAD JOHNSON & COMPANY, LLC, et al.,
    Defendants.              :

NYDIA PARKER, et al.,
            Plaintiff,         :   MARCH TERM, 2022
        v.                :   No. 220302983
MEAD JOHNSON & COMPANY, LLC, et al.,
    Defendants.              :

ALEXANDRIA ROSS, et al.,
            Plaintiff,         :   MARCH TERM, 2022
        v.                :   No. 220302981
MEAD JOHNSON & COMPANY, LLC, et al.,
    Defendants.              :

LOREN SANDERS, et al.,
            Plaintiff,         :   APRIL TERM, 2022
        v.                :   No. 220400153
MEAD JOHNSON & COMPANY, LLC, et al.,
    Defendants.              :

SAMAYA SHORT, et al.,
            Plaintiff,         :   APRIL TERM, 2022
        v.                :   No. 220400159
MEAD JOHNSON & COMPANY, LLC, et al.,
    Defendants.              :

ALICE STILLS, et al.,
            Plaintiff,         :   MARCH TERM, 2022
        v.                :   No. 220302617
MEAD JOHNSON & COMPANY, LLC, et al.,
    Defendants.              :

Case ID: 220302588
Control No.: 23063373

| NATISHA THOMAS, et al., | : | |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220400158 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |

| TRINA WALKER-SAVAGE and CLIFTON | : | |
| ISAIAH SAVAGE, JR., et al., | : | MARCH TERM, 2022 |
| Plaintiff, | : | No. 220400156 |
| v. | : | |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |

| JEANNATE WATSON, et al., | : | |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302967 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |

| GINA WIEGER, et al., | : | |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302614 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |

| GINA WIEGER, et al., | : | |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302601 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |

| SHANITA WIGGINS, et al., | : | |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302986 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |

| MELVENIA WILLIAMS, et al., | : | |
| Plaintiff, | : | APRIL TERM, 2022 |
| v. | : | No. 220400141 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR REPSONSE TO MEAD JOHNSON'S PRELMINIARY OBJECTIONS TO PLAINTIFFS' AMENDED COMPLAINT

3

Case ID: 220302588
Control No.: 23063373

I.      **Matter Before the Court**

Plaintiffs, by and through their counsel, Kline & Specter, P.C., hereby oppose Defendant Mead Johnson & Company, LLC and Mead Johnson Nutrition Company's (collectively referred to as, "Mead Johnson" or "Moving Defendants") Preliminary Objections and respond to the Moving Defendants' Preliminary Objections and Evidentiary Exhibits as follows:

II.     **Counter Statement of Questions Involved**

1.  Whether this Honorable Court should deny Defendant's Preliminary Objections as to Plaintiffs' Counts I-V where Plaintiffs have adequately plead and alleged that bovine-based formula is unreasonably dangerous and substantially increases the risk for the development of NEC in preterm infants, and where Plaintiffs are not required under the pleading standard to cite to evidence (such as any medical studies) in their Complaint in support of ultimate issues that will have to be proven at trial?

    *Suggested answer in the affirmative.*

2.  Whether this Honorable Court should deny Defendant's Preliminary Objections as to Plaintiffs' strict liability claims (Counts I and II) where Plaintiffs' claims are properly plead and legally sufficient?

    *Suggested answer in the affirmative.*

3.  Whether this Honorable Court should deny Defendant's Preliminary Objections as to Plaintiffs' negligence claim (Count III) where Plaintiffs' claim is properly plead and legally sufficient.

    *Suggested answer in the affirmative.*

Case ID: 220302588
Control No.: 23063373

4. Whether this Honorable Court should deny Defendant's Preliminary Objections as to Plaintiffs' negligent misrepresentation claims (Counts IV and V) where Plaintiffs' claim is properly plead and legally sufficient?

   *Suggested answer in the affirmative.*

5. Whether this Honorable Court should deny Defendant's Preliminary Objections as to Plaintiffs' Amended Complaint where Plaintiff has adequately pleaded all necessary facts and damages to allow for Defendants to prepare their defense to Plaintiffs' claims?

   *Suggested answer in the affirmative.*

6. Whether this Honorable Court should deny Defendants Preliminary Objections as to the Plaintiff Parents claims for Negligent Infliction of Emotional Distress where those claims are tolled and therefore not barred by the statute of limitations?

   *Suggested answer in the affirmative.*

7. Whether this Honorable Court should deny Defendants Preliminary Objections as to Plaintiffs' Punitive Damages claims in Counts I through V of the Amended Complaint where Plaintiffs have adequately plead conduct which is sufficiently plead and adequate for a subsequent finding by a jury for Punitive Damages?

   *Suggested answer in the affirmative.*

8. Whether this Honorable Court should deny Defendants Preliminary Objections where Plaintiffs' necessary verifications have been filed by way of a praecipe to attach to Plaintiffs' Amended Complaints?

   *Suggested answer in the affirmative.*

## III.   **Plaintiff has Adequately Plead That Defendant's Products Are Unreasonably Dangerous**

Case ID: 220302588
Control No.: 23063373

Defendant asserts that Plaintiff's Amended Complaint fails to plead that Defendant's products are "unreasonably dangerous." Defendant is incorrect in this assertion, and their Preliminary Objections should be overruled.

Defendant's Preliminary Objections on this argument seem to rely heavily on their distrust of the science cited by Plaintiff regarding the dangers of their products. This argument is inappropriate at the Preliminary Objections stage. Rather, a complaint must only give a defendant only fair notice of the plaintiff's claims and a summary of the material facts that support those claims. Pa. R.C.P. 1019(a). In arguing that Plaintiffs' studies cited in their amended complaint are somehow inadequate to show the product is unreasonably dangers, Defendants fail to realize that Pennsylvania law does require Plaintiffs to support any pleadings with evidence to pass preliminary objection. Indeed, the Superior Court has previously held that "[e]vidence from which such facts [alleged in a complaint] may be inferred not only need not but should not be alleged. Allegations will withstand challenge under 1019(a) if (1) they contain averments of all of the facts a plaintiff will eventually have to prove in order to recover, and (2) they are sufficiently specific so as to enable defendant to prepare his defense." *Baker v. Rangos*, 324 A.2d 498, 505-506 (Pa. Super. 1974) (citations and internal quotations omitted)(emphasis added).

Further, in assessing whether particular paragraphs in a complaint satisfy this requirement, they must be read in context with all other allegations in the complaint to determine whether the defendant has been provided adequate notice of the claim against which it must defend. *Yacoub v. Lehigh Valley Med. Associates*, P.C., 805 A.2d 579, 589 (Pa. Super. Ct. 2002). When determining whether certain allegations are sufficiently specific, Pennsylvania Law requires that the allegation be read in the context of the entire Complaint and not in a vacuum. *Hook v. L.B. Smith, Inc*., 69 D&C 2d 420 (1974); *Duchess Underwear Co. V. Sivan Manuf. Co.*, 75 D&C 185 (1950); accord

Case ID: 220302588
Control No.: 23063373

*Cmwlth v. Bell Tel Co.,* 121 Pa. Cmwlth 642, 649, 551 A2d 602 (1988). The Court must determine "whether the complaint is sufficiently clear to enable the Defendant to prepare his defense or [if it] informs the Defendant with accuracy and 3 completeness of the specific basis on which recovery is sought so that he may know without question upon what grounds to make his defense." *McNeil v. Jordan*, 814 A.2d 234, 237-38 (Pa. Super. 2002).

Defendant's assertion that Plaintiffs' Amended Complaint is "devoid of any facts showing" Defendant's products are "unreasonably dangerous" is patently incorrect. Plaintiffs' Amended Complaint includes dozens of paragraphs explaining the dangers of Defendant's product.

In determining whether a product is "unreasonably dangerous," the Court must consider seven factors:

> (1) The usefulness and desirability of the product—its utility to the user and to the public as a whole.
> (2) The safety aspects of a product—the likelihood that it will cause injury, and the probable seriousness of the injury.
> (3) The availability of a substitute product which would meet the same need and not be as unsafe.
> (4) The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.
> (5) The user's ability to avoid danger by the exercise of care in the use of the product.
> (6) The user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions.
> (7) The feasibility on the part of the manufacturer, of spreading the loss of setting the price of the product or carrying liability insurance.

*Riley v. Warren Mfg., Inc.,* 688 A.2d 221, 225 (1997). The Court need not make a finding on all seven factors to determine that a product is unreasonably dangerous. *Id*.

Here, Plaintiff's Second Amended Complaint has adequately pled that the products at issue are unreasonably dangerous. For example, Plaintiff's Second Amended Complaint includes an

Case ID: 220302588
Control No.: 23063373

entire section titled "***Cow's Milk-Based Feeding Products Are Known to Cause NEC.***" Further, Plaintiff pleads that there is an "elevated risk of NEC associated with cow's milk-based products" and that "the science clearly demonstrated to Defendants that these products cause NEC and greatly increase the likelihood that a baby will develop NEC, leading to severe injury and often death." *See* Plaintiffs' Amended Complaint at ¶¶ 17, 20. Further, as relates the user's awareness of the danger, Plaintiff's Complaint details how Defendant, including through their product labels, failed to warn doctor and parents of the increased risk of NEC. Finally, Plaintiff's Complaint details several safer alternative designs that also speak to the manufacturer's ability to eliminate the danger, including donor breast milk, pasteurized breast milk, breast milk fortifiers, and breast milk-based products designed for pre-term infants. *Id*. at ¶¶ 16-20, 86-88.

Defendant cites *Orange Stones Co. v. City of Reading*, a case involving violation of an ordinance by a business in support of its contentions that Plaintiffs have not adequately plead that their products are unreasonably dangerous. There, the party filing preliminary objections claimed that plaintiff's complaint was deficient because it provided no facts to support its contention that the defendant acted "maliciously," "without probable cause," and "with the specific intent. *Orange Stones Co. v. City of Reading,* 87 A.3d 1014, 1025 (Pa. Commw. Ct. 2014). The trial court sustained the preliminary objections, agreeing that the plaintiff had pled <u>no facts</u> to support this contention. *Id*. at 10126. Thus, the Court reasoned, these contentions were "bald assertions." *Id.*

Here, the instant Plaintiffs' allegations are not merely bald assertions. As discussed above, Plaintiffs have pled dozens of paragraphs to support their contention that the products at issue are "unreasonably dangerous" and specifically plead that medical studies show that feeding preterm infants cow's milk-based formula, as opposed to human breast milk (donor or otherwise), substantially increases the risk of them developing NEC and possibly dying or being otherwise

Case ID: 220302588
Control No.: 23063373

seriously injured. Accordingly, because Plaintiffs' Amended Complaint adequately pleads that Defendant's products are unreasonably dangerous, Defendant's Preliminary Objections should be denied.

**IV.   Plaintiffs' Amended Complaints Have Adequately Identified The Products At Issue For Both Their Product Liability and Negligence Claims**

Defendant asserts that Plaintiff's Second Amended Complaint fails to identify the product at issue. Defendant is wrong and their Preliminary Objections should be overruled.

A complaint must give a defendant only fair notice of the plaintiff's claims and a summary of the material facts that support those claims. Pa. R.C.P. 1019(a). In assessing whether particular paragraphs in a complaint satisfy this requirement, they must be read in context with all other allegations in the complaint to determine whether the defendant has been provided adequate notice of the claim against which it must defend. *Yacoub v. Lehigh Valley Med. Associates, P.C.,* 805 A.2d 579, 589 (Pa. Super. Ct. 2002). When determining whether certain allegations are sufficiently specific, Pennsylvania Law requires that the allegation be read in the context of the entire Complaint and not in a vacuum. *Hook v. L.B. Smith, Inc.,* 69 D&C 2d 420 (1974); *Duchess Underwear Co. V. Sivan Manuf. Co.,* 75 D&C 185 (1950); accord *Cmwlth v. Bell Tel Co*., 121 Pa. Cmwlth 642, 649, 551 A2d 602 (1988). The Court must determine "whether the complaint is sufficiently clear to enable the Defendant to prepare his defense or [if it] informs the Defendant with accuracy and completeness of the specific basis on which recovery is sought so that he may know without question upon what grounds to make his defense." *McNeil v. Jordan*, 814 A.2d 234, 237-38 (Pa. Super. 2002).

Plaintiff has clearly and adequately identified the product that caused the injury at issue to the best of their ability at this time. Specifically, Plaintiff pled that the infant was fed the Defendants' specific "Similac and/or Enfamil cow's milk-based products." *See* Plaintiffs'

Case ID: 220302588
Control No.: 23063373

Amended Complaint at ¶ 11. Absent discovery on the supply of each particular brand to each particular hospital, Plaintiff is limited to the detail provided in the medical records and the Plaintiff parents recollection, all of which are included in Plaintiff's Complaint. As advanced previously at oral argument, Plaintiffs must be allowed to conduct full discovery to determine which of the two manufacturers' brand of cow's milk-based formula each Hospital system had a supply agreement with during certain periods of time, as that information, such as the formula brand, is not often elicited in the medical records. In fact, the hospital Defendants themselves are the ones with the best access to the information needed such as purchasing receipts and or purchasing agreements with either Abbott or Mead.

Defendant cites *Cummins v. Firestone Tire & Rubber Co.* in support of their position that Plaintiffs have not adequately identified the product at issue. 495 A.2d 963 (Pa. Super. Ct. 1985). In *Cummins*, preliminary objections were sustained because the **"manufacturer or seller"** could not be determined, *even if the plaintiff were afforded discovery*. *Id.* at 968. Here, the manufacturer or seller is identified in Plaintiff's Complaint, the products at issue are also identified, and discovery will likely reveal even further detail about those products and which brand was fed to the Plaintiff during certain period of time, namely around the birth of each Plaintiff. As such, Defendant's Preliminary Objections should be overruled.

**V.**     **Plaintiff Has Adequately Pled the Facts and Damages at Issue**

Defendant asserts that Plaintiffs' Amended Complaint fails to adequately plead facts regarding liability and injuries claimed. Defendant is wrong and their Preliminary Objections should be overruled. A complaint must give a defendant fair notice of the plaintiff's claims and a summary of the material facts that support those claims. Pa. R.C.P. 1019(a). As the Superior Court has noted:

Case ID: 220302588
Control No.: 23063373

> Rule 1019(a) requires fact pleading. The purpose of 1019(a) is to require the pleader to disclose the material facts **sufficient to enable the adverse party to prepare his case**. A complaint therefore must do more than give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. It should formulate the issues by fully summarizing the material facts. Material facts are ultimate facts, i.e., those facts essential to support the claim. <u>Evidence from which such facts may be inferred not only need not but should not be alleged.</u> **Allegations will withstand challenge under 1019(a) if (1) they contain averments of all of the facts a plaintiff will eventually have to prove in order to recover, and (2) they are sufficiently specific so as to enable defendant to prepare his defense.**

*Baker v. Rangos*, 324 A.2d 498, 505-506 (Pa. Super. 1974) (citations and internal quotations omitted)(emphasis added).

In assessing whether particular paragraphs in a complaint satisfy this requirement, they must be read in context with all other allegations in the complaint to determine whether the defendant has been provided adequate notice of the claim against which it must defend. *Yacoub v. Lehigh Valley Med. Associates*, P.C., 805 A.2d 579, 589 (Pa. Super. Ct. 2002). When determining whether certain allegations are sufficiently specific, Pennsylvania Law requires that the allegation be read in the context of the entire Complaint and not in a vacuum. *Hook v. L.B. Smith, Inc*., 69 D&C 2d 420 (1974); *Duchess Underwear Co. V. Sivan Manuf. Co.,* 75 D&C 185 (1950); accord *Cmwlth v. Bell Tel Co.*, 121 Pa. Cmwlth 642, 649, 551 A2d 602 (1988). The Court must determine "whether the complaint is sufficiently clear to enable the Defendant to prepare his defense or [if it] informs the Defendant with accuracy and 3 completeness of the specific basis on which recovery is sought so that he may know without question upon what grounds to make his defense." *McNeil v. Jordan*, 814 A.2d 234, 237-38 (Pa. Super. 2002).

Defendants advance several arguments regarding the alleged deficiencies of facts and injuries, all of which are incorrect:

- Defendants assert that Plaintiffs' Amended Complaint does not state whether the infant actually ingested the product at issue. In contrast, Plaintiffs have pled that the infant "was fed Similac and/or Enfamil cow's milk-based products" and

11

developed NEC "after ingesting Defendant Manufacturers' products." <u>See</u> Plaintiff's Second Amended Complaint at ¶¶ 11-12.

- Defendants assert that Plaintiffs' Amended Complaint does not indicate which product was ingested. However, Plaintiff has pled that the infant was fed the Defendant's products "Similac and/or Enfamil cow's milk-based products." *Id.* at ¶ 11. Absent discovery, Plaintiff is limited to the detail provided in the medical records, the details of which are included in Plaintiff's Complaint. As advanced previously at oral argument, Plaintiff must be allowed to conduct full discovery to determine which manufacturer and brand each Hospital system had a distribution agreement with during certain periods of time, as that information, such as brand, is not often elicited in the medical records. Further, the Defendants themselves are the ones with the information such as purchasing receipts and or purchasing agreements with either Abbott or Mead.

- Defendants argue that Plaintiffs have not met their burden under fact pleading to show that the product was unreasonably dangerous because allegedly plaintiffs' claims are "unsupported by any specific studies or trials in the Amended Complaint." See Def. Preliminary Objections, at 8. However, as noted above, the Superior Court has ruled that in relation to pleading facts, "evidence from which such facts may be inferred not only need not but should not be alleged," which is entirely contrary to Defendants' arguments herein. See *Baker v. Rangos*, 324 A.2d 498, 505-506 (Pa. Super. 1974)

- Defendants assert that Plaintiff has not pled the period of time during which the product at issue was ingested. However, Plaintiff alleged in the Complaint that the infant "was fed Similac and/or Enfamil cow's milk-based products by [hospital staff] after her birth." *Id.* Plaintiff's birth date is included in the Complaint.

- Defendants assert that Plaintiff failed to plead when the minor was diagnosed with NEC. However, Plaintiff pled that the infant's "diagnosis of NEC occurred during [the infant's] course of treatment at Defendant Hospital's NICU." *Id.* at ¶ 13. Plaintiffs' averments adequately summarize the material facts necessary such that the Defendants are on notice of the claim of which they must defend, and notably the moving Defendants are the exact hospitals where the Plaintiff was initially treated for NEC, thus they have access to the exact same medical as the Plaintiffs which show the exact dates of treatment which are summarily referred to in Plaintiffs' Amended Complaint.

- Defendants assert that Plaintiffs did not plead the treatment the infant received following the ingestion of the NEC and resulting injuries. Defendant cites no authority for the proposition that a plaintiff must describe the specific treatment an injured party underwent following injuries resulting from the tortious conduct of a defendant.

Case ID: 220302588
Control No.: 23063373

- Defendants assert that Plaintiffs have not adequately pled the injuries suffered as a result of the product. Plaintiff has adequately pled the injuries suffered by the infant who ingested Defendant's product, specifically "a diagnosis of NEC, treatment with antibiotics, blood transfusions and surgery, feeding difficulties, developmental delays, neurological issues, gastrointestinal issues, growth issues, short bowel syndrome, heart/lung/liver/kidney issues, mobility and walking difficulties, learning disabilities." Id. at ¶ 13.

Accordingly, Defendant's Preliminary Objections should be overruled as Plaintiffs Allegations should withstand challenge under 1019(a) because they contain averments of all of the facts a plaintiff will eventually have to prove in order to recover, and they are sufficiently specific so as to enable Defendants to prepare their defense.

## VI. **Plaintiffs Have Plead Their Intentional and Negligent Misrepresentation Claims With Adequate Specificity, They Therefore Should Not Be Dismissed**

The requirements of Pennsylvania's rules as to the sufficiency of pleadings with relation to a misrepresentation claim are satisfied if a plaintiff pleads facts sufficient to permit defendants to prepare a defense. *Commonwealth v. National Apartment Leasing Company,* 108 Pa.Commonwealth Ct. 300, 529 A.2d 1157 (1987); *see also McGinn v. Valloti,* 363 Pa.Superior Ct. 88, 525 A.2d 732 (1987); *see also Foster v. Peat Marwick Main & Co.*, 138 Pa. Cmwlth. 147, 156, 587 A.2d 382, 387 (1991), *aff'd sub nom. Foster v. Mut. Fire, Marine & Inland Ins. Co.*, 544 Pa. 387, 676 A.2d 652 (1996). Here, when the complaint is examined in its entirety, it clearly describes a course of conduct alleged to be fraudulent or misrepresentative sufficient to notify Mead for purposes of defending the claim. *National Apartment Leasing.* In fact, Plaintiffs devotes several pages of their Amended Complaint to facts describing the misrepresentation conduct of Defendant Mead wherein they allege, inter alia, that:

> Prior to [Plaintiff's] birth, Mead sent sales representatives to Defendant Hospital. Those sales representatives provided information about Mead's products to Defendant Hospital's staff via conversations, presentations, and written pamphlets. ***This information indicated that Mead's products were safe*** to give to preterm infants like [Plaintiffs]. Mead maintains call logs

13

Case ID: 220302588
Control No.: 23063373

that detail which sales representatives visited the hospitals, which days they visited, and which products they discussed. ***These sales representatives did not disclose that Mead's products could cause NEC in preterm infants***… Mead Johnson and Mead believed and intended that the misrepresentations that its sale representatives shared with Defendant Hospital would be used to make feeding decisions for preterm infants like [Plaintiff]… ***Despite knowing of the risk of NEC, Mead did not warn of the significantly increased risk of NEC*** (and resulting medical conditions, and/or death) associated with its products, or of the magnitude of this increased risk. Mead likewise did not provide instructions or guidance for how to avoid NEC.

*See* Plaintiffs' Amended Complaint, at ¶¶ 60-62, 72 (emphasis added).

Clearly, Plaintiffs have articulated their misrepresentation claims with sufficient particularity to allow for Defendant Mead to have adequate notice of their claim and know the material facts such that they can formulate a defense. As seen above, Plaintiffs' Amended Complaint states 1) the misrepresentations of safety that were relayed by Mead, 2) that those misrepresentations were made by Mead to the Plaintiffs' healthcare providers, and thereafter to the Plaintiff Parents, 3) who then relied upon the misrepresentation of safety to decide what formula to feed their children, and finally 4) that Mead was aware of the potential for their formula to case NEC prior to the misrepresentations being made. Defendants' arguments that Plaintiffs have failed to articulate what misrepresentations were made such that they can adequately form a defense are spurious, and their preliminary objections should be summarily denied.

**VII.** **Plaintiffs' Complaint Sufficiently Alleges that Defendant Consciously Disregarded the Risks Posed by the Products that they Manufactured, Distributed, and Sold Absent Adequate Warnings, Supporting Punitive Damages**

Punitive damages may be awarded for "'conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.' " *Hutchison v. Luddy*, 582 Pa. 114, 121 (2005) (quoting *Feld v. Merriam*, 506 Pa. 383, 395 (1984)). Punitive damages must be based on conduct that is "wanton," "willful," or "reckless." 582 Pa. at 121. As such, in Pennsylvania, to survive preliminary objections, a plaintiff must allege that (1) a defendant had a

14

subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk. *Id*. For instance, in *Engle v. BT* Indus. AB, 41 Pa. D. & C.4th 25, 26, 33-34 (Pa.C.P. 1999), plaintiffs brought a products liability suit based on the manufacturers' negligence, strict liability claims, and breach of warranty. The defendant's motion to strike the plaintiff's punitive damages claim was denied. In denying the defendant's motion, the Court stated that the "plaintiff has alleged that the defendants introduced a defective product into the stream of commerce with the knowledge of defects and the possible harm that they would cause. Such conduct, if proven, may well be interpreted as exhibiting the type of reckless indifference that may trigger punitive damages." *Id*. Hence, when a manufacturer has a subjective appreciation of the risk of harm posed by a product, and then introduces said product into the stream of commerce regardless, this conduct may rise to the level of conscious disregard required to warrant punitive damages. Further, to the extent that there is any doubt about whether the standard for punitive damages is met, that doubt must be resolved in the Plaintiff's favor at this stage. See *Theodore v. Del. Valley Sch. Dist*., 575 Pa. 321, 333 (2003).

Plaintiffs have alleged that Abbott and Mead knowingly distributed a product that they knew posed an extreme danger to infants for profit. Abbott and Mead knew that the bovine-based products they supplied posed an increased risk of NEC, an extremely serious disease which can cause death, to premature infants, as compared to other economically and technologically feasible alternatives, such as human nutrition-based alternatives. Instead, Abbott and Mead chose to continue to produce bovine-based products, marketing them specifically towards pre-term infants, and not formulate alternatives that they knew would reduce the risk of NEC to premature infants. Hence, Abbott and Mead knowingly produced products that they knew could cause harm to infants

Case ID: 220302588
Control No.: 23063373

and chose to place them into the stream of commerce, in some cases marketing those products for use with pre-term infants, in conscious disregard of the risk posed to infants.

Abbott and Mead also knew that the ordinary consumer would not expect these products to pose an increased risk of NEC and despite this, failed to warn consumers about the increased risk of NEC posed by their bovine-based products. Plaintiff alleges that Abbott and Mead failed to provide warnings to consumers that adequately and thoroughly described the increased risk of NEC posed by their products, as demonstrated by significant scientific evidence, in a way that was reasonably calculated to communicate these risks to parents of infants. Similarly, this failure to disclose substantial risks and communicate them in a way that would adequately inform parents was knowing and intentional conduct on the part of Abbott and Mead that evinces a conscious disregard of the risk posed by their products. Therefore, these allegations rise to the level of conscious disregard required to justify the issue of punitive damages proceeding at this stage.

### VIII. Plaintiff-Parents' Claims Against Defendants Are Not Time-Barred And Should Not Be Dismissed

Defendants' Preliminary Objections should be denied because Plaintiff's negligent infliction of emotional distress ("NIED") claim, brought under the bystander theory of liability, conforms with Pennsylvania legal precedent. Plaintiff-Parents contemporaneously observed a traumatic event injuring their child which satisfies the requisite element of an NIED claim.

Under Pennsylvania law, a plaintiff may pursue a claim for NIED in four different situations: "(1) where the defendant had a contractual or fiduciary duty toward the plaintiff; (2) where the plaintiff was subjected to a physical impact; (3) where the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) where the plaintiff observed a tortious injury to a close relative." *Toney v. Chester County Hosp.*, 961 A.2d 192, 197–98 (Pa. Super. 2008), *aff'd,* 36 A.3d 83 (Pa. 2011). The fourth scenario—the "bystander"

Case ID: 220302588
Control No.: 23063373

theory of liability—arises where the plaintiff's distress is a foreseeable result of witnessing a loved one's injury. *See Sinn v. Burd*, 404 A.2d 672, 686 (Pa. 1979).

Based on the precedent set forth in *Sinn v. Burd*, Pennsylvania courts permit a plaintiff to recover for NIED as a "bystander" if the plaintiff's injury was reasonably foreseeable in light of three factors: "(1) whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it, (2) whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence, and (3) whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship." *Sinn*, 404 A.2d at 685 (quoting *Dillon v. Legg*, 441 P.2d 912, 920 (Cal. 1968)). To prevail, the plaintiff must show some form of "discrete and identifiable traumatic event" which caused the plaintiff's distress. *Turner v. Med. Ctr., Beaver, PA, Inc.*, 686 A.2d 830, 832–33 (Pa. Super. 1996) (quoting *Love v. Cramer*, 606 A.2d 1175, 1177 (Pa. Super. 1992)). While interpreting *Sinn*, the Pennsylvania Superior Court has held the definition of "sensory and contemporaneous observance" depends on "whether the emotional shock was immediate and direct rather than distant and indirect, and not upon the sense employed in seeing the accident." *Krysmalski by Krysmalski v. Tarasovich*, 622 A.2d 298, 303 (Pa. Super. 1993). The plaintiff alleging NIED must also assert a physical manifestation of the emotional harm. *See Banyas v. Lower Bucks County Hospital*, 437 A.2d 1236, 1239–40 (Pa. Super. 1981).

Here, Plaintiff has satisfied all prongs of the "bystander" theory of NIED. First, they were physically present to witness the severely deteriorated and near-death state of their child resulting from Defendants' negligence. Second, Plaintiffs' shock was a direct emotional impact from their contemporaneous observance of their child in the hospital. Finally, Plaintiffs and their child are

Case ID: 220302588
Control No.: 23063373

obviously closely related. Plaintiffs' emotional distress from this negligence was completely foreseeable and has resulted in physical manifestations including depression and other harms.

In their Preliminary Objections, Defendants argue that Plaintiff did not assert a specific cause of action. However, Defendants fail to recognize it is well-settled Pennsylvania law that a complaint that contains facts that support a specific cause of action does, in fact, assert said action. *Bartanus v. Lis*, 480 A.2d 1178, 1182 (Pa. Super. 1984) (ruling that "[e]ven though appellant did not separate his factual allegations into separate counts specifying the legal theories underlying the complaint, the trial court was obligated to consider what causes of action were supported by the facts alleged" because "the complainant need only state the material facts upon which a cause of action is based").

Pennsylvania is a fact pleading state whereby the Complaint must provide defendants with notice of the basis of the claim and a summary of the facts essential to support that claim. *Alpha Tau Omega Fraternity*, 464 A.2d at 1352. Under the Pennsylvania Rules of Civil Procedure, a complainant must list the material facts underlying his claim "in a concise and summary form." Pa.R.C.P. 1019(a); *see Thompson Coal Co. v. Pike Cole Co.*, 412 A.2d 466, 468 (Pa. 1979).

When read in the context of the Complaint as a whole, as required by law, Plaintiff clearly asserts an NIED claim. Notably, Plaintiff includes extensive factual allegations in paragraphs eleven (11) through eighty-two (82), the entirety of which must be considered when interpreting every other paragraph of the Complaint. *See* Plaintiff's Complaint at 11–82. Within those extensive factual allegations, the "bystander" theory of liability is clearly asserted as the plaintiff-parents' distress is a foreseeable result of witnessing the injury of their child resulting from Defendants' negligence. *See Sinn v. Burd*, 404 A.2d 672, 686 (Pa. 1979).

Case ID: 220302588
Control No.: 23063373

In sum, Plaintiff's NIED claim under a "bystander" theory of liability is sufficiently pled. Plaintiffs were physically present to witness the severely deteriorated and near-death state of their child resulting from Defendants' negligence. There was a direct emotional impact from this contemporaneous observance of their child in the hospital.

Further, Plaintiff-parents' claims are not time-barred because Defendant Mead prevented Plaintiff-parents from learning the true cause of their infant's injury. The discovery rule is an exception [to the statute of limitations] that tolls the statute of limitations when an injury or its cause is not reasonably knowable." In re Risperdal Litig., 656 Pa. 649, 661 (2019). "Under the "discovery rule," the statute of limitations begins to run when a plaintiff knows, or reasonably should have known, that: (1) an injury has been sustained; and (2) the injury has been caused by another party's conduct." *Ward v. Rice*, 828 A.2d 1118, 1121 (Pa. Super. 2003) (citing *Citsay v. Reich*, 380 Pa. Super. 366, 369 (1988)). For the discovery rule to apply, the plaintiff must have exercised the due diligence that would be expected of a reasonable person in the plaintiff's position. 828 A.2d at 1121. A plaintiff must begin exercising reasonable diligence once they know the "the salient facts concerning the occurrence of his injury and who or what caused it." *Romah v. Hygienic Sanitation Co.,* 705 A.2d 841, 857 (Pa. Super. 1997) (emphasis added). While reasonable diligence is an objective standard, "it is also flexible […] to take into account differences between persons, their capacity to meet certain situations and circumstances confronting them at the time in question. In short, the standard of conduct required is a uniform one which takes "into account the fallibility of human beings."" 828 A.2d at 1121-22 (quoting RST 2d § 283 cmt's b-c). Whether someone has exercised reasonable diligence "may be best determined by the collective judgment, wisdom, and experience of jurors who have been selected

Case ID: 220302588
Control No.: 23063373

at random from the community whose standard is to be applied." *Petri v. Smith*, 307 Pa. Super. 261, 271-72 (1982).

Under the discovery rule, if a plaintiff's delay is because the assurances of their physicians lull the patient into a false sense of security, this may toll the statute of limitations. *See Acker v. Palena*, 260 Pa. Super. 214, 222 (1978); *Barshady v. Schlosser*, 226 Pa. Super. 260, 263-64 (1973). The Pennsylvania Supreme Court has "expressly declined to hold, as a matter of law, that a layperson may be charged with knowledge greater than that which was communicated to her by the medical professionals who provided treatment and diagnosis." In re Risperdal Litig., 656 Pa. at 662 (citing *Wilson v. El-Daief*, 600 Pa. 161, 179-180 (2009)). If a plaintiff alleges that their delay was due to their reasonably relying upon the reassurances of their physicians, then, while construing the pleadings in the light most favorable to the moving party, a plaintiff's claims will not be time-barred. *Acker v. Palena*, 260 Pa. Super. 214, 223-24 (1978).

Likewise, the under the similar but distinct doctrine of fraudulent concealment, a form of equitable estoppel, the statute of limitations will be tolled if a plaintiff's delay is induced by reliance on the fraudulent concealment of the defendant. *Nesbitt v. Erie Coach Co.*, 416 Pa. 89, 95-96 (1964). If, "through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry, the defendant is estopped from invoking the bar of the statute of limitations." *Romah*, 705 A.2d at 857 (internal quotations omitted). A defendant does not need to intentionally deceive a plaintiff for the doctrine of fraudulent concealment to apply; instead, fraudulent concealment encompasses "fraud in the broadest sense which includes an unintentional deception." *Nesbitt, supra*, 416 Pa. at 96 (citation omitted). It is for the factfinder to determine whether a defendant made representations that could have induced this reliance on the part of the plaintiff. Id. For example, in Romah, the Superior Court held that the issue of whether

Case ID: 220302588
Control No.: 23063373

the plaintiff's claims for gross negligence and punitive damages were tolled because the defendant concealed studies and other information from the EPA and the public that showed that the defendant's product caused increased risk of blood cell depression in men was a factual issue for the jury. *Romah, supra*, 705 A.2d at 861.

Plaintiffs have alleged that manufacturers Abbott and Mead took numerous steps to prevent Plaintiff-parents from learning the cause of their infant's injuries. Defendants disseminated materials to the public that intentionally misled parents about the risk of NEC posed by their products, which affirmatively stated, and still state, that their products do not cause the disease, or worse still, may reduce the risk of NEC. For instance, Mead published numerous misleading statements on its publicly available website that misrepresented the link between its bovine-based formula and the risk of NEC in premature infants. In addition, Defendant manufacturers trained and directed its sales personnel to mislead medical providers about the risk of NEC posed by its products. Further, Defendant manufacturers did not provide warnings on their packaging or products, thereby also concealing the known risk of NEC from parents. Thus, under both the discovery rule and doctrine of fraudulent concealment, Plaintiff-parents' claims are not time-barred.

## IX. **Plaintiffs Have Filed the Proper Verifications For Their Amended Complaints**

Pennsylvania Rule of Civil Procedure 1024 requires that pleadings containing averments of fact not appearing of record in the action shall state that the averment is true upon the signer's personal knowledge or information and belief and shall be verified. *See* Pa.R.C.P. 1024. Plaintiff has obtained and produced proper verification as required by the Rules. Accordingly, Defendants' objection should be overruled. All such verifications have been and/or will immediately be attached by way of a praecipe to attach filed to Plaintiffs' Amended Complaint.

Case ID: 220302588
Control No.: 23063373

## X.  **Request In The Alternative To Amend The Complaint**

Although Plaintiff strenuously maintains the sufficiency of all of the Counts contained within the Complaint, should this Court be inclined to grant any of Defendants' specific Preliminary Objections, Plaintiff respectfully requests permission to amend the pleadings.

**WHEREFORE**, for the reasons more fully set forth in Plaintiff's accompanying Memorandum of Law, Plaintiff respectfully requests that this Honorable Court deny Defendants' Preliminary Objections, or, in the alternative, Order that Plaintiff is permitted leave to amend their Complaint.

Respectfully submitted,

**KLINE & SPECTER**,
A Professional Corporation

Date: October 19, 2023    By:    */s/Timothy A. Burke, Esquire*

THOMAS KLINE, ESQUIRE
TOBI MILLROOD, ESQUIRE
ELIZABETH CRAWFORD, ESQUIRE
TIMOTHY BURKE, ESQUIRE
*Attorneys for Plaintiffs*

**KELLER POSTMAN**
BEN WHITING, ESQUIRE (*Pro Hac Vice*)
MARK WEINSTEIN, ESQURIE
*Attorneys for Plaintiffs*

22

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2023, I caused a true and correct copy of the foregoing document to be served by electronic filing to all counsel of record.

Respectfully submitted,

**KLINE & SPECTER**,
A Professional Corporation

Date: October 19, 2023          By:     */s/Timothy A. Burke, Esquire*

TIMOTHY A. BURKE, ESQUIRE

23

Case ID: 220302588
Control No.: 23063373

# EXHIBIT A-56

PHILADELPHIA COURT OF COMMON PLEAS
**PETITION/MOTION COVER SHEET**

| CONTROL NUMBER: |
| --- |
| 23104224 |
| **(RESPONDING PARTIES MUST INCLUDE THIS NUMBER ON ALL FILINGS)** |

**FOR COURT USE ONLY**

| ASSIGNED TO JUDGE: | ANSWER/RESPONSE DATE: |
| --- | --- |
| | 11/13/2023 |

*Do not send Judge courtesy copy of Petition/Motion/Answer/Response.*
*Status may be obtained online at http://courts.phila.gov*

March Term, 2022
*Month*                              *Year*
No. _____ 02588

Name of Filing Party:
MEAD JOHNSON & COMPANY LLC-DFT
MEAD JOHNSON NUTRITION COMPANY-DFT

CARTER ETAL VS MEAD JOHNSON & COMPANY,
LLC, ETAL

**INDICATE NATURE OF DOCUMENT FILED:**

☐ Petition *(Attach Rule to Show Cause)*     ☒ Motion
☐ Answer to Petition        ☐ Response to Motion

Has another petition/motion been decided in this case?  ☒ Yes  ☐ No
Is another petition/motion pending?  ☐ Yes  ☒ No
*If the answer to either question is yes, you must identify the judge(s):*
HON. LINDA CARPENTER

| TYPE OF PETITION/MOTION (see list on reverse side) | PETITION/MOTION CODE (see list on reverse side) |
| --- | --- |
| MOT-FOR ADMISSION PRO HAC VICE | MTPHV |

ANSWER / RESPONSE FILED TO (Please insert the title of the corresponding petition/motion to which you are responding):

**I. CASE PROGRAM**

DAY FORWARD/MAJOR JURY PROGRAM

Name of Judicial Team Leader: JUDGE LINDA
CARPENTER
Applicable Petition/Motion Deadline: N/A
Has deadline been previously extended by the Court: N/A

**II. PARTIES** *(required for proof of service)*
(Name, address and **telephone number** of all counsel of record and unrepresented parties. Attach a stamped addressed envelope for each attorney of record and unrepresented party.)

JAMES A YOUNG
    BURNS WHITE LLC 1880 JOHN F. KENNEDY
    BOULEVARD 10TH FLOOR , PHILADELPHIA
    PA 19103
RICHARD S MARGULIES
    BURNS WHITE LLC 1880 JFK BLVD., 10TH
    FLR , PHILADELPHIA PA 19103
RONNI E FUCHS
    301 CARNEGIE CENTER SUITE 400 ,
    PRINCETON NJ 08540
KENNETH A MURPHY
    TUCKER LAW GROUP, LLC 1801 MARKET
    STREET SUITE 2500 , PHILADELPHIA PA
    19103-6996
MEAGHANN C PORTH
    CAMPBELL CONROY & ONEIL PC 1205
    WESTLAKES DR #330 , BERWYN PA 19312

**III. OTHER**

By filing this document and signing below, the moving party certifies that this motion, petition, answer or response along with all documents filed, will be served upon all counsel and unrepresented parties as required by rules of Court (see PA. R.C.P. 206.6, Note to 208.2(a), and 440). Furthermore, moving party verifies that the answers made herein are true and correct and understands that sanctions may be imposed for inaccurate or incomplete answers.

_____        October 20, 2023        KENNETH A. MURPHY        _____
*(Attorney Signature/Unrepresented Party)*        *(Date)*        *(Print Name)*        *(Attorney I.D. No.)*

**The Petition, Motion and Answer or Response, if any, will be forwarded to the Court after the Answer/Response Date.**
**No extension of the Answer/Response Date will be granted even if the parties so stipulate.**

30-1061B E-Filing# 2310045485
23-OCT-23 09:23:41

RICHARD D WALK
  306 WALNUT ST , PHILADELPHIA PA 19106
BENJAMIN WHITING
  KELLER POSTMAN 150 N. RIVERSIDE PLAZA
  SUITE 1400 , CHICAGO IL 60606
MARQUES HILLMAN RICHESON
  JONES DAY 901 LAKESIDE AVENUE NORTH
  POINT , CLEVELAND OH 44114

**FILED**
20 OCT 2023 04:38 pm
Civil Administration
C. ARTWELL

| | |
|---|---|
| **HOLLI CARTER, on her own behalf and as Parent and Natural Guardian of J.C., a Minor** | : **COURT OF COMMON PLEAS**<br>: **PHILADELPHIA COUNTY**<br>:<br>: **MARCH TERM, 2022**<br>: **No. 2588** |
| Plaintiffs, | : |
| v. | :<br>: |
| **MEAD JOHNSON & COMPANY, LLC, et al.,** | :<br>:<br>: |
| Defendants. | :<br>: |

## <u>ORDER</u>

**AND NOW**, this _____ day of _____, 2023, upon consideration of the Motion for Admission Pro Hac Vice of Evan Glassman, Esquire, to Represent Defendants, Mead Johnson & Company, LLC and Mead Johnson Nutrition Company, it is hereby **ORDERED** that the Motion is **GRANTED**. This Court hereby admits Evan Glassman, Esquire, pro hac vice in this case on behalf of Defendants, Mead Johnson & Company, LLC and Mead Johnson Nutrition Company.

**BY THE COURT**:

_____

J.

**TUCKER LAW GROUP, LLC**
Kenneth A. Murphy, Esquire
Heather R. Olson, Esquire
Ten Penn Center
1801 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 875-0609
kmurphy@tlgattorneys.com
holson@tlgattorneys.com

**ATTORNEYS FOR DEFENDANTS MEAD JOHNSON & COMPANY, LLC AND MEAD JOHNSON NUTRITION COMPANY**

| | | |
|---|---|---|
| **HOLLI CARTER, on her own behalf and as Parent and Natural Guardian of J.C., a Minor** | : | **COURT OF COMMON PLEAS PHILADELPHIA COUNTY** |
| | : | |
| | : | **MARCH TERM, 2022** |
| Plaintiffs, | : | **No. 2588** |
| v. | : | |
| | : | |
| **MEAD JOHNSON & COMPANY, LLC, et al.,** | : | |
| | : | |
| Defendants. | : | |

### MOTION FOR ADMISSION *PRO HAC VICE* OF EVAN GLASSMAN, ESQUIRE, TO REPRESENT MEAD JOHNSON DEFENDANTS

Defendants, Mead Johnson & Company, LLC and Mead Johnson Nutrition Company (collectively, the "Mead Johnson Defendants"), by and through their counsel, Tucker Law Group, LLC, hereby move this Court for an order pursuant to Pa. R. C. P. 1012.1(b) and (e), Rule 301 of the Pennsylvania Bar Admission Rules, and the Pennsylvania Interest on Lawyer Trust Account Regulations for pro hac vice Admission (204 Pa. Code § 81.501 et seq.) admitting Evan Glassman, Esquire, to the bar of this Court, p*ro hac vice*, for the purpose of representing the Mead Johnson Defendants, and aver the following in support thereof:

1.  Mr. Glassman is a member of the law firm of Steptoe & Johnson, LLP ("Steptoe") and resident in its New York office, located at 1114 Avenue of the Americas, New York, NY 10036. Mr. Glassman has an attorney-client relationship with Mead

Johnson & Company, LLC and Mead Johnson Nutrition Company, and has special skills, knowledge and experience relating to this case. The efficient administration, prosecution and resolution of this case will be materially advanced by the admission *pro hac vice* of Mr. Glassman. A Verification Statement from Mr. Glassman, is attached hereto as Exhibit A.

2. Mr. Glassman is a member in good standing in the state of New York and has been admitted to practice since 1994. See Exhibit A.

3. Mr. Glassman's law firm serves as national counsel for the Mead Johnson Defendants. He is familiar with the complex, technical issues presented in this matter, and his participation in this case will help clarify the issues before the Court. See Exhibit A.

4. The Mead Johnson Defendants have specifically requested that Mr. Glassman be permitted to participate in this matter and represent its interests in this matter. See Exhibit A.

5. Mr. Glassman is not presently suspended or disbarred in any Court, nor is he currently subject to any disciplinary proceedings by any organization to discipline attorneys at law. Further, Mr. Glassman has never received any public discipline, including, but not limited to, suspension or disbarment by any organization with the authority to discipline attorneys at law. Exhibit A.

6. Mr. Glassman is familiar with Pennsylvania Bar Admission Rule 301 and has agreed to abide by the Rules of Professional Conduct applicable to Pennsylvania lawyers. Mr. Glassman will abide by the Rules of Court, including all disciplinary rules and, if this motion is granted, he will serve as associate counsel with Kenneth

Case ID: 220302588
Control No.: 23104224

Murphy, Esquire, counsel of record for the Mead Johnson Defendants in this matter.

7.    Mr. Glassman has applied to the Pennsylvania Interest on Lawyers' Trust Account Board (Pennsylvania IOLTA Board) and paid the appropriate fee required under 204 Pa. Code § 81.503. to be admitted pro hac vice.  Our office received a copy of the fee payment certification letter from the IOLTA Board, a copy of which is attached as Exhibit B.

8.    Mr. Glassman will be associated with Kenneth Murphy, Esquire of Tucker Law Group, LLC at all stages of this action.  Mr. Murphy, after reasonable investigation, believes that Mr. Glassman is a reputable and competent attorney and recommends that he be considered for admission *pro hac vice*. A true Verification Statement from Mr. Murphy pursuant to Pa. R. C. P. 1012.1(d)(2) is attached hereto as Exhibit C.

9.    Kenneth Murphy, Esquire, of Tucker Law Group, LLC is a member in good standing of the Bar of the Commonwealth of Pennsylvania. Tucker Law Group and Mr. Murphy will be counsel of record for the Mead Johnson Defendants and will continue to participate fully in this litigation and will sign, serve, and accept service of all papers on the Mead Johnson Defendants' behalf.

10.   All the requirements to satisfy the applicable rules of Court are met.

11.   There is no good cause for denial of this motion.

Case ID: 220302588
Control No.: 23104224

**WHEREFORE**, it is respectfully requested that this Court enter the attached Order granting Evan Glassman, Esquire leave to appear as counsel *pro hac vice* for Defendants, Mead Johnson & Company, LLC and Mead Johnson Nutrition Company.

Respectfully submitted,

**TUCKER LAW GROUP, LLC**

Date: October 20, 2023

  /s/ Kenneth Murphy
Kenneth A. Murphy, Esquire
Heather R. Olson, Esquire
Ten Penn Center
1801 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 875-0609
(215) 559-6209 – fax
kmurphy@tlgattorneys.com
holson@tlgattorneys.com

5

Case ID: 220302588
Control No.: 23104224

**<u>CERTIFICATE OF SERVICE</u>**

I, Kenneth A. Murphy, Esquire certify that on this date, I caused a copy of the foregoing Motion for *Pro Hac Vice* of Evan Glassman to be electronically filed through the Court's ECF System and that such filing generates a notice of that constitutes service on all counsel of record.

**TUCKER LAW GROUP, LLC**

Date: October 20, 2023

/s/ Kenneth Murphy
Kenneth A. Murphy, Esquire

Case ID: 220302588
Control No.: 23104224

# EXHIBIT A

Case ID: 220302588
Control No.: 23104224

## <u>VERIFICATION OF EVAN GLASSMAN, ESQUIRE</u>

I, Evan Glassman, Esquire, hereby submit this Verification Statement in support of the attached Motion for Admission *pro hac vice* to represent Defendants, Mead Johnson & Company, LLC and Mead Johnson Nutrition Company (collectively, the "Mead Johnson Defendants"), in this action in the Court of Common Pleas of Philadelphia County, Pennsylvania. In support of this Motion made pursuant to pursuant to Pa. R. C. P. 1012.1(b) and (e), Rule 301 of the Pennsylvania Bar Admission Rules, and the Pennsylvania Interest on Lawyer Trust Account Regulations for pro hac vice Admission (204 Pa. Code § 81.501 et seq.), I swear and affirm that the following is true and correct based upon my personal knowledge:

1. I am a member of the law firm Steptoe & Johnson, LLP and resident in its New York office, located at 1114 Avenue of the Americas, New York, NY 10036. Telephone: (212) 506-3909; email address: eglassman@steptoe.com.

2. I have been licensed to practice law in the following jurisdictions with the corresponding bar license number: State of New York (#2616142). Additionally, I have been admitted to practice in the following courts: U.S. District Court Eastern District of New York, U.S. District Court Southern District of New York, U.S. District Court Northern District of New York, U.S. District Court Northern District of Illinois, U.S. Court of Appeals First Circuit, and U.S. Court of Appeals Second Circuit.

3. I am a member in good standing of all Bar(s) to which I am admitted.

4. With respect to each jurisdiction identified in Paragraph 2 above, I have never been suspended, disbarred, or otherwise disciplined by any court, nor am I the subject of any disciplinary proceedings.

5. I am involved in the following pending actions in the Philadelphia County Court of Common Pleas in which I am applying for admission *pro hac vice:*

| Case Name | Case Number |
|---|---|
| Mays, et al. v. Mead Johnson & Company, LLC, et al. | 220302963 |
| Wieger, et al. v. Mead Johnson & Company, LLC, et al. | 220302601 |

6. If admitted, I agree to comply with and be bound by the applicable statues, case law, and procedural rules of the Commonwealth of Pennsylvania, including the Pennsylvania Rules of Professional Conduct.

7. I do not have any pending *pro hac vice* admissions that I have applied for in any other court jurisdictions.

8. If admitted, I agree to subject myself to the jurisdiction of the Pennsylvania courts and the Pennsylvania Disciplinary Board with respect to acts or omissions occurring during my appearance in this matter for which admission *pro hac vice* is sought.

9. I respectfully submit that there is a good cause for my admission *pro hac vice* based upon my personal knowledge.

10. Further, I have consented to the appointment of Kenneth A. Murphy, Esquire, of Tucker Law Group, LLC, as the agent upon whom services of process shall

be made for all actions, including disciplinary actions, that may arise out of the practice of law in this matter for which admission *pro hac vice* is being sought.

I declare under the penalty of perjury the foregoing is true and correct. I hereby state that the facts above are true and correct to the best of my knowledge, information, and belief. I understand that statements herein are made subject to the penalties of 18 Pa. CS § 4904 (relating to unsworn falsification to authorities).

Date: October 20, 2023

Evan Glassman, Esquire

# EXHIBIT B

Case ID: 220302588
Control No.: 23104224



SUPREME COURT OF PENNSYLVANIA
# PENNSYLVANIA INTEREST ON
# LAWYERS TRUST ACCOUNT BOARD

October 19, 2023

EVAN  GLASSMAN, Esq.
STEPTOE & JOHNSON LLP
1114 AVENUE OF THE AMERICAS
NEW YORK, NY 10036

SENT TO EVAN GLASSMAN VIA Email: EGLASSMAN@STEPTOE.COM

Dear Attorney GLASSMAN:

This letter serves as the fee payment certification referenced in 204 Pa Code §81.503 and acknowledges receipt of the $375.00 fee paid by Online Payment on this date related to your pursuit for admission *pro hac vice* in the case identified as HOLLI CARTER, on her own behalf and as Parent and Natural Guardian of J.C., a minor v. MEAD JOHNSON & COMPANY, LLC, MEAD JOHNSON NUTRITION COMPANY, ABBOTT LABORATORIES, no. 220302588, filed in Court of Common Pleas of Philadelphia County.

You should refer to Pa Rule of Civil Procedure 1012.1, local court rules, and other regulations of 204 Pa Code §81.501 et. seq. concerning additional requirements related to seeking *pro hac vice* admission.

Sincerely,

Stephanie S. Libhart
Executive Director

cc:  KENNETH ALONZO MURPHY, Esq.

    kmurphy@tlgattorneys.com

Pennsylvania Judicial Center
601 Commonwealth Ave., Ste. 2400
PO Box 62445, Harrisburg, PA 17106-2445
717/238-2001 · 888/PA-IOLTA (724-6582) · 717/238-2003 FAX
paiolta@pacourts.us · www.paiolta.org

Administering Pennsylvania's Interest On Lawyers Trust Account (IOLTA) Program

Case ID: 220302588
Control No.: 23104224

# EXHIBIT C

Case ID: 220302588
Control No.: 23104224

**TUCKER LAW GROUP, LLC**
Kenneth A. Murphy, Esquire
Heather R. Olson, Esquire
Ten Penn Center
1801 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 875-0609
kmurphy@tlgattorneys.com
holson@tlgattorneys.com

**ATTORNEYS FOR DEFENDANTS MEAD JOHNSON & COMPANY, LLC AND MEAD JOHNSON NUTRITION COMPANY**

| | | |
|---|---|---|
| **HOLLI CARTER, on her own behalf and as Parent and Natural Guardian of J.C., a Minor** | : | **COURT OF COMMON PLEAS** |
| | : | **PHILADELPHIA COUNTY** |
| | : | |
| | : | **MARCH TERM, 2022** |
| Plaintiffs, | : | **No. 2588** |
| v. | : | |
| | : | |
| **MEAD JOHNSON & COMPANY, LLC, et al.,** | : | |
| | : | |
| Defendants. | : | |

<u>**VERIFICATION OF KENNETH A. MURPHY, ESQUIRE**</u>

COMMONWEALTH OF PENNSYLVANIA )
              ) ss:
COUNTY OF PHILADELPHIA    )

   I, Kenneth A. Murphy, hereby submit this Verification Statement in support of the attached Motion to Admit Evan Glassman, Esquire *pro hac vice* to represent Defendants, Mead Johnson & Company, LLC and Mead Johnson Nutrition Company (collectively, the Mead Johnson Defendants), in this matter.

  1.  I am a Partner at Tucker Law Group, LLC, Ten Penn Center, 1801 Market Street, Suite 2500, Philadelphia, PA 19103.

  2.  I have been licensed to practice law in the following jurisdictions with the corresponding bar license number: The Commonwealth of Pennsylvania (#58162), the State of New Jersey (#047641992). Additionally, I have been

Case ID: 220302588
Control No.: 23104224

admitted to practice in the following courts: U.S. District Court, Eastern District of Pennsylvania, U.S. Court of Appeals, D.C. Circuit, U.S. Court of Appeals, Third Circuit.

3.    I am a member in good standing of the Bar of the Commonwealth of Pennsylvania and the other courts to which I am admitted.

4.    I am licensed to practice law in all the jurisdictions that I have been admitted and am counsel of record representing the Mead Johnson Defendants in this matter.

5.    I hereby certify and affirm that after reasonable investigation and on personal knowledge, I believe that Evan Glassman, is a reputable and competent attorney, and I am in a position to recommend that this candidate be admitted *pro hac vice* for practice in the Commonwealth of Pennsylvania to represent the Mead Johnson Defendants in this matter.

6.    I am not currently acting as the sponsor of any other candidate for admission pro hac vice in Pennsylvania.

7.    If applicable, at the conclusion of this matter, I affirm that any proceeds from the settlement of this cause of action in which Mr. Glassman is granted admission *pro hac vice* shall be received, held, distributed, and accounted for in accordance with Rule 301 of the Pennsylvania Rules of Professional Conduct, including the IOLTA provisions thereof, if applicable.

I declare under the penalty of perjury the foregoing is true and correct. I hereby state that the facts above are true and correct to the best of my knowledge, information, and belief. I understand that statements herein are made subject to the penalties of 18 Pa. CS §4904 (relating to unsworn falsification to authorities).

**TUCKER LAW GROUP, LLC**

By:    /s/ Kenneth Murphy
           Kenneth A. Murphy, Esquire

Date: October 20, 2023

# EXHIBIT A-57

FILED
02 NOV 2023 09:36 am
Civil Administration
A. CLARKE

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**TRIAL DIVISION – CIVIL**

| | |
|---|---|
| HOLLI CARTER, et al., <br> *Plaintiff,* <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> *Defendants.* | : <br> : MARCH TERM, 2022 <br> : No. 220302588 <br> : <br> : |
| BRANDY GOODMOND, et al., <br> *Plaintiff,* <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> *Defendants.* | : <br> : APRIL TERM, 2022 <br> : No. 220400208 <br> : <br> : |
| BRANDY GOODMOND, et al., <br> *Plaintiff,* <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> *Defendants.* | : <br> : APRIL TERM, 2022 <br> : No. 220400212 <br> : <br> : |
| JANEE HENDERSON, et al., <br> *Plaintiff,* <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> *Defendants.* | : <br> : APRIL TERM, 2022 <br> : No. 220400127 <br> : <br> : |
| KRISTEN KAJUFFA, et al., <br> *Plaintiff,* <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> *Defendants.* | : <br> : MARCH TERM, 2022 <br> : No. 220302978 <br> : <br> : |
| NAFEESAH MAYS, et al., <br> *Plaintiff,* <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> *Defendants.* | : <br> : MARCH TERM, 2022 <br> : No. 220302963 <br> : <br> : |
| CATHERINE McMILLIAN, et al., <br> *Plaintiff,* <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> *Defendants.* | : <br> : APRIL TERM, 2022 <br> : No. 220400140 <br> : <br> : |

Case ID: 220302588
Control No.: 23096752

| | |
|---|---|
| DAMEKA MOMENT, et al.,<br>　　　　*Plaintiff,*<br>　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　*Defendants.* | :<br>:<br>: APRIL TERM, 2022<br>: No. 220400142<br>:<br>: |
| NYDIA PARKER, et al.,<br>　　　　*Plaintiff,*<br>　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　*Defendants.* | :<br>:<br>: MARCH TERM, 2022<br>: No. 220302983<br>:<br>: |
| ALEXANDRIA ROSS, et al.,<br>　　　　*Plaintiff,*<br>　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　*Defendants.* | :<br>:<br>: MARCH TERM, 2022<br>: No. 220302981<br>:<br>: |
| LOREN SANDERS, et al.,<br>　　　　*Plaintiff,*<br>　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　*Defendants.* | :<br>:<br>: APRIL TERM, 2022<br>: No. 220400153<br>:<br>: |
| SAMAYA SHORT, et al.,<br>　　　　*Plaintiff,*<br>　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　*Defendants.* | :<br>:<br>: APRIL TERM, 2022<br>: No. 220400159<br>:<br>: |
| ALICE STILLS, et al.,<br>　　　　*Plaintiff,*<br>　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　*Defendants.* | :<br>:<br>: MARCH TERM, 2022<br>: No. 220302617<br>:<br>: |
| CHRISTINA TAYLOR, et al.,<br>　　　　*Plaintiff,*<br>　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　*Defendants.* | :<br>:<br>: MARCH TERM, 2022<br>: No. 220302606<br>:<br>: |
| NATISHA THOMAS, et al.,<br>　　　　*Plaintiff,*<br>　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　*Defendants.* | :<br>:<br>: MARCH TERM, 2022<br>: No. 220400158<br>:<br>: |

2

Case ID: 220302588<br>Control No.: 23096752

| | |
|---|---|
| TRINA WALKER-SAVAGE and CLIFTON ISAIAH SAVAGE, JR., et al.,<br>   *Plaintiff,*<br>  v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>   *Defendants.* | :<br>:<br>:<br>:<br>:<br>:<br>:   MARCH TERM, 2022<br>  No. 220400156 |
| JEANNATE WATSON, et al.,<br>   *Plaintiff,*<br>  v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>   *Defendants.* | :<br>:<br>:<br>:<br>:   MARCH TERM, 2022<br>  No. 220302967 |
| GINA WIEGER, et al.,<br>   *Plaintiff,*<br>  v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>   *Defendants.* | :<br>:<br>:<br>:<br>:   MARCH TERM, 2022<br>  No. 220302614 |
| GINA WIEGER, et al.,<br>   *Plaintiff,*<br>  v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>   *Defendants.* | :<br>:<br>:<br>:<br>:   MARCH TERM, 2022<br>  No. 220302601 |
| SHANITA WIGGINS, et al.,<br>   *Plaintiff,*<br>  v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>   *Defendants.* | :<br>:<br>:<br>:<br>:   MARCH TERM, 2022<br>  No. 220302986 |
| MELVENIA WILLIAMS, et al.,<br>   *Plaintiff,*<br>  v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>   *Defendants.* | :<br>:<br>:<br>:   APRIL TERM, 2022<br>  No. 220400141 |

3

Case ID: 220302588<br>Control No.: 23096752

## ABBOTT LABORATORIES' REPLY IN SUPPORT OF
## PRELIMINARY OBJECTIONS TO PLAINTIFFS' AMENDED COMPLAINTS

Plaintiffs' response only confirms that Abbott's preliminary objections should be sustained, and that the claims against Abbott should be dismissed.[1] Rather than fixing the obvious pleading defects recognized by this Court at the July conference, plaintiffs seek to justify them. Flouting their second opportunity to plead specific facts supporting their claims, plaintiffs once again fail to identify the specific product that allegedly caused their infant's injuries, fail to differentiate between the product manufacturers, and fail to allege facts showing that plaintiffs saw, heard, or were otherwise exposed to purportedly false representations made by Abbott about its products, let alone that plaintiffs relied upon any such representations. Plaintiffs' response brief in no way justifies their repeated failure to plead the essential elements of their causes of action, nor can plaintiff-parents save their untimely claims by invoking the term "negligent infliction of emotional distress" for the very first time in their opposition. For these reasons, all of plaintiffs' claims against Abbott should be dismissed.

**I.  Plaintiffs' Strict Liability and Negligence Claims (Count I-III) Should Be Dismissed For Repeated Failure to Identify the Specific Product That Allegedly Caused Their Infant's Injuries**

Plaintiffs do not deny that they must identify the specific product that caused their infant's injuries under Pennsylvania law. Nor could they. Pennsylvania courts have uniformly upheld the product identification requirement, confirming that to state a products liability claim, a plaintiff must allege that a ***particular product*** of a ***particular defendant manufacturer*** caused their injuries. *See Cummins v. Firestone Tire & Rubber Co.*, 495 A.2d 963, 968–69 (1985) (holding that

---

[1] Plaintiffs make a number of flawed claims and arguments in their response brief, all of which Abbott denies. For purposes of brevity, however, Abbott focuses this reply on a few dispositive issues, as well as claims and arguments that plaintiffs raised for the very first time. Abbott hereby incorporates and preserves all arguments made in its opening brief, including that plaintiffs failed to plead facts sufficient to show an unreasonably dangerous defect, and failed to plead a legally sufficient basis for punitive damages.

Case ID: 220302588
Control No.: 23096752

plaintiff's failure to identify the offending product was "a fatal deficiency to [strict liability] claim"); *Mellon v. Barre-Nat'l Drug Co.*, 636 A.2d 187, 191 (Pa. Super. Ct. 1993) (holding a defendant must be identified as the manufacturer, distributor, or seller of the offending product before the injuries suffered by the plaintiff may be found to be proximately caused by some negligent act or omission of the defendant).

Consistent with Pennsylvania law, this Court recognized that plaintiffs' original complaints failed to adequately identify the products administered to their infants, and allowed plaintiffs an opportunity to cure this fatal deficiency. Plaintiffs made no attempt to do so.

As in their original complaints, plaintiffs once again allege in their amended complaints that their infants were administered "Similac and/or Enfamil" products. *Compare* Am. Compl. ¶ 11 *with* Compl. ¶ 12. These allegations remain insufficient. As plaintiffs themselves recognize, "Similac" and "Enfamil" are the brand names used by Abbott and Mead Johnson, respectively, to market and sell *multiple* preterm infant nutrition products. *See* Am. Compl. ¶¶ 4-5, 48-48. In fact, these are brands that apply to a large category of preterm and term nutrition products. Because plaintiffs fail to specifically allege which brand – and which of the many products sold under the "Similac" and "Enfamil" brand names were administered to their infants, their strict liability and negligence claims against Abbott fail for lack of product identification. *See Klein v. Council of Chem. Assocs.*, 587 F. Supp. 213, 221 (E.D. Pa. 1984) (dismissing strict liability claim where plaintiffs did not identify the specific product sold or distributed by the defendants that caused the plaintiffs' harm).

Plaintiffs contend in their response brief that a plaintiff may be somehow excused from satisfying Pennsylvania's product identification requirement where future discovery might lead a plaintiff to this information. This is a misreading of Pennsylvania law. As courts have made clear,

Case ID: 220302588
Control No.: 23096752

plaintiffs cannot escape their obligation to identify the specific product from the specific manufacturer that allegedly caused harm by mere pronouncements of their future "inten[t] to conduct extensive industry-wide discovery." *Klein*, 587 F. Supp. at 221 (holding that plaintiffs cannot rely on theories of alternative liability or joint and several liability to excuse them from identifying the specific product they claim caused their injuries); *see also* Abbott's Preliminary Objections at 13-15. This is particularly true in instances involving separate manufacturers, one of whom may not be a proper defendant. *See* Section III, infra. And the present "inability of plaintiffs to name specific products" is plaintiffs' own fault—a result of "plaintiffs' failure to investigate." *Klein*, 587 F. Supp. at 222

There is no excuse for this critical pleading failure. Prior to filing their amended complaints, nearly every plaintiff was provided medical records by the hospital defendant at which their infant was born that contain information about which product their infant was administered. As such, the failure in plaintiffs' amended complaints to identify the specific product that allegedly caused their infants' injuries is entirely unjustified. In any event, a "plaintiff is not excused from pleading the facts necessary to sustain [her] cause of action on the ground that the facts were known to the defendant and not to the plaintiff," particularly where, as is the case here, plaintiff has not availed herself of available discovery. *Gross v. United Engineers & Constructors Inc.*, 302 A.2d 370, 372 (1973) (affirming the trial court's dismissal for want of specificity in pleading where it found that plaintiff failed to pursue available discovery or amend the complaint). Because plaintiffs do not—and cannot—provide any principled justification for their repeated failure to identify the specific product that allegedly caused harm, plaintiffs' strict liability and negligence claims should be dismissed.

6

Case ID: 220302588
Control No.: 23096752

## II. Plaintiffs' Intentional and Negligent Misrepresentation Claims (Counts IV–V) Should Be Dismissed For Repeated Failure to Plead with Particularity

Plaintiffs' misrepresentation claims likewise warrant dismissal because plaintiffs have repeatedly failed to plead specific facts supporting such fraud-based claims. Despite the concerns the Court expressed at the July conference, plaintiffs again fail to allege with any specificity that they saw or heard any Abbott representation, let alone a specific misrepresentation. Nor do plaintiffs allege any facts to support justifiable reliance on any purported statement by Abbott.

While plaintiffs generally allege that Abbott representatives did not warn hospital defendants' staff of the risk of NEC, *see* Pl.'s Memo. of Law at 11 (citing Am. Compl. ¶¶ 60-62, 72), such generalized allegations do not come anywhere close to satisfying Pennsylvania's heightened pleading requirements for fraud. *See* Pa. R. Civ. P. 1019(b). Tellingly, plaintiffs cannot identify any actual statement made by any particular Abbott representative to any particular hospital staff member—and any such statement would not have been made to plaintiffs in any event. *See Feudale v. Aqua Pa., Inc.*, 122 A.3d 462, 466 n.5 (Pa. Commw. Ct. 2015) (concluding that plaintiff failed to "allege[ ] any justifiable reliance on his part on the [alleged false representation], nor could he, as the alleged false representation was not made to him, but instead to [a third party]").

Indeed, despite multiple opportunities, plaintiffs still have not alleged that Abbott made any representations directly to them, or that they read, saw, heard, or were otherwise exposed to any specific product label or any other specific representation from Abbott before their infant was administered Abbott's products. *See Youndt v. First Nat'l Bank*, 868 A.2d 539, 545 (Pa. Super. Ct. 2005) (holding, "at the very least, a plaintiff must set forth the exact statements or actions plaintiff alleges constitute the fraudulent misrepresentations"). Further, even if alleged misrepresentations to hospitals could provide the basis for a cognizable claim (they do not), plaintiffs have not alleged

Case ID: 220302588
Control No.: 23096752

with specificity when these statements were made, who made them, to whom, and how they were communicated. These factual deficiencies are fatal to plaintiffs' misrepresentation claims.

## III. Plaintiffs' Claims Should Be Dismissed For Repeated Failure to Differentiate Between Abbott and Mead Johnson

Plaintiffs concede that their amended complaints fail to differentiate between Abbott and Mead Johnson. *See* Pl.'s Memo. of Law at 12 ("Plaintiffs' Complaints do often refer to both Abbott and Mead throughout their complaint in tandem"). But, despite clear guidance from the Court on this issue, plaintiffs contend that they are not required to differentiate their claims because their amended complaints allege that Abbott and Mead Johnson "engaged in nearly identical conduct." *Id.* In making this argument, plaintiffs wholly misconstrue Pennsylvania law.

Pursuant to Rule 1020(a), plaintiffs are required to plead distinct, differentiated, and separate causes of action against defendants who, as here, are not jointly and severally liable. *See Bouchon v. Citizen Care, Inc.*, 176 A.3d 244, 260–61 (2017).[2] In these 21 cases, plaintiffs' amended complaints involve: [a] different infants born across different decades, [b] at four different hospitals, who [c] allegedly suffered different injuries after being administered some unidentified preterm infant formula or fortifier product, [d] manufactured by either Abbott or Mead Johnson. Because Abbott and Mead Johnson are direct competitors who manufacture different products at different locations, using different formulations and different ingredients, and market their products differently, plaintiffs have no basis for asserting joint and several liability as a matter of law. *See* Abbott's Preliminary Objections at 19-20. Plaintiffs nonetheless continue to lump

---

[2] *See also Gen. State Auth. v. Lawrie & Green*, 356 A.2d 851, 854 (1976) (holding that, although the plaintiff's allegations made clear that the form of action may be identical against both defendants, Rule 1020(a) required dismissal because the plaintiff relied upon separate and distinct conduct to support their respective causes of action); *Bassaro v. de Levie*, 236 A.3d 1069 (Pa. Super. Ct. 2020) (holding that a plaintiff must state clearly in a separate count each individual cause of action asserted against each individual defendant, including the facts pertaining to every element of that count).

Case ID: 220302588
Control No.: 23096752

Abbott and Mead Johnson together without differentiating between the distinct acts or omissions of these distinct corporations, and the distinct products they manufacture. As a result, Abbott lacks clarity regarding its alleged role in these cases, and whether it is even a proper party. Accordingly, plaintiffs' claims against Abbott should be dismissed.

## IV. Plaintiffs' Amended Complaints Do Not Allege Viable Negligent Infliction of Emotional Distress Claims on Behalf of Plaintiff-Parents

In their response, plaintiffs seek to save their untimely claims by arguing for the first time in their response brief that they have stated negligent infliction of emotional distress (NIED) claims on behalf of the plaintiff-parents under a "bystander" theory. *See* Pl.'s Memo. of Law at 15-19. In Pennsylvania, a bystander can recover for NIED only if: (1) the plaintiff was located near the scene of the accident; (2) the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident; and (3) the plaintiff and the victim were closely related. *See Huddleston v. Infertility Ctr. of Am.*, 700 A.2d 453, 462 (Pa. Super. Ct. 1997). In addition to these three elements, a physical injury must be averred to sustain a cause of action for NIED. *See Armstrong v. Paoli Mem'l Hosp.*, 633 A.2d 605, 609 (Pa. Super. Ct. 1993); *Abadie v. Riddle Mem'l Hosp.*, 589 A.2d 1143, 1145 (Pa. Super. Ct. 1991).

Here, as a threshold matter, plaintiffs fail to comply with the Rule 1020(a) requirement that "each cause of action" be set forth in a "separate count containing a demand for relief." Further, even if plaintiff-parents had specifically set forth a NIED claim in their amended complaints (they did not), these newly minted NIED claims would have failed as a matter of law. Plaintiff-parents do not allege that they suffered any physical injury. Moreover, plaintiff-parents do not allege any facts showing that they suffered "a direct emotional impact" from the "contemporaneous observance" of their infants developing NEC. Under these circumstances, Pennsylvania courts routinely dismiss NIED claims. *See, e.g.*, *Mazzagatti v. Everingham by Everingham*, 516 A.2d

9

Case ID: 220302588
Control No.: 23096752

672, 679 (1986) (holding where plaintiff has no contemporaneous sensory perception of the injury, any claimed emotional distress results more from the particular emotional makeup of the plaintiff rather than from the nature of defendant's actions); *Tackett v. Encke*, 509 A.2d 1310, 1312 (Pa. Super. Ct. 1986) (preliminary objections to parent's claim for NIED damages properly sustained where parent did not witness a "discrete and identifiable traumatic event," but rather was injured emotionally by witnessing, over time, her son's reaction to a pulmonary fat embolism). Accordingly, plaintiff-parents' improperly-pled, time-barred NIED claims should be dismissed.

## **CONCLUSION**

For all these reasons, as well as those set forth in Abbott's opening brief, which is expressly incorporated herein, Abbott's preliminary objections should be sustained, and all claims against Abbott should be dismissed.

Dated: November 2, 2023                    Respectfully Submitted:

/s/ Sean P. Fahey                         /s/ Joseph E. O'Neil
Sean P. Fahey (PA Bar No. 73305)          Joseph E. O'Neil (PA Bar No. 29053)
**TROUTMAN PEPPER HAMILTON**               Meaghann C. Porth (PA Bar No. 307629)
**SANDERS LLP**                            Ryan J. O'Neil (PA Bar No. 314034)
3000 Two Logan Square                     **CAMPBELL CONROY & O'NEIL, P.C.**
Philadelphia, PA 19103                    1205 Westlakes Drive, Suite 330
215.981.4296                              Berwyn, PA 19312
Sean.Fahey@troutman.com                   610.964.6388
                                          JONeil@CampbellTrialLawyers.com
/s/ Ronni E. Fuchs                        MPorth@campbell-trial-lawyers.com
Ronni E. Fuchs (PA Bar No. 65561)         RONeil@campbell-trial-lawyers.com
**TROUTMAN PEPPER HAMILTON**
**SANDERS LLP**                            /s/ Marques Hillman Richeson
301 Carnegie Center, Suite 400            Marques Hillman Richeson (admitted *pro hac*
Princeton, NJ 08540                       *vice*)
609.951.4183                              **JONES DAY**
Ronni.Fuchs@troutman.com                  901 Lakeside Avenue
                                          Cleveland, OH 44114
                                          216.586.7195

10

Case ID: 220302588
Control No.: 23096752

mhricheson@jonesday.com
*Attorneys for Defendant Abbott Laboratories*

Case ID: 220302588
Control No.: 23096752

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I will serve a true and correct copy of the foregoing in accordance with Pa. R. Civ. P. 440 on all parties not served electronically. All other parties will be electronically served by the court in accordance with Pa. R. Civ. P. 205.4(g).

Dated: November 2, 2023                      */s/ Ronni E. Fuchs*
                                             Ronni E. Fuchs

Case ID: 220302588
Control No.: 23096752

## **CERTIFICATE OF COMPLIANCE**

I, Ronni E. Fuchs, hereby certify that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts, that require filing confidential information and documents differently than non-confidential information and documents.

_/s/ Ronni E. Fuchs_
Ronni E. Fuchs

# EXHIBIT A-58

# PHILADELPHIA COURT OF COMMON PLEAS
## PETITION/MOTION COVER SHEET

| CONTROL NUMBER: |
| --- |
| 23110833 |
| **(RESPONDING PARTIES MUST INCLUDE THIS NUMBER ON ALL FILINGS)** |

### FOR COURT USE ONLY

| ASSIGNED TO JUDGE: | ANSWER/RESPONSE DATE: |
| --- | --- |
| | 11/27/2023 |

*Do not send Judge courtesy copy of Petition/Motion/Answer/Response.*
*Status may be obtained online at http://courts.phila.gov*

March Term, 2022
*Month*                          *Year*
No. _____ 02588

Name of Filing Party:
HOLLI CARTER-PLF
J C-PMNR

CARTER ETAL VS MEAD JOHNSON & COMPANY,
LLC, ETAL

**INDICATE NATURE OF DOCUMENT FILED:**

☐ Petition *(Attach Rule to Show Cause)*   ☒ Motion
☐ Answer to Petition           ☐ Response to Motion

Has another petition/motion been decided in this case?   ☒ Yes ☐ No
Is another petition/motion pending?   ☒ Yes ☐ No
*If the answer to either question is yes, you must identify the judge(s):*
JUDGE CARPENTER

| TYPE OF PETITION/MOTION (see list on reverse side) | PETITION/MOTION CODE (see list on reverse side) |
| --- | --- |
| MOT TO COMPEL DEPOSITION | MTCDD |

ANSWER / RESPONSE FILED TO (Please insert the title of the corresponding petition/motion to which you are responding):

**I. CASE PROGRAM**

DAY FORWARD/MAJOR JURY PROGRAM

Name of Judicial Team Leader: JUDGE LINDA CARPENTER
Applicable Petition/Motion Deadline: 10/19/2023
Has deadline been previously extended by the Court: NO

**II. PARTIES** *(required for proof of service)*
(Name, address and **telephone number** of all counsel of record and unrepresented parties. Attach a stamped addressed envelope for each attorney of record and unrepresented party.)

JAMES A YOUNG
    BURNS WHITE LLC 1880 JOHN F. KENNEDY BOULEVARD 10TH FLOOR , PHILADELPHIA PA 19103
RICHARD S MARGULIES
    BURNS WHITE LLC 1880 JFK BLVD., 10TH FLR , PHILADELPHIA PA 19103
RONNI E FUCHS
    301 CARNEGIE CENTER SUITE 400 , PRINCETON NJ 08540
KENNETH A MURPHY
    TUCKER LAW GROUP, LLC 1801 MARKET STREET SUITE 2500 , PHILADELPHIA PA 19103-6996
MARQUES HILLMAN RICHESON
    JONES DAY 901 LAKESIDE AVENUE NORTH POINT , CLEVELAND OH 44114

**III. OTHER**

By filing this document and signing below, the moving party certifies that this motion, petition, answer or response along with all documents filed, will be served upon all counsel and unrepresented parties as required by rules of Court (see PA. R.C.P. 206.6, Note to 208.2(a), and 440). Furthermore, moving party verifies that the answers made herein are true and correct and understands that sanctions may be imposed for inaccurate or incomplete answers.

November 3, 2023                    TIMOTHY A. BURKE

_____    _____    _____
*(Attorney Signature/Unrepresented Party)*          *(Date)*          *(Print Name)*          *(Attorney I.D. No.)*

**The Petition, Motion and Answer or Response, if any, will be forwarded to the Court after the Answer/Response Date.**
**No extension of the Answer/Response Date will be granted even if the parties so stipulate.**

30-1061B E-File# 2311008179
03-NOV-23 15:35:35

MEAGHANN C PORTH
  CAMPBELL CONROY & ONEIL PC 1205
  WESTLAKES DR #330 , BERWYN PA 19312
RICHARD D WALK
  306 WALNUT ST , PHILADELPHIA PA 19106
BENJAMIN WHITING
  KELLER POSTMAN 150 N. RIVERSIDE PLAZA
  SUITE 1400 , CHICAGO IL 60606

**FILED**
03 NOV 2023 01:03 pm
**Civil Administration**
J. BOYD

| | |
|---|---|
| TERRAINE ABDULLAH, et al., <br>         Plaintiff, <br>     v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br>     Defendants. | :  MARCH TERM, 2022 <br> :  No. 220302583 <br> : <br> : |
| HOLLI CARTER, et al., <br>         Plaintiff, <br>     v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br>     Defendants. | : <br> :  MARCH TERM, 2022 <br> :  No. 220302588 <br> : <br> : |
| SHONDERA DRAYTON, et al., <br>         Plaintiff, <br>     v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br>     Defendants. | : <br> :  MARCH TERM, 2022 <br> :  No. 220302594 <br> : <br> : |
| JANEE HENDERSON, et al., <br>         Plaintiff, <br>     v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br>     Defendants. | : <br> :  APRIL TERM, 2022 <br> :  No. 220400127 <br> : <br> : |
| SHEMIKA JOHNSON, et al., <br>         Plaintiff, <br>     v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br>     Defendants. | : <br> :  APRIL TERM, 2022 <br> :  No. 220400162 <br> : <br> : |
| DAMEKA MOMENT, et al., <br>         Plaintiff, <br>     v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br>     Defendants. | : <br> :  APRIL TERM, 2022 <br> :  No. 220400142 <br> : <br> : |
| LOREN SANDERS, et al., <br>         Plaintiff, <br>     v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br>     Defendants. | : <br> :  APRIL TERM, 2022 <br> :  No. 220400153 <br> : <br> : |
| SAMAYA SHORT, et al., <br>         Plaintiff, <br>     v. <br> MEAD JOHNSON & COMPANY, LLC, et al., | : <br> :  APRIL TERM, 2022 <br> :  No. 220400159 <br> : |

| | |
|---|---|
| Defendants. | : |
| ALICE STILLS, et al., | : |
| Plaintiff, | : MARCH TERM, 2022 |
| v. | : No. 220302617 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |
| CHRISTINA TAYLOR, et al., | : |
| Plaintiff, | : MARCH TERM, 2022 |
| v. | : No. 220302606 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |
| NATISHA THOMAS, et al., | : |
| Plaintiff, | : MARCH TERM, 2022 |
| v. | : No. 220400158 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |
| TRINA WALKER-SAVAGE and CLIFTON | : |
| ISAIAH SAVAGE, JR., et al., | : MARCH TERM, 2022 |
| Plaintiff, | : No. 220400156 |
| v. | : |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |
| ROBERT WHITFIELD, et al., | : |
| Plaintiff, | : APRIL TERM, 2022 |
| v. | : No. 220400145 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |
| GINA WIEGER, et al., | : |
| Plaintiff, | : MARCH TERM, 2022 |
| v. | : No. 220302614 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |
| GINA WIEGER, et al., | : |
| Plaintiff, | : MARCH TERM, 2022 |
| v. | : No. 220302601 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |
| | |
| MELVENIA WILLIAMS, et al., | : |
| Plaintiff, | : APRIL TERM, 2022 |
| v. | : No. 220400141 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |

Case ID: 220302588
Control No.: 23110833

| Defendants. | : | |
| IVYANN WITHERSPOON, et al., | : | |
| Plaintiff, | : | APRIL TERM, 2022 |
| v. | : | No. 220400138 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |

**<u>ORDER</u>**

**AND NOW** this _____ day of _____, 2023, upon consideration of Plaintiff's Motion to Compel Deposition of Defendant, Hospital of The University of Pennsylvania's Corporate Designee, and any response thereto, is hereby **ORDERED** that said Motion is **GRANTED.**

**IT IS FURTHER ORDERED** that counsel for Defendant shall make Defendant's Corporate Designee available within 20 days of the date of this Order, on a mutually agreeable date and time.

**BY THE COURT:**

_____
                                                    J.

*Discovery Deadline: February 5, 2024*

**KLINE & SPECTER, P.C.**
THOMAS R. KLINE, ESQUIRE
Attorney I.D. No. 28895
TOBIAS MILLROOD, ESQUIRE
Attorney I.D. No. 77764
ELIZABETH CRAWFORD, ESQUIRE
Attorney I.D. No. 313702
MELISSA MERK, ESQUIRE
Attorney I.D. No. 90363
TIMOTHY A. BURKE, ESQUIRE
Attorney I.D. No.320927
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000/(215) 772-1359 fax.
Attorneys for Plaintiffs

| | |
|---|---|
| TERRAINE ABDULLAH, et al., : | |
| Plaintiff, : | MARCH TERM, 2022 |
| v. : | No. 220302583 |
| MEAD JOHNSON & COMPANY, LLC, et al., : | |
| Defendants. : | |
| HOLLI CARTER, et al., : | |
| Plaintiff, : | MARCH TERM, 2022 |
| v. : | No. 220302588 |
| MEAD JOHNSON & COMPANY, LLC, et al., : | |
| Defendants. : | |
| SHONDERA DRAYTON, et al., : | |
| Plaintiff, : | MARCH TERM, 2022 |
| v. : | No. 220302594 |
| MEAD JOHNSON & COMPANY, LLC, et al., : | |
| Defendants. : | |
| JANEE HENDERSON, et al., : | |
| Plaintiff, : | APRIL TERM, 2022 |
| v. : | No. 220400127 |
| MEAD JOHNSON & COMPANY, LLC, et al., : | |
| Defendants. : | |
| SHEMIKA JOHNSON, et al., : | |
| Plaintiff, : | APRIL TERM, 2022 |
| v. : | No. 220400162 |
| MEAD JOHNSON & COMPANY, LLC, et al., : | |
| Defendants. : | |
| DAMEKA MOMENT, et al., : | |

Case ID: 220302588
Control No.: 23110833

|  |  |
|---|---|
| Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :  APRIL TERM, 2022<br>:  No. 220400142<br>:<br>: |

|  |  |
|---|---|
| LOREN SANDERS, et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>:  APRIL TERM, 2022<br>:  No. 220400153<br>:<br>: |

|  |  |
|---|---|
| SAMAYA SHORT, et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>:  APRIL TERM, 2022<br>:  No. 220400159<br>:<br>: |

|  |  |
|---|---|
| ALICE STILLS, et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>:  MARCH TERM, 2022<br>:  No. 220302617<br>:<br>: |

|  |  |
|---|---|
| CHRISTINA TAYLOR, et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>:  MARCH TERM, 2022<br>:  No. 220302606<br>:<br>: |

|  |  |
|---|---|
| NATISHA THOMAS, et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>:  MARCH TERM, 2022<br>:  No. 220400158<br>:<br>: |

|  |  |
|---|---|
| TRINA WALKER-SAVAGE and CLIFTON<br>ISAIAH SAVAGE, JR., et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>:  MARCH TERM, 2022<br>:  No. 220400156<br>:<br>:<br>: |

|  |  |
|---|---|
| ROBERT WHITFIELD, et al.,<br>Plaintiff,<br>v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>Defendants. | :<br>:  APRIL TERM, 2022<br>:  No. 220400145<br>:<br>: |

|  |  |
|---|---|
| GINA WIEGER, et al.,<br>Plaintiff,<br>v. | :<br>:  MARCH TERM, 2022<br>:  No. 220302614 |

| | |
|---|---|
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |
| GINA WIEGER, et al., | : |
| Plaintiff, | : MARCH TERM, 2022 |
| v. | : No. 220302601 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |
| | : |
| MELVENIA WILLIAMS, et al., | : |
| Plaintiff, | : APRIL TERM, 2022 |
| v. | : No. 220400141 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |
| IVYANN WITHERSPOON, et al., | : |
| Plaintiff, | : APRIL TERM, 2022 |
| v. | : No. 220400138 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |

## PLAINTIFFS' MOTION TO COMPEL THE DEPOSITION OF CORPORATE DESIGNEE

Plaintiffs, by and through their counsel, Kline & Specter, P.C., submit this Motion to Compel the Deposition of Defendant Hospital of the University of Pennsylvania's Corporate Designee as follows:

## FACTUAL BACKGROUND

1. This action arises out of the injuries suffered by premature infants who were given the Defendant Manufacturers' bovine-based infant feeding products at the named Defendant Hospital. The Defendant Hospital acquired and supplied the Defendant Manufacturers' products to the Injured Infants and negligently failed to warn of their unreasonably dangerous properties in a reasonable manner. This caused the Injured premature Infants to develop necrotizing enterocolitis ("NEC"), a life-altering and potentially deadly disease that largely affects premature babies who are given bovine-based feeding products. As a result, the Injured Infants were

seriously injured, resulting in long term health effects and accompanying harm to their parent ("the Plaintiff Parent").

2.  Plaintiffs bring these causes of action against Defendants to recover for injuries that are the direct and proximate result of the Injured Infants' consumption of the Defendant Manufacturers' unreasonably dangerous bovine-based infant feeding products, which were acquired and supplied without adequate warning to the Injured Infants by the Defendant Hospital.

3.  Plaintiffs commenced these actions by filing complaints in March and April of 2022.

4.  On August 17, 2023, Plaintiff's Counsel emailed Defense Counsel indicating the need to depose Defendant's Corporate Designee. See Email of August 17, 2023, and corresponding Letter and Notice of Deposition attached hereto as Exhibit "A".

5.  On September 27, 2023, Plaintiff's Counsel emailed Defense Counsel to follow up on the August 17, 2023, request to depose Defendant's Corporate Designee because Defendants never provided dates for said deposition. See Email of September 27, 2023, attached hereto as Exhibit "B".

6.  On October 11, 2023, Plaintiff's Counsel emailed Defense Counsel a Notice of Deposition to depose Defendant's Corporate Designee on November 1, 2023, because Defendants never provided dates for said deposition. See Email of October 11, 2023, and corresponding Notice of Deposition attached hereto as Exhibit "C".

7.  On October 30, 2023, Defendants emailed Plaintiffs refusing to produce Defendant's Corporate Designee for deposition on November 1, 2023. See Email of October 30, 2023, attached hereto as Exhibit "D".

8.  To date, Defense counsel has not provided any available dates for the deposition of Defendant's Corporate Designee.

9.   Pennsylvania Rule of Civil Procedure 4001 states in relevant part that a "party may take the testimony of any person, including a party, by deposition upon oral examination … for the purpose of discovery … or for preparation or trial of a case."

10. Plaintiffs will be severely prejudiced in their ability to prepare their cases for trial and/or resolve these cases through settlement without this deposition.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter an Order in the form attached hereto, compelling the deposition of Defendant's Corporate Designee within twenty (20) days of this Order or suffer appropriate sanctions upon application to this Court.

Respectfully submitted,

**KLINE & SPECTER, P.C.**

By:     /s/ John P. O'Neill
        JOHN P.  O'NEILL, ESQUIRE
        TIMOTHY A. BURKE, ESQUIRE
        *Attorneys for Plaintiffs*

DATE:  November 3, 2023

## **VERIFICATION**

I, JOHN P. O'NEILL, ESQUIRE, hereby state that I am counsel for the Plaintiff in the above action and verify that the statements made in the foregoing **Plaintiff's Motion to Compel Depositions**, are true and correct to the best of my knowledge, information, and belief. The undersigned understands that the statements therein are made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

_____

JOHN P. O'NEILL, ESQUIRE

DATED:   November 3, 2023

### <u>CERTIFICATE OF SERVICE</u>

  I, JOHN P. O'NEILL, ESQUIRE, hereby certify that on the date appearing below, a true

and correct copy of **Plaintiff's Motion to Compel Depositions** was served upon the following

counsel of record for all parties via the Court's electronic filing system:

**KLINE & SPECTER, P.C.**

     By:  <u>/s/ John P. O'Neill</u>
        JOHN P.  O'NEILL, ESQUIRE
        *Attorneys for Plaintiffs*

DATE: <u>November 3, 2023</u>

FILED

03 NOV 2023 01:03 pm

Civil Administration

J. BOYD

# EXHIBIT A

Case ID: 220302588
Control No.: 23110833

| | |
|---|---|
| **From:** | Carol Lippmann |
| **To:** | jayoung@burnswhite.com; rsmargulies@burnswhite.com; srengle@burnswhite.com |
| **Cc:** | Tobi Millrood; Melissa Merk; Timothy Burke; Elizabeth Crawford; Jack O'Neill; Patrick Sidebotham; Ben Whiting; Mark Weinstein; cmrecker@welshrecker.com; abcarver@welshrecker.com; rwalk@welshrecker.com; kmurphy@tlgattorneys.com; holson@tlgattorneys.com; Sean.Fahey@troutman.com; dbrooks@eckertseamans.com; Brooke Scicchitano; Jennifer V. Weachter |
| **Bcc:** | NECPhiladelphiaGeneralZ3453077@klinespecter.filevineapp.com |
| **Subject:** | NEC Infant Formula Litigation \| The Pennsylvania Health System d/b/a Pennsylvania Hospital |
| **Date:** | Thursday, August 17, 2023 8:09:00 PM |
| **Attachments:** | 2023-08-17 Letter to Penn Hospital re NoD.pdf<br>NEC Corp Designee NoD - UPH dba Penn Hospital.pdf |

Dear Counsel:

Please see the attached correspondence and Notice of Video Deposition of Corporate Designee(s) of The The Pennsylvania Health System d/b/a Pennsylvania Hospital.


Thank you,

**Carol Lippmann**
Litigation Paralegal to Tobi Millrood, Esq.
Kline & Specter, P.C.
1525 Locust Street
Philadelphia, PA 19102
D. (215) 772-1392
F. (215) 792-5502
Carol.lippmann@klinespecter.com
www.klinespecter.com

Case ID: 220302588
Control No.: 23110833

# KLINE & SPECTER PC

**ATTORNEYS AT LAW**
**1525 LOCUST STREET**
**PHILADELPHIA, PENNSYLVANIA 19102**
**WWW.KLINESPECTER.COM**

TOBIAS L. MILLROOD                                                          TOBI.MILLROOD@KLINESPECTER.COM

_____

**215-772-1358**

**800-597-9585**

**FAX: 215-792-5502**

August 17, 2023

**Via Email Only**
James A. Young, Esquire
Richard S. Margulies, Esquire
Susan R. Engle, Esquire
BURNS WHITE LLC
1880 John F. Kennedy Boulevard, 10th FL
Philadelphia, PA 19103

      Re:    Abdullah, et al.. v. Mead Johnson & Company, et al., Case No. 2203025832
               Carter, et al., v. Mead Johnson & Company, et al., Case No. 220302588
               Drayton et al., v. Mead Johnson & Company, et al., Case No.220302594
               Stills, et al., v. Mead Johnson & Company, et al., Case No. 220302617
               Taylor, et al., v. Mead Johnson & Company, et al., Case No. 220302606
               Wieger, et al., v. Mead Johnson & Company, et al., Case No.220302614
               Wieger, et al., v. Mead Johnson & Company, et al., Case No. 220302601
               Henderson, et al., v. Mead Johnson & Company, et al., Case No. 220400127

Dear Counsel:

      Attached is a Notice of Video Deposition of the Corporate Designee(s) of Defendant The Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a Pennsylvania Hospital. This notice applies to the following the following cases pending against The Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a Pennsylvania Hospital in the infant formula litigation.

- Abdullah, et al.. v. Mead Johnson & Company, et al., Case No. 2203025832
- Carter, et al., v. Mead Johnson & Company, et al., Case No. 220302588
- Drayton et al., v. Mead Johnson & Company, et al., Case No.220302594
- Stills, et al., v. Mead Johnson & Company, et al., Case No. 220302617
- Taylor, et al., v. Mead Johnson & Company, et al., Case No. 220302606
- Wieger, et al., v. Mead Johnson & Company, et al., Case No.220302614
- Wieger, et al., v. Mead Johnson & Company, et al., Case No. 220302601
- Henderson, et al., v. Mead Johnson & Company, et al., Case No. 220400127

Page 2

Very truly yours,

Tobias L. Millrood

Enclosure
cc:    All Counsel of Record (via email only)

Case ID: 220302588
Control No.: 23110833

**KLINE & SPECTER, P.C.**
THOMAS R. KLINE, ESQUIRE
Attorney I.D. No. 28895
TOBIAS MILLROOD, ESQUIRE
Attorney I.D. No. 77764
ELIZABETH CRAWFORD, ESQUIRE
Attorney I.D. No. 313702
MELISSA MERK, ESQUIRE
Attorney I.D. No. 90363
TIMOTHY A. BURKE, ESQUIRE
Attorney I.D. No.320927
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000/(215) 772-1359 fax.
Attorneys for Plaintiffs

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION - CIVIL

| | |
|---|---|
| TERRAINE ABDULLAH, et al., :<br>                    Plaintiff, :<br>          v. :<br>MEAD JOHNSON & COMPANY, LLC, et al., :<br>                    Defendants. : | MARCH TERM, 2022<br>No. 220302583 |
| HOLLI CARTER, et al., :<br>                    Plaintiff, :<br>          v. :<br>MEAD JOHNSON & COMPANY, LLC, et al., :<br>                    Defendants. : | MARCH TERM, 2022<br>No. 220302588 |
| SHONDERA DRAYTON, et al., :<br>                    Plaintiff, :<br>          v. :<br>MEAD JOHNSON & COMPANY, LLC, et al., :<br>                    Defendants. : | MARCH TERM, 2022<br>No. 220302594 |
| ALICE STILLS, et al., :<br>                    Plaintiff, :<br>          v. :<br>MEAD JOHNSON & COMPANY, LLC, et al., :<br>                    Defendants. : | MARCH TERM, 2022<br>No. 220302617 |
| CHRISTINA TAYLOR, et al., :<br>                    Plaintiff, :<br>          v. : | MARCH TERM, 2022<br>No. 220302606 |

1

Case ID: 220302588
Control No.: 23110833

| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |
| GINA WIEGER, et al., | : | |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302614 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |
| GINA WIEGER, et al., | : | |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302601 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |
| JANEE HENDERSON, et al., | : | |
| Plaintiff, | : | APRIL TERM, 2022 |
| v. | : | No. 220400127 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |

### NOTICE OF VIDEO DEPOSITION OF CORPORATE DESIGNEE(S) OF THE PENNSYLVANIA HOSPITAL OF THE UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM d/b/a PENNSYLVANIA HOSPITAL

TO:  James A. Young, Esquire
Burns White LLC
1880 John F. Kennedy Blvd., 10th Floor
Philadelphia, PA 19103

**KINDLY TAKE NOTICE** that Plaintiffs in the above-captioned matter will take

the deposition(s) of one or more Corporate Designees of The Pennsylvania Hospital of

the University of Pennsylvania Health System d/b/a Pennsylvania Hospital (collectively,

"Defendants") on ___, 2023 at 10:00 a.m. at _____.

The deposition will be taken before a person duly authorized to administer oaths and

will be recorded by video and stenographic means.

Defendants are requested to designate one or more officers, directors, managing agents, or

other persons who shall be authorized to testify to matters known or reasonably available to the

2

Case ID: 220302588
Control No.: 23110833

organization and who is the individual most knowledgeable about the Neonatal Intensive Care

Unit at The Pennsylvania Hospital of the University of Pennsylvania Health System from 2002

to the present, and specifically including the following subjects:

1. All policies and procedures relating to premature babies and/or babies in the Neonatal Intensive Care Unit;
2. All policies and procedures relating to the feeding of premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
3. All policies and procedures relating to when commercial milk/bovine milk should be given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
4. Knowledge of what year donor breast milk became available to mothers of premature babies and/or babies in the Neonatal Intensive Care Unit;
5. All policies and procedures as to when donor breast milk should be given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
6. Knowledge of what commercial formula/bovine formula(s) were given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
7. Knowledge of all of Defendants' policies and procedures relating to lactation consultants from 2002 to the present;
8. Knowledge of all policies and procedures pertaining to additional monitoring for premature babies and/or babies in the Neonatal Intensive Care Unit who receive commercial milk/bovine milk from 2002 to the present;
9. Knowledge of any policies and procedures pertaining to consent forms relating to giving commercial milk/bovine milk to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
10. Knowledge of any policies and procedures pertaining to consent forms relating to giving donor breast milk to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
11. Knowledge of any policies and procedures pertaining to preventing necrotizing enterocolitis from 2002 to the present;
12. Knowledge of when it was known to Defendants that commercial milk/bovine milk can increase the risk of necrotizing enterocolitis from 2002 to the present;
13. Knowledge of any communications received by Defendants from Mead Johnson and Company LLC, Mead Johnson Nutrition Company, and/or Abbott Laboratories from 2002 to the present.
14. Knowledge of any communications from Defendants to Mead Johnson and Company LLC, Mead Johnson Nutrition Company, and/or Abbott Laboratories from 2002 to the present;
15. Knowledge of any marketing, training, and/or promotional materials relating to Mead Johnson and Company LLC, Mead Johnson Nutrition Company, Abbott Laboratories and/or any products marketed, manufactured, and/or sold by same that were in the possession of Defendants from 2002 to the present.

Case ID: 220302588
Control No.: 23110833

16. Knowledge of the costs to and/or profits generated from Defendants provision of commercial milk/ bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; and/or

17. Knowledge of any scholarly, educational, training and/or other materials relating to the dangers of giving commercial milk/bovine milk to premature babies and/or babies in the Neonatal Intensive Care Unit that were in the possession of Defendants from 2002 to the present

Please consider this a request to produce any and all records, and/or documents that refer, relate, and/or pertain to the to the above-listed categories.

The deponent is also instructed to bring with him/her the following: (1) any and all communications and/or other documents involving Defendants and relating to when commercial milk/bovine milk should be given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; (2) any and all documents relating to communications between Defendants Mead Johnson and Company LLC, Mead Johnson Nutrition Company, and/or Abbott Laboratories from 2002 to the present; (3) any and all documents relating to the dangers of giving commercial milk/bovine milk to premature babies and/or babies in the Neonatal Intensive Care Unit that were in the possession of Defendants from 2002 to the present; (4) any and all documents relating to any marketing, training, and/or promotional materials relating to Mead Johnson and Company LLC, Mead Johnson Nutrition Company, Abbott Laboratories and/or any products marketed, manufactured, and/or sold by same that were in the possession of Defendants from 2002 to the present. (5) any and all documents related to the costs to and/or profits generated from Defendants provision of commercial milk/bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; (6) any and all documents regarding any complaints and/or warnings related to the provision of commercial milk/bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present whether or not initiated or settled through

4

Case ID: 220302588
Control No.: 23110833

lawsuits, (7) all reports of injuries allegedly arising from the provision of commercial milk/bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; and (9) any and all other documents relative to or responsive to this Notice of Deposition.

The deponent must also bring with him/her complete copies of all prior deposition transcripts where he/she has offered sworn testimony in cases involving similar or comparable products and/or allegations. The deponent shall also bring a copy of his or her CV or resume. The deposition will continue from day to day until completed.

**KLINE & SPECTER, P.C.**

/s/Tobias L. Millrood
_____

TOBIAS L. MILLROOD, ESQUIRE

***Attorney for Plaintiff***

Case ID: 220302588
Control No.: 23110833

## CERTIFICATE OF SERVICE

I, Tobias L. Millrood, hereby certify that on the date below, I served a true and correct copy of the foregoing Notice of Deposition on the following counsel of records:

| | |
|---|---|
| Catherine M. Recker (PA Bar No. 56813)<br>Amy B. Carver (PA Bar No. 84819)<br>Richard D. Walk, III (PA Bar No. 329420)<br>WELSH & RECKER, P.C.<br>306 Walnut Street<br>Philadelphia, PA 19106<br>Tel: (215) 972-6430<br>cmrecker@welshrecker.com<br>abcarver@welshrecker.com<br>rwalk@welshrecker.com<br><br>Kenneth A. Murphy, Esquire<br>Heather R. Olson, Esquire<br>TUCKER LAW GROUP, LLC<br>Ten Penn Center<br>1801 Market Street, Suite 2500<br>Philadelphia, PA 19103<br>kmurphy@tlgattorneys.com<br>holson@tlgattorneys.com<br><br>*Attorneys for Defendant Mead Johnson &*<br>*Company LLC and* Mead Johnson Nutrition<br>Company | James A. Young, Esquire<br>Richard S. Margulies, Esquire<br>Susan R. Engle, Esquire<br>BURNS WHITE LLC<br>Attorney ID Nos. 00213/62306/81671<br>1880 John F. Kennedy Boulevard, 10th FL<br>Philadelphia, PA 19103<br>Tel: (215) 587-1625/1628/1669<br>jayoung@burnswhite.com<br>rsmargulies@burnswhite.com<br>srengle@burnswhite.com<br><br>*Attorneys for Defendant University of*<br>*Pennsylvania Hospital of the University of*<br>*Pennsylvania Health System d/b/a*<br>*Pennsylvania Hospital and University of*<br>*Pennsylvania Hospital of the University of*<br>*Pennsylvania Health System d/b/a Penn*<br>*Medicine* |
| Sean P. Fahey, Esquire<br>TROUTMAN PEPPER HAMILTON<br>SANDERS LLP<br>3000 Two Logan Square<br>Philadelphia, PA 19103-2799<br>Tel: (215) 981-4296<br>Sean.Fahey@troutman.com<br><br>Ronn E. Fuchs, Esquire<br>TROUTMAN PEPPER HAMILTON<br>SANDERS LLP<br>301 Carnegie Center, Suite 400 | Donald J. Brooks, Jr., Esquire<br>Brooke A. Scicchitano, Esquire<br>ECKERT SEAMANS CHERIN & MELOTT<br>Two Liberty Place<br>50 South 16th Street, 22nd Floor<br>Philadelphia, PA 19102<br>Tel: (215) 851-8400<br>dbrooks@eckertseamans.com<br>bscicchitano@eckertseamans.com<br>Jennifer V. Weachter<br>JWeachter@eckertseamans.com |

Case ID: 220302588<br>Control No.: 23110833

| | |
|---|---|
| Princeton, NJ 08540<br>Tel: (609) 951-4184<br>Ronni.Fuchs@troutman.com<br><br>Joseph E. O'Neill<br>Meaghann C. Porth<br>Ryan J. O'Neill<br>CAMPBELL CONROY & O'NEILL, P.C.<br>1205 Westlake Drive, Suite 330<br> Berwyn, PA 19312<br>Tel: (610) 964-1900<br><br><br>John R. Timmer (PA ID No. 89814)<br>SCHNADER HARRISON SEGAL<br>& LEWIS LLIP<br>1600 Market Street, Suite 3600<br>Philadelphia, PA 19103-7286<br>Tel: (215) 751-2309/2451<br>Fax: (215) 751-22-05<br>jtimmer@schnader.com<br><br>Kimberly A. Brown (PA ID No. 56200)<br>JONES DAY<br>500 Grant Street, Suite 4500<br>Pittsburgh, PA 15219<br>Tel: (412) 394-7995<br>Fax: (412) 394-7959<br>kabrown@jonesday.com<br><br><br>*Attorneys for Defendant Abbott Laboratories* | *Attorneys for Defendants Albert Einstein Medical Center a/k/a Einstein Medical Center and Albert Einstein Healthcare Network d/b/a Einstein Healthcare Network* |
| James A. Young, Esquire<br>Richard S. Margulies, Esquire<br>Susan R. Engle, Esquire<br>BURNS WHITE LLOC<br>Attorney ID Nos. 00213/62306/81671<br>1880 John F. Kennedy Boulevard, 10th FL<br>Philadelphia, PA 19103<br>Tel: (215) 587=1625/1628/1669<br>jayoung@burnswhite.com<br>rsmargulies@burnswhite.com<br>srengle@burnswhite.com | Donald J. Brooks, Jr., Esquire<br>Brooke A. Scicchitano, Esquire<br>ECKERT SEAMANS CHERIN & MELOTT<br>Two Liberty Place<br>50 South 16th Street, 22nd Floor<br>Philadelphia, PA 19102<br>Tel: (215) 851-8400<br>dbrooks@eckertseamans.com<br> bscicchitano@eckertseamans.com<br>Jennifer V. Weachter<br>JWeachter@eckertseamans.com |

Case ID: 220302588<br>Control No.: 23110833

| | |
|---|---|
| *Attorneys for Defendant, Temple University Health System, Inc., d/b/a Temple University Hospital* | *Attorney for Defendants, Thomas Jefferson University Hospitals, Inc., d/b/a Thomas Jefferson University Hospital, and Thomas Jefferson University d/b/a Jefferson Health System* |

**KLINE & SPECTER, P.C.**

By: _/s/ Tobias L. Millrood_____
     Tobias L. Millrood
     1525 Locust Street
     Philadelphia, PA 19102
     Phone: 215-772-1000
     Fax: 215-772-1359
     tobi.millrood@klinespecter.com

Dated: August 17, 2023          *Plaintiff`s' Counsel*

8

Case ID: 220302588
Control No.: 23110833

| From: | Carol Lippmann |
|---|---|
| To: | jayoung@burnswhite.com; rsmargulies@burnswhite.com; srengle@burnswhite.com |
| Cc: | Tobi Millrood; Melissa Merk; Jack O"Neill; Elizabeth Crawford; Helen Lawless; Ben Whiting; Mark Weinstein; Patrick Sidebotham; Timothy Burke; jayoung@burnswhite.com; rsmargulies@burnswhite.com; srengle@burnswhite.com; dbrooks@eckertseamans.com; Brooke Scicchitano; Jennifer V. Weachter; Sean.Fahey@troutman.com; kmurphy@tlgattorneys.com; holson@tlgattorneys.com; cmrecker@welshrecker.com; abcarver@welshrecker.com; rwalk@welshrecker.com |
| Bcc: | NECPhiladelphiaGeneralZ3453077@klinespecter.filevineapp.com |
| Subject: | NEC Infant Formula Litigation | The Trustees of the University of Pennsylvania d/b/a Penn Medicine |
| Date: | Thursday, August 17, 2023 8:07:00 PM |
| Attachments: | 2023-08-17 Letter to Penn Medecine re NoD.pdf<br>NEC Corp Designee NoD - UPH dba Penn Medicine.pdf |

Dear Counsel:

Please see the attached correspondence and Notice of Video Deposition of Corporate Designee(s) of The Trustees of the University of Pennsylvania d/b/a Penn Medicine.


Thank you,

**Carol Lippmann**
Litigation Paralegal to Tobi Millrood, Esq.
Kline & Specter, P.C.
1525 Locust Street
Philadelphia, PA 19102
D. (215) 772-1392
F. (215) 792-5502
Carol.lippmann@klinespecter.com
www.klinespecter.com

Case ID: 220302588
Control No.: 23110833

# KLINE & SPECTER PC

### ATTORNEYS AT LAW
### 1525 LOCUST STREET
### PHILADELPHIA, PENNSYLVANIA 19102
### WWW.KLINESPECTER.COM

TOBIAS L. MILLROOD                                                                                        TOBI.Millrood@Klinespecter.com

_____

### 215-772-1358
### 800-597-9585
### FAX: 215-792-5502

August 17, 2023

**Via Email Only**
James A. Young, Esquire
Richard S. Margulies, Esquire
Susan R. Engle, Esquire
BURNS WHITE LLC
1880 John F. Kennedy Boulevard, 10th FL
Philadelphia, PA 19103

> Re:  Johnson, et al.. v. Mead Johnson & Company, et al., Case No. 220400162
>      McMillian, et al., v. Mead Johnson & Company, et al., Case No. 220400140
>      Moment, et al., v. Mead Johnson & Company, et al., Case No.220400142
>      Sanders, et al., v. Mead Johnson & Company, et al., Case No. 220400153
>      Short, et al., v. Mead Johnson & Company, et al., Case No. 220400159
>      Thomas, et al., v. Mead Johnson & Company, et al., Case No.220400158
>      Walker-Savage, et al., v. Mead Johnson & Company, et al., Case No. 220400156
>      Whitfield, et al., v. Mead Johnson & Company, et al., Case No. 220400145
>      Williams, et al., v. Mead Johnson & Company, et al., Case No. 220400141
>      Hines, et al., v. Mead Johnson & Company, et al., Case No. 220400136
>      Witherspoon, et al., v. Mead Johnson & Company, et al., Case No. 220400138

Dear Counsel:

Attached is a Notice of Video Deposition of the Corporate Designee(s) of Defendant the Trustees of the University of Pennsylvania d/b/a Penn Medicine. This notice applies to the following the following cases pending against the Trustees of the University of Pennsylvania d/b/a Penn Medicine in the infant formula litigation.

- Johnson, et al.. v. Mead Johnson & Company, et al., Case No. 220400162
- McMillian, et al., v. Mead Johnson & Company, et al., Case No. 220400140
- Moment, et al., v. Mead Johnson & Company, et al., Case No.220400142
- Sanders, et al., v. Mead Johnson & Company, et al., Case No. 220400153
- Short, et al., v. Mead Johnson & Company, et al., Case No. 220400159
- Thomas, et al., v. Mead Johnson & Company, et al., Case No.220400158
- Walker-Savage, et al., v. Mead Johnson & Company, et al., Case No. 220400156
- Whitfield, et al., v. Mead Johnson & Company, et al., Case No. 220400145

Page 2

- Williams, et al., v. Mead Johnson & Company, et al., Case No. 220400141
- Hines, et al., v. Mead Johnson & Company, et al., Case No. 220400136
- Witherspoon, et al., v. Mead Johnson & Company, et al., Case No. 220400138

Very truly yours,

Tobias L. Millrood

Enclosure
cc:      All Counsel of Record (via email only)

**KLINE & SPECTER, P.C.**
THOMAS R. KLINE, ESQUIRE
Attorney I.D. No. 28895
TOBIAS MILLROOD, ESQUIRE
Attorney I.D. No. 77764
ELIZABETH CRAWFORD, ESQUIRE
Attorney I.D. No. 313702
MELISSA MERK, ESQUIRE
Attorney I.D. No. 90363
TIMOTHY A. BURKE, ESQUIRE
Attorney I.D. No.320927
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000/(215) 772-1359 fax.
Attorneys for Plaintiffs

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION - CIVIL

| | | |
|---|---|---|
| SHEMIKA JOHNSON, et al., | : | |
| Plaintiff, | : | APRIL TERM, 2022 |
| v. | : | No. 220400162 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |
| CATHERINE McMILLIAN, et al., | : | |
| Plaintiff, | : | APRIL TERM, 2022 |
| v. | : | No. 220400140 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |
| DAMEKA MOMENT, et al., | : | |
| Plaintiff, | : | APRIL TERM, 2022 |
| v. | : | No. 220400142 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |
| LOREN SANDERS, et al., | : | |
| Plaintiff, | : | APRIL TERM, 2022 |
| v. | : | No. 220400153 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |
| SAMAYA SHORT, et al., | : | |
| Plaintiff, | : | APRIL TERM, 2022 |
| v. | : | No. 220400159 |

1

Case ID: 220302588
Control No.: 23110833

| | |
|---|---|
| MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　　　　Defendants. | :<br>: |
| NATISHA THOMAS, et al.,<br>　　　　　　　Plaintiff,<br>　　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　　　　Defendants. | :<br>:　MARCH TERM, 2022<br>:　No. 220400158<br>:<br>: |
| TRINA WALKER-SAVAGE and CLIFTON<br>ISAIAH SAVAGE, JR., et al.,<br>　　　　　　　Plaintiff,<br>　　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　　　　Defendants. | :<br>:　MARCH TERM, 2022<br>:　No. 220400156<br>:<br>:<br>: |
| ROBERT WHITFIELD, et al.,<br>　　　　　　　Plaintiff,<br>　　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　　　　Defendants. | :<br>:　APRIL TERM, 2022<br>:　No. 220400145<br>:<br>: |
| MELVENIA WILLIAMS, et al.,<br>　　　　　　　Plaintiff,<br>　　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　　　　Defendants. | :<br>:　APRIL TERM, 2022<br>:　No. 220400141<br>:<br>: |
| DELQUAN HINES, et al.,<br>　　　　　　　Plaintiff,<br>　　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　　　　Defendants. | :<br>:　APRIL TERM, 2022<br>:　No. 220400136<br>:<br>: |
| IVYANN WITHERSPOON, et al.,<br>　　　　　　　Plaintiff,<br>　　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　　　　Defendants. | :<br>: APRIL TERM, 2022<br>: No. 220400138<br>:<br>: |

**NOTICE OF VIDEO DEPOSITION OF CORPORATE DESIGNEE(S) OF THE**
**TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA d/b/a PENN MEDICINE**

TO:　　James A. Young, Esquire
　　　　Richard S. Margulies, Esquire
　　　　Susan R. Engle, Esquire
　　　　BURNS WHITE LLC
　　　　1880 John F. Kennedy Boulevard, 10th FL

Case ID: 220302588
Control No.: 23110833

Philadelphia, PA 19103

**KINDLY TAKE NOTICE** that Plaintiffs in the above-captioned matter will take the deposition(s) of one or more Corporate Designees of the Trustees of the University of Pennsylvania d/b/a Penn Medicine (collectively, "Defendants") on _____, 2023 at 10:00 a.m. at _____.

The deposition will be taken before a person duly authorized to administer oaths and will be recorded by video and stenographic means.

Defendants are requested to designate one or more officers, directors, managing agents, or other persons who shall be authorized to testify to matters known or reasonably available to the organization and who is the individual most knowledgeable about the Neonatal Intensive Care Unit at The Pennsylvania Hospital of the University of Pennsylvania Health System from 2002 to the present, and specifically including the following subjects:

1. All policies and procedures relating to premature babies and/or babies in the Neonatal Intensive Care Unit;
2. All policies and procedures relating to the feeding of premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
3. All policies and procedures relating to when commercial milk/bovine milk should be given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
4. Knowledge of what year donor breast milk became available to mothers of premature babies and/or babies in the Neonatal Intensive Care Unit;
5. All policies and procedures as to when donor breast milk should be given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
6. Knowledge of what commercial formula/bovine formula(s) were given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
7. Knowledge of all of Defendants' policies and procedures relating to lactation consultants from 2002 to the present;
8. Knowledge of all policies and procedures pertaining to additional monitoring for premature babies and/or babies in the Neonatal Intensive Care Unit who receive commercial milk/bovine milk from 2002 to the present;
9. Knowledge of any policies and procedures pertaining to consent forms relating to giving commercial milk/bovine milk to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;

3

Case ID: 220302588
Control No.: 23110833

10. Knowledge of any policies and procedures pertaining to consent forms relating to giving donor breast milk to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;

11. Knowledge of any policies and procedures pertaining to preventing necrotizing enterocolitis from 2002 to the present;

12. Knowledge of when it was known to Defendants that commercial milk/bovine milk can increase the risk of necrotizing enterocolitis from 2002 to the present;

13. Knowledge of any communications received by Defendants from Mead Johnson and Company LLC, Mead Johnson Nutrition Company, and/or Abbott Laboratories from 2002 to the present.

14. Knowledge of any communications from Defendants to Mead Johnson and Company LLC, Mead Johnson Nutrition Company, and/or Abbott Laboratories from 2002 to the present;

15. Knowledge of any marketing, training, and/or promotional materials relating to Mead Johnson and Company LLC, Mead Johnson Nutrition Company, Abbott Laboratories and/or any products marketed, manufactured, and/or sold by same that were in the possession of Defendants from 2002 to the present.

16. Knowledge of the costs to and/or profits generated from Defendants provision of commercial milk/ bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; and/or

17. Knowledge of any scholarly, educational, training and/or other materials relating to the dangers of giving commercial milk/bovine milk to premature babies and/or babies in the Neonatal Intensive Care Unit that were in the possession of Defendants from 2002 to the present

Please consider this a request to produce any and all records, and/or documents that refer, relate, and/or pertain to the to the above-listed categories.

The deponent is also instructed to bring with him/her the following: (1) any and all communications and/or other documents involving Defendants and relating to when commercial milk/bovine milk should be given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; (2) any and all documents relating to communications between Defendants Mead Johnson and Company LLC, Mead Johnson Nutrition Company, and/or Abbott Laboratories from 2002 to the present; (3) any and all documents relating to the dangers of giving commercial milk/bovine milk to premature babies and/or babies in the Neonatal Intensive Care Unit that were in the possession of Defendants from 2002 to the present; (4) any and all documents relating to any marketing, training, and/or promotional materials

4

Case ID: 220302588
Control No.: 23110833

relating to Mead Johnson and Company LLC, Mead Johnson Nutrition Company, Abbott Laboratories and/or any products marketed, manufactured, and/or sold by same that were in the possession of Defendants from 2002 to the present. (5) any and all documents related to the costs to and/or profits generated from Defendants provision of commercial milk/bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; (6) any and all documents regarding any complaints and/or warnings related to the provision of commercial milk/bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present whether or not initiated or settled through lawsuits, (7) all reports of injuries allegedly arising from the provision of commercial milk/bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; and (9) any and all other documents relative to or responsive to this Notice of Deposition.

The deponent must also bring with him/her complete copies of all prior deposition transcripts where he/she has offered sworn testimony in cases involving similar or comparable products and/or allegations. The deponent shall also bring a copy of his or her CV or resume. The deposition will continue from day to day until completed.

**KLINE & SPECTER, P.C.**

/s/Tobias L. Millrood

TOBIAS L. MILLROOD, ESQUIRE

***Attorney for Plaintiff***

Case ID: 220302588
Control No.: 23110833

## CERTIFICATE OF SERVICE

I, Tobias L. Millrood, hereby certify that on the date below, I served a true and correct

copy of the foregoing Notice of Deposition on the following counsel of records:

| | |
|---|---|
| Catherine M. Recker (PA Bar No. 56813)<br>Amy B. Carver (PA Bar No. 84819)<br>Richard D. Walk, III (PA Bar No. 329420)<br>WELSH & RECKER, P.C.<br>306 Walnut Street<br>Philadelphia, PA 19106<br>Tel: (215) 972-6430<br>cmrecker@welshrecker.com<br>abcarver@welshrecker.com<br>rwalk@welshrecker.com<br><br>Kenneth A. Murphy, Esquire<br>Heather R. Olson, Esquire<br>TUCKER LAW GROUP, LLC<br>Ten Penn Center<br>1801 Market Street, Suite 2500<br>Philadelphia, PA 19103<br>kmurphy@tlgattorneys.com<br>holson@tlgattorneys.com<br><br><br>*Attorneys for Defendant Mead Johnson &*<br>*Company LLC and* Mead Johnson Nutrition<br>Company | James A. Young, Esquire<br>Richard S. Margulies, Esquire<br>Susan R. Engle, Esquire<br>BURNS WHITE LLC<br>Attorney ID Nos. 00213/62306/81671<br>1880 John F. Kennedy Boulevard, 10th FL<br>Philadelphia, PA 19103<br>Tel: (215) 587-1625/1628/1669<br>jayoung@burnswhite.com<br>rsmargulies@burnswhite.com<br>srengle@burnswhite.com<br><br>*Attorneys for Defendant University of*<br>*Pennsylvania Hospital of the University of*<br>*Pennsylvania Health System d/b/a*<br>*Pennsylvania Hospital and University of*<br>*Pennsylvania Hospital of the University of*<br>*Pennsylvania Health System d/b/a Penn*<br>*Medicine* |
| Sean P. Fahey, Esquire<br>TROUTMAN PEPPER HAMILTON<br>SANDERS LLP<br>3000 Two Logan Square<br>Philadelphia, PA 19103-2799<br>Tel: (215) 981-4296<br>Sean.Fahey@troutman.com<br><br>Ronn E. Fuchs, Esquire | Donald J. Brooks, Jr., Esquire<br>Brooke A. Scicchitano, Esquire<br>ECKERT SEAMANS CHERIN & MELOTT<br>Two Liberty Place<br>50 South 16th Street, 22nd Floor<br>Philadelphia, PA 19102<br>Tel: (215) 851-8400<br>dbrooks@eckertseamans.com<br>bscicchitano@eckertseamans.com |

6

Case ID: 220302588<br>Control No.: 23110833

| | |
|---|---|
| TROUTMAN PEPPER HAMILTON SANDERS LLP<br>301 Carnegie Center, Suite 400<br>Princeton, NJ 08540<br>Tel: (609) 951-4184<br>Ronni.Fuchs@troutman.com<br><br>Joseph E. O'Neill<br>Meaghann C. Porth<br>Ryan J. O'Neill<br>CAMPBELL CONROY & O'NEILL, P.C.<br>1205 Westlake Drive, Suite 330<br>Berwyn, PA 19312<br>Tel: (610) 964-1900<br><br><br>John R. Timmer (PA ID No. 89814)<br>SCHNADER HARRISON SEGAL<br>& LEWIS LLIP<br>1600 Market Street, Suite 3600<br>Philadelphia, PA 19103-7286<br>Tel: (215) 751-2309/2451<br>Fax: (215) 751-22-05<br>jtimmer@schnader.com<br><br>Kimberly A. Brown (PA ID No. 56200)<br>JONES DAY<br>500 Grant Street, Suite 4500<br>Pittsburgh, PA 15219<br>Tel: (412) 394-7995<br>Fax: (412) 394-7959<br>kabrown@jonesday.com<br><br><br>*Attorneys for Defendant Abbott Laboratories* | Jennifer V. Weachter<br>JWeachter@eckertseamans.com<br><br>*Attorneys for Defendants Albert Einstein Medical Center a/k/a Einstein Medical Center and Albert Einstein Healthcare Network d/b/a Einstein Healthcare Network* |
| James A. Young, Esquire<br>Richard S. Margulies, Esquire<br>Susan R. Engle, Esquire<br>BURNS WHITE LLOC<br>Attorney ID Nos. 00213/62306/81671<br>1880 John F. Kennedy Boulevard, 10th FL<br>Philadelphia, PA 19103<br>Tel: (215) 587=1625/1628/1669<br>jayoung@burnswhite.com | Donald J. Brooks, Jr., Esquire<br>Brooke A. Scicchitano, Esquire<br>ECKERT SEAMANS CHERIN & MELOTT<br>Two Liberty Place<br>50 South 16th Street, 22nd Floor<br>Philadelphia, PA 19102<br>Tel: (215) 851-8400<br>dbrooks@eckertseamans.com<br>bscicchitano@eckertseamans.com |

7

Case ID: 220302588<br>Control No.: 23110833

| | |
|---|---|
| rsmargulies@burnswhite.com<br>srengle@burnswhite.com<br><br>*Attorneys for Defendant, Temple University Health System, Inc., d/b/a Temple University Hospital* | Jennifer V. Weachter<br>JWeachter@eckertseamans.com<br><br>*Attorney for Defendants, Thomas Jefferson University Hospitals, Inc., d/b/a Thomas Jefferson University Hospital, and Thomas Jefferson University d/b/a Jefferson Health System* |

**KLINE & SPECTER, P.C.**

By: */s/ Tobias L. Millrood*
     Tobias L. Millrood
     1525 Locust Street
     Philadelphia, PA 19102
     Phone: 215-772-1000
     Fax: 215-772-1359
     tobi.millrood@klinespecter.com

Dated: August 17, 2023            *Plaintiff's' Counsel*

Case ID: 220302588
Control No.: 23110833

FILED
03 NOV 2023 01:03 pm
Civil Administration
J. BOYD

# EXHIBIT B

Case ID: 220302588
Control No.: 23110833

| | |
|---|---|
| **From:** | Elizabeth Crawford |
| **To:** | Carol Lippmann; jayoung; rsmargulies; srengle@burnswhite.com |
| **Cc:** | Tobi Millrood; Melissa Merk; Timothy Burke; Jack O"Neill; Patrick Sidebotham; Ben Whiting; Mark Weinstein; cmrecker@welshrecker.com; abcarver@welshrecker.com; rwalk@welshrecker.com; kmurphy@tlgattorneys.com; holson@tlgattorneys.com; Sean.Fahey; Donald J. Brooks Jr.; Brooke Scicchitano; Jennifer V. Weachter |
| **Subject:** | Re: NEC Infant Formula Litigation \| The Pennsylvania Health System d/b/a Pennsylvania |
| **Date:** | Wednesday, September 27, 2023 11:57:25 AM |

Counsel: Following up on dates for our notice of deposition of the corporate designee(s) of the Pennsylvania Health System. Please provide dates at your earliest opportunity. Thank you.

**Elizabeth A. Crawford, Esquire**

*Partner*

KLINE & SPECTER

1525 LOCUST STREET

PHILADELPHIA, PA 19102

P: 215-792-5619

E: ELIZABETH.CRAWFORD@KLINESPECTER.COM

W: WWW.KLINESPECTER.COM/ELIZABETHCRAWFORD

---

**From:** Carol Lippmann <Carol.Lippmann@klinespecter.com>
**Sent:** Thursday, August 17, 2023 8:09 PM
**To:** jayoung <jayoung@burnswhite.com>; rsmargulies <rsmargulies@burnswhite.com>; srengle@burnswhite.com <srengle@burnswhite.com>
**Cc:** Tobi Millrood <Tobi.Millrood@klinespecter.com>; Melissa Merk <Melissa.Merk@klinespecter.com>; Timothy Burke <Timothy.Burke@klinespecter.com>; Elizabeth Crawford <Elizabeth.Crawford@KlineSpecter.com>; Jack O'Neill <Jack.ONeill@klinespecter.com>; Patrick Sidebotham <Patrick.Sidebotham@klinespecter.com>; Ben Whiting <ben.whiting@kellerpostman.com>; Mark Weinstein <mark.weinstein@kellerpostman.com>; cmrecker@welshrecker.com <cmrecker@welshrecker.com>; abcarver@welshrecker.com <abcarver@welshrecker.com>; rwalk@welshrecker.com <rwalk@welshrecker.com>; kmurphy@tlgattorneys.com <kmurphy@tlgattorneys.com>; holson@tlgattorneys.com <holson@tlgattorneys.com>; Sean.Fahey <Sean.Fahey@Troutman.com>; Donald J. Brooks Jr. <dbrooks@eckertseamans.com>; Brooke Scicchitano <bscicchitano@eckertseamans.com>; Jennifer V. Weachter <JWeachter@eckertseamans.com>
**Subject:** NEC Infant Formula Litigation \| The Pennsylvania Health System d/b/a Pennsylvania Hospital

Dear Counsel:

Please see the attached correspondence and Notice of Video Deposition of Corporate Designee(s) of The The Pennsylvania Health System d/b/a Pennsylvania Hospital.

Thank you,

**Carol Lippmann**

Case ID: 220302588
Control No.: 23110833

Litigation Paralegal to Tobi Millrood, Esq.
Kline & Specter, P.C.
1525 Locust Street
Philadelphia, PA 19102
D. (215) 772-1392
F. (215) 792-5502
Carol.lippmann@klinespecter.com
www.klinespecter.com

| From: | Elizabeth Crawford |
|---|---|
| To: | Carol Lippmann; jayoung; rsmargulies; srengle@burnswhite.com |
| Cc: | Tobi Millrood; Melissa Merk; Jack O'Neill; Helen Lawless; Ben Whiting; Mark Weinstein; Patrick Sidebotham; Timothy Burke; Donald J. Brooks Jr.; Brooke Scicchitano; Jennifer V. Weachter; Sean.Fahey; kmurphy@tlgattorneys.com; holson@tlgattorneys.com; cmrecker@welshrecker.com; abcarver@welshrecker.com; rwalk@welshrecker.com |
| Subject: | Re: NEC Infant Formula Litigation | The Trustees of the University of Pennsylvania d/b/a Penn Medicine |
| Date: | Wednesday, September 27, 2023 11:58:03 AM |

Counsel: Following up on dates for our notice of deposition of the corporate designee(s) of Penn Medicine. Please provide dates at your earliest opportunity. Thank you.

**Elizabeth A. Crawford, Esquire**

*Partner*

KLINE & SPECTER

1525 LOCUST STREET

PHILADELPHIA, PA 19102

P: 215-792-5619

E: ELIZABETH.CRAWFORD@KLINESPECTER.COM

W: WWW.KLINESPECTER.COM/ELIZABETHCRAWFORD

---

**From:** Carol Lippmann <Carol.Lippmann@klinespecter.com>
**Sent:** Thursday, August 17, 2023 8:07 PM
**To:** jayoung <jayoung@burnswhite.com>; rsmargulies <rsmargulies@burnswhite.com>; srengle@burnswhite.com <srengle@burnswhite.com>
**Cc:** Tobi Millrood <Tobi.Millrood@klinespecter.com>; Melissa Merk <Melissa.Merk@klinespecter.com>; Jack O'Neill <Jack.ONeill@klinespecter.com>; Elizabeth Crawford <Elizabeth.Crawford@KlineSpecter.com>; Helen Lawless <Helen.Lawless@klinespecter.com>; Ben Whiting <ben.whiting@kellerpostman.com>; Mark Weinstein <mark.weinstein@kellerpostman.com>; Patrick Sidebotham <Patrick.Sidebotham@klinespecter.com>; Timothy Burke <Timothy.Burke@klinespecter.com>; jayoung <jayoung@burnswhite.com>; rsmargulies <rsmargulies@burnswhite.com>; srengle@burnswhite.com <srengle@burnswhite.com>; Donald J. Brooks Jr. <dbrooks@eckertseamans.com>; Brooke Scicchitano <bscicchitano@eckertseamans.com>; Jennifer V. Weachter <JWeachter@eckertseamans.com>; Sean.Fahey <Sean.Fahey@Troutman.com>; kmurphy@tlgattorneys.com <kmurphy@tlgattorneys.com>; holson@tlgattorneys.com <holson@tlgattorneys.com>; cmrecker@welshrecker.com <cmrecker@welshrecker.com>; abcarver@welshrecker.com <abcarver@welshrecker.com>; rwalk@welshrecker.com <rwalk@welshrecker.com>
**Subject:** NEC Infant Formula Litigation | The Trustees of the University of Pennsylvania d/b/a Penn Medicine

Dear Counsel:

Please see the attached correspondence and Notice of Video Deposition of Corporate Designee(s) of The Trustees of the University of Pennsylvania d/b/a Penn Medicine.

Case ID: 220302588
Control No.: 23110833

Thank you,

**Carol Lippmann**
Litigation Paralegal to Tobi Millrood, Esq.
Kline & Specter, P.C**.**
1525 Locust Street
Philadelphia, PA 19102
D. (215) 772-1392
F. (215) 792-5502
Carol.lippmann@klinespecter.com
www.klinespecter.com

FILED
03 NOV 2023 01:03 pm
Civil Administration
J. BOYD

# EXHIBIT C

Case ID: 220302588
Control No.: 23110833

| | |
|---|---|
| **From:** | Amanda Bee |
| **To:** | jayoung; rsmargulies; srengle@burnswhite.com |
| **Cc:** | Tobi Millrood; Timothy Burke; Elizabeth Crawford; Melissa Merk; Philip Pasquarello; Helen Lawless; Jack O'Neill; Patrick Sidebotham; ben.whiting@kellerpostman.com; mark.weinstein@kellerpostman.com; cmrecker@welshrecker.com; abcarver@welshrecker.com; rwalk@welshrecker.com; kmurphy@tlgattorneys.com; holson@tlgattorneys.com; Sean.Fahey; Donald J. Brooks Jr.; bscicchitano@eckertseamans.com; Jennifer V. Weachter; Carol Lippmann |
| **Subject:** | NEC Infant Formula Litigation | The Pennsylvania Health System d/b/a Pennsylvania Hospital |
| **Date:** | Wednesday, October 11, 2023 3:33:41 PM |
| **Attachments:** | NEC Corp Designee NoD - UPH dba Penn Hospital 10.11.23.pdf<br>2023-10-11 Letter to Penn Hospital re NoD.pdf |

Dear Counsel:

Please see the attached correspondence and Notice of Video Deposition of Corporate Designee(s) of The Pennsylvania Health System d/b/a Pennsylvania Hospital.

Thank you,

**Amanda L. Bee**
Legal Assistant to Jack O'Neill, Esquire and Richard Gorman, Esquire
Kline & Specter, P.C.
1525 Locust Street
Philadelphia, PA 19102
215.772.1000
215.772.0563 direct dial
www.klinespecter.com

# KLINE & SPECTER PC

**ATTORNEYS AT LAW**
**1525 LOCUST STREET**
**PHILADELPHIA, PENNSYLVANIA 19102**
**WWW.KLINESPECTER.COM**

TOBIAS L. MILLROOD                                                    TOBI.MILLROOD@KLINESPECTER.COM

**215-772-1358**

**800-597-9585**

FAX: **215-792-5502**

October 11, 2023

**Via Email Only**
James A. Young, Esquire
Richard S. Margulies, Esquire
Susan R. Engle, Esquire
BURNS WHITE LLC
1880 John F. Kennedy Boulevard, 10th FL
Philadelphia, PA 19103

Re:     Abdullah, et al.. v. Mead Johnson & Company, et al., Case No. 2203025832
         Carter, et al., v. Mead Johnson & Company, et al., Case No. 220302588
         Drayton et al., v. Mead Johnson & Company, et al., Case No.220302594
         Stills, et al., v. Mead Johnson & Company, et al., Case No. 220302617
         Taylor, et al., v. Mead Johnson & Company, et al., Case No. 220302606
         Wieger, et al., v. Mead Johnson & Company, et al., Case No.220302614
         Wieger, et al., v. Mead Johnson & Company, et al., Case No. 220302601
         Henderson, et al., v. Mead Johnson & Company, et al., Case No. 220400127

Dear Counsel:

Attached is a Notice of Video Deposition of the Corporate Designee(s) of Defendant The Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a Pennsylvania Hospital. This notice applies to the following the following cases pending against The Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a Pennsylvania Hospital in the infant formula litigation.

- Abdullah, et al.. v. Mead Johnson & Company, et al., Case No. 2203025832
- Carter, et al., v. Mead Johnson & Company, et al., Case No. 220302588
- Drayton et al., v. Mead Johnson & Company, et al., Case No.220302594
- Stills, et al., v. Mead Johnson & Company, et al., Case No. 220302617
- Taylor, et al., v. Mead Johnson & Company, et al., Case No. 220302606
- Wieger, et al., v. Mead Johnson & Company, et al., Case No.220302614
- Wieger, et al., v. Mead Johnson & Company, et al., Case No. 220302601
- Henderson, et al., v. Mead Johnson & Company, et al., Case No. 220400127

Page 2

Very truly yours,

Tobias L. Millrood

Enclosure
cc:    All Counsel of Record (via email only)

**KLINE & SPECTER, P.C.**
THOMAS R. KLINE, ESQUIRE
Attorney I.D. No. 28895
TOBIAS MILLROOD, ESQUIRE
Attorney I.D. No. 77764
ELIZABETH CRAWFORD, ESQUIRE
Attorney I.D. No. 313702
MELISSA MERK, ESQUIRE
Attorney I.D. No. 90363
TIMOTHY A. BURKE, ESQUIRE
Attorney I.D. No.320927
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000/(215) 772-1359 fax.
Attorneys for Plaintiffs

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION - CIVIL

| | |
|---|---|
| TERRAINE ABDULLAH, et al.,<br>                    Plaintiff,<br>          v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>          Defendants. | :<br>: MARCH TERM, 2022<br>: No. 220302583<br>:<br>: |
| HOLLI CARTER, et al.,<br>                    Plaintiff,<br>          v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>          Defendants. | :<br>:  MARCH TERM, 2022<br>:  No. 220302588<br>:<br>: |
| SHONDERA DRAYTON, et al.,<br>                    Plaintiff,<br>          v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>          Defendants. | :<br>:  MARCH TERM, 2022<br>:  No. 220302594<br>:<br>: |
| ALICE STILLS, et al.,<br>                    Plaintiff,<br>          v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>          Defendants. | :<br>:  MARCH TERM, 2022<br>: No. 220302617<br>:<br>: |
| CHRISTINA TAYLOR, et al.,<br>                    Plaintiff,<br>          v. | :<br>:  MARCH TERM, 2022<br>:  No. 220302606 |

1

Case ID: 220302588
Control No.: 23110833

| | |
|---|---|
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |
| GINA WIEGER, et al., | : |
| Plaintiff, | : MARCH TERM, 2022 |
| v. | : No. 220302614 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |
| GINA WIEGER, et al., | : |
| Plaintiff, | : MARCH TERM, 2022 |
| v. | : No. 220302601 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |
| JANEE HENDERSON, et al., | : |
| Plaintiff, | : APRIL TERM, 2022 |
| v. | : No. 220400127 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |

**NOTICE OF VIDEO DEPOSITION OF CORPORATE DESIGNEE(S) OF THE
PENNSYLVANIA HOSPITAL OF THE UNIVERSITY OF PENNSYLVANIA
HEALTH SYSTEM d/b/a PENNSYLVANIA HOSPITAL**

TO:  James A. Young, Esquire
Burns White LLC
1880 John F. Kennedy Blvd., 10th Floor
Philadelphia, PA 19103

     **KINDLY TAKE NOTICE**  that Plaintiffs in the above-captioned matter will take

the deposition(s) of one or more Corporate Designees of The Pennsylvania Hospital of

the University of Pennsylvania Health System d/b/a Pennsylvania Hospital (collectively,

"Defendants") on November 1, 2023 at 10:00 a.m. at the office of Kline & Specter, P.C. at 1525

Locust Street, Philadelphia, PA 19102.

     The deposition will be taken before a person duly authorized to administer oaths and

will be recorded by video and stenographic means.

     Defendants are requested to designate one or more officers, directors, managing agents, or

2

other persons who shall be authorized to testify to matters known or reasonably available to the organization and who is the individual most knowledgeable about the Neonatal Intensive Care Unit at The Pennsylvania Hospital of the University of Pennsylvania Health System from 2002 to the present, and specifically including the following subjects:

1. All policies and procedures relating to premature babies and/or babies in the Neonatal Intensive Care Unit;
2. All policies and procedures relating to the feeding of premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
3. All policies and procedures relating to when commercial milk/bovine milk should be given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
4. Knowledge of what year donor breast milk became available to mothers of premature babies and/or babies in the Neonatal Intensive Care Unit;
5. All policies and procedures as to when donor breast milk should be given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
6. Knowledge of what commercial formula/bovine formula(s) were given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
7. Knowledge of all of Defendants' policies and procedures relating to lactation consultants from 2002 to the present;
8. Knowledge of all policies and procedures pertaining to additional monitoring for premature babies and/or babies in the Neonatal Intensive Care Unit who receive commercial milk/bovine milk from 2002 to the present;
9. Knowledge of any policies and procedures pertaining to consent forms relating to giving commercial milk/bovine milk to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
10. Knowledge of any policies and procedures pertaining to consent forms relating to giving donor breast milk to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
11. Knowledge of any policies and procedures pertaining to preventing necrotizing enterocolitis from 2002 to the present;
12. Knowledge of when it was known to Defendants that commercial milk/bovine milk can increase the risk of necrotizing enterocolitis from 2002 to the present;
13. Knowledge of any communications received by Defendants from Mead Johnson and Company LLC, Mead Johnson Nutrition Company, and/or Abbott Laboratories from 2002 to the present.
14. Knowledge of any communications from Defendants to Mead Johnson and Company LLC, Mead Johnson Nutrition Company, and/or Abbott Laboratories from 2002 to the present;
15. Knowledge of any marketing, training, and/or promotional materials relating to Mead Johnson and Company LLC, Mead Johnson Nutrition Company, Abbott Laboratories and/or any products marketed, manufactured, and/or sold by same that were in the possession of Defendants from 2002 to the present.

Case ID: 220302588
Control No.: 23110833

16. Knowledge of the costs to and/or profits generated from Defendants provision of commercial milk/ bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; and/or

17. Knowledge of any scholarly, educational, training and/or other materials relating to the dangers of giving commercial milk/bovine milk to premature babies and/or babies in the Neonatal Intensive Care Unit that were in the possession of Defendants from 2002 to the present

Please consider this a request to produce any and all records, and/or documents that refer, relate, and/or pertain to the to the above-listed categories.

The deponent is also instructed to bring with him/her the following: (1) any and all communications and/or other documents involving Defendants and relating to when commercial milk/bovine milk should be given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; (2) any and all documents relating to communications between Defendants Mead Johnson and Company LLC, Mead Johnson Nutrition Company, and/or Abbott Laboratories from 2002 to the present; (3) any and all documents relating to the dangers of giving commercial milk/bovine milk to premature babies and/or babies in the Neonatal Intensive Care Unit that were in the possession of Defendants from 2002 to the present; (4) any and all documents relating to any marketing, training, and/or promotional materials relating to Mead Johnson and Company LLC, Mead Johnson Nutrition Company, Abbott Laboratories and/or any products marketed, manufactured, and/or sold by same that were in the possession of Defendants from 2002 to the present. (5) any and all documents related to the costs to and/or profits generated from Defendants provision of commercial milk/bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; (6) any and all documents regarding any complaints and/or warnings related to the provision of commercial milk/bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present whether or not initiated or settled through

4

lawsuits, (7) all reports of injuries allegedly arising from the provision of commercial milk/bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; and (9) any and all other documents relative to or responsive to this Notice of Deposition.

The deponent must also bring with him/her complete copies of all prior deposition transcripts where he/she has offered sworn testimony in cases involving similar or comparable products and/or allegations. The deponent shall also bring a copy of his or her CV or resume. The deposition will continue from day to day until completed.

**KLINE & SPECTER, P.C.**

TOBIAS L. MILLROOD, ESQUIRE

***Attorney for Plaintiff***

5

## CERTIFICATE OF SERVICE

I, Tobias L. Millrood, hereby certify that on the date below, I served a true and correct copy of the foregoing Notice of Deposition on the following counsel of records:

| | |
|---|---|
| Catherine M. Recker (PA Bar No. 56813)<br>Amy B. Carver (PA Bar No. 84819)<br>Richard D. Walk, III (PA Bar No. 329420)<br>WELSH & RECKER, P.C.<br>306 Walnut Street<br>Philadelphia, PA 19106<br>Tel: (215) 972-6430<br>cmrecker@welshrecker.com<br>abcarver@welshrecker.com<br>rwalk@welshrecker.com<br><br>Kenneth A. Murphy, Esquire<br>Heather R. Olson, Esquire<br>TUCKER LAW GROUP, LLC<br>Ten Penn Center<br>1801 Market Street, Suite 2500<br>Philadelphia, PA 19103<br>kmurphy@tlgattorneys.com<br>holson@tlgattorneys.com<br><br><br>*Attorneys for Defendant Mead Johnson &*<br>*Company LLC and* Mead Johnson Nutrition<br>Company | James A. Young, Esquire<br>Richard S. Margulies, Esquire<br>Susan R. Engle, Esquire<br>BURNS WHITE LLC<br>Attorney ID Nos. 00213/62306/81671<br>1880 John F. Kennedy Boulevard, 10th FL<br>Philadelphia, PA 19103<br>Tel: (215) 587-1625/1628/1669<br>jayoung@burnswhite.com<br>rsmargulies@burnswhite.com<br>srengle@burnswhite.com<br><br>*Attorneys for Defendant University of*<br>*Pennsylvania Hospital of the University of*<br>*Pennsylvania Health System d/b/a*<br>*Pennsylvania Hospital and University of*<br>*Pennsylvania Hospital of the University of*<br>*Pennsylvania Health System d/b/a Penn*<br>*Medicine*<br><br>Kathleen M. Kramer, Esquire<br>Gabor Ovari, Esquire<br>MARSHALL DENNEHEY, P.C.<br>2000 Market Street, Suite 2300<br>Philadelphia, PA 19103<br>Tel: (215) 575-2600<br>kmkramer@mdwcg.com<br>ggovari@mdwcg.com<br><br>*Attorneys for Defendant, The Trustees of the*<br>*University of Pennsylvania d/b/a The*<br>*Hospital of the University of Pennsylvania* |
| Sean P. Fahey, Esquire<br>TROUTMAN PEPPER HAMILTON<br>SANDERS LLP<br>3000 Two Logan Square | Donald J. Brooks, Jr., Esquire<br>Brooke A. Scicchitano, Esquire<br>ECKERT SEAMANS CHERIN & MELOTT<br>Two Liberty Place |

Case ID: 220302588<br>Control No.: 23110833

Philadelphia, PA 19103-2799
Tel: (215) 981-4296
Sean.Fahey@troutman.com

Ronn E. Fuchs, Esquire
TROUTMAN PEPPER HAMILTON
SANDERS LLP
301 Carnegie Center, Suite 400
Princeton, NJ 08540
Tel: (609) 951-4184
Ronni.Fuchs@troutman.com
Noel.Ix@Troutman.com
Christopher.Brolley@troutman.com;
Brett.Broczkowski@troutman.com

Joseph E. O'Neill
Meaghann C. Porth
Ryan J. O'Neill
CAMPBELL CONROY & O'NEILL, P.C.
1205 Westlake Drive, Suite 330
Berwyn, PA 19312
Tel: (610) 964-1900
joneil@campbelltriallawyers.com
mporth@campbelltriallawyers.com
roneil@campbelltriallawyers.com

Margues Hillman Richeson, Esquire
JONES DAY
901 Lakeside Avenue
North Point
Cleveland, Ohio 44114
Tel: (216) 586-7195
mhricheson@jonesday.com

Jennifer B. Flannery, Esquire
Attorney ID No. 75546
JONES DAY
1221 Peachtree Street, N.E., Suite 400
Atlanta, GE 30361
Tel: (404) 581-8008
jbflannery@jonesday.com

*Attorneys for Defendant Abbott Laboratories*

50 South 16th Street, 22nd Floor
Philadelphia, PA 19102
Tel: (215) 851-8400
dbrooks@eckertseamans.com
bscicchitano@eckertseamans.com
Jennifer V. Weachter
JWeachter@eckertseamans.com

*Attorneys for Defendants Albert Einstein Medical Center a/k/a Einstein Medical Center and Albert Einstein Healthcare Network d/b/a Einstein Healthcare Network*

| | |
|---|---|
| James A. Young, Esquire | Donald J. Brooks, Jr., Esquire |

Case ID: 220302588
Control No.: 23110833

| Richard S. Margulies, Esquire | Brooke A. Scicchitano, Esquire |
|---|---|
| Susan R. Engle, Esquire | ECKERT SEAMANS CHERIN & MELOTT |
| BURNS WHITE LLOC | Two Liberty Place |
| Attorney ID Nos. 00213/62306/81671 | 50 South 16th Street, 22nd Floor |
| 1880 John F. Kennedy Boulevard, 10th FL | Philadelphia, PA 19102 |
| Philadelphia, PA 19103 | Tel: (215) 851-8400 |
| Tel: (215) 587=1625/1628/1669 | dbrooks@eckertseamans.com |
| jayoung@burnswhite.com | bscicchitano@eckertseamans.com |
| rsmargulies@burnswhite.com | Jennifer V. Weachter |
| srengle@burnswhite.com | JWeachter@eckertseamans.com |
| | |
| *Attorneys for Defendant, Temple University Health System, Inc., d/b/a Temple University Hospital* | *Attorney for Defendants, Thomas Jefferson University Hospitals, Inc., d/b/a Thomas Jefferson University Hospital, and Thomas Jefferson University d/b/a Jefferson Health System* |

**KLINE & SPECTER, P.C.**

By: _____

Tobias L. Millrood
1525 Locust Street
Philadelphia, PA 19102
Phone: 215-772-1000
Fax: 215-772-1359
tobi.millrood@klinespecter.com

Dated: October 11, 2023                    *Plaintiff's' Counsel*

8

Case ID: 220302588
Control No.: 23110833

| **From:** | Amanda Bee |
|---|---|
| **To:** | jayoung; rsmargulies; srengle@burnswhite.com |
| **Cc:** | Tobi Millrood; Timothy Burke; Elizabeth Crawford; Melissa Merk; Helen Lawless; Philip Pasquarello; Jack O"Neill; Patrick Sidebotham; Donald J. Brooks Jr.; ben.whiting@kellerpostman.com; mark.weinstein@kellerpostman.com; bscicchitano@eckertseamans.com; Jennifer V. Weachter; Sean.Fahey; kmurphy@tlgattorneys.com; holson@tlgattorneys.com; cmrecker@welshrecker.com; abcarver@welshrecker.com; rwalk@welshrecker.com; Carol Lippmann |
| **Subject:** | NEC Infant Formula Litigation | The Trustees of the University of Pennsylvania d/b/a Penn Medicine |
| **Date:** | Wednesday, October 11, 2023 3:33:38 PM |
| **Attachments:** | 2023-10-11 Letter to Penn Medecine re NoD.pdf<br>NEC Corp Designee NoD - UPH dba Penn Medicine 10.11.23.pdf<br>2023-10-11 Letter to Penn Medecine re NoD.pdf<br>NEC Corp Designee NoD - UPH dba Penn Medicine 10.11.23.pdf |

Dear Counsel:

Please see the attached correspondence and Notice of Video Deposition of Corporate Designee(s) of The Trustees of the University of Pennsylvania d/b/a Penn Medicine.

 Thank you,

**Amanda L. Bee**
Legal Assistant to Jack O'Neill, Esquire and Richard Gorman, Esquire
Kline & Specter, P.C.
1525 Locust Street
Philadelphia, PA 19102
215.772.1000
215.772.0563 direct dial
www.klinespecter.com

Case ID: 220302588
Control No.: 23110833

# KLINE & SPECTER PC

**ATTORNEYS AT LAW**
**1525 LOCUST STREET**
**PHILADELPHIA, PENNSYLVANIA 19102**
**WWW.KLINESPECTER.COM**

TOBIAS L. MILLROOD                                                                        TOBI.MILLROOD@KLINESPECTER.COM

_____

**215-772-1358**

**800-597-9585**

**FAX: 215-792-5502**

October 11, 2023

**Via Email Only**
James A. Young, Esquire
Richard S. Margulies, Esquire
Susan R. Engle, Esquire
BURNS WHITE LLC
1880 John F. Kennedy Boulevard, 10th FL
Philadelphia, PA 19103

Re:     Johnson, et al.. v. Mead Johnson & Company, et al., Case No. 220400162
McMillian, et al., v. Mead Johnson & Company, et al., Case No. 220400140
Moment, et al., v. Mead Johnson & Company, et al., Case No.220400142
Sanders, et al., v. Mead Johnson & Company, et al., Case No. 220400153
Short, et al., v. Mead Johnson & Company, et al., Case No. 220400159
Thomas, et al., v. Mead Johnson & Company, et al., Case No.220400158
Walker-Savage, et al., v. Mead Johnson & Company, et al., Case No. 220400156
Whitfield, et al., v. Mead Johnson & Company, et al., Case No. 220400145
Williams, et al., v. Mead Johnson & Company, et al., Case No. 220400141
Hines, et al., v. Mead Johnson & Company, et al., Case No. 220400136
Witherspoon, et al., v. Mead Johnson & Company, et al., Case No. 220400138

Dear Counsel:

Attached is a Notice of Video Deposition of the Corporate Designee(s) of Defendant the
Trustees of the University of Pennsylvania d/b/a Penn Medicine. This notice applies to the
following the following cases pending against the Trustees of the University of Pennsylvania
d/b/a Penn Medicine in the infant formula litigation.

- Johnson, et al.. v. Mead Johnson & Company, et al., Case No. 220400162
- McMillian, et al., v. Mead Johnson & Company, et al., Case No. 220400140
- Moment, et al., v. Mead Johnson & Company, et al., Case No.220400142
- Sanders, et al., v. Mead Johnson & Company, et al., Case No. 220400153
- Short, et al., v. Mead Johnson & Company, et al., Case No. 220400159
- Thomas, et al., v. Mead Johnson & Company, et al., Case No.220400158
- Walker-Savage, et al., v. Mead Johnson & Company, et al., Case No. 220400156
- Whitfield, et al., v. Mead Johnson & Company, et al., Case No. 220400145

Case ID: 220302588
Control No.: 23110833

Page 2

- Williams, et al., v. Mead Johnson & Company, et al., Case No. 220400141
- Hines, et al., v. Mead Johnson & Company, et al., Case No. 220400136
- Witherspoon, et al., v. Mead Johnson & Company, et al., Case No. 220400138

Very truly yours,

Tobias L. Millrood

Enclosure
cc:     All Counsel of Record (via email only)

**KLINE & SPECTER, P.C.**
THOMAS R. KLINE, ESQUIRE
Attorney I.D. No. 28895
TOBIAS MILLROOD, ESQUIRE
Attorney I.D. No. 77764
ELIZABETH CRAWFORD, ESQUIRE
Attorney I.D. No. 313702
MELISSA MERK, ESQUIRE
Attorney I.D. No. 90363
TIMOTHY A. BURKE, ESQUIRE
Attorney I.D. No.320927
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000/(215) 772-1359 fax.
Attorneys for Plaintiffs

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION - CIVIL

| | |
|---|---|
| SHEMIKA JOHNSON, et al., : | |
| Plaintiff, : | APRIL TERM, 2022 |
| v. : | No. 220400162 |
| MEAD JOHNSON & COMPANY, LLC, et al., : | |
| Defendants. : | |
| CATHERINE McMILLIAN, et al., : | |
| Plaintiff, : | APRIL TERM, 2022 |
| v. : | No. 220400140 |
| MEAD JOHNSON & COMPANY, LLC, et al., : | |
| Defendants. : | |
| DAMEKA MOMENT, et al., : | |
| Plaintiff, : | APRIL TERM, 2022 |
| v. : | No. 220400142 |
| MEAD JOHNSON & COMPANY, LLC, et al., : | |
| Defendants. : | |
| LOREN SANDERS, et al., : | |
| Plaintiff, : | APRIL TERM, 2022 |
| v. : | No. 220400153 |
| MEAD JOHNSON & COMPANY, LLC, et al., : | |
| Defendants. : | |
| SAMAYA SHORT, et al., : | |
| Plaintiff, : | APRIL TERM, 2022 |
| v. : | No. 220400159 |

1

Case ID: 220302588
Control No.: 23110833

| | |
|---|---|
| MEAD JOHNSON & COMPANY, LLC, et al., <br> Defendants. | : <br> : |

| | |
|---|---|
| NATISHA THOMAS, et al., <br> Plaintiff, <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> Defendants. | : <br> : MARCH TERM, 2022 <br> : No. 220400158 <br> : <br> : |

| | |
|---|---|
| TRINA WALKER-SAVAGE and CLIFTON <br> ISAIAH SAVAGE, JR., et al., <br> Plaintiff, <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> Defendants. | : <br> : MARCH TERM, 2022 <br> : No. 220400156 <br> : <br> : <br> : |

| | |
|---|---|
| ROBERT WHITFIELD, et al., <br> Plaintiff, <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> Defendants. | : <br> : APRIL TERM, 2022 <br> : No. 220400145 <br> : <br> : |

| | |
|---|---|
| MELVENIA WILLIAMS, et al., <br> Plaintiff, <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> Defendants. | : <br> : APRIL TERM, 2022 <br> : No. 220400141 <br> : <br> : |

| | |
|---|---|
| DELQUAN HINES, et al., <br> Plaintiff, <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> Defendants. | : <br> : APRIL TERM, 2022 <br> : No. 220400136 <br> : <br> : |

| | |
|---|---|
| IVYANN WITHERSPOON, et al., <br> Plaintiff, <br> v. <br> MEAD JOHNSON & COMPANY, LLC, et al., <br> Defendants. | : <br> : APRIL TERM, 2022 <br> : No. 220400138 <br> : <br> : |

### NOTICE OF VIDEO DEPOSITION OF CORPORATE DESIGNEE(S) OF THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA d/b/a PENN MEDICINE

TO:    James A. Young, Esquire
       Richard S. Margulies, Esquire
       Susan R. Engle, Esquire
       BURNS WHITE LLC
       1880 John F. Kennedy Boulevard, 10th FL

2

Case ID: 220302588
Control No.: 23110833

Philadelphia, PA 19103

**KINDLY TAKE NOTICE** that Plaintiffs in the above-captioned matter will take the deposition(s) of one or more Corporate Designees of the Trustees of the University of Pennsylvania d/b/a Penn Medicine (collectively, "Defendants") on November 1, 2023 at 10:00 a.m. at the office of Kline & Specter, P.C. at 1525 Locust Street, Philadelphia, PA 19102.

The deposition will be taken before a person duly authorized to administer oaths and will be recorded by video and stenographic means.

Defendants are requested to designate one or more officers, directors, managing agents, or other persons who shall be authorized to testify to matters known or reasonably available to the organization and who is the individual most knowledgeable about the Neonatal Intensive Care Unit at The Pennsylvania Hospital of the University of Pennsylvania Health System from 2002 to the present, and specifically including the following subjects:

1. All policies and procedures relating to premature babies and/or babies in the Neonatal Intensive Care Unit;
2. All policies and procedures relating to the feeding of premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
3. All policies and procedures relating to when commercial milk/bovine milk should be given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
4. Knowledge of what year donor breast milk became available to mothers of premature babies and/or babies in the Neonatal Intensive Care Unit;
5. All policies and procedures as to when donor breast milk should be given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
6. Knowledge of what commercial formula/bovine formula(s) were given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;
7. Knowledge of all of Defendants' policies and procedures relating to lactation consultants from 2002 to the present;
8. Knowledge of all policies and procedures pertaining to additional monitoring for premature babies and/or babies in the Neonatal Intensive Care Unit who receive commercial milk/bovine milk from 2002 to the present;
9. Knowledge of any policies and procedures pertaining to consent forms relating to giving commercial milk/bovine milk to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;

3

Case ID: 220302588
Control No.: 23110833

10. Knowledge of any policies and procedures pertaining to consent forms relating to giving donor breast milk to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present;

11. Knowledge of any policies and procedures pertaining to preventing necrotizing enterocolitis from 2002 to the present;

12. Knowledge of when it was known to Defendants that commercial milk/bovine milk can increase the risk of necrotizing enterocolitis from 2002 to the present;

13. Knowledge of any communications received by Defendants from Mead Johnson and Company LLC, Mead Johnson Nutrition Company, and/or Abbott Laboratories from 2002 to the present.

14. Knowledge of any communications from Defendants to Mead Johnson and Company LLC, Mead Johnson Nutrition Company, and/or Abbott Laboratories from 2002 to the present;

15. Knowledge of any marketing, training, and/or promotional materials relating to Mead Johnson and Company LLC, Mead Johnson Nutrition Company, Abbott Laboratories and/or any products marketed, manufactured, and/or sold by same that were in the possession of Defendants from 2002 to the present.

16. Knowledge of the costs to and/or profits generated from Defendants provision of commercial milk/ bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; and/or

17. Knowledge of any scholarly, educational, training and/or other materials relating to the dangers of giving commercial milk/bovine milk to premature babies and/or babies in the Neonatal Intensive Care Unit that were in the possession of Defendants from 2002 to the present

Please consider this a request to produce any and all records, and/or documents that refer, relate, and/or pertain to the to the above-listed categories.

The deponent is also instructed to bring with him/her the following: (1) any and all communications and/or other documents involving Defendants and relating to when commercial milk/bovine milk should be given to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; (2) any and all documents relating to communications between Defendants Mead Johnson and Company LLC, Mead Johnson Nutrition Company, and/or Abbott Laboratories from 2002 to the present; (3) any and all documents relating to the dangers of giving commercial milk/bovine milk to premature babies and/or babies in the Neonatal Intensive Care Unit that were in the possession of Defendants from 2002 to the present; (4) any and all documents relating to any marketing, training, and/or promotional materials

4

Case ID: 220302588
Control No.: 23110833

relating to Mead Johnson and Company LLC, Mead Johnson Nutrition Company, Abbott Laboratories and/or any products marketed, manufactured, and/or sold by same that were in the possession of Defendants from 2002 to the present. (5) any and all documents related to the costs to and/or profits generated from Defendants provision of commercial milk/bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; (6) any and all documents regarding any complaints and/or warnings related to the provision of commercial milk/bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present whether or not initiated or settled through lawsuits, (7) all reports of injuries allegedly arising from the provision of commercial milk/bovine formula(s) to premature babies and/or babies in the Neonatal Intensive Care Unit from 2002 to the present; and (9) any and all other documents relative to or responsive to this Notice of Deposition.

The deponent must also bring with him/her complete copies of all prior deposition transcripts where he/she has offered sworn testimony in cases involving similar or comparable products and/or allegations. The deponent shall also bring a copy of his or her CV or resume. The deposition will continue from day to day until completed.

KLINE & SPECTER, P.C.

TOBIAS L. MILLROOD, ESQUIRE

*Attorney for Plaintiff*

Case ID: 220302588
Control No.: 23110833

## CERTIFICATE OF SERVICE

I, Tobias L. Millrood, hereby certify that on the date below, I served a true and correct

copy of the foregoing Notice of Deposition on the following counsel of records:

| | |
|---|---|
| Catherine M. Recker (PA Bar No. 56813)<br>Amy B. Carver (PA Bar No. 84819)<br>Richard D. Walk, III (PA Bar No. 329420)<br>WELSH & RECKER, P.C.<br>306 Walnut Street<br>Philadelphia, PA 19106<br>Tel: (215) 972-6430<br>cmrecker@welshrecker.com<br>abcarver@welshrecker.com<br>rwalk@welshrecker.com<br><br>Kenneth A. Murphy, Esquire<br>Heather R. Olson, Esquire<br>TUCKER LAW GROUP, LLC<br>Ten Penn Center<br>1801 Market Street, Suite 2500<br>Philadelphia, PA 19103<br>kmurphy@tlgattorneys.com<br>holson@tlgattorneys.com<br><br><br>*Attorneys for Defendant Mead Johnson &*<br>*Company LLC and* Mead Johnson Nutrition<br>Company | James A. Young, Esquire<br>Richard S. Margulies, Esquire<br>Susan R. Engle, Esquire<br>BURNS WHITE LLC<br>Attorney ID Nos. 00213/62306/81671<br>1880 John F. Kennedy Boulevard, 10th FL<br>Philadelphia, PA 19103<br>Tel: (215) 587-1625/1628/1669<br>jayoung@burnswhite.com<br>rsmargulies@burnswhite.com<br>srengle@burnswhite.com<br><br>*Attorneys for Defendant University of*<br>*Pennsylvania Hospital of the University of*<br>*Pennsylvania Health System d/b/a*<br>*Pennsylvania Hospital and University of*<br>*Pennsylvania Hospital of the University of*<br>*Pennsylvania Health System d/b/a Penn*<br>*Medicine* |
| Sean P. Fahey, Esquire<br>TROUTMAN PEPPER HAMILTON<br>SANDERS LLP<br>3000 Two Logan Square<br>Philadelphia, PA 19103-2799<br>Tel: (215) 981-4296<br>Sean.Fahey@troutman.com<br><br>Ronn E. Fuchs, Esquire | Donald J. Brooks, Jr., Esquire<br>Brooke A. Scicchitano, Esquire<br>ECKERT SEAMANS CHERIN & MELOTT<br>Two Liberty Place<br>50 South 16th Street, 22nd Floor<br>Philadelphia, PA 19102<br>Tel: (215) 851-8400<br>dbrooks@eckertseamans.com<br>bscicchitano@eckertseamans.com |

Case ID: 220302588<br>Control No.: 23110833

| | |
|---|---|
| TROUTMAN PEPPER HAMILTON SANDERS LLP<br>301 Carnegie Center, Suite 400<br>Princeton, NJ 08540<br>Tel: (609) 951-4184<br>Ronni.Fuchs@troutman.com<br><br>Joseph E. O'Neill<br>Meaghann C. Porth<br>Ryan J. O'Neill<br>CAMPBELL CONROY & O'NEILL, P.C.<br>1205 Westlake Drive, Suite 330<br>Berwyn, PA 19312<br>Tel: (610) 964-1900<br><br><br>John R. Timmer (PA ID No. 89814)<br>SCHNADER HARRISON SEGAL<br>& LEWIS LLIP<br>1600 Market Street, Suite 3600<br>Philadelphia, PA 19103-7286<br>Tel: (215) 751-2309/2451<br>Fax: (215) 751-22-05<br>jtimmer@schnader.com<br><br>Kimberly A. Brown (PA ID No. 56200)<br>JONES DAY<br>500 Grant Street, Suite 4500<br>Pittsburgh, PA 15219<br>Tel: (412) 394-7995<br>Fax: (412) 394-7959<br>kabrown@jonesday.com<br><br><br>*Attorneys for Defendant Abbott Laboratories* | Jennifer V. Weachter<br>JWeachter@eckertseamans.com<br><br>*Attorneys for Defendants Albert Einstein Medical Center a/k/a Einstein Medical Center and Albert Einstein Healthcare Network d/b/a Einstein Healthcare Network* |
| James A. Young, Esquire<br>Richard S. Margulies, Esquire<br>Susan R. Engle, Esquire<br>BURNS WHITE LLOC<br>Attorney ID Nos. 00213/62306/81671<br>1880 John F. Kennedy Boulevard, 10th FL<br>Philadelphia, PA 19103<br>Tel: (215) 587=1625/1628/1669<br>jayoung@burnswhite.com | Donald J. Brooks, Jr., Esquire<br>Brooke A. Scicchitano, Esquire<br>ECKERT SEAMANS CHERIN & MELOTT<br>Two Liberty Place<br>50 South 16th Street, 22nd Floor<br>Philadelphia, PA 19102<br>Tel: (215) 851-8400<br>dbrooks@eckertseamans.com<br>bscicchitano@eckertseamans.com |

Case ID: 220302588<br>Control No.: 23110833

| rsmargulies@burnswhite.com<br>srengle@burnswhite.com<br><br>*Attorneys for Defendant, Temple University Health System, Inc., d/b/a Temple University Hospital* | Jennifer V. Weachter<br>JWeachter@eckertseamans.com<br><br>*Attorney for Defendants, Thomas Jefferson University Hospitals, Inc., d/b/a Thomas Jefferson University Hospital, and Thomas Jefferson University d/b/a Jefferson Health System* |

**KLINE & SPECTER,**

**P.C.** By: _____

Tobias L. Millrood
1525 Locust Street
Philadelphia, PA 19102
Phone: 215-772-1000
Fax: 215-772-1359
tobi.millrood@klinespecter.com

Dated: October 11, 2023                    *Plaintiff's' Counsel*

8

FILED
03 NOV 2023 01:03 pm
Civil Administration
J. BOYD

# EXHIBIT D

Case ID: 220302588
Control No.: 23110833

| | |
|---|---|
| **From:** | Engle, Susan R. |
| **To:** | Amanda Bee; jayoung; rsmargulies |
| **Cc:** | Tobi Millrood; Timothy Burke; Elizabeth Crawford; Melissa Merk; Helen Lawless; Philip Pasquarello; Jack O"Neill; Patrick Sidebotham; Donald J. Brooks Jr.; ben.whiting@kellerpostman.com; mark.weinstein@kellerpostman.com; bscicchitano@eckertseamans.com; Jennifer V. Weachter; Sean.Fahey; kmurphy@tlgattorneys.com; holson@tlgattorneys.com; cmrecker@welshrecker.com; abcarver@welshrecker.com; rwalk@welshrecker.com; Carol Lippmann |
| **Subject:** | RE: NEC Infant Formula Litigation | The Trustees of the University of Pennsylvania d/b/a Penn Medicine |
| **Date:** | Monday, October 30, 2023 1:17:02 PM |
| **Attachments:** | image569267.PNG |
| | image5c0afc.PNG |

Good afternoon all,

We are in receipt corporate designee notices to our clients unilaterally scheduling depositions for November 1, 2023. We write to advise that we will not be able to produce corporate designees on behalf of our clients on that date, but we are working diligently to obtain the information requested via discovery and the corporate designee notices and will be in contact regarding promptly rescheduling these depositions. Please feel to reach out with any questions or concerns.

Best,

Susan Engle

## Susan R. Engle, Esq.
**Member**



1880 John F. Kennedy Boulevard, 10th Floor · Philadelphia, PA 19103
215-587-1669 (O) · 215-587-1699 (F)
srengle@burnswhite.com · burnswhite.com



**From:** Amanda Bee <Amanda.Bee@klinespecter.com>
**Sent:** Wednesday, October 11, 2023 3:34 PM
**To:** Young, James A. <jayoung@burnswhite.com>; Margulies, Richard S. <rsmargulies@burnswhite.com>; Engle, Susan R. <srengle@burnswhite.com>
**Cc:** Tobi Millrood <Tobi.Millrood@klinespecter.com>; Timothy Burke <Timothy.Burke@klinespecter.com>; Elizabeth Crawford <Elizabeth.Crawford@KlineSpecter.com>; Melissa Merk <Melissa.Merk@klinespecter.com>; Helen Lawless <Helen.Lawless@klinespecter.com>; Philip Pasquarello <Philip.Pasquarello@KlineSpecter.com>; Jack O'Neill <Jack.ONeill@klinespecter.com>; Patrick Sidebotham

Case ID: 220302588
Control No.: 23110833

<Patrick.Sidebotham@klinespecter.com>; Donald J. Brooks Jr. <dbrooks@eckertseamans.com>;
ben.whiting@kellerpostman.com; mark.weinstein@kellerpostman.com;
bscicchitano@eckertseamans.com; Jennifer V. Weachter <JWeachter@eckertseamans.com>;
Sean.Fahey <Sean.Fahey@Troutman.com>; kmurphy@tlgattorneys.com; holson@tlgattorneys.com;
cmrecker@welshrecker.com; abcarver@welshrecker.com; rwalk@welshrecker.com; Carol Lippmann
<Carol.Lippmann@klinespecter.com>
**Subject:** NEC Infant Formula Litigation | The Trustees of the University of Pennsylvania d/b/a Penn
Medicine

Dear Counsel:

Please see the attached correspondence and Notice of Video Deposition of Corporate
Designee(s) of The Trustees of the University of Pennsylvania d/b/a Penn Medicine.

  Thank you,

**Amanda L. Bee**
Legal Assistant to Jack O'Neill, Esquire and Richard Gorman, Esquire
Kline & Specter, P.C.
1525 Locust Street
Philadelphia, PA 19102
215.772.1000
215.772.0563 direct dial
www.klinespecter.com

We intend to send this transmission (including any attachments) only to the appropriate recipients. If you received this message in error, please notify the sender by replying to this message and then delete it from your system. This transmission may contain confidential or privileged information and may constitute non-public information. Use, disclosure, dissemination, distribution, or reproduction of this message by unintended recipients is not authorized and may be unlawful. Unless otherwise stated by the sender, this transmission (including any attachments) does not create or confirm a contract, agreement, offer or acceptance between the sender and any recipient.

Case ID: 220302588
Control No.: 23110833

# EXHIBIT A-59

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**TRIAL DIVISION – CIVIL**

*Filed and Attested by the Office of Judicial Records 10 NOV 2023 12:35 pm P. DIVON*

| | | |
|---|---|---|
| HOLLI CARTER, et al.,<br>　　　　*Plaintiff,*<br>　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　*Defendants.* | :<br>:<br>:<br>:<br>: | MARCH TERM, 2022<br>No. 220302588 |
| BRANDY GOODMOND, et al.,<br>　　　　*Plaintiff,*<br>　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　*Defendants.* | :<br>:<br>:<br>:<br>: | APRIL TERM, 2022<br>No. 220400208 |
| BRANDY GOODMOND, et al.,<br>　　　　*Plaintiff,*<br>　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　*Defendants.* | :<br>:<br>:<br>:<br>: | APRIL TERM, 2022<br>No. 220400212 |
| JANEE HENDERSON, et al.,<br>　　　　*Plaintiff,*<br>　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　*Defendants.* | :<br>:<br>:<br>:<br>: | APRIL TERM, 2022<br>No. 220400127 |
| KRISTEN KAJUFFA, et al.,<br>　　　　*Plaintiff,*<br>　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　*Defendants.* | :<br>:<br>:<br>:<br>: | MARCH TERM, 2022<br>No. 220302978 |
| NAFEESAH MAYS, et al.,<br>　　　　*Plaintiff,*<br>　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　*Defendants.* | :<br>:<br>:<br>:<br>: | MARCH TERM, 2022<br>No. 220302963 |
| CATHERINE McMILLIAN, et al.,<br>　　　　*Plaintiff,* | :<br>: | APRIL TERM, 2022<br>No. 220400140 |

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

|  | : |  |
| --- | --- | --- |
| v. | : |  |
| MEAD JOHNSON & COMPANY, LLC, et al.,<br>*Defendants.* | : |  |
| DAMEKA MOMENT, et al.,<br>*Plaintiff,* | : | APRIL TERM, 2022 |
| v. | : | No. 220400142 |
| MEAD JOHNSON & COMPANY, LLC, et al.,<br>*Defendants.* | : |  |
| NYDIA PARKER, et al.,<br>*Plaintiff,* | : | MARCH TERM, 2022 |
| v. | : | No. 220302983 |
| MEAD JOHNSON & COMPANY, LLC, et al.,<br>*Defendants.* | : |  |
| ALEXANDRIA ROSS, et al.,<br>*Plaintiff,* | : | MARCH TERM, 2022 |
| v. | : | No. 220302981 |
| MEAD JOHNSON & COMPANY, LLC, et al.,<br>*Defendants.* | : |  |
| LOREN SANDERS, et al.,<br>*Plaintiff,* | : | APRIL TERM, 2022 |
| v. | : | No. 220400153 |
| MEAD JOHNSON & COMPANY, LLC, et al.,<br>*Defendants.* | : |  |
| SAMAYA SHORT, et al.,<br>*Plaintiff,* | : | APRIL TERM, 2022 |
| v. | : | No. 220400159 |
| MEAD JOHNSON & COMPANY, LLC, et al.,<br>*Defendants.* | : |  |
| ALICE STILLS, et al.,<br>*Plaintiff,* | : | MARCH TERM, 2022 |
| v. | : | No. 220302617 |
| MEAD JOHNSON & COMPANY, LLC, et al.,<br>*Defendants.* | : |  |
| CHRISTINA TAYLOR, et al.,<br>*Plaintiff,* | : | MARCH TERM, 2022 |
|  | : | No. 220302606 |

2

| | |
|---|---|
| v. | : |
| | : |
| MEAD JOHNSON & COMPANY, LLC, et al., *Defendants.* | |
| NATISHA THOMAS, et al., *Plaintiff,* | : |
| v. | : MARCH TERM, 2022 |
| | : No. 220400158 |
| MEAD JOHNSON & COMPANY, LLC, et al., *Defendants.* | : |
| TRINA WALKER-SAVAGE and CLIFTON ISAIAH SAVAGE, JR., et al., *Plaintiff,* | : |
| | : MARCH TERM, 2022 |
| v. | : No. 220400156 |
| | : |
| MEAD JOHNSON & COMPANY, LLC, et al., *Defendants.* | : |
| JEANNATE WATSON, et al., *Plaintiff,* | : |
| v. | : MARCH TERM, 2022 |
| | : No. 220302967 |
| MEAD JOHNSON & COMPANY, LLC, et al., *Defendants.* | : |
| GINA WIEGER, et al., *Plaintiff,* | : |
| v. | : MARCH TERM, 2022 |
| | : No. 220302614 |
| MEAD JOHNSON & COMPANY, LLC, et al., *Defendants.* | : |
| GINA WIEGER, et al., *Plaintiff,* | : |
| v. | : MARCH TERM, 2022 |
| | : No. 220302601 |
| MEAD JOHNSON & COMPANY, LLC, et al., *Defendants.* | : |
| SHANITA WIGGINS, et al., *Plaintiff,* | : |
| v. | : MARCH TERM, 2022 |
| | : No. 220302986 |
| MEAD JOHNSON & COMPANY, LLC, et al., *Defendants.* | : |
| MELVENIA WILLIAMS, et al., *Plaintiff,* | : APRIL TERM, 2022 |

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

|  | : | No. 220400141 |
| v. | : | |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| *Defendants.* | | |

## ORDER OF THE COURT

On this _____ day of _____, 2023, upon consideration of defendant Abbott Laboratories' motion to compel and to strike improper objections and insufficient answers to Abbott's discovery requests, its brief in support, and any response thereto, it is hereby ORDERED that:

1.     Plaintiffs' objections to all Standard Form Interrogatories, Interrogatory Nos. 1 through 41, are stricken.

2.     Plaintiffs' insufficient answers to Standard Form Interrogatory Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 39, 40, and 41 are stricken.

3.     Plaintiffs' objections to Supplemental Interrogatory Nos. 42, 48, 51, 52, 55, 56, 57, 58, 59, 60, 61, 62, 64, and 67 are stricken.

4.     Plaintiffs' insufficient answers to Supplemental Interrogatory Nos. 42, 43, 44, 45, 46, 47, 48, 50, 51, 53, and 63 are stricken.

5.     Plaintiffs' objections and insufficient responses to Requests for Production 1, 2, 5, 6, 8, 9, 17, 19, 20, 21, 22, 23, 24, 38, 39, 42, 44, and 45 are stricken.

6.     Plaintiffs are directed to respond to all Interrogatories and Requests for Production identified in paragraphs 1 through 5 above within twenty (20) days of the date of this Order or risk sanctions.

4

7.     Plaintiffs are further directed to provide complete sets of relevant medical authorizations for both infant and parent, as well as insurance and education authorizations for the infant and – to the extent parent claims any economic or psychologic injury due to the infant's NEC, employment, and psychiatric authorizations for the parent to Abbott within twenty (20) days of the date of this Order or otherwise obtain the records themselves and produce them to Abbott within twenty (20) days of the date of this Order.


BY THE COURT:


_____

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

**TROUTMAN PEPPER HAMILTON SANDERS LLP**
Sean P. Fahey (PA Bar No. 73305)
3000 Two Logan Square
Philadelphia, PA 19103
215.981.4296
Sean.Fahey@troutman.com

Ronni E. Fuchs (PA Bar No. 65561)
301 Carnegie Center, Suite 400
Princeton, NJ 08540
609.951.4183
Ronni.Fuchs@troutman.com

**CAMPBELL CONROY & O'NEIL, P.C.**
Joseph E. O'Neil (PA Bar No. 29053)
Meaghann C. Porth (PA Bar No. 307629)
Ryan J. O'Neil (PA Bar No. 314034)
1205 Westlakes Drive, Suite 330
Berwyn, PA 19312
610.964.1900
JONeil@CampbellTrialLawyers.com
MPorth@campbell-trial-lawyers.com
RONeil@campbell-trial-lawyers.com

**JONES DAY**
Marques Hillman Richeson (admitted *pro hac vice*)
901 Lakeside Avenue
Cleveland, OH 44114
216.586.7195
mhricheson@jonesday.com

Jennifer B. Flannery (PA Bar No. 74546)
1221 Peachtree Street, N.E., Suite 400
Atlanta, GA 30361
404.581.8008
jbflannery@jonesday.com

*Attorneys for Defendant Abbott Laboratories*

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**TRIAL DIVISION – CIVIL**

| | | |
|---|---|---|
| HOLLI CARTER, et al., | : | |
| *Plaintiff,* | : | MARCH TERM, 2022 |
| v. | : | No. 220302588 |
| | : | |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| *Defendants.* | : | |
| BRANDY GOODMOND, et al., | : | |
| *Plaintiff,* | : | APRIL TERM, 2022 |
| v. | : | No. 220400208 |
| | : | |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| *Defendants.* | : | |
| BRANDY GOODMOND, et al., | : | |
| *Plaintiff,* | : | APRIL TERM, 2022 |
| v. | : | No. 220400212 |
| | : | |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| *Defendants.* | : | |
| JANEE HENDERSON, et al., | : | |
| *Plaintiff,* | : | APRIL TERM, 2022 |
| v. | : | No. 220400127 |
| | : | |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| *Defendants.* | : | |
| KRISTEN KAJUFFA, et al., | : | |
| *Plaintiff,* | : | MARCH TERM, 2022 |
| v. | : | No. 220302978 |
| | : | |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| *Defendants.* | : | |
| NAFEESAH MAYS, et al., | : | |
| *Plaintiff,* | : | MARCH TERM, 2022 |
| v. | : | No. 220302963 |
| | : | |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| *Defendants.* | : | |
| CATHERINE McMILLIAN, et al., | : | |
| *Plaintiff,* | : | APRIL TERM, 2022 |
| | : | No. 220400140 |

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

v.                                              :
                                                :
MEAD JOHNSON & COMPANY, LLC, et al.,
        *Defendants.*

DAMEKA MOMENT, et al.,                          :
        *Plaintiff,*                            :  APRIL TERM, 2022
    v.                                          :  No. 220400142
                                                :
MEAD JOHNSON & COMPANY, LLC, et al.,            :
        *Defendants.*

NYDIA PARKER, et al.,                           :
        *Plaintiff,*                            :  MARCH TERM, 2022
    v.                                          :  No. 220302983
                                                :
MEAD JOHNSON & COMPANY, LLC, et al.,            :
        *Defendants.*

ALEXANDRIA ROSS, et al.,                        :
        *Plaintiff,*                            :  MARCH TERM, 2022
    v.                                          :  No. 220302981
                                                :
MEAD JOHNSON & COMPANY, LLC, et al.,            :
        *Defendants.*

LOREN SANDERS, et al.,                          :
        *Plaintiff,*                            :  APRIL TERM, 2022
    v.                                          :  No. 220400153
                                                :
MEAD JOHNSON & COMPANY, LLC, et al.,            :
        *Defendants.*

SAMAYA SHORT, et al.,                           :
        *Plaintiff,*                            :  APRIL TERM, 2022
    v.                                          :  No. 220400159
                                                :
MEAD JOHNSON & COMPANY, LLC, et al.,            :
        *Defendants.*

ALICE STILLS, et al.,                           :
        *Plaintiff,*                            :  MARCH TERM, 2022
    v.                                          :  No. 220302617
                                                :
MEAD JOHNSON & COMPANY, LLC, et al.,            :
        *Defendants.*

CHRISTINA TAYLOR, et al.,                       :
        *Plaintiff,*                            :  MARCH TERM, 2022
                                                :  No. 220302606

3

| | | |
|---|---|---|
| v. | : | |
| | : | |
| MEAD JOHNSON & COMPANY, LLC, et al., *Defendants.* | | |
| NATISHA THOMAS, et al., *Plaintiff,* | : | MARCH TERM, 2022 |
| v. | : | No. 220400158 |
| MEAD JOHNSON & COMPANY, LLC, et al., *Defendants.* | : | |
| TRINA WALKER-SAVAGE and CLIFTON ISAIAH SAVAGE, JR., et al., *Plaintiff,* | : | MARCH TERM, 2022 |
| | : | No. 220400156 |
| v. | : | |
| | : | |
| MEAD JOHNSON & COMPANY, LLC, et al., *Defendants.* | : | |
| JEANNATE WATSON, et al., *Plaintiff,* | : | MARCH TERM, 2022 |
| v. | : | No. 220302967 |
| | : | |
| MEAD JOHNSON & COMPANY, LLC, et al., *Defendants.* | : | |
| GINA WIEGER, et al., *Plaintiff,* | : | MARCH TERM, 2022 |
| v. | : | No. 220302614 |
| | : | |
| MEAD JOHNSON & COMPANY, LLC, et al., *Defendants.* | : | |
| GINA WIEGER, et al., *Plaintiff,* | : | MARCH TERM, 2022 |
| v. | : | No. 220302601 |
| | : | |
| MEAD JOHNSON & COMPANY, LLC, et al., *Defendants.* | : | |
| SHANITA WIGGINS, et al., *Plaintiff,* | : | MARCH TERM, 2022 |
| v. | : | No. 220302986 |
| | : | |
| MEAD JOHNSON & COMPANY, LLC, et al., *Defendants.* | : | |
| MELVENIA WILLIAMS, et al., *Plaintiff,* | : | APRIL TERM, 2022 |

4

|  |  |
|---|---|
| v. | : No. 220400141 |
| | : |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| *Defendants.* | |

### DEFENDANT ABBOTT LABORATORIES' MOTION TO COMPEL, AND TO STRIKE IMPROPER OBJECTIONS AND INSUFFICIENT ANSWERS TO ABBOTT'S DISCOVERY REQUESTS

Defendant Abbott Laboratories ("Abbott") files the instant motion after several unsuccessful attempts to obtain discovery from plaintiffs that is critical to the parties' claims and defenses. Plaintiffs' repeated failure to produce medical records, lists of treaters, full and complete authorizations, and to otherwise supplement their deficient discovery responses has stalled this litigation, and prevented Abbott from commencing plaintiffs' depositions—which this Court suggested should occur by the end of this year.

By way of background, in March and April of 2020, plaintiffs filed 29 actions in this Court, alleging their infants, born prematurely and at low birthweights, were injured after they were administered preterm infant nutrition products manufactured by Abbott or Mead Johnson & Company LLC, Mead Johnson Nutrition Company (together, "Mead Johnson") shortly after their birth. Each complaint alleges that the infant suffers from "long-term health effects." *See, e.g., Carter* Compl. ¶ 14. More than half of the infants are now over 10 years old. Regardless of their age, Abbott is entitled to know their current condition, their medical course from the time of birth through the present, and their psychologic and/or educational course. Moreover, because alternative causes of the children's injuries might only be found in parent medical records, these cases place the parents' health at issue as well. Finally, to the extent the parents claim any psychologic injury or wage loss, Abbott is also entitled to those records.

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

The cases were removed to federal court and transferred to a Multidistrict Litigation (MDL), where they remained pending for months until they were remanded to this Court. On July 24, 2023, the parties appeared before the Honorable Linda Carpenter for a "one-year status conference" (though the cases had been pending in the MDL for a good portion of that year). At the conference, Judge Carpenter encouraged the parties to move ahead with depositions of the plaintiffs expeditiously. Following the conference, Judge Carpenter issued a Case Management Order that set a discovery cutoff date of June 3, 2024.

On August 9, 2023, two weeks after the conference, Abbott served interrogatories and requests for production of documents on plaintiffs. Plaintiffs requested, and Abbott granted, an extension of time for the responses, but with an understanding that plaintiffs' counsel would be providing authorizations, lists of treaters and records in their possession expeditiously in order to permit Abbott to collect records and prepare for plaintiffs' depositions. Plaintiffs produced none of these records and, on October 11 and 12, 2023, plaintiffs provided significantly deficient responses to the discovery. Exemplar interrogatory responses and request for production responses are attached hereto as Exhibit A and Exhibit B, respectively. Despite several efforts to discuss these deficiencies, plaintiffs failed to respond, necessitating this Court's intervention. Because plaintiffs' actions have, among other things, prevented Abbott from being able to begin plaintiffs' depositions, Abbott files the instant motion to strike plaintiffs' improper objections and insufficient discovery responses and seeks an order requiring plaintiffs to timely provide sufficient responses. In support of its motion, Abbott states the following:

1. In the above-captioned cases, plaintiffs attack—without basis—specialized infant formulas and fortifiers essential to the survival and development of premature infants in Neonatal Intensive Care Units ("NICUs"). Plaintiffs filed these cases against defendants Mead Johnson,

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

Abbott, and the infants' hospitals of birth (collectively, "defendants"), alleging that medical professionals at the hospital defendants administered Abbott's and/or Mead Johnson's cow's milk-based infant nutrition products to plaintiffs, and that plaintiffs were injured, and suffer long-term health effects, as a result.

2.     Plaintiffs allege seven causes of action, five of which were asserted against Abbott and Mead Johnson: strict products liability design defect (Count I), strict products liability failure to warn (Count II), negligence (Count III), intentional misrepresentation (Count IV), and negligent misrepresentation (Count V). The remaining claims (Counts VI and VII) were asserted against the hospital defendant. The complaints were filed by parents ("plaintiff-parents") on their own behalf, and also as parent and natural guardians of the infant plaintiffs ("plaintiff") (together "plaintiffs").

3.     On July 24, 2024, the Court held a status conference in all actions.  During that conference, the Court expressed a preference that the parties begin taking plaintiffs' depositions before the end of the calendar year.

4.     To that end, on August 9, 2023, Abbott served a set of interrogatories and a set of requests for production on all plaintiffs.  The interrogatories consisted of both Standard Form Interrogatories, propounded pursuant to Phila. Cnty. Loc. R. 4005, as well as supplemental interrogatories.

5.     On August 30, 2023, plaintiffs emailed Abbott, seeking a 4-week extension of time to respond to Abbott's discovery requests.  In that communication, plaintiffs suggested that, if it would help support the extension, plaintiffs would serve as many authorizations as possible by the original September 9 deadline.

6.     That same day, Abbott responded, asking whether plaintiffs could provide authorizations, lists of treaters, and any medical records in their possession.  Abbott followed up

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

the next day, making clear that – in order not to lose time on the collection and analysis of medical records, it would need plaintiffs to provide authorizations, lists of treaters, and any medical records in their possession.

7.      On August 31, plaintiffs responded, agreeing to provide Abbott with the records in their possession, a list of treaters, and medical, education, and insurance authorizations.  Plaintiffs also agreed to supply employment records, if pursuing a wage loss claim,  and psychiatric authorizations, if pursuing a psychiatric injury claim.

8.      Notwithstanding plaintiffs' representations, both the original deadline for plaintiffs' discovery responses and the extension deadline came and went without the provision of any authorizations, treater lists, or medical records.

9.      On  October 11, 2023, plaintiffs provided the deficient set of discovery responses at issue here, along with a very limited number of authorizations. Plaintiffs did not provide a single medical record or treater list.

10.      After reviewing the limited authorizations and discovery responses, Abbott sent an email to plaintiffs on October 16, identifying several significant deficiencies.  *See* Email of 10/16/2023, Ex. C.  Abbott indicated that plaintiffs had wholly failed to hold up their end of the bargain in producing authorizations, treater lists, and medical records in advance of the October 9 deadline.  Abbott also pointed out that, as of October 16, plaintiffs had wholly failed to produce medical records or treater lists for any of the 21 plaintiffs and failed to serve any authorizations for 7 of the 21 plaintiffs.[1]  Abbott also explained that the authorizations received to date were

---

[1] While plaintiffs initially filed 29 actions, on September 8, plaintiffs filed amended complaints in only 21 of the 29 original actions.  Plaintiffs have indicated they will be voluntarily dismissing the other 8 actions, and accordingly, plaintiffs did not respond to any of Abbott's discovery requests directed to those 8 plaintiffs. Notwithstanding, over two months later, plaintiffs have yet to petition the Court for dismissal of these actions, and indeed, on November 3 and November 7, plaintiffs filed several motions to compel in actions that they had previously

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

themselves insufficient, as they pertained to very limited providers and omitted relevant treaters as well as insurance, employment, and education authorizations.  *See id.*  Finally, with respect to the discovery responses, Abbott notified plaintiffs that they had improperly objected to all Standard Form Interrogatories, in violation of Phila. Cnty. Loc. R. 4005(D), and had only provided limited substantive responses to only approximately 10 of the 68 interrogatories propounded.

11.     Abbott received no response to this email communication.

12.     On October 26, 2023, without addressing Abbott's issues, plaintiffs produced some additional authorizations, but these still clearly omitted authorizations for relevant treaters.  As Abbott pointed out in follow-up communications to plaintiffs' counsel, the authorizations do not include a single infant's pediatrician(s), gastroenterologist(s) or the mother's OB/GYN.

13.     In 15 of the 21 cases, plaintiffs provided two or fewer authorizations for each infant, all relating to hospitals.  Again, there are no authorizations for doctors who provided ongoing care, or authorizations relating to insurance, psychologic or educational records, or even insurance records (which often serve as the source to identify other care).  In all 20 cases in which plaintiffs produced authorizations, plaintiffs provided only *one* authorization for each parent.  Plaintiffs failed to provide any authorizations whatsoever in *Wiggins* and failed to produce any infant authorizations whatsoever in *Williams*.

14.     On October 27, 2023, Abbott sent plaintiffs a detailed deficiency letter that identified numerous deficiencies in plaintiffs' discovery responses and authorizations.  *See* Deficiency Letter, Ex. D.  Abbott requested that plaintiffs respond on or before November 3 and

---

represented would be dismissed.  To the extent plaintiffs continue to pursue these actions despite purporting to seek their dismissal, Abbott will move to compel answers to the discovery it has propounded on those plaintiffs.

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

either (a) amend or supplement their insufficient discovery responses or (b) provide a date on which the parties can meet and confer during the week of November 6.

15.     Abbott received no response to this deficiency letter.

16.     To date, plaintiffs have failed to respond to Abbott's email communications or deficiency letter, have failed to supplement their discovery responses, and have failed to produce a single list of treaters, or produce a single medical record (as they agreed they would do).

17.     In light of plaintiffs' unwillingness to meet their discovery obligations, the intervention of this Court is necessary to resolve the deficiencies outlined below.  Abbott respectfully requests that the Court strike plaintiffs' improper objections and insufficient answers to Abbott's discovery requests for the following reasons:

## I.  MOTION TO STRIKE PLAINTIFFS' IMPROPER AND INSUFFICIENT RESPONSES TO CERTAIN INTERROGATORIES.

18.     Abbott incorporates the foregoing paragraphs as if set forth herein.

19.     Abbott propounded both Standard Form Interrogatories (Interrogatory Nos. 1 through 41) and supplemental interrogatories (Interrogatory Nos. 42 through 68) on plaintiffs.

20.     In total, plaintiffs provided only limited substantive answers to approximately 10 of the 68 interrogatories.

### A.  Standard Form Interrogatories

21.     Pursuant to Phila. Cnty. Loc. Rule 4005, a party may propound "Standard Form Interrogatories" on another party, which have been adopted by the Court.

22.     Rule 4005(D) provides that "[t]he Court will not entertain objections to the standard interrogatories and parties who file such objections will be subject to sanctions including imposition of counsel fees."

23.     Abbott propounded a total of 41 Standard Form Interrogatories in each action.

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

24.     Despite the clear instruction of Rule 4005(D), plaintiffs universally objected to each and every one of the Standard Form Interrogatories propounded by Abbott in all 21 cases. Accordingly, all objections to Interrogatory No. 1 through Interrogatory No. 41 should be stricken in all 21 cases.

25.     Moreover, plaintiffs wholly failed to provide any response to at least 26 of the 41 Standard Form Interrogatories.[2]  These include Interrogatory Nos. 2, 3, 5, 7, 8, 9, 10, 11, 12, 14, 15, 16, 17, 18, 19, 20, 24, 28, 29, 33, 34, 35, 36, 37, 39, and 40.

26.     Additionally, with respect to the Standard Form Interrogatories to which plaintiffs "responded," the responses are entirely insufficient.  These include Interrogatory Nos. 4, 6, 13, 21, 23, 25, 26, 27, 30, and 41 (to which plaintiffs responded by referring to incomplete sets of authorizations and unproduced medical records); Nos. 1 and 22 (to which plaintiffs responded by providing incomplete biographical information); and Nos. 31 and 32 (to which only some plaintiffs responded and did so by providing vague and limited information regarding potential witnesses).

**B.   Supplemental Interrogatories**

27.     In addition to the Standard Form Interrogatories, Abbott propounded 27 supplemental interrogatories on each plaintiff.  Plaintiffs outright objected and wholly failed to respond to certain of these interrogatories.  In other instances, plaintiffs' responses to these supplemental interrogatories were wholly insufficient.

28.     First, plaintiffs universally objected to, and failed to provide any response for, 14 of the 27 supplemental interrogatories.  These include Interrogatory Nos. 42, 48, 51, 52, 55, 56,

_____

[2] Whereas all 21 plaintiffs failed to respond to 26 of the 41 Standard Form Interrogatories, approximately half of the plaintiffs failed to respond to two additional Standard Form Interrogatory—Nos. 31 and 32—as well.

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

57, 58, 59, 60, 61, 62, 64, and 67. These interrogatories seek information relevant—indeed, critical—to these actions.

29. Second, plaintiffs responded to several supplemental interrogatories by suggesting that discovery is "early or ongoing" or that the interrogatory was "premature." These include Interrogatory Nos. 42, 43, 44, 45, 46, 47, 48, 50, 51, 53, and 63. This response is wholly unsupportable. These supplemental interrogatories seek information uniquely within plaintiffs' possession; indeed, much of this information should have been in plaintiffs' possession prior to filing their complaints.

## II. MOTION TO STRIKE PLAINTIFFS' IMPROPER AND INSUFFICIENT RESPONSES TO CERTAIN REQUESTS FOR PRODUCTION.

30. Abbott incorporates the foregoing paragraphs as if set forth herein.

31. Pursuant to Pa. R. Civ. P. 4009.11, Abbott propounded 46 requests for production on plaintiffs in all 21 cases. Plaintiffs' responses to numerous of these requests are insufficient.

32. First, plaintiffs responded to several requests (Request Nos. 1, 6, 9, 17, 38, 39, 42, and 44) by directing Abbott to incomplete sets of authorizations and medical records that have not yet been produced. This response is entirely insufficient. Plaintiffs do not discharge their obligation to respond to these requests by referring to incomplete set of authorizations and medical records that they agreed yet failed to produce.

33. Second, plaintiffs objected to several requests (Request Nos. 1, 2, 5, 19, 21, 22, 23, 24, and 45) as premature. This objection is unsupportable. These requests were timely propounded, and they seek information uniquely within plaintiffs' possession—indeed, the majority seek information that should have been in plaintiffs' possession prior to filing their complaints.

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

34.     Third, plaintiffs objected to several requests (Request Nos. 2, 20, 21, 22, 23, and 24) as seeking "health information protected by state and federal law." This objection is unsupportable. Plaintiffs have brought suit against Abbott claiming physical injury; they have placed their health and related information squarely at issue in this case, and accordingly, they have waived any claim to protection over that information.

35.     Fourth, plaintiffs objected to two requests—Request Nos. 8 and 9—as "not limited in time and scope." This is categorically incorrect. The very terms of both requests make clear they are appropriately temporally limited.

### III. MOTION TO COMPEL PLAINTIFFS TO PROVIDE COMPLETE SETS OF AUTHORIZATIONS FOR ALL INFANTS AND PARENTS OR OTHERWISE PRODUCE THE RELEVANT RECORDS THEMSELVES.

36.     Abbott incorporates the foregoing paragraphs as if set forth herein.

37.     As part of its requests for production, Abbott requested that plaintiffs execute medical, insurance, employment, education, and psychiatric/psychotherapy authorizations for both infant and parent.

38.     On October 11, nearly 45 days after plaintiffs said they would produce authorizations and medical records on a rolling basis, plaintiffs provided Abbott with a very limited number of authorizations for only some of the plaintiffs.

39.     Two weeks later, on October 26, plaintiffs provided another limited set of authorizations.

40.     To date, although plaintiffs provided at least one authorization in 20 of the 21 cases, the authorizations provided remain incomplete.

41.     Plaintiffs' failure to timely provide complete sets of authorizations for all parents and infants is compounded by plaintiffs' deficient discovery responses. In particular, in response to several interrogatories and requests for production, *plaintiffs direct Abbott to the authorizations*

13

*and medical records and fail to provide any substantive information.* It is entirely inappropriate for plaintiffs to direct Abbott to incomplete authorizations or unproduced medical records in response to Abbott's discovery requests.

42. Accordingly, Abbott respectfully requests that this Court direct plaintiffs to either provide a complete set of authorizations for all infants and parents or otherwise direct plaintiffs to obtain the medical records themselves for production to Abbott.

WHEREFORE, Abbott respectfully requests that this Court strike plaintiffs' improper and insufficient objections and responses to Abbott's discovery requests and direct plaintiffs to serve complete and accurate responses thereto within 20 days of the entry of the Court's order.

Dated: November 10, 2023

Respectfully Submitted:

*/s/ Sean P. Fahey*
Sean P. Fahey (PA Bar No. 73305)
**TROUTMAN PEPPER HAMILTON
SANDERS LLP**
3000 Two Logan Square
Philadelphia, PA 19103
215.981.4296
Sean.Fahey@troutman.com

*/s/ Joseph E. O'Neil*
Joseph E. O'Neil (PA Bar No. 29053)
Meaghann C. Porth (PA Bar No. 307629)
Ryan J. O'Neil (PA Bar No. 314034)
**CAMPBELL CONROY & O'NEIL, P.C.**
1205 Westlakes Drive, Suite 330
Berwyn, PA 19312
610.964.6388
JONeil@CampbellTrialLawyers.com
MPorth@campbell-trial-lawyers.com
RONeil@campbell-trial-lawyers.com

*/s/ Ronni E. Fuchs*
Ronni E. Fuchs (PA Bar No. 65561)
**TROUTMAN PEPPER HAMILTON
SANDERS LLP**
301 Carnegie Center, Suite 400
Princeton, NJ 08540
609.951.4183
Ronni.Fuchs@troutman.com

*/s/ Marques Hillman Richeson*
Marques Hillman Richeson (admitted *pro hac vice*)
**JONES DAY**
901 Lakeside Avenue
Cleveland, OH 44114
216.586.7195
mhricheson@jonesday.com

14

*/s/ Jennifer B. Flannery*
Jennifer B. Flannery (PA Bar No. 74546)
**JONES DAY**
1221 Peachtree Street, N.E., Suite 400
Atlanta, GA 30361
404.581.8008
jbflannery@jonesday.com

*Attorneys for Defendant Abbott Laboratories*

15

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**TRIAL DIVISION – CIVIL**

| | |
|---|---|
| HOLLI CARTER, et al.,<br>      *Plaintiff,*<br>    v.<br><br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>    *Defendants.* | :  MARCH TERM, 2022<br>:  No. 220302588<br>:<br>: |
| BRANDY GOODMOND, et al.,<br>      *Plaintiff,*<br>    v.<br><br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>    *Defendants.* | :  APRIL TERM, 2022<br>:  No. 220400208<br>:<br>: |
| BRANDY GOODMOND, et al.,<br>      *Plaintiff,*<br>    v.<br><br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>    *Defendants.* | :  APRIL TERM, 2022<br>:  No. 220400212<br>:<br>: |
| JANEE HENDERSON, et al.,<br>      *Plaintiff,*<br>    v.<br><br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>    *Defendants.* | :  APRIL TERM, 2022<br>:  No. 220400127<br>:<br>: |
| KRISTEN KAJUFFA, et al.,<br>      *Plaintiff,*<br>    v.<br><br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>    *Defendants.* | :  MARCH TERM, 2022<br>:  No. 220302978<br>:<br>: |
| NAFEESAH MAYS, et al.,<br>      *Plaintiff,*<br>    v.<br><br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>    *Defendants.* | :  MARCH TERM, 2022<br>:  No. 220302963<br>:<br>: |
| CATHERINE McMILLIAN, et al.,<br>      *Plaintiff,* | :  APRIL TERM, 2022 |

| | | |
|---|---|---|
| v. | : | No. 220400140 |
| | : | |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| *Defendants.* | : | |

| | | |
|---|---|---|
| DAMEKA MOMENT, et al., | : | |
| *Plaintiff,* | : | APRIL TERM, 2022 |
| v. | : | No. 220400142 |
| | : | |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| *Defendants.* | : | |

| | | |
|---|---|---|
| NYDIA PARKER, et al., | : | |
| *Plaintiff,* | : | MARCH TERM, 2022 |
| v. | : | No. 220302983 |
| | : | |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| *Defendants.* | : | |

| | | |
|---|---|---|
| ALEXANDRIA ROSS, et al., | : | |
| *Plaintiff,* | : | MARCH TERM, 2022 |
| v. | : | No. 220302981 |
| | : | |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| *Defendants.* | : | |

| | | |
|---|---|---|
| LOREN SANDERS, et al., | : | |
| *Plaintiff,* | : | APRIL TERM, 2022 |
| v. | : | No. 220400153 |
| | : | |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| *Defendants.* | : | |

| | | |
|---|---|---|
| SAMAYA SHORT, et al., | : | |
| *Plaintiff,* | : | APRIL TERM, 2022 |
| v. | : | No. 220400159 |
| | : | |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| *Defendants.* | : | |

| | | |
|---|---|---|
| ALICE STILLS, et al., | : | |
| *Plaintiff,* | : | MARCH TERM, 2022 |
| v. | : | No. 220302617 |
| | : | |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| *Defendants.* | : | |

| | | |
|---|---|---|
| CHRISTINA TAYLOR, et al., | : | |
| *Plaintiff,* | : | MARCH TERM, 2022 |
| | : | No. 220302606 |

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

| | |
|---|---|
| v. | : |
| | : |
| MEAD JOHNSON & COMPANY, LLC, et al.,<br>*Defendants.* | |
| NATISHA THOMAS, et al.,<br> *Plaintiff,* <br> v. | :<br>: MARCH TERM, 2022<br>: No. 220400158 |
| MEAD JOHNSON & COMPANY, LLC, et al.,<br>*Defendants.* | : |
| TRINA WALKER-SAVAGE and CLIFTON<br>ISAIAH SAVAGE, JR., et al.,<br> *Plaintiff,* <br> v. | :<br>: MARCH TERM, 2022<br>: No. 220400156<br>: |
| MEAD JOHNSON & COMPANY, LLC, et al.,<br>*Defendants.* | : |
| JEANNATE WATSON, et al.,<br> *Plaintiff,* <br> v. | :<br>: MARCH TERM, 2022<br>: No. 220302967<br>: |
| MEAD JOHNSON & COMPANY, LLC, et al.,<br>*Defendants.* | : |
| GINA WIEGER, et al.,<br> *Plaintiff,* <br> v. | :<br>: MARCH TERM, 2022<br>: No. 220302614<br>: |
| MEAD JOHNSON & COMPANY, LLC, et al.,<br>*Defendants.* | : |
| GINA WIEGER, et al.,<br> *Plaintiff,* <br> v. | :<br>: MARCH TERM, 2022<br>: No. 220302601<br>: |
| MEAD JOHNSON & COMPANY, LLC, et al.,<br>*Defendants.* | : |
| SHANITA WIGGINS, et al.,<br> *Plaintiff,* <br> v. | :<br>: MARCH TERM, 2022<br>: No. 220302986<br>: |
| MEAD JOHNSON & COMPANY, LLC, et al.,<br>*Defendants.* | : |
| MELVENIA WILLIAMS, et al.,<br> *Plaintiff,* | :<br>: APRIL TERM, 2022 |

3

|  |  |
|---|---|
| v. | : No. 220400141 |
|  | : |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| *Defendants.* | |

## DEFENDANT ABBOTT LABORATORIES' BRIEF IN SUPPORT OF MOTION TO COMPEL, AND TO STRIKE IMPROPER OBJECTIONS AND INSUFFICIENT ANSWERS TO ABBOTT'S DISCOVERY REQUESTS

### MATTER BEFORE THE COURT

The motion of Abbott Laboratories ("Abbott") to compel and to strike improper objections and insufficient answers to Abbott's discovery requests is before this Court. Plaintiffs' discovery responses to Abbott's discovery are entirely deficient, as borne out by a few simple facts:

1. Plaintiffs improperly objected to each and every Standard Form Interrogatory Abbott propounded;

2. Plaintiffs provided *limited* substantive responses to, at most, 10 of the 68 Interrogatories Abbott propounded;

3. Plaintiffs failed to provide a full and complete set of authorizations for any plaintiff in any action;[3] and

4. Plaintiffs failed to produce a single document, let alone a single medical record, in any of the actions.

---

[3] A full and complete set of authorizations would include (1) medical authorizations for all relevant treaters of both parent and infant from the time of birth until the present day, (2) all relevant insurance authorizations, (3) all relevant employment authorizations, (4) all relevant education authorizations, and (5) all relevant psychiatric authorizations.

4

Abbott respectfully requests that this Court strike plaintiffs' improper objections and insufficient responses to Abbott's discovery requests and direct plaintiffs to serve complete and accurate responses thereto within 20 days of the entry of the Court's order.

## STATEMENT OF QUESTIONS INVOLVED

1.    Should the Court grant Abbott's motion to strike and strike plaintiffs' objections to all Standard Form Interrogatories as improper under Phila. Cnty. Loc. R. 4005(D)? Answer: Yes.

2.    Should the Court grant Abbott's motion to strike and strike plaintiffs' insufficient responses to the specified Standard Form Interrogatories? Answer: Yes.

3.    Should the Court grant Abbott's motion to strike and strike plaintiffs' improper objections to the specified supplemental interrogatories? Answer: Yes.

4.    Should the Court grant Abbott's motion to strike and strike plaintiffs' insufficient responses to the specified supplemental interrogatories? Answer: Yes.

5.    Should the Court grant Abbott's motion to strike and strike plaintiffs' improper objections to the specified requests for production? Answer: Yes.

6.    Should the Court grant Abbott's motion to strike and strike plaintiffs' insufficient responses to the specified requests for production? Answer: Yes.

7.    Should the Court grant Abbott's motion to strike and order plaintiffs to provide complete responses to all insufficiently answered interrogatories and requests for production? Answer: Yes.

## INTRODUCTION AND FACTUAL BACKGROUND

Mead Johnson & Company LLC, Mead Johnson Nutrition Company (together, "Mead Johnson") and Abbott develop and manufacture infant nutrition products, including products

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

tailored to address the distinct, special nutritional needs of premature, low birthweight infants.[4] These infants face complex challenges and daunting odds. For one, they typically have underdeveloped or maldeveloped gastrointestinal systems that are not prepared to receive the nutrition necessary for the rapid growth these infants need. This poses a serious challenge for NICU specialists caring for the infants. The best nutrition for a premature infant is the nutrition it would have received in the womb. Once that is no longer possible, everything else falls short. Milk from the infant's mother is the closest natural substitute, but it may not be available or nutritionally sufficient to meet the premature infant's extraordinary needs. The same is true of donor milk. Accordingly, NICU specialists use their judgment to fill the nutritional gap with specialized formula and fortifier products designed to meet the needs of premature, low-birth-weight infants. This litigation targets these life-saving products.

Plaintiffs in these cases allege that the infants developed necrotizing enterocolitis ("NEC"), a leading cause of death in premature infants in NICUs. NEC is an inflammatory gastrointestinal condition that can result in death of intestinal tissue. Indeed, NEC affects up to 8% of infants in NICUs, including infants who receive only human milk, as well as those who receive no "food" at all. Neonatologists are experts in dealing with the risks of NEC and balancing them with numerous other medical risks these premature infants face. They carefully balance these risks regardless of how nutrition is administered, and regardless of whether it consists of the mother's own milk, human donor milk, specialized formula or fortifier, or a combination.

---

[4] Abbott manufactures infant nutrition products under the "Similac" brand name. Mead Johnson manufactures infant nutrition products under the "Enfamil" brand name.

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

Plaintiff-parents universally allege that their infants were born prematurely at Philadelphia-area hospitals. They further allege the infants were administered Similac and/or Enfamil cow's milk-based products by medical professionals at the respective hospital after birth.

Plaintiffs further claim that the infant developed NEC shortly after the administration of Abbott and/or Mead Johnson's product and experienced long-term health effects. Indeed, ***each and every*** plaintiff alleges that the infant suffers from "long-term health effects." *See, e.g.*, *Carter* Compl. ¶ 14. Regardless of their age, Abbott is entitled to know their current condition, their medical course from the time of birth through the present, and their psychologic and/or educational course.[5] Moreover, because alternative causes of the children's injuries might only be found in parent medical records, these cases place the parents' health at issue as well. Finally, to the extent the parents claim any psychologic injury or wage loss, Abbott is also entitled to those records.

## PROCEDURAL HISTORY OF THE DISPUTE

On July 24, 2023, the Court held a status conference in all actions. During that conference, the Court expressed a preference that the parties begin taking plaintiffs' depositions before the end of the calendar year.

To that end, on August 9, 2023, Abbott served a set of interrogatories and a set of requests for production of documents on plaintiffs. The interrogatories consisted of both Standard Form Interrogatories, propounded pursuant to Phila. Cnty. Loc. R. 4005, as well as supplemental interrogatories. On August 30, 2023, plaintiffs emailed Abbott, seeking a 4-week extension of the time to respond to Abbott's discovery requests. In that communication, plaintiffs suggested that,

---

[5] While age is not determinative of Abbott's need for these documents, the need is particularly obvious given that all infants claim long-term injuries and over half of the infants are now over 10 years old.

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

if it would help support the extension, plaintiffs would serve as many authorizations as possible by the original September 9 deadline.

That same day, Abbott responded, asking whether plaintiffs could provide authorizations, lists of treaters, and any medical records in their possession. Abbott followed up the next day, making clear that – in order not to lose time on the collection and analysis of medical records, it would need plaintiffs to provide authorizations, lists of treaters, and any medical records in their possession.

On August 31, plaintiffs responded, agreeing to provide Abbott with the records in their possession, a list of treaters, and medical, education, and insurance authorizations. Plaintiffs also agreed to supply employment records, if pursuing a wage loss claim, and psychiatric authorizations, if pursuing a psychiatric injury claim.

Notwithstanding plaintiffs' representations, both the original deadline for plaintiffs' discovery response, and the extension deadline came and went without the provision of any authorizations, treater lists, or medical records,

On October 11, 2023, plaintiffs provided the deficient set of discovery responses at issue here, along with a very limited number of authorizations. Plaintiffs did not provide a single medical record or treater list.

After reviewing the limited authorizations and deficient discovery responses, Abbott sent an email to plaintiffs on October 16, identifying several significant deficiencies. *See* Email of 10/16/2023, Ex. C. For starters, plaintiffs had wholly failed to hold up their end of the bargain in producing authorizations, treater lists, and medical records in advance of the October 9 deadline. Indeed, plaintiffs missed the deadline altogether. Additionally, as of that time, plaintiffs had wholly failed to serve any authorizations for 7 of the 21 plaintiffs, and had wholly failed to produce

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

medical records for any of the 21 plaintiffs.[6]  Importantly, the belated authorizations received to date were also insufficient, insofar as it was clear that authorizations for relevant treaters had been omitted.  *See id.*  Finally, with respect to the discovery responses, plaintiffs had improperly objected to all Standard Form Interrogatories, in violation of Phila. Cnty. Loc. R. 4005(D), and, perhaps more troublingly, had only provided limited substantive responses to approximately 10 of the 68 interrogatories propounded.  Abbott received no response to this email communication.

On October 26, 2023, without addressing Abbott's issues, plaintiffs produced a limited set of additional authorizations, but these still clearly omitted authorizations for relevant treaters.  As Abbott pointed out in subsequent communications to plaintiffs' counsel, the authorizations do not include a single infant's pediatrician(s), gastroenterologist(s) or the mother's OB/GYN.  In 15 of the 21 cases, plaintiffs provided two or fewer authorizations for each infant.  In all 20 cases in which plaintiffs produced authorizations, plaintiffs provided only one authorization for each parent.  Plaintiffs failed to provide any authorizations whatsoever in *Wiggins*, and failed to provide any infant authorizations whatsoever in *Williams*.

On October 27, 2023, Abbott sent plaintiffs a detailed deficiency letter that identified numerous deficiencies in plaintiffs' discovery responses and authorizations.  *See* Deficiency Letter, Ex. D.  Therein, Abbott requested that plaintiffs respond on or before November 3 and either (a) amend or supplement their insufficient discovery responses or (b) provide a date on

---

[6] While plaintiffs initially filed 29 actions, plaintiffs filed amended complaints in only 21 of the 29 original actions on September 8.  Plaintiffs have indicated they will be voluntarily dismissing the other 8 actions, and accordingly, plaintiffs did not respond to any of Abbott's discovery requests directed to those 8 plaintiffs. Notwithstanding, over two months later, plaintiffs have yet to petition the Court for dismissal of any of these actions, and indeed, on November 3 and November 7, plaintiffs filed several motions to compel in actions that they had previously represented would be dismissed.  To the extent plaintiffs continue to pursue these actions despite purporting to seek their dismissal, Abbott will move to compel answers to the discovery it has propounded on those plaintiffs.

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

which the parties can meet and confer the week of November 6. Abbott received no response to this deficiency letter.

<u>**Legal Standard**</u>

Pennsylvania Rule of Civil Procedure 4003.1(a) provides that "a party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party . . . ." *See* Pa. R. Civ. P. 4003.1(a). Additionally, Rule 4019(a)(1)(i) provides that "[t]he court may, on motion, make an appropriate order if a party fails to serve answers, sufficient answers, or objections to written interrogatories under Rule 4005." *See id.* R. 4019(a)(1)(i).

**I.  PLAINTIFFS' OBJECTIONS AND RESPONSES TO ABBOTT'S INTERROGATORIES SHOULD BE STRICKEN AS IMPROPER AND INSUFFICIENT.**

Abbott propounded both Standard Form Interrogatories (Interrogatory Nos. 1 through 41) and supplemental interrogatories (Interrogatory Nos. 42 through 68) on plaintiffs. In total, plaintiffs provided limited substantive responses to only approximately ***10 of the 68 interrogatories***.

Plaintiffs' responses to both types of interrogatories are insufficient and deficient for several reasons, as discussed below.

**A.  Standard Form Interrogatories**

Pursuant to Phila. Cnty. Loc. Rule 4005, a party may propound "Standard Form Interrogatories" on another party, which have been adopted by the Court. *See* Phila Cnty. Loc. R. 4005. Plaintiffs' responses to these Standard Form Interrogatories should be stricken for several reasons, each of which is discussed below.

10

### 1. Plaintiffs improperly objected to each and every Standard Form Interrogatory.

Rule 4005(D) provides that "[t]he Court will not entertain objections to the standard interrogatories and *parties who file such objections will be subject to sanctions including imposition of counsel fees*." *See* Phila. Cnty. Loc. R. 4005(D) (emphasis added).

Abbott propounded a total of 41 Standard Form Interrogatories in each case. Despite the clear instruction of Rule 4005(D), plaintiffs universally objected to each and every one of the Standard Form Interrogatories propounded by Abbott in all 21 cases.

Accordingly, all objections to Interrogatory No. 1 through Interrogatory No. 41 should be stricken in all 21 cases.

### 2. Plaintiffs failed entirely to respond to 26 of the 41 Standard Form Interrogatories.

Plaintiffs' failure to comply with Loc. R. 4005(D) is compounded by the fact that plaintiffs failed to provide any response to at least 26 of the 41 Standard Form Interrogatories.[7] These include Interrogatory Nos. 2, 3, 5, 7, 8, 9, 10, 11, 12, 14, 15, 16, 17, 18, 19, 20, 24, 28, 29, 33, 34, 35, 36, 37, 39, and 40. Plaintiffs' lack of response generally fell into three categories: refusal to respond, offers to meet and confer, and unspecific promises to supplement.

In response to Interrogatory Nos. 3, 18, 19, 20, 24, 28, 29, 39, and 40, plaintiffs outright objected to the interrogatory and provided no further response. This is a wholly inappropriate response to Standard Form Interrogatories, which, by rule, may not be objected to.

In response to Interrogatory Nos. 2, 5, 7, 8, 9, 10, 14, 15, 16, 33, 34, 35, and 36, plaintiffs objected to the interrogatory and offered to meet and confer, providing no substantive response to

---

[7] Whereas all 21 plaintiffs failed to respond to 26 of the 41 Standard Form Interrogatories, approximately half of the plaintiffs failed to respond to two additional Standard Form Interrogatories—Nos. 31 and 32—as well.

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

any part of the interrogatory.[8]  Despite plaintiffs' unfounded objections, these requests are highly

relevant and appropriate, including, among others:

- Interrogatory No. 2: If you claim a permanent injury resulting from the treatment, surgery or examination upon which this action is based, describe such injury fully and in detail.

- Interrogatory No. 5: State in detail the injuries or diseases that you allege that you suffered as a result of treatment, surgery or examination upon which this action is based.

- Interrogatory No. 7: Either prior to or subsequent to the treatment, surgery or examination referred to in the complaint, have you ever suffered any injuries, illness or diseases in those portions of the body claimed by you to have been affected by the treatment, surgery or examination referred to in the complaint? If so, state: (a) A description of the injuries or diseases you suffered; (b) The date and place of any accident, if such an injury or disease was caused by an accident; and (c) The names and addresses of all hospitals, doctors or practitioners who rendered treatment or examinations because of any such injuries or diseases.

- Interrogatory No. 10: State whether you, subsequent to the date of the treatment, surgery or examination, have been unable to perform adequately any of your customary occupational duties or social or other activities, stating with particularity (a) the duties and/or activities you have been unable to perform, (b) the periods of time you have been unable to perform, and (c) the names and last known addresses of all persons who have personal knowledge thereof.

- Interrogatory Nos. 14 & 34: Have you given any statement concerning this action or its subject matter? If so, state: (a) The name and last known address of each person to whom a statement was given; (b) When and where each statement was given; and (c) Please consider this a Request to Produce the statements referred to in the above answer.

In response to Interrogatory Nos. 11, 12, 17, and 37, plaintiffs objected to the interrogatory

and responded only that they will supplement their responses with unspecified information at some

unspecified time in the future.  Notwithstanding, these interrogatories seek basic information about

cases that plaintiffs themselves brought, which plaintiffs should have had in their possession prior

to filing their complaints.  For example, Interrogatory Nos. 11 and 12 inquire as to the names and

---

[8] As the procedural history of this dispute demonstrates, plaintiffs' "offer" to meet and confer was nothing more than an effort to placate Abbott.  Abbott attempted to engage plaintiffs in discussions regarding the insufficient responses on October 16 and again on October 27.  Plaintiffs wholly ignored both communications and have never provided availability for a meet and confer.

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

locations of witnesses and people with knowledge of the facts concerning the treatment, surgery, examination, condition, or circumstances related to the allegations in the amended complaints. Plaintiffs' suggestion that the investigation as to each of these areas of inquiry is premature strains credulity. Even if some information remains subject to investigation, plaintiffs must provide the information they currently have.

### 3. Plaintiffs' reference to medical authorizations and/or records in response to the Standard Form Interrogatories are insufficient.

In response to several Standard Form Interrogatories (Interrogatory Nos. 4, 6, 13, 21, 23, 25, 26, 27, 30, and 41), plaintiffs responded only by referring to the incomplete medical authorizations and unspecified medical records, none of which have been produced by plaintiffs. . These responses are insufficient.

Where a party responds to an interrogatory by reference to documents, "the answering party must 'specify the records from which the answer may be derived.'" *See Northampton Borough Mun. Auth. v. Remsco Assocs., Inc.*, 22 Pa. D. & C.3d 541, 544 (Ct. Comm. Pls. 1981) (citing Pa. R. Civ. P. 4006(b)). Drawing on Federal Rule of Civil Procedure 33(c), the court in *Northampton Borough* determined that "the specification shall be in sufficient detail to permit the interrogating party to locate and to identify as readily as can the party served, the records from which the answer may be ascertained." *See id.* (quoting Fed. R. Civ. P. 33(c)); *see also id.* (holding reference to "various letters of transmittal of Remsco and the engineer" to be an insufficiently specific reference to documents in response to an interrogatory).

Here, as in *Northampton Borough*, plaintiffs have insufficiently described the records that they claim contains the responsive information. Instead, plaintiffs vaguely reference authorizations and medical records that "***have been or will be produced***." But plaintiffs have yet to produce a single medical record to Abbott. Accordingly, far from identifying a specific portion

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

of a tangible document from which Abbott could glean the requested information, plaintiffs instead refer broadly to unproduced records. This response does not satisfy plaintiffs' obligations under Rule 4006.

Moreover, reference to incomplete authorizations does not constitute an adequate response to these interrogatories. First, plaintiffs have failed to produce a complete set of authorizations in any of the cases. In the 20 cases in which medical authorizations have been produced, plaintiff provided no more than one medical authorization for each parent, which was universally designated for the infant's birth hospital. Plaintiffs have not produced a single authorization for any OB/GYN or any other treating specialist.

As noted above, each plaintiff alleges that the infant suffered long-term health effects resulting from their NEC diagnosis. Yet, when asked about the infants' long-term injuries in Interrogatory No. 23, plaintiffs simply directed Abbott to authorizations. But, in 15 of the 21 of the cases, plaintiffs provided two *or fewer* authorizations for each infant. Plaintiffs have not produced an authorization for any pediatrician, primary care provider, or other treating specialists in any case. Plaintiffs cannot allege, on one hand, that infants suffer long-term health effects, while simultaneously failing to provide Abbott the authorizations necessary to take discovery on those alleged health effects. Beyond the medical authorizations, plaintiffs have not produced a *single* insurance, education, employment, or psychiatric/psychotherapy authorization in *any* of the 21 cases.

Moreover, even if the authorizations were complete (they are not), they are hardly responsive to these interrogatories. To begin, the authorizations do not provide any substantive information besides the name of a single hospital, which is arguably only partially responsive to Interrogatory Nos. 6 and 27 from the above list. Additionally, as described more fully below in

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

section III, plaintiffs have yet to produce a full and complete set of authorizations for any parent or infant, meaning, at best, the authorizations are only partially responsive. Furthermore, plaintiffs have yet to turn over a single medical record in any of the 21 cases.[9] It is entirely inappropriate for plaintiffs to rely on incomplete authorizations or unproduced records in response to the above-listed interrogatories.

### 4. Plaintiffs' "responses" to the Standard Form Interrogatories are insufficient.

Plaintiffs provided limited substantive responses to no more than four Standard Form Interrogatories, and, in most cases, only two Standard Form Interrogatories. Even in these limited instances where plaintiffs provided a substantive response, the information is still insufficient and incomplete.

In Interrogatory Nos. 1 and 22, Abbott requested "(a) Your full name; (b) Any other names you have used or been known by; (c) Your date and place of birth; (d) Your marital status at the time of the incident; (e) Your present marital status; (f) Your present home address; and (g) Your social security number." In response, plaintiffs universally provided only parent's home address, infant's home address, infant's date and place of birth, and in one instance, infant's date of death. While plaintiffs agreed to produce social security numbers after entry of a protective order, plaintiffs failed to respond to the remaining components of the request and instead objected, in defiance of Rule 4005(D).

Similarly, only 10 of the 21 plaintiffs provided any substantive response to Interrogatory Nos. 31 and 32. These interrogatories sought information about the witnesses and people with

---

[9] Yet, plaintiffs suggested in their response to Pennsylvania Hospital's preliminary objections that they relied on these medical records in preparing their amended complaints.

15

knowledge of the facts concerning the treatment, surgery, examination, condition, or circumstances related to the allegations in the amended complaints.

Eleven of the 21 plaintiffs objected outright to both Interrogatory Nos. 31 and 32, noting only that plaintiff would supplement "if necessary." Six of the 21 plaintiffs responded to Interrogatory No. 32 by providing only the name of the birth hospital and standing on their objections to Interrogatory No. 31. Four of the 21 plaintiffs responded to Interrogatory Nos. 31 and 32 by only providing very limited information on potential witnesses, such as the name of the infants' father and/or grandfather (*Henderson*, *McMillian*), unnamed nurses in the NICU (*Parker*), and unnamed employees of the Children's Hospital of Philadelphia (*Sanders*).

The responses provided to these four interrogatories are facially insufficient, and beyond these very limited answers, plaintiffs provided no other substantive information in response to the Standard Form Interrogatories.

### 5. Plaintiffs' response regarding the ongoing nature of discovery is insufficient.

Plaintiffs universally responded to Interrogatory Nos. 23, 26, and 27 by suggesting that, as discovery is ongoing, "Infant may have additional injuries that are, at this time, not known because Infant is continuing to develop and may face new, or worsened, injuries as time passes."[10] The potentially changing nature of infants' injuries does not relieve plaintiffs of their discovery obligation to respond to these Standard Form Interrogatories and identify any presently known injuries that are responsive thereto. *See Appleman v. Feathers*, 79 Pa. D. & C.4th 353, 360-61 (Ct. Comm. Pls. 2006) ("Referring to the complaint and stating that discovery is ongoing does not constitute full and complete answers.").

---

[10] In one stark example, plaintiff Nafeesah Mays responded to Interrogatory No. 22 and indicated that infant A.R. died on August 15, 2005. Yet, despite infant's passing, plaintiff Mays responded to Interrogatory Nos. 23, 26, and 27 by claiming that "Infant is continuing to develop and may face new, or worsened, injuries as time passes."

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

\*     \*     \*

Accordingly, for the foregoing reasons, Abbott respectfully requests that plaintiffs' objections and responses to all aforementioned Standard Form Interrogatories be stricken and that plaintiffs be ordered to provide full and complete responses to these interrogatories within 20 days of the date of the Court's order.

**B.    Supplemental Interrogatories**

In addition to the Standard Form Interrogatories, Abbott propounded 27 supplemental interrogatories on each plaintiff. Plaintiffs outright objected and wholly failed to respond to more than half of these interrogatories. In the other half, plaintiffs' responses were wholly insufficient.

**1.    Plaintiffs universally objected and failed to provide a response to 14 of the 27 supplemental interrogatories.**

Plaintiffs failed to respond to more than half of the supplemental interrogatories Abbott propounded (Interrogatory Nos. 42, 48, 51, 52, 55, 56, 57, 58, 59, 60, 61, 62, 64, and 67). This non-response is wholly inappropriate. These interrogatories seek fundamental information that is highly relevant to plaintiffs' claims and Abbott's defenses, including, among others, the identity of the formula product administered to infant (Interrogatory No. 42), what additional/different warnings plaintiffs contend Abbott should have provided regarding its preterm infant nutrition products (Interrogatory No. 48), the date on which infant was diagnosed with NEC (Interrogatory No. 52), the identity of other pregnancies the plaintiff-parent has experienced and whether those infants received preterm infant formula (Interrogatory Nos. 55 and 56), the identity of persons who maintain relevant records (Interrogatory No. 57), infant's non-NEC diagnoses, if any (Interrogatory No. 58), and parent and infant's educational background and employment (Interrogatory Nos. 61 and 62).

17

These issues are central to the case at hand. Plaintiffs themselves placed these questions squarely at issue in this litigation. Plaintiffs allege their infant ingested Abbott's formula, was diagnosed with NEC, and suffered injuries as a result. Abbott is entitled to investigate and test these allegations by requesting fundamental information from plaintiffs regarding the nature of their claims.

### 2. Plaintiffs' response regarding the ongoing nature of discovery is insufficient.

Similar to their response to the Standard Form Interrogatories, plaintiffs objected or responded to several supplemental interrogatories (Interrogatory Nos. 42, 43, 44, 45, 46, 47, 48, 50, 51, 53, and 63), asserting that discovery is "early and ongoing" or that the interrogatory itself was "premature." These objections and responses are unsupportable, as the ongoing nature of discovery does not excuse plaintiffs from satisfying their discovery obligations. *See Appleman*, 79 Pa. D. & C.4th at 360-61 ("Referring to the complaint and stating that discovery is ongoing does not constitute full and complete answers.").

These interrogatories seek basic information about cases that plaintiffs themselves brought, which plaintiffs should have had in their possession prior to filing their complaints. For example, Interrogatory No. 42 simply seeks identification of the product infant was administered. Additionally, Interrogatory No. 50 seeks information regarding the mechanism by which plaintiffs assert Abbott's preterm infant nutrition products allegedly cause NEC. Plaintiffs have initiated these cases and allege these very claims. Plaintiffs cannot continue to avoid answering basic questions that go to the heart of their claims by continuously asserting that their investigation is "ongoing."[11]

---

[11] Plaintiffs also objected to Interrogatory No. 42 as requiring expert opinion. This objection, too, is unsupportable. The information required to respond to Interrogatory No. 42 would be uniquely in plaintiffs' possession or, at worst, readily available to plaintiffs through their medical records. These deficiencies are not cured by any

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

Despite having 60 days to respond to Abbott's discovery requests, plaintiffs nonetheless responded that discovery was ongoing or that the request was premature to additional relevant interrogatories, including:

- Interrogatory No. 43: STATE whether YOU and/or PARENTS saw or read any label, packaging, product guide, or other DOCUMENTS RELATED TO the PRETERM INFANT FORMULA PRODUCTS before they were administered to the INFANT and, if so, IDENTIFY the label, packaging, or product guide, or other DOCUMENTS you saw or read and IDENTIFY the time, place, and manner in which YOU saw or read such materials.

- Interrogatory No. 44: STATE whether YOU and/or PARENTS had any COMMUNICATIONS with any HEALTH CARE PRACTITIONERS regarding the decision to administer any nutrition, including but not limited to breast milk, donor milk, or PRETERM INFANT FORMULA PRODUCTS, to the INFANT and, if so, IDENTIFY all persons with whom YOU and/or PARENTS had such COMMUNICATIONS, the date(s), time, place, and manner of those COMMUNICATIONS, and DESCRIBE the content of those COMMUNICATIONS.

- Interrogatory No. 46: IDENTIFY any gifts, coupons, PRETERM INFANT FORMULA PRODUCTS, or OTHER INFANT FORMULA PRODUCTS that YOU and/or PARENTS received from any HEALTH CARE PROVIDER, including without limitation the PERSON who provided any such items to YOU and/or PARENTS, the date YOU and/or PARENTS received such items, and the substance of any discussions about such items.

To the extent plaintiffs provided any response to these interrogatories, the responses were generic, lacked substantive information, and failed to answer all components of the interrogatories. For example, in response to Interrogatory No. 44, regarding communications with healthcare providers regarding the decision to administer nutrition to infant, including the persons involved, as well as the time, place, manner, and content of the communication, plaintiffs' responses included generic phrases such as:

- "Plaintiff recalls discussing the benefits of feeding premature babies with human milk but does not recall having conversations related to consent to feed her child." (*Goodmond Rya G.*, *Goodmond Ryh G.*);

---

vague promise to supplement at a later date. Rather, plaintiffs have a plain discovery obligation to provide contemporaneous responses to these relevant requests.

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

- "Plaintiff recalls signing a consent form for her child to be given formula or fortifier." (*Kajuffa*);

- "Plaintiff recalls being consulted about nutrition . . . ." (*Moment*); and

- "Plaintiff recalls having conversations related to consent to feed her child." (*Taylor*).

In each of these instances, plaintiffs fail to provide basic information that is central to the claims they brought, including the location, time, content, and participants of these conversations.[12] And plaintiffs' failure to produce this basic information has prevented Abbott from being in a position to take plaintiffs' depositions.

*        *        *

Accordingly, for the foregoing reasons, Abbott respectfully requests that plaintiffs' objections and responses to all aforementioned supplemental interrogatories be stricken and that plaintiffs be ordered to provide full and complete responses to these interrogatories within 20 days of the date of the Court's order.

## II. SEVERAL OF PLAINTIFFS' OBJECTIONS AND RESPONSES TO ABBOTT'S REQUESTS FOR PRODUCTION ARE IMPROPER AND INSUFFICIENT, AND THEREFORE, THEY SHOULD BE STRICKEN.

Abbott propounded 46 requests for production on plaintiffs in all 21 cases. Plaintiffs' responses to numerous of these requests are insufficient.

### 1. Plaintiffs' reference to medical authorizations, medical records, or unspecified third-party productions in response to several requests is insufficient.

In response to numerous requests (*e.g.*, Request Nos. 1, 6, 9, 17, 38, 39, 42, and 44), plaintiffs responded only by directing Abbott to incomplete medical authorizations, unproduced medical records, and unspecified third-party productions. For the reasons already discussed above,

---

[12] These same failures and lack of substantive information similarly plague plaintiffs' responses to Interrogatory Nos. 42, 45, 46, 47 and 53.

20

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

this response is entirely insufficient. As described more fully above, plaintiffs failed to provide complete sets of authorizations for any parent or infant and similarly failed to produce a single medical record. In 15 of the 21 of the cases, plaintiffs provided two *or fewer* authorizations for each infant. In 20 cases, plaintiffs provided only *one* authorization for each parent, failing entirely to produce any parent or infant authorization in *Wiggins*. Plaintiffs in no way discharge their discovery obligations by referring to incomplete, unproduced, or unspecified documents.

Moreover, plaintiffs' manner of response, by simply referring to the authorizations, is deficient for yet another reason. In particular, neither the authorizations, nor the medical records that they authorize Abbott to obtain, would result in documents responsive to a majority of these requests, including, for example:

- Request No. 1: All DOCUMENTS and COMMUNICATIONS that support, refute, or relate to any of YOUR allegations in the COMPLAINT.

- Request No. 6: All DOCUMENTS or evidence of any kind supporting each and every act and/or omission by ABBOTT that YOU allege supports the causes of action against ABBOTT in the COMPLAINT.

- Request No. 17: All DOCUMENTS identified in connection with YOUR or INFANT's responses to any Interrogatories in this LAWSUIT, or referenced or used in preparing such responses.

- Request No. 38: All DOCUMENTS that constitute, reflect, refer to, or relate to any articles, journals, notes, news alerts, or other information about PRETERM INFANT FORMULA PRODUCTS or OTHER INFANT FORMULA PRODUCTS.

- Request No. 39: All DOCUMENTS that constitute, reflect, refer to, or relate to any articles, journals, notes, news alerts, or other information about ABBOTT or any other manufacturer of PRETERM INFANT FORMULA PRODUCTS or OTHER INFANT FORMULA PRODUCTS.

- Request No. 42: All non-privileged COMMUNICATIONS and DOCUMENTS between YOU and any PERSON related to YOUR decision to initiate this LAWSUIT.

- Request No. 44: All YOUR calendars, journals, or other DOCUMENTS that reflect YOUR daily activities for the ten (10) years preceding the events giving rise to this LAWSUIT to the present.

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

2. **Plaintiffs' objection to certain requests as premature is unsupportable and thus insufficient.**

Plaintiffs objected to several requests (Request Nos. 1, 2, 5, 19, 21, 22, 23, 24, and 45) as premature. This objection is unsupportable. These requests were timely propounded, and they seek information uniquely within plaintiffs' possession—indeed, the majority seek information that should have been in plaintiffs' possession prior to filing their complaints.

To provide a stark example, plaintiffs universally objected that it was premature of Abbott to seek authorizations for medical records from plaintiffs. Notwithstanding, plaintiffs responded to eight additional requests by referring Abbott to authorizations and medical records. Plaintiffs cannot have it both ways. Plaintiffs' failure to provide this critical and relevant information, or otherwise authorize Abbott to obtain it itself, prevents Abbott from preparing for the depositions of plaintiffs.

3. **Plaintiffs' objection that certain requests seek health-related information is unsupportable and thus insufficient.**

Plaintiffs objected to several requests, suggesting they sought "health information protected by state and federal law." This objection is unsupportable for multiple reasons. First, plaintiffs have brought suit against Abbott claiming physical injury; they have placed their health and related information squarely at issue in this case, and accordingly, they have waived any claim to protection over that information.

Courts in this Commonwealth have held that "[b]y filing actions for personal injuries, the plaintiff-patients waive their privilege and, in effect, implicitly consent to disclosures by their physicians concerning matters relating to the plaintiff-patients' medical conditions." *See Moses v. Williams*, 549 A.2d 950, 956 (Pa. Super. Ct. 1988). Indeed, courts have similarly found that "privileges protecting records for mental health treatment, drug and alcohol rehabilitation, and communications to psychiatrists/psychologists are waived by filing a personal injury lawsuit

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

placing such conditions at issue." *See Gormley v. Edgar*, 995 A.2d 1197, 1205 (Pa. Super. Ct. 2010) ("[O]ur legislature could not have intended the miscarriage of justice that would result if a plaintiff could file a lawsuit and then deny a defendant relevant evidence that would mitigate defendant's liability.").

Here, plaintiffs, both parents and infants, have squarely placed their physical condition at issue in this litigation, and, by bringing the instant actions for the recovery of damages based on personal injury, they have waived any right to claim a privilege over this critical and central information.

In any event, as each of Request Nos. 20, 21, 22, 23, and 24 makes clear, the authorizations through which Abbott seeks permission to collect this health-related information are HIPAA-compliant.

> ### 4. Plaintiffs' scope-related objections to Request Nos. 8 and 9 are unsupportable and thus insufficient.

Plaintiffs object to Request Nos. 8 and 9 as "not limited in time and scope." This is categorically incorrect. Request No. 8, by its very terms, seeks documents "in the ten (10) years preceding the events giving rise to this LAWSUIT to the present." In addition, Request No. 9 seeks medical bills, statements, or invoices "for which YOU seek damages in this LAWSUIT." This request is clearly limited to and targeted at documents which detail the amount of plaintiffs' alleged damages. There is no colorable argument that these documents are outside of the temporal scope of this litigation or otherwise "not related or relevant to the issues in this case," as plaintiffs claim.

## III. PLAINTIFFS FAILED TO SATISFY THEIR DISCOVERY OBLIGATIONS BY PROVIDING INCOMPLETE AUTHORIZATIONS.

As part of its requests for production, Abbott requested that plaintiffs execute medical, insurance, employment, education, and psychiatric/psychotherapy authorizations for both infant

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

and parent. Plaintiffs initially agreed to "serve as many authorizations as possible by 9/8." Plaintiffs also agreed to provide us with the medical records they had, as well as "med, education, [and] insurance auths." Notwithstanding, as of October 9, the date on which plaintiffs' discovery responses were due pursuant to the extension, not one authorization had been received.

On October 11, nearly 45 days after plaintiffs said they would produce authorizations and medical records on a rolling basis, plaintiffs provided Abbott with a very limited number of authorizations for only some of the plaintiffs. Two weeks later, on October 26, plaintiffs provided another limited set of authorizations..

To date, plaintiffs have not provided a complete set of authorizations in any of the 21 actions, insofar as each is (1) missing medical authorizations relating to additional relevant treaters, and (2) missing any and all insurance, education, and psychiatric/psychotherapy authorizations. In particular, for all 20 parents for whom an authorization have been produced, plaintiffs provided only a single authorization, designated for the infant's birth hospital. Plaintiffs did not provide any authorizations directed at other treaters, notably the parent's OB/GYN or other treating specialists. Additionally, plaintiffs did not provide any insurance, employment, education, or psychiatric/psychotherapy authorizations for any parent. Plaintiffs have failed to provide any parent authorization whatsoever in the *Wiggins* action (Case No. 220302986).

Similarly, in 15 of the 21 cases, parents provided two *or fewer* authorizations for each infant. Where plaintiffs did provide two authorizations for an infant, one was universally designated for the birth hospital and another was designated for a different treating hospital. In only rare instances, plaintiffs provided authorizations for more than 2 hospitals. Yet, across all 21 cases, plaintiffs provided no authorizations for other types of treaters, including pediatricians or other treating specialists. Additionally, plaintiffs did not provide any insurance, employment,

24

education, or psychiatric/psychotherapy authorizations for any infant in any case.  Plaintiffs have failed to provide any infant authorizations whatsoever in the *Wiggins* (Case No. 220302986) and *Williams* actions (Case No. 220400141).

Plaintiffs' failure to timely provide complete sets of authorizations for all parents and infants is compounded by plaintiffs' deficient discovery responses.  In particular, in response to several interrogatories and requests for production, plaintiffs improperly respond by simply directing Abbott to incomplete authorizations and unproduced medical records, and otherwise failing to provide any substantive information.  .

Accordingly, Abbott respectfully requests that this Court direct plaintiffs to either provide a complete set of authorizations for all infants and parents or otherwise direct plaintiffs to obtain the medical records themselves for production to Abbott.

**CONCLUSION**

For the foregoing reasons, Abbott respectfully requests that this Court strike plaintiffs' improper and insufficient objections and responses to Abbott's discovery requests and direct plaintiffs to serve complete and accurate responses thereto within 20 days of the entry of the Court's order.

Dated: November 10, 2023                                  Respectfully Submitted:


*/s/ Sean P. Fahey*                                      */s/ Joseph E. O'Neil*
Sean P. Fahey (PA Bar No. 73305)             Joseph E. O'Neil (PA Bar No. 29053)
**TROUTMAN PEPPER HAMILTON**          Meaghann C. Porth (PA Bar No. 307629)
**SANDERS LLP**                                        Ryan J. O'Neil (PA Bar No. 314034)
3000 Two Logan Square                              **CAMPBELL CONROY & O'NEIL, P.C.**
Philadelphia, PA 19103                               1205 Westlakes Drive, Suite 330
215.981.4296                                               Berwyn, PA 19312
Sean.Fahey@troutman.com                         610.964.6388
                                                                  JONeil@CampbellTrialLawyers.com
                                                                  MPorth@campbell-trial-lawyers.com
                                                                  RONeil@campbell-trial-lawyers.com

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

/s/ Ronni E. Fuchs
Ronni E. Fuchs (PA Bar No. 65561)
**TROUTMAN PEPPER HAMILTON
SANDERS LLP**
301 Carnegie Center, Suite 400
Princeton, NJ 08540
609.951.4183
Ronni.Fuchs@troutman.com

/s/ Marques Hillman Richeson
Marques Hillman Richeson (admitted *pro hac vice*)
**JONES DAY**
901 Lakeside Avenue
Cleveland, OH 44114
216.586.7195
mhricheson@jonesday.com

/s/ Jennifer B. Flannery
Jennifer B. Flannery (PA Bar No. 74546)
**JONES DAY**
1221 Peachtree Street, N.E., Suite 400
Atlanta, GA 30361
404.581.8008
jbflannery@jonesday.com

*Attorneys for Defendant Abbott Laboratories*

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

# EXHIBIT A

KLINE & SPECTER, P.C.
By:
    Tobias L. Millrood, Esq.
    Elizabeth A. Crawford, Esq.
    John P. O'Neill, Esq.
Attorney I.D. Nos. : 77764 / 313702 / 205677
125 Locust Street, 19th Floor
Philadelphia, PA 19102
Telephone: (215) 772-1000
tobi.millrood@klinespecter.com
elizabeth.crawford@klinespecter.com
jack.oneill@klinespecter.com

KELLER POSTMAN LLC
By:
    Benjamin J. Whiting, Esq. (*pro hac vice*)
Attorney I.D. No.: IL 6307321
150 N. Riverside Plaza, Suite 4100
Chicago, Illinois 60606
Telephone: (312) 741-5220
ben.whiting@kellerpostman.com

| | |
|---|---|
| HOLLI CARTER, on her own behalf and as PARENT and NATURAL GUARDIAN OF J.C., a MINOR,<br><br>               *Plaintiff*,<br><br>   v.<br><br>MEAD JOHNSON & COMPANY, LLC, ET AL.<br><br>               *Defendants*. | IN THE COURT OF COMMON PLEAS PHILADELPHIA COUNTY<br><br>CIVIL TRIAL DIVISION<br><br>MARCH TERM 2022<br>NO.  2588 |

**PLAINTIFF HOLLI CARTER'S RESPONSE TO ABBOTT LABORATORIES' FIRST SET OF INTERROGATORIES DIRECTED TO PLAINTIFF HOLLI CARTER ON HER OWN BEHALF AND ON BEHALF OF HER MINOR CHILD J.C.**

    Plaintiff Holli Carter, on her own behalf and as Parent and Natural Guardian of J.C., a

Minor, through counsel, hereby objects and responds to Defendant Abbott Laboratories

Interrogatories, as follows:

1

**GENERAL OBJECTIONS**

1.      Plaintiff objects to the Requests to the extent that they seek information that is protected from disclosure by the attorney-client privilege, the attorney work product doctrine or any other recognized privilege.

2.      Plaintiff objects to the Requests to the extent that they require Respondents to search for and produce documents or information that are not within their possession, custody, or control.

3.      Plaintiff objects to the Requests to the extent they seek information or documents that cannot be located by Respondents after reasonably diligent inquiry, are readily available from public sources, or are available to Complaint Counsel from another source or by other means that are more convenient, more appropriate, less burdensome, or less expensive.

4.      Plaintiff objects to the Requests to the extent they seek legal conclusions and/or would require Respondents to reach a legal conclusion in order to prepare a response.

**RESPONSES TO INTERROGATORIES**

**STANDARD FORM INTERROGATORIES TO PLAINTIFF HOLLI CARTER**

**INTERROGATORY NO. 1 (Medical Malpractice Case Standard Interrogatory No. 1):**

State:

      (a)      Your full name;

      (b)      Any other names you have used or been known by;

      (c)      Your date and place of birth;

      (d)      Your marital status at the time of the incident;

      (e)      Your present marital status;

      (f)      Your present home address; and

2

(g)     Your social security number.

**RESPONSE**: Plaintiff objects to this Interrogatory because it is overbroad and seeks information that is irrelevant and immaterial because it is not limited to the time period or products relevant to the claims and defenses in this case. Subject to and without waiving any objections, Holli Carter resides at 16 Carmen Dr, Cape May Court House, NJ 08210. Once a protective order has been entered in this case, Plaintiffs will duly supplement its response to this interrogatory with additional information.

**INTERROGATORY NO. 2 (Medical Malpractice Case Standard Interrogatory No. 2):**

If you claim a permanent injury resulting from the treatment, surgery or examination upon which this action is based, describe such injury fully and in detail.

**RESPONSE**: Plaintiff objects to this Interrogatory because it seeks information irrelevant and immaterial to the claims and defenses in this case. Without waiving this objection, Plaintiff is willing to meet and confer with Defendant or whether a more limited request would suffice.

**INTERROGATORY NO. 3 (Medical Malpractice Case Standard Interrogatory No. 3):**

Were you ever in the Armed Forces? If so, state: the dates, branch of service, rank at discharge, whether you had any infirmities at discharge, whether you have any claim or are receiving benefits for any infirmities from said service, your Armed Forces service number, and your Veterans "C" number.

**RESPONSE**: Plaintiff objects to this Interrogatory because it is overbroad and seeks information that is irrelevant and immaterial as it is not limited to the time period and not relevant to the claims and defenses in this case. Plaintiff also objects to the extent that the term "infirmities" is vague and/or undefined.

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

**INTERROGATORY NO. 4** **(Medical Malpractice Case Standard Interrogatory No. 4)**:

State the name and address of your family physician at the time of the treatment, surgery or examination upon which this action is based.

**RESPONSE**: Plaintiff objects to this Interrogatory because the term "upon which this action is based" is vague and/or undefined. Plaintiff further objects that this Interrogatory is incomprehensible. Subject to and without waiving any objections, Plaintiff directs Defendant to the medical authorizations and medical records that have been or will be produced.

**INTERROGATORY NO. 5** **(Medical Malpractice Case Standard Interrogatory No. 5):**

State in detail the injuries or diseases that you allege that you suffered as a result of treatment, surgery or examination upon which this action is based.

**RESPONSE**: Plaintiff objects to this Interrogatory because the term "upon which this action is based" is vague and/or undefined. Plaintiff further objects that this Interrogatory is incomprehensible to the extent it is directed to Plaintiff, not Infant. Plaintiff further objects to this Interrogatory because it is overbroad and seeks irrelevant information regarding medical providers and treatment that is unrelated to Infant's injuries. Plaintiff is willing to confer with Defendant about the scope of this Interrogatory.

**INTERROGATORY NO. 6** **(Medical Malpractice Case Standard Interrogatory No. 6):**

If you received medical treatment, tests, or examinations (including x-rays) because of injuries or diseases you suffered as a result of the treatment, surgery, or examination referred to in the complaint, state:

(a)     The name and address of each hospital at which you were treated or examined;

(b)     The dates on which each such treatment or examination at

4

a hospital was rendered and the charges by the hospital

for each;

(c)     The name and address of each doctor or practitioner by whom

you were treated or examined;

(d)     The dates on which each such treatment or examination by

a doctor or practitioner was rendered and the charges for

each;

(e)     The identity of all reports regarding any medical treatment

or examination, setting forth the author and date of such

reports; and

(f)     Please consider this as a request to produce copies of all

reports referred to in the above answer.

**RESPONSE**: Plaintiff objects to this Interrogatory as incomprehensible to the extent it is directed to Plaintiff, not Infant. Plaintiff further objects to this Interrogatory because it is overbroad and may seek irrelevant information regarding medical providers and treatment that is unrelated to Infant's injuries. Plaintiff also objects that the Interrogatory is compound and overly burdensome in that it requires a narrative response and is more properly the subject of a document production request.

Subject to and without waiving any objections, Plaintiff directs Defendant to the medical authorizations and medical records that have been or will be produced.

**<u>INTERROGATORY NO. 7</u> (Medical Malpractice Case Standard Interrogatory No. 7):**

Either prior to or subsequent to the treatment, surgery or examination referred to in the complaint, have you ever suffered any injuries, illness or diseases in those portions of the body

5

claimed by you to have been affected by the treatment, surgery or examination referred to in the complaint?

If so, state:

(a)     A description of the injuries or diseases you suffered;

(b)     The date and place of any accident, if such an injury or disease was caused by an accident; and

(c)     The names and addresses of all hospitals, doctors or practitioners who rendered treatment or examinations because of any such injuries or diseases.

**RESPONSE**: Plaintiff objects to this Interrogatory as incomprehensible to the extent it is directed to Plaintiff, not Infant. Plaintiff further objects to this Interrogatory because it is overbroad and may seek irrelevant information regarding medical providers and treatment that is unrelated to Infant's injuries. Plaintiff also objects that the Interrogatory is compound and overly burdensome in that it requires a narrative response and is more properly the subject of a document production request. Plaintiff is willing to confer with Defendant about the scope of this Interrogatory.

**INTERROGATORY NO. 8 (Medical Malpractice Case Standard Interrogatory No. 8):**

For the period of three years immediately preceding the date of the treatment, surgery or examination referred to in the complaint, state:

(a)     The name and address of each of your employers or, if you were self-employed during that period, each of your business addresses and the name of the business while self-employed;

(b)     The dates of commencement and termination of each of your periods of

6

employment or self-employment;

(c)    A detailed description of the nature of your occupation and the services performed by you in each employment or self-employment; and

(d)    Your average weekly earnings from each employment or self- employment; the average number of hours worked by you per week in each employment or self-employment; and the amount of income from employment or self-employment reported on your Federal Income Tax Return for each year.

**RESPONSE**: Plaintiff objects to this Interrogatory because it seeks information irrelevant and immaterial to the claims and defenses in this case. Plaintiff also objects that the Interrogatory is compound and overly burdensome.

Plaintiff objects to this Interrogatory because it is overbroad and seeks information that is irrelevant and immaterial as it is not limited to the time period relevant to the claims and defenses in this case. Plaintiff is willing to confer with Defendant about the scope of this Interrogatory.

**INTERROGATORY NO. 9 (Medical Malpractice Case Standard Interrogatory No. 9):**

If you have engaged in one or more gainful occupations subsequent to the date of the treatment, surgery or examination referred to in the complaint, state:

(a)    The name and address of each of your employers or, if you were self-employed, each of your business addresses and the name of the business while self- employed;

(b)    The dates of commencement and termination of each of your periods of employment or self-employment;

(c)    A detailed description of the nature of your occupation and the services performed by you in each employment or self-employment;

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

(d)     The wage, salary or rate of earnings received by you in each employment or self-employment and the amount of income reported on your Federal Income Tax Return for each year subsequent to the accident; and

(e)     The dates of all absences from your occupation, the reasons therefor and the amount of any earnings lost by you because of such absences.

**RESPONSE**: Plaintiff objects to this Interrogatory because it seeks information irrelevant and immaterial to the claims and defenses in this case. Plaintiff also objects that the Interrogatory is compound and overly burdensome.

Plaintiff objects to this Interrogatory because it is overbroad and seeks information that is irrelevant and immaterial as it is not limited to the time period relevant to the claims and defenses in this case. Plaintiff is willing to confer with Defendant about the scope of this Interrogatory.

**<u>INTERROGATORY NO. 10</u> (Medical Malpractice Case Standard Interrogatory No. 10):**

State whether you, subsequent to the date of the treatment, surgery or examination, have been unable to perform adequately any of your customary occupational duties or social or other activities, stating with particularity (a) the duties and/or activities you have been unable to perform, (b) the periods of time you have been unable to perform, and (c) the names and last known addresses of all persons who have personal knowledge thereof.

**RESPONSE**: Plaintiff objects to this Interrogatory as incomprehensible to the extent it is directed to Plaintiff, not Infant. Plaintiff also objects that the Interrogatory is compound and overly burdensome. Plaintiff is willing to confer with Defendant about the scope of this Interrogatory.

**<u>INTERROGATORY NO. 11</u> (Medical Malpractice Case Standard Interrogatory No. 11):**

State the name and last known address of each person who (a) was a witness to the treatment, surgery or examination through sight or hearing and/or (b) has knowledge of facts

8

concerning the happening of the treatment, surgery or examination or conditions or circumstances at the time of the treatment, surgery or examination prior to, after, or at the time of the accident, excepting those persons who acquired such knowledge during the course of this litigation.

**RESPONSE**: Plaintiff objects to this Interrogatory to the extent it is premature.

Subject to the foregoing objections, as discovery is ongoing, Plaintiff will supplement the response to this Interrogatory.

**INTERROGATORY NO. 12 (Medical Malpractice Case Standard Interrogatory No. 12):**

With respect to each person identified in the answer to interrogatory 11(a), state that person's exact location and activity at the time of the treatment, surgery or examination.

**RESPONSE**: Plaintiff objects to this Interrogatory to the extent it is premature.

Subject to the foregoing objections, as discovery is ongoing, Plaintiff will supplement the response to this Interrogatory.

**INTERROGATORY NO. 13 (Medical Malpractice Case Standard Interrogatory No. 13):**

Have you or anyone acting on your behalf obtained from any person any statement concerning this action or its subject matter? If so, state:

(a)     The name and last known address of each such person;

(b)     When, where, by whom and to whom each statement was made, and whether it was reduced to writing or otherwise recorded;

(c)     The name and address of any person who has custody of any such statements that were reduced to writing or otherwise recorded; and

(d)     Please consider this a Request to Produce those statements referred to in the above answer.

9

**RESPONSE**: Plaintiff objects to this Interrogatory because it is vague. Plaintiff objects to this Interrogatory because it seeks opinions or contentions relating to fact, or the application of law to facts, as to which discovery has yet to be completed, and requires Plaintiff to anticipate or assume factual information that has not been established or that may be forthcoming in discovery. Plaintiff also objects that this Interrogatory is premature because discovery is ongoing. Plaintiff further objects that this Interrogatory seeks premature disclosure of expert opinion.

Subject to and without waiving said objections, Plaintiff directs Defendant to all relevant documents that will be produced during the course of discovery. As discovery is ongoing, Plaintiff will supplement Plaintiff's response to this Interrogatory.

**INTERROGATORY NO. 14 (Medical Malpractice Case Standard Interrogatory No. 14):**

Have you given any statement concerning this action or its subject matter? If so, state:

      (a)     The name and last known address of each person to whom a statement was given;

      (b)     When and where each statement was given; and

      (c)     Please consider this a Request to Produce the statements referred to in the above answer.

**RESPONSE**: Plaintiff objects to this Interrogatory because the term "any statement concerning this action or its subject matter" is overbroad and vague. Plaintiff is willing to confer with Defendant about the scope of this Interrogatory.

**INTERROGATORY NO. 15 (Medical Malpractice Case Standard Interrogatory No. 15):**

Do you know of the existence of any photographs, diagrams or models of the surrounding area or the areas of the treatment, surgery or examination or any other matters or things involved in this treatment, surgery or examination.

If the answer is in the affirmative, state:

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

(a)   The date(s) when such photographs, diagrams or models were made;

(b)   The name and address of the party making them;

(c)   Where they were made;

(d)   The object(s) or subject(s) each photograph, diagram or model represents; and

(e)   Please consider this a request to produce the photographs, diagrams and/or models referred to in the above answer.

**RESPONSE**: Plaintiff objects to this Interrogatory because the Interrogatory is vague. Plaintiff is willing to confer with Defendant about the scope of this Interrogatory.

**<u>INTERROGATORY NO. 16</u> (Medical Malpractice Case Standard Interrogatory No. 16):**

(a)   Have you, or anyone on your behalf, conducted any investigations of the treatment, surgery or examination which is the subject matter of the complaint?

(b)   If the answer to (a) is in the affirmative, state:

    (1)   the name, address, and employer of all persons who conducted any investigations;

    (2)   The dates of the investigation;

    (3)   The dates of any reports of any investigations and the identity of the persons who have possession thereof; and

    (4)   Please consider this a request to produce your investigation reports, except those portions which are protected from discovery by Pennsylvania Rule of Civil Procedure 4003.3.

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

**RESPONSE**: Plaintiff objects to this Interrogatory because the term "any investigations of the treatment, surgery or examination" is overbroad and vague. Plaintiff further objects based upon attorney-client privilege and the attorney work product doctrine. Plaintiff is willing to confer with Defendant about the scope of this Interrogatory.

**INTERROGATORY NO. 17 (Medical Malpractice Case Standard Interrogatory No. 17):**

    (a)    State the name and address of each person whom you expect to call as expert witnesses at trial and state the subject matter on which the expert is expected to testify.

    (b)    For each such expert, state, or have the expert state, the substance of the facts and opinions to which the expert is expected to testify and summarize the grounds for each such opinion. (Experts' reports containing the same information may be attached in lieu of an answer.)

    (c)    If the expert is employed and/or self-employed, identify the employer and the nature of employment hereof.

    (d)    Identify all documents submitted to the expert and all products and/or locales inspected by the expert in connection with preparations for his/her testimony.

    (e)    Set forth the qualifications of each expert, listing the schools attended, years of attendance, degrees received, experience in any particular field of specialization or expertise, all publications authored, including the title of the work and the book in which it was printed giving the date of publication.

**RESPONSE**: Plaintiff objects to this Interrogatory because it is premature. Plaintiff also objects to the extent that she does not yet know the identities of the experts likely to be called at

trial. Further, the Interrogatory is premature to the extent that Plaintiff does not yet have sufficient information to enable an expert to analyze and formulate a comprehensive opinion with respect to the facts and issues involved in this action. Plaintiff acknowledges her affirmative duty to identify the expert witnesses, including rebuttal witnesses, as soon as feasible.

Subject to the foregoing, Plaintiff will amend and/or supplement this response.

**INTERROGATORY NO. 18 (Medical Malpractice Case Standard Interrogatory No. 18):**

State the specific facts known to you or anyone acting on your behalf upon which you base each claim of negligence or malpractice alleged in this action.

**RESPONSE**: Plaintiff objects to this Interrogatory as premature because discovery is ongoing, and documents related to this Interrogatory are in Defendant's possession and have not yet been produced to Plaintiff. Plaintiff further objects that this Interrogatory improperly seeks legal conclusions. Plaintiff also objects to this Interrogatory to the extent that it seeks opinions or contentions relating to fact, or the application of law to facts, as to which discovery has yet to be completed, and requires Plaintiff to anticipate or assume factual information that has not been established or that may be forthcoming in discovery. Plaintiff reserves the right amend this response.

**INTERROGATORY NO. 19 (Medical Malpractice Case Standard Interrogatory No. 19):**

(a)     Were the injuries you allege in this action caused in part by sickness, disease, abnormality or injury other than the injuries you claim resulted from the treatment, surgery or examination upon which this action is based?

(b)     If so, state specifically the nature of each such sickness, disease, abnormality or injury and how each affected you.

(c)     Are there any medical, x-rays, hospital or other reports which indicate the

13

nature of each such sickness, disease or abnormality or injury and how each affected you.

(d)    If so, where and when was each report made and what is the name and present or last known address of the person who made each such report and each such person who has custody or possession of each such report or any copy thereof?

(e)    Have you been furnished with any such information in any way other than by the documents referred to in this interrogatory? If so, how, when and where and by whom?

**RESPONSE**: Plaintiff objects to this Interrogatory as incomprehensible to the extent it is directed to Plaintiff, not Infant. Plaintiff further objects to this Interrogatory because it is overbroad and may seek irrelevant information regarding medical providers and treatment that is unrelated to Infant's injuries. Plaintiff also objects that the Interrogatory is compound and overly burdensome in that it requires a narrative response and is more properly the subject of a document production request. Plaintiff also objects that the Interrogatory requires expert opinion.

**<u>INTERROGATORY NO. 20</u> (Product Liability Standard Interrogatory No. 1):**

Identify all instruction, operating, repair, maintenance and safety manuals regarding the product actually involved in the accident and any other documents which describe the product and its use stating: titles, dates of publication, general description and amendments thereto and identify the persons who have custody thereof.

**RESPONSE:** Plaintiff objects to this Interrogatory as premature because discovery is ongoing, and documents related to this Interrogatory are in Defendant's possession and have not yet been produced to Plaintiff. Plaintiff further objects that this Interrogatory improperly seeks

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

legal conclusions. Plaintiff also objects to this Interrogatory to the extent that it seeks opinions or contentions relating to fact, or the application of law to facts, as to which discovery has yet to be completed, and requires Plaintiff to anticipate or assume factual information that has not been established or that may be forthcoming in discovery.

**INTERROGATORY NO. 21 (Personal Injury Case Standard Interrogatory No. 3):**

If you have incurred any bills or expenses in connection with the injuries or diseases which you suffered because of the accident referred to in the complaint, and such bills or expenses are not otherwise listed in answer to these interrogatories, set forth the amount of each such bill or expense, the service for which the bill or expense was incurred, and the identity of the person who rendered the bill or who was involved in the expense.

**RESPONSE:** Plaintiff objects to this Interrogatory because it seeks opinions or contentions relating to fact, or the application of law to facts, as to which discovery has yet to be completed, and requires Plaintiff to anticipate or assume factual information that has not been established or that may be forthcoming in discovery. Plaintiff also objects that this Interrogatory is premature because discovery is ongoing. Plaintiff further objects that this Interrogatory seeks premature disclosure of expert opinion.

Subject to and without waiving said objections, Plaintiff directs Defendant to all relevant documents that will be produced during the course of discovery. As discovery is ongoing, Plaintiff will supplement Plaintiff's response to this Interrogatory.

**STANDARD FORM INTERROGATORIES TO PLAINTIFF J.C.**

**INTERROGATORY NO. 22 (Medical Malpractice Case Standard Interrogatory No. 1):**

State:

      (a)      Your full name;

15

(b)     Any other names you have used or been known by;

(c)     Your date and place of birth;

(d)     Your marital status at the time of the incident;

(e)     Your present marital status;

(f)     Your present home address; and

(g)     Your social security number.

**RESPONSE**: H.C. was born on October 6, 2014, at Pennsylvania Hospital. H.C. resides at 16 Carmen Dr, Cape May Court House, NJ 08210.

Plaintiff will provide H.C.'s social security number after this Court enters a protective order for this litigation.

**INTERROGATORY NO. 23 (Medical Malpractice Case Standard Interrogatory No. 2):**

If you claim a permanent injury resulting from the treatment, surgery or examination upon which this action is based, describe such injury fully and in detail.

**RESPONSE**: Plaintiff objects to this Interrogatory because it is premature. Plaintiff also objects that the interrogatory is vague as to "treatment" and "examination." Plaintiff further objects that this Interrogatory seeks premature disclosure of expert opinion.

Subject to and without waiving any objections, Plaintiff directs Defendant to the medical authorizations and medical records that have been or will be produced. Plaintiff further refers Defendant to any documents produced by and/or that will be produced by Defendant or any third-party in this case.

As discovery is ongoing, Plaintiff will supplement the response to this Interrogatory. In addition, Plaintiff and Infant may have additional injuries that are, at this time, not known because Infant is continuing to develop and may face new, or worsened, injuries as time passes.

16

**INTERROGATORY NO. 24 (Medical Malpractice Case Standard Interrogatory No. 3):**

Were you ever in the Armed Forces? If so, state: the dates, branch of service, rank at discharge, whether you had any infirmities at discharge, whether you have any claim or are receiving benefits for any infirmities from said service, your Armed Forces service number, and your Veterans "C" number.

**RESPONSE**: Plaintiff objects to this Interrogatory because it is overbroad and seeks information that is irrelevant and immaterial as it is not limited to the time period and not relevant to the claims and defenses in this case. Plaintiff also objects to the extent that the term "infirmities" is vague and/or undefined.

**INTERROGATORY NO. 25 (Medical Malpractice Case Standard Interrogatory No. 4):**

State the name and address of your family physician at the time of the treatment, surgery or examination upon which this action is based.

**RESPONSE**: Plaintiff objects to this Interrogatory because the term "upon which this action is based" is vague and/or undefined. Plaintiff further objects that this Interrogatory is incomprehensible. Subject to and without waiving any objections, Plaintiff directs Defendant to the medical authorizations and medical records that have been or will be produced.

**INTERROGATORY NO. 26 (Medical Malpractice Case Standard Interrogatory No. 5):**

State in detail the injuries or diseases that you allege that you suffered as a result of treatment, surgery or examination upon which this action is based.

**RESPONSE**: Plaintiff objects to this Interrogatory because it is premature. Plaintiff further objects that this Interrogatory seeks premature disclosure of expert opinion. Plaintiff further objects to this Interrogatory as compound and overly burdensome in that it requires a narrative response and is more properly the subject of a document production request.

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

Subject to and without waiving any objections, Plaintiff directs Defendant to the medical authorizations and medical records that have been or will be produced. Plaintiff further refers Defendant to any documents produced by and/or that will be produced by Defendant or any third-party in this case.

As discovery is ongoing, Plaintiff will supplement the response to this Interrogatory. In addition, Plaintiff and Infant may have additional injuries that are, at this time, not known because Infant is continuing to develop and may face new, or worsened, injuries as time passes.

**INTERROGATORY NO. 27 (Medical Malpractice Case Standard Interrogatory No. 6):**

If you received medical treatment, tests, or examinations (including x-rays) because of injuries or diseases you suffered as a result of the treatment, surgery, or examination referred to in the complaint, state:

    (a)    The name and address of each hospital at which you were treated or examined;

    (b)    The dates on which each such treatment or examination at a hospital was rendered and the charges by the hospital for each;

    (c)    The name and address of each doctor or practitioner by whom you were treated or examined;

    (d)    The dates on which each such treatment or examination by a doctor or practitioner was rendered and the charges for each;

    (e)    The identity of all reports regarding any medical treatment or examination, setting forth the author and date of such reports; and

    (f)    Please consider this as a request to produce copies of all reports referred to in the above answer.

18

**RESPONSE**: Plaintiff objects to this Interrogatory because it is premature. Plaintiff further objects that this Interrogatory seeks premature disclosure of expert opinion. Plaintiff further objects to this Interrogatory as compound and overly burdensome in that it requires a narrative response and is more properly the subject of a document production request.

Subject to and without waiving any objections, Plaintiff directs Defendant to the medical authorizations and medical records that have been or will be produced. Plaintiff further refers Defendant to any documents produced by and/or that will be produced by Defendant or any third-party in this case.

As discovery is ongoing, Plaintiff will supplement the response to this Interrogatory. In addition, Plaintiff and Infant may have additional injuries that are, at this time, not known because Infant is continuing to develop and may face new, or worsened, injuries as time passes.

**INTERROGATORY NO. 28 (Medical Malpractice Case Standard Interrogatory No. 7):**

Either prior to or subsequent to the treatment, surgery or examination referred to in the complaint, have you ever suffered any injuries, illness or diseases in those portions of the body claimed by you to have been affected by the treatment, surgery or examination referred to in the complaint?

If so, state:

   (a)   A description of the injuries or diseases you suffered;

   (b)   The date and place of any accident, if such an injury or disease was caused by an accident; and

   (c)   The names and addresses of all hospitals, doctors or practitioners who rendered treatment or examinations because of any such injuries or diseases.

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

**RESPONSE**: Plaintiff objects to this Interrogatory because it is overbroad and may seek irrelevant information regarding medical providers and treatment that is unrelated to Infant's injuries. Plaintiff further objects that the Interrogatory is compound and overly burdensome in that it requires a narrative response and is more properly the subject of a document production request.

**INTERROGATORY NO. 29 (Medical Malpractice Case Standard Interrogatory No. 9):**

If you have engaged in one or more gainful occupations subsequent to the date of the treatment, surgery or examination referred to in the complaint, state:

    (a)    The name and address of each of your employers or, if you were self-employed, each of your business addresses and the name of the business while self- employed;

    (b)    The dates of commencement and termination of each of your periods of employment or self-employment;

    (c)    A detailed description of the nature of your occupation and the services performed by you in each employment or self-employment;

    (d)    The wage, salary or rate of earnings received by you in each employment or self-employment and the amount of income reported on your Federal Income Tax Return for each year subsequent to the accident; and

    (e)    The dates of all absences from your occupation, the reasons therefor and the amount of any earnings lost by you because of such absences.

**RESPONSE**: Plaintiff objects to this Interrogatory because it seeks information irrelevant and immaterial to the claims and defenses in this case. Plaintiff also objects that the Interrogatory is compound and overly burdensome.

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

Plaintiff objects to this Interrogatory because it is overbroad and seeks information that is irrelevant and immaterial as it is not limited to the time period relevant to the claims and defenses in this case.

**INTERROGATORY NO. 30 (Medical Malpractice Case Standard Interrogatory No. 10):**

State whether you, subsequent to the date of the treatment, surgery or examination, have been unable to perform adequately any of your customary occupational duties or social or other activities, stating with particularity (a) the duties and/or activities you have been unable to perform, (b) the periods of time you have been unable to perform, and (c) the names and last known addresses of all persons who have personal knowledge thereof.

**RESPONSE**: Plaintiff objects to this Interrogatory because it is vague as to "unable to perform adequately any of her customary social or other activities." Plaintiff further objects that this Interrogatory seeks premature disclosure of expert opinions.

Subject to and without waiving any objections, Plaintiff directs Defendant to the medical authorizations and medical records that have been or will be produced. Plaintiff further refers Defendant to any documents produced by and/or that will be produced by Defendant or any third-party in this case. As discovery is ongoing, Plaintiff will supplement the response to this Interrogatory.

**INTERROGATORY NO. 31 (Medical Malpractice Case Standard Interrogatory No. 11):**

State the name and last known address of each person who (a) was a witness to the treatment, surgery or examination through sight or hearing and/or (b) has knowledge of facts concerning the happening of the treatment, surgery or examination or conditions or circumstances at the time of the treatment, surgery or examination prior to, after, or at the time of the accident, excepting those persons who acquired such knowledge during the course of this litigation.

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

**RESPONSE**: Plaintiff objects to this Interrogatory because it is vague as to "has knowledge of facts concerning the happening of the incident, treatment, surgery or examination or conditions or circumstances." Plaintiff also objects that this Interrogatory to the extent it seeks information outside of Plaintiff's knowledge.

**INTERROGATORY NO. 32 (Medical Malpractice Case Standard Interrogatory No. 12):**

With respect to each person identified in the answer to interrogatory 11(a), state that person's exact location and activity at the time of the treatment, surgery or examination.

**RESPONSE**: Plaintiff objects to this Interrogatory because it is vague as to "has knowledge of facts concerning the happening of the incident, treatment, surgery or examination or conditions or circumstances." Plaintiff also objects to this Interrogatory to the extent it seeks information outside of Plaintiff's knowledge.

Subject to and without waiving any objections, Pennsylvania Hospital. Plaintiff will supplement the response to this interrogatory, if needed.

**INTERROGATORY NO. 33 (Medical Malpractice Case Standard Interrogatory No. 13):**

Have you or anyone acting on your behalf obtained from any person any statement concerning this action or its subject matter? If so, state:

(a)     The name and last known address of each such person;

(b)     When, where, by whom and to whom each statement was made, and whether it was reduced to writing or otherwise recorded;

(c)     The name and address of any person who has custody of any such statements that were reduced to writing or otherwise recorded; and

(d)     Please consider this a Request to Produce those statements referred to in the above answer.

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

**RESPONSE**: Plaintiff objects to this Interrogatory because it is vague as to "any statement concerning this action or its subject matter." Plaintiff further objects to the extent the Interrogatory is overbroad and not limited in time or scope. Plaintiff also objects to this interrogatory because it seeks information protected by the attorney-client privilege and work product doctrine. Plaintiff also objects to this Interrogatory to the extent it seeks information outside of Plaintiff's knowledge. Plaintiff is willing to confer with Defendant about the scope of this interrogatory.

**INTERROGATORY NO. 34 (Medical Malpractice Case Standard Interrogatory No. 14):**

Have you given any statement concerning this action or its subject matter? If so, state:

    (a)    The name and last known address of each person to whom a statement was given;

    (b)    When and where each statement was given; and

    (c)    Please consider this a Request to Produce the statements referred to in the above answer.

**RESPONSE**: Plaintiff objects to this Interrogatory because it is vague as to "any statement concerning this action or its subject matter." Plaintiff further objects to the extent the Interrogatory is overbroad and not limited in time or scope. Plaintiff also objects to this interrogatory because it seeks information protected by the attorney-client privilege and work product doctrine. Plaintiff also objects to this Interrogatory to the extent it seeks information outside of Plaintiff's knowledge. Plaintiff is willing to confer with Defendant about the scope of this interrogatory.

**INTERROGATORY NO. 35 (Medical Malpractice Case Standard Interrogatory No. 15):**

Do you know of the existence of any photographs, diagrams or models of the surrounding area or the areas of the treatment, surgery or examination or any other matters or things involved in this treatment, surgery or examination.

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

If the answer is in the affirmative, state:

    (a)    The date(s) when such photographs, diagrams or models were made;

    (b)    The name and address of the party making them;

    (c)    Where they were made;

    (d)    The object(s) or subject(s) each photograph, diagram or model represents; and

    (e)    Please consider this a request to produce the photographs, diagrams and/or models referred to in the above answer.

**RESPONSE**: Plaintiff objects to this Interrogatory because it is vague as to "any other matters or things involved in this treatment, surgery or examination." Plaintiff further objects to the extent the Interrogatory is overbroad and not limited in time or scope. Plaintiff also objects to this Interrogatory to the extent it seeks information outside of Plaintiff's knowledge. Plaintiff is willing to confer with Defendant about the scope of this interrogatory.

**<u>INTERROGATORY NO. 36</u> (Medical Malpractice Case Standard Interrogatory No. 16):**

    (a)    Have you, or anyone on your behalf, conducted any investigations of the treatment, surgery or examination which is the subject matter of the complaint?

    (b)    If the answer to (a) is in the affirmative, state:

        (1)    the name, address, and employer of all persons who conducted any investigations;

        (2)    The dates of the investigation;

        (3)    The dates of any reports of any investigations and the identity of the persons who have possession thereof; and

24

(4)  Please consider this a request to produce your investigation reports, except those portions which are protected from discovery by Pennsylvania Rule of Civil Procedure 4003.3.

**RESPONSE**: Plaintiff objects to this Interrogatory because the term "any investigations of the treatment, surgery or examination" is vague. Plaintiff further objects based upon attorney-client privilege and the attorney work product doctrine. Plaintiff is willing to confer with Defendant about the scope of this interrogatory.

**INTERROGATORY NO. 37 (Medical Malpractice Case Standard Interrogatory No. 17):**

(a)  State the name and address of each person whom you expect to call as expert witnesses at trial and state the subject matter on which the expert is expected to testify.

(b)  For each such expert, state, or have the expert state, the substance of the facts and opinions to which the expert is expected to testify and summarize the grounds for each such opinion. (Experts' reports containing the same information may be attached in lieu of an answer.)

(c)  If the expert is employed and/or self-employed, identify the employer and the nature of employment hereof.

(d)  Identify all documents submitted to the expert and all products and/or locales inspected by the expert in connection with preparations for his/her testimony.

(e)  Set forth the qualifications of each expert, listing the schools attended, years of attendance, degrees received, experience in any particular field of specialization or expertise, all publications authored, including the title of

the work and the book in which it was printed giving the date of publication.

**RESPONSE**: Plaintiff objects to this Interrogatory because it is premature. Plaintiff also objects to the extent that she does not yet know the identities of each of the experts likely to be called at trial. Further, because discovery is just beginning in this litigation, the Interrogatory is premature to the extent that Plaintiff does not yet have sufficient information to enable an expert to finalize a comprehensive opinion with respect to the facts and issues involved in this action.

Subject to the foregoing, Plaintiff will amend and/or supplement this response.

**INTERROGATORY NO. 38 (Medical Malpractice Case Standard Interrogatory No. 18):**

State the specific facts known to you or anyone acting on your behalf upon which you base each claim of negligence or malpractice alleged in this action.

**RESPONSE**: Plaintiff objects to this Interrogatory as premature because discovery is ongoing, and documents related to this Interrogatory are in Defendant's possession and have not yet been produced to Plaintiff. Plaintiff further objects that this Interrogatory improperly seeks legal conclusions. Plaintiff also objects to this Interrogatory to the extent that it seeks opinions or contentions relating to fact, or the application of law to facts, as to which discovery has yet to be completed, and requires Plaintiff to anticipate or assume factual information that has not been established or that may be forthcoming in discovery.

Subject to these objections, Plaintiff directs Defendant to the complaint filed in this case. Plaintiff reserves the right amend this response.

**INTERROGATORY NO. 39 (Medical Malpractice Case Standard Interrogatory No. 19):**

(a)     Were the injuries you allege in this action caused in part by sickness, disease, abnormality or injury other than the injuries you claim resulted from the treatment, surgery or examination upon which this action is based?

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

(b)     If so, state specifically the nature of each such sickness, disease, abnormality or injury and how each affected you.

(c)     Are there any medical, x-rays, hospital or other reports which indicate the nature of each such sickness, disease or abnormality or injury and how each affected you.

(d)     If so, where and when was each report made and what is the name and present or last known address of the person who made each such report and each such person who has custody or possession of each such report or any copy thereof?

(e)     Have you been furnished with any such information in any way other than by the documents referred to in this interrogatory? If so, how, when and where and by whom?

**RESPONSE**: Plaintiff objects to this Interrogatory because it is overbroad and may seek irrelevant information regarding medical providers and treatment that is unrelated to Infant's injuries. Plaintiff also objects that the Interrogatory is compound and overly burdensome in that it requires a narrative response and is more properly the subject of a document production request. Plaintiff also objects that the Interrogatory requires expert opinion.

**<u>INTERROGATORY NO. 40</u> (Product Liability Case Standard Interrogatory No. 1):**

Identify all instruction, operating, repair, maintenance and safety manuals regarding the product actually involved in the accident and any other documents which describe the product and its use stating: titles, dates of publication, general description and amendments thereto and identify the persons who have custody thereof.

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

**RESPONSE:** Plaintiff objects to this Interrogatory as premature because discovery is ongoing, and documents related to this Interrogatory are in Defendant's possession and have not yet been produced to Plaintiff. Plaintiff reserves the right amend this response.

**INTERROGATORY NO. 41 (Personal Injury Case Standard Interrogatory No. 3):**

If you have incurred any bills or expenses in connection with the injuries or diseases which you suffered because of the accident referred to in the complaint, and such bills or expenses are not otherwise listed in answer to these interrogatories, set forth the amount of each such bill or expense, the service for which the bill or expense was incurred, and the identity of the person who rendered the bill or who was involved in the expense.

**RESPONSE:** Plaintiff objects to this Interrogatory because it seeks opinions or contentions relating to fact, or the application of law to facts, as to which discovery has yet to be completed, and requires Plaintiff to anticipate or assume factual information that has not been established or that may be forthcoming in discovery. Plaintiff also objects that this Interrogatory is premature because discovery is ongoing. Plaintiff further objects that this Interrogatory seeks premature disclosure of expert opinion.

Subject to and without waiving said objections, Plaintiff directs Defendant to all relevant documents that will be produced during the course of discovery. As discovery is ongoing, Plaintiff will supplement Plaintiff's response to this Interrogatory.

**SUPPLEMENTAL INTERROGATORIES TO PLAINTIFFS
HOLLI CARTER AND J.C.**

**INTERROGATORY NO. 42:**

IDENTIFY all PRETERM INFANT FORMULA PRODUCTS administered to the INFANT prior to the INFANT'S alleged necrotizing enterocolitis ("NEC") diagnosis, including the full product name, manufacturer name of any IDENTIFIED PRETERM INFANT FORMULA

PRODUCTS, the date(s) on which each identified PRETERM INFANT FORMULA PRODUCT was allegedly administered to the INFANT, the approximate dosage/amount consumed on each of the dates each PRETERM INFANT FORMULAPRODUCT was allegedly administered to the INFANT, and the identity of any HEALTH CARE PROVIDER who administered the PRETERM INFANT FORMULA PRODUCT to the INFANT. If the PRETERM INFANT FORMULA PRODUCT was administered to the INFANT by someone other than a HEALTH CARE PROVIDER, STATE as much and IDENTIFY the administering individual.

**RESPONSE**: Plaintiff objects to this Request as premature. Plaintiff further objects to this Request as it requires expert testimony. Discovery is early and ongoing, and Plaintiff reserves the right to amend and/or supplement this Answer.

**INTERROGATORY NO. 43:**

STATE whether YOU and/or PARENTS saw or read any label, packaging, product guide, or other DOCUMENTS RELATED TO the PRETERM INFANT FORMULA PRODUCTS before they were administered to the INFANT and, if so, IDENTIFY the label, packaging, or product guide, or other DOCUMENTS you saw or read and IDENTIFY the time, place, and manner in which YOU saw or read such materials.

**RESPONSE**: Plaintiff does not remember seeing any packaging and has no other responsive information related to this Interrogatory. Discovery is early and ongoing, and Plaintiff reserves the right to amend and/or supplement this Answer.

**INTERROGATORY NO. 44:**

STATE whether YOU and/or PARENTS had any COMMUNICATIONS with any HEALTH CARE PRACTITIONERS regarding the decision to administer any nutrition, including but not limited to breast milk, donor milk, or PRETERM INFANT FORMULA PRODUCTS, to

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

the INFANT and, if so, IDENTIFY all persons with whom YOU and/or PARENTS had such COMMUNICATIONS, the date(s), time, place, and manner of those COMMUNICATIONS, and DESCRIBE the content of those COMMUNICATIONS.

**RESPONSE**: Plaintiff does not recall having conversations related to consent to feed her child. Discovery is early and ongoing, and Plaintiff reserves the right to amend and/or supplement this Answer.

## INTERROGATORY NO. 45:

IDENTIFY any DOCUMENTS YOU and/or PARENTS received from any HEALTH CARE PROVIDER RELATING TO infant nutrition, any PRETERM INFANT FORMULA PRODUCTS, and any OTHER INFANT FORMULA PRODUCTS, including without limitation the name or title of the DOCUMENT, the PERSON who provided the DOCUMENT to YOU and/or PARENTS, the date YOU and/or PARENTS received the DOCUMENT, and the substance of any discussions about the DOCUMENT.

**RESPONSE:** Plaintiff does not recall seeing any documents responsive to this Interrogatory. Discovery is early and ongoing, and Plaintiff reserves the right to amend and/or supplement this Answer.

## INTERROGATORY NO. 46:

IDENTIFY any gifts, coupons, PRETERM INFANT FORMULA PRODUCTS, or OTHER INFANT FORMULA PRODUCTS that YOU and/or PARENTS received from any HEALTH CARE PROVIDER, including without limitation the PERSON who provided any such items to YOU and/or PARENTS, the date YOU and/or PARENTS received such items, and the substance of any discussions about such items.

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

**RESPONSE:** Plaintiff does not recall seeing any materials responsive to this Interrogatory. Discovery is early and ongoing, and Plaintiff reserves the right to amend and/or supplement this Answer.

## INTERROGATORY NO. 47:

IDENTIFY any and all advertising RELATING TO infant nutrition, any PRETERM INFANT FORMULA PRODUCTS, and any OTHER INFANT FORMULA PRODUCTS that YOU and/or PARENTS saw at or before the time the INFANT was allegedly diagnosed with NEC, including without limitation the date(s), time, place, and manner YOU and/or PARENTS saw the advertising, and the substance of the advertising.

**RESPONSE**: Plaintiff recalls seeing promotional posters relating to infant formula products. Discovery is early and ongoing, and Plaintiff reserves the right to amend and/or supplement this Answer.

## INTERROGATORY NO. 48:

If YOU contend that ABBOTT should have provided different, additional, and/or other instructions and warnings relating to the use of the PRETERM INFANT FORMULA PRODUCTS, please IDENTIFY what different, additional, or other instructions and warnings ABBOTT should have given, and why it should have given those different, additional, or other instructions.

**RESPONSE**: Plaintiff objects to this Interrogatory as premature because discovery is ongoing, and documents related to this Interrogatory are in Defendant's possession and have not yet been produced to Plaintiff. Plaintiff further objects that this Interrogatory improperly seeks legal conclusions. Plaintiff also objects to this Interrogatory to the extent that it seeks opinions or contentions relating to fact, or the application of law to facts, as to which discovery has yet to be

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

completed, and requires Plaintiff to anticipate or assume factual information that has not been established or that may be forthcoming in discovery. Plaintiff reserves the right amend this response.

**INTERROGATORY NO. 49:**

DESCRIBE how and when YOU and/or PARENTS first believed there to be a connection between PRETERM INFANT FORMULA PRODUCTS and NEC, including the source(s) from which YOU and/or PARENTS learned of such information, a DESCRIPTION of the information relayed or cited by each source, and the date(s) on which YOU and/or PARENTS heard or spoke to those sources.

**RESPONSE**: Plaintiff objects based upon attorney-client privilege and the attorney work-product doctrine. Plaintiff refers Defendant to the amended complaint.

**INTERROGATORY NO. 50:**

IDENTIFY, with particularity, the mechanism(s) or interaction(s) unique to PRETERM INFANT FORMULA PRODUCTS that YOU allege cause or otherwise increase the risk for development of NEC, including the sources(s) from which YOU and/or PARENTS learned of the mechanism(s) or interaction(s), a DESCRIPTION of the information relayed or cited by each source, the date(s) on which YOU and/or PARENTS heard or spoke to these sources, and the results of any confirmatory testing that YOU and/or PARENTS are aware RELATED TO the unique mechanism or interaction.

**RESPONSE**: Plaintiff objects to this Interrogatory because it is premature. Plaintiff also objects to the extent that she does not yet know the identities of the experts likely to be called at trial. Further, the Interrogatory is premature to the extent that Plaintiff does not yet have sufficient information to enable an expert to analyze and formulate a comprehensive opinion with respect to

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

the facts and issues involved in this action. Plaintiff acknowledges her affirmative duty to identify the expert witnesses, including rebuttal witnesses, as soon as feasible.

Subject to the foregoing, Plaintiff will amend and/or supplement this response.

**INTERROGATORY NO. 51:**

STATE whether donor milk, breast milk, or OTHER INFANT FORMULA PRODUCTS were available to be administered to INFANT at the time INFANT was in the Neonatal Intensive Care Unit. If yes, IDENTIFY which milk or formula products were available to be administered to INFANT and whether any such products were actually administered to INFANT.

**RESPONSE:** Plaintiff objects that this Interrogatory is directed to the wrong party. Discovery is early and ongoing, and Plaintiff reserves the right to amend and/or supplement this Answer.

**INTERROGATORY NO. 52:**

STATE the date on which INFANT was diagnosed with NEC, whether such diagnosis was made during the INFANT's admission in the Neonatal Intensive Care Unit, and whether any HEALTH CARE PROVIDER suggested any cause of INFANT's NEC. To the extent INFANT has not been diagnosed with NEC, so STATE.

**RESPONSE:** Plaintiff directs Defendant to her response to Request for Production No. 1.

**INTERROGATORY NO. 53:**

IDENTIFY all PERSONS, including HEALTH CARE PROVIDERS and any other PERSON, with whom YOU and/or PARENTS have had any COMMUNICATION(S) regarding the cause(s) of INFANT's NEC and DESCRIBE the contents of those COMMUNICATION(S). DESCRIBE the contents of all COMMUNICATIONS that YOU IDENTIFY.

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

**RESPONSE**: Plaintiff does not recall being told by healthcare providers that NEC is related to prematurity.  Discovery is early and ongoing, and Plaintiff reserves the right to amend and/or supplement this Answer.

**INTERROGATORY NO. 54:**

STATE whether YOU and/or PARENTS had any COMMUNICATIONS with any PERSONS, including but not limited to any manufacturer of PRETERM INFANT FORMULA PRODUCTS or OTHER INFANT FORMULA PRODUCTS, and if so, IDENTIFY all persons with whom YOU and/or PARENTS had such COMMUNICATIONS, the date(s), time, place, and manner of those COMMUNICATIONS, and DESCRIBE the content of those COMMUNICATIONS.

**RESPONSE**: Plaintiff objects that this Interrogatory is vague and overbroad because it seeks all communications ever had by the Infant and the Parent.  Plaintiff is willing to discuss an appropriately scoped Interrogatory.

**INTERROGATORY NO. 55:**

IDENTIFY any and all pregnancies that INFANT's mother has experienced, and for each pregnancy, STATE the date of conception, IDENTIFY whether the pregnancy resulted in an abortion, a miscarriage, a stillbirth, or a live birth, and for still- and/or live-births, STATE the name, birthdate, birth weight, and the gestational week at birth for each child, and IDENTIFY any and all breast milk, donor milk, PRETERM INFANT FORMULA PRODUCTS or OTHER INFANT FORMULA PRODUCTS that were fed or administered to each child.

**RESPONSE**: Plaintiff objects to this Interrogatory because it seeks information irrelevant and immaterial to the claims and defenses in this case.  Plaintiff also objects that the Interrogatory is compound and overly burdensome.

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

Plaintiff objects to this Interrogatory because it is overbroad and seeks information that is irrelevant and immaterial as it is not limited to the time period relevant to the claims and defenses in this case.

**INTERROGATORY NO. 56:**

For each child IDENTIFIED in Interrogatory No. 55 above, IDENTIFY all PRETERM INFANT FORMULA PRODUCTS or OTHER INFANT FORMULA PRODUCTS administered to each child, including the full product name and manufacturer name of any such products and the dates of administration.

**RESPONSE**: Plaintiff directs Defendant to her response to Interrogatory No. 55.

**INTERROGATORY NO. 57:**

IDENTIFY all PERSONS, including HEALTH CARE PROVIDERS and any other PERSON, who maintains or who has maintained any MEDICAL RECORDS regarding the provision of any medical care to YOU or INFANT, and IDENTIFY any COMMUNICATIONS you have had with those IDENTIFIED PERSONS.

**RESPONSE:** Plaintiff directs Defendant to her response to Request for Production No. 1.

**INTERROGATORY NO. 58:**

IDENTIFY all non-NEC diagnoses that INFANT has received from time of birth through the present. For each diagnosis, IDENTIFY the condition diagnosed, the date of diagnosis, the HEALTH CARE PROVIDER who rendered the diagnosis, any course of treatment undertaken for the condition, and the identity of any HEALTHCARE PROVIDER who administered that course of treatment.

**RESPONSE:** Plaintiff directs Defendant to her response to Request for Production No. 1.

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

**INTERROGATORY NO. 59:**

STATE whether YOU and/or PARENTS ever purchased PRETERM INFANT FORMULA PRODUCTS from any online site or retail store. For each product purchased, IDENTIFY the product name, manufacturer name, date of purchase, and location of purchase. Purchase records of the specified products may be produced in lieu of a written response.

**RESPONSE:** Plaintiff objects to this Interrogatory because it seeks information irrelevant and immaterial to the claims and defenses in this case. Plaintiff also objects that the Interrogatory is compound and overly burdensome.

Plaintiff objects to this Interrogatory because it is overbroad and seeks information that is irrelevant and immaterial as it is not limited to the time period relevant to the claims and defenses in this case.

**INTERROGATORY NO. 60:**

IDENTIFY each home address where YOU have resided and provide the dates YOU lived at the address and IDENTIFY the persons, if any, who lived with YOU for the ten (10) years preceding the events giving rise to this LAWSUIT to the present. If INFANT has not resided with YOU at any time during that period, IDENTIFY the address(es) where INFANT has resided, provide the dates INFANT lived at the address and IDENTIFY the persons, if any, who lived with INFANT.

**RESPONSE**: Plaintiff objects to this Interrogatory because it seeks information irrelevant and immaterial to the claims and defenses in this case. Plaintiff also objects that the Interrogatory is compound and overly burdensome.

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

Plaintiff objects to this Interrogatory because it is overbroad and seeks information that is irrelevant and immaterial as it is not limited to the time period relevant to the claims and defenses in this case.

**INTERROGATORY NO. 61:**

IDENTIFY YOUR educational background, identifying all high school, secondary schools, colleges, and vocational training schools that YOU have attended. IDENTIFY INFANT's educational background, including all primary schools, secondary schools, colleges, and vocational training schools that INFANT has attended.

**RESPONSE:** Plaintiff objects to this Interrogatory because it seeks information irrelevant and immaterial to the claims and defenses in this case. Plaintiff also objects that the Interrogatory is compound and overly burdensome.

Plaintiff objects to this Interrogatory because it is overbroad and seeks information that is irrelevant and immaterial as it is not limited to the time period relevant to the claims and defenses in this case.

**INTERROGATORY NO. 62:**

IDENTIFY any position of employment that YOU or INFANT have held during the ten (10) years preceding the events giving rise to this LAWSUIT to the present, whether full-time or part-time, and DESCRIBE each position of employment, including the name of the employer, compensation received, location, and dates (range) of the employment.

**RESPONSE**: Plaintiff objects to this Interrogatory because it seeks information irrelevant and immaterial to the claims and defenses in this case. Plaintiff also objects that the Interrogatory is compound and overly burdensome.

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

Plaintiff objects to this Interrogatory because it is overbroad and seeks information that is irrelevant and immaterial as it is not limited to the time period relevant to the claims and defenses in this case.

**INTERROGATORY NO. 63:**

Apart from the present LAWSUIT, DESCRIBE any prior legal proceedings in which YOU or INFANT have been a party (including administrative charges, unemployment claims, and bankruptcy petitions) including the court which handled the proceeding, the case name, the civil action or docket number associated with the legal proceeding, a description of the claims asserted in the legal proceeding, and the final result, outcome, or adjudication of the claims (e.g. whether dismissed by parties, dismissed by court, judgment granted in favor of a party).

**RESPONSE**: Plaintiff does not recall any prior legal proceeding responsive to this Interrogatory. Discovery is early and ongoing, and Plaintiff reserves the right to amend and/or supplement this Answer.

**INTERROGATORY NO. 64:**

IDENTIFY all social media accounts (e.g. LinkedIn, Facebook, MySpace, Twitter, Tumbler, Pinterest, Instagram, Snapchat, etc.) and electronic accounts (including but not limited to e-mail, text messages, or messaging accounts, such as Gmail, Yahoo, Comcast, Verizon, iChat, Apple FaceTime, AOL Instant Messenger, BlackBerry Messenger, chat rooms) that YOU or INFANT have created, hosted, maintained, used and/or had access to at any time during the period of two years prior to the INFANT's birth through the present.

**RESPONSE**: Plaintiff objects to this Interrogatory because it seeks information irrelevant and immaterial to the claims and defenses in this case. Plaintiff also objects that the Interrogatory is compound and overly burdensome.

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

Plaintiff objects to this Interrogatory because it is overbroad and seeks information that is irrelevant and immaterial as it is not limited to the time period relevant to the claims and defenses in this case.

**INTERROGATORY NO. 65:**

IDENTIFY and itemize any damages YOU seek to recover from ABBOTT in this LAWSUIT (on behalf of YOU or others, including the INFANT), whether economic, non-economic, punitive or other and DESCRIBE each element of damage or component of recovery that YOU are seeking from ABBOTT, STATE the specific dollar amounts YOU are claiming, the manner in which each amount was computed, the dates(s) each such loss or damage was incurred, the name of the person, firm and/or company to whom such amounts are owed, whether the expense and/or loss in question has been paid and, if so, by whom it was so paid.

**RESPONSE**: Plaintiff objects to this Interrogatory because it seeks opinions or contentions relating to fact, or the application of law to facts, as to which discovery has yet to be completed, and requires Plaintiff to anticipate or assume factual information that has not been established or that may be forthcoming in discovery. Plaintiff also objects that this Interrogatory is premature because discovery is ongoing. Plaintiff further objects that this Interrogatory seeks premature disclosure of expert opinion.

Subject to and without waiving said objections, Plaintiff directs Defendant to all relevant documents that will be produced during the course of discovery. As discovery is ongoing, Plaintiff will supplement Plaintiff's response to this Interrogatory.

**INTERROGATORY NO. 66:**

IDENTIFY every life, health, or disability insurance company or government entity (including Medicare and Medicaid) to which YOU or INFANT or anyone on his behalf, ever

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

applied for insurance coverage, and include the type of insurance for which she applied, the date she applied, the identity of any agency or broker through which such application was made, whether a policy was issued or denied, and, if issued, any policy numbers assigned to her/him.

**RESPONSE**: Plaintiff objects to this Interrogatory because it is not limited in time or scope.

Subject to and without waiving said objections, Plaintiff directs Defendant to all relevant documents produced during the course of discovery. As discovery is ongoing, Plaintiff will supplement this response.

**INTERROGATORY NO. 67:**

IDENTIFY all persons with whom YOU and/or PARENTS have communicated for the purpose of considering, investigating, pursuing, arranging, or obtaining LITIGATION FUNDING and for any such third-party PERSON or entity: STATE the date(s) YOU had such COMMUNICATIONS; STATE the amount of payments or cash advances YOU have received from such third-party PERSON or entity; STATE the IDENTITY of any DOCUMENTS that YOU provided to any such third-party PERSON or entity; STATE any facts or information YOU shared with such third-party PERSON or entity relating to the above-captioned litigation including, but not limited to, impressions of YOUR likelihood of receiving a monetary reward; and STATE the results of any evaluation, assessment, valuation, and/or other analysis by such third party PERSON or entity of the claims asserted against ABBOTT in the COMPLAINT, any claims that were contemplated against ABBOTT but not asserted in the COMPLAINT, and/or any claims contemplated by YOU against any other third party, including but not limited to other manufacturers of PRETERM INFANT FORMULA PRODUCTS and HEALTH CARE PRACTITIONERS, that YOU believe may have been responsible for YOUR alleged INJURIES

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

and the INFANT's alleged INJURIES.

**RESPONSE:** Plaintiff objects to this Request on the ground that it seeks information that is irrelevant and immaterial to Plaintiff's claims.

## INTERROGATORY NO. 68:

For each expert identified in response to Interrogatory Nos. 17 and 37, STATE the following information:

      (a)    The amount of any compensation to be paid to the expert;

      (b)    Any and all cases in which the expert witness has testified, either at deposition or trial, within the last four (4) years; and

      (c)    A list of all publications authored by the expert witness over the last ten (10) years.

**RESPONSE**: Plaintiff objects to this Interrogatory because it is premature. Plaintiff also objects to the extent that she does not yet know the identities of the experts likely to be called at trial. Further, the Interrogatory is premature to the extent that Plaintiff does not yet have sufficient information to enable an expert to analyze and formulate a comprehensive opinion with respect to the facts and issues involved in this action. Plaintiff acknowledges her affirmative duty to identify the expert witnesses, including rebuttal witnesses, as soon as feasible.

Subject to the foregoing, Plaintiff will amend and/or supplement this response.

Respectfully submitted,

KLINE & SPECTER, P.C.

By: /s/ Tobias L. Millrood
Tobias L. Millrood, Esq.

Dated: October 12, 2023

41

# EXHIBIT B

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

KLINE & SPECTER, P.C.
By:
　　Tobias L. Millrood, Esq.
　　Elizabeth A. Crawford, Esq.
　　John P. O'Neill, Esq.
Attorney I.D. Nos. : 77764 / 313702 / 205677
125 Locust Street, 19th Floor
Philadelphia, PA 19102
Telephone: (215) 772-1000
tobi.millrood@klinespecter.com
elizabeth.crawford@klinespecter.com
jack.oneill@klinespecter.com

KELLER POSTMAN LLC
By:
　　Benjamin J. Whiting, Esq. (*pro hac vice*)
Attorney I.D. No.: IL 6307321
150 N. Riverside Plaza, Suite 4100
Chicago, Illinois 60606
Telephone: (312) 741-5220
ben.whiting@kellerpostman.com

| | |
|---|---|
| HOLLI CARTER, ON HER OWN BEHALF AND AS PARENT AND NATURAL GUARDIAN OF J.C., A MINOR, | IN THE COURT OF COMMON PLEAS PHILADELPHIA COUNTY |
| *Plaintiff,* | CIVIL TRIAL DIVISION |
| v. | MARCH TERM 2022 NO. 2588 |
| MEAD JOHNSON & COMPANY, LLC, ET AL. | |
| *Defendants.* | |

## PLAINTIFF'S RESPONSE TO ABBOTT LABORATORIES' FIRST REQUESTS FOR PRODUCTION DIRECTED TO PLAINTIFF HOLLI CARTER, ON HER OWN BEHALF AND ON BEHALF OF HER MINOR CHILD J.C.

　　Plaintiff Holli Carter, on her own behalf and as Parent and Natural Guardian of J.C., a

Minor, through counsel, hereby objects and responds to Defendant Abbott Laboratories' Requests

for Production, as follows:

1

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

**GENERAL OBJECTIONS**

1.     Plaintiff objects to the Requests to the extent that they seek information that is protected from disclosure by the attorney-client privilege, the attorney work product doctrine or any other recognized privilege.

2.     Plaintiff objects to the Requests to the extent that they require Respondents to search for and produce documents or information that are not within their possession, custody, or control.

3.     Plaintiff objects to the Requests to the extent they seek information or documents that cannot be located by Respondents after reasonably diligent inquiry, are readily available from public sources, or are available to Complaint Counsel from another source or by other means that are more convenient, more appropriate, less burdensome, or less expensive.

4.     Plaintiff objects to the Requests to the extent they seek legal conclusions and/or would require Respondents to reach a legal conclusion in order to prepare a response.

**ANSWERS TO REQUESTS FOR PRODUCTION**

**REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 1:**

All DOCUMENTS and COMMUNICATIONS that support, refute, or relate to any of YOUR allegations in the COMPLAINT.

**RESPONSE:** Plaintiff objects to this Request for Production because it is premature. Plaintiff further objects to the extent that relevant documents are in the possession, custody, and control of Defendants. Plaintiff objects to this Request because the term "support, refute, or relate to any of YOUR allegations in the COMPLAINT" is overbroad, vague, and unduly burdensome.

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

Plaintiff further objects based upon attorney-client privilege and the attorney work product doctrine.

Subject to the foregoing objections, see Plaintiff's Authorizations. Plaintiff is producing Authorizations on the condition that Defendants have agreed to comply with all applicable HIPAA regulations. The parties are working toward an agreeable Protective Order that would cover these Authorizations and records as well. Plaintiff reserves the right to amend and/or supplement this response.

**REQUEST FOR PRODUCTION NO. 2:**

All DOCUMENTS that constitute, refer to, or relate in any way to COMMUNICATIONS related to any INJURIES or medical conditions claimed in the COMPLAINT.

**RESPONSE**: Plaintiff objects to this Request for Production because it is premature. Plaintiff further objects to the extent that relevant documents are in the possession, custody, and control of Defendants. Plaintiff also objects that this request seeks health information protected by state and federal law and may exceed the scope of discovery. Plaintiff further objects based upon attorney-client privilege and the attorney work product doctrine.

Subject to the foregoing objections, once a protective order has been entered in this litigation, Plaintiff will at the appropriate time produce documents in Plaintiff's possession, custody, or control that are responsive to this request. Plaintiff reserves the right to amend and/or supplement this response.

**REQUEST FOR PRODUCTION NO. 3:**

All DOCUMENTS (including, but not limited to, email or other electronic forms) containing, reflecting, or relating to any COMMUNICATIONS between YOU and any treating physician and/or other HEALTH CARE PRACTITIONER whom YOU intend to call as a witness

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

to offer any medical opinion in this action.

**RESPONSE:** Plaintiff refers Defendant to her response to Request No. 2.

## REQUEST FOR PRODUCTION NO. 4:

All DOCUMENTS produced to YOU by any third-party in response to a subpoena or other formal or informal request for DOCUMENTS related to this LAWSUIT.

**RESPONSE:** At this time, Plaintiff has no documents responsive to this request.

## REQUEST FOR PRODUCTION NO. 5:

Any written or recorded statements obtained by YOU in connection with the allegations of the COMPLAINT or regarding any facts underlying the allegations of the COMPLAINT.

**RESPONSE:** Plaintiff objects to this Request for Production because it is overbroad and vague and is premature. Plaintiff also objects to this Request for Production because it seeks statements protected by attorney-client privilege and the work product doctrine.

Subject to the foregoing objections, once a protective order has been entered in this litigation, Plaintiff will produce any documents in Plaintiff's possession, custody, or control that are responsive to this request.

## REQUEST FOR PRODUCTION NO. 6:

All DOCUMENTS or evidence of any kind supporting each and every act and/or omission by ABBOTT that YOU allege supports the causes of action against ABBOTT in the COMPLAINT.

**RESPONSE:** In response, Plaintiff refers Defendant to her response to Request No. 1.

## REQUEST FOR PRODUCTION NO. 7:

Each of the PARENTS' federal, state, and local income tax returns for the ten (10) years preceding the events giving rise to this LAWSUIT to the present, whether filed individually or

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

jointly, including all attachments, schedules, and Wage or Earnings Statements (Forms W-2). To the extent INFANT has independently filed any federal, state, or local income tax return since birth, provide those returns as well, including all attachments, schedules, and Wages or Earnings Statements (Forms W-2).

**RESPONSE:** Plaintiff objects to this Request for Production because it seeks confidential tax records, which are deemed to be private communications with the government.

Subject to the foregoing objections, once a protective order has been entered in this litigation, Plaintiff will produce any documents in Plaintiff's possession, custody, or control that are responsive to this request.

**REQUEST FOR PRODUCTION NO. 8:**

All DOCUMENTS which refer or relate to any welfare benefits or claims, worker's compensation benefits or claims, social security benefits or claims, health or disability benefits or claims, or any other governmental benefits or claims that were provided to or made by or on behalf of YOU, PARENTS, or INFANT in the ten (10) years preceding the events giving rise to this LAWSUIT to the present.

**RESPONSE:** Plaintiff objects to this Request for Production because it is overbroad and not limited in time or scope, and calls for the production of documents that are not related or relevant to the issues in this case.

Subject to the foregoing objections, once a protective order has been entered in this litigation, Plaintiff will produce any documents in Plaintiff's possession, custody, or control that are responsive to this request.

**REQUEST FOR PRODUCTION NO. 9:**

All medical bills, statements, or invoices from any hospital, medical facility, doctor,

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

therapist, social worker, counselor, psychologist, or other physical or mental health care provider for goods or services for which YOU seek damages in this LAWSUIT, and any other bills, statements, or invoices, of any nature, for which YOU seek damages.

**RESPONSE:** Plaintiff objects to this Request for Production because it is overbroad and not limited in time or scope, and calls for the production of documents that are not related or relevant to the issues in this case.

Subject to the foregoing objections, see Plaintiff's Authorizations. Plaintiff is producing Authorizations on the condition that Defendants have agreed to comply with all applicable HIPAA regulations. The parties are working toward an agreeable Protective Order that would cover these Authorizations and records as well. Plaintiff reserves the right to amend and/or supplement this response.

## REQUEST FOR PRODUCTION NO. 10:

All DOCUMENTS supporting or in any way relating to YOUR claim for damages in this LAWSUIT, including but not limited to medical and hospital expenses, burial and funeral expenses, mental anguish, pain, suffering, loss of earnings, earning capacity, society, support, services, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, education, solace, companionship, and prospective inheritance.

**RESPONSE:** In response, Plaintiff refers Defendant to her response to Request No. 2.

## REQUEST FOR PRODUCTION NO. 11:

All DOCUMENTS that constitute, refer to, or relate to any out-of-pocket expenses which YOU contend are RELATED TO any INJURY as alleged in this LAWSUIT.

**RESPONSE:** In response, Plaintiff refers Defendant to her response to Request No. 2.

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

**REQUEST FOR PRODUCTION NO. 12:**

All DOCUMENTS reflecting, referring to, or relating to any claim, lawsuit, and/or legal proceeding for alleged personal injuries in which YOU, PARENTS, or INFANT were involved in the ten (10) years preceding the events giving rise to this LAWSUIT to the present, including, but not limited to, copies of claim forms, statements, correspondence, depositions or sworn testimony of any type given by YOU and/or PARENTS related to any claim, including claims to governmental agencies or under the terms of an insurance policy, lawsuit, or proceeding.

**RESPONSE:** Plaintiff objects to this Request because it is compound, overbroad, and seeks information irrelevant and immaterial to the claims and defenses in this case.

Subject to and without waiving any objections, at this time, Plaintiff does not recall being involved in a prior lawsuit or litigation relating to Infant's diagnosis of, or treatment for, NEC or NEC-like symptoms. Plaintiff notes that there are multiple parties in this litigation. Beyond that, Plaintiff is willing to confer with Defendant about the scope of this Request.

**REQUEST FOR PRODUCTION NO. 13:**

All DOCUMENTS relating to monetary payments received by YOU, PARENTS, or INFANT from any person, entity, or governmental body as a result of the INJURIES or medical conditions claimed in the COMPLAINT.

**RESPONSE:** In response, Plaintiff refers Defendant to her response to Request No. 2.

**REQUEST FOR PRODUCTION NO. 14:**

Any insurance lien letter or correspondence related to the allegations of the COMPLAINT or regarding any facts underlying the allegations of the COMPLAINT.

**RESPONSE:** In response, Plaintiff refers Defendant to her response to Request No. 2.

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

**REQUEST FOR PRODUCTION NO. 15:**

All DOCUMENTS relating to any liens or any subrogation interest or claims held or asserted against YOU or PARENTS by any third-party.

**RESPONSE:** In response, Plaintiff refers Defendant to her response to Request No. 2.

**REQUEST FOR PRODUCTION NO. 16:**

Any contract or DOCUMENT evidencing an agreement of compromise, settlement, release, covenant not to sue, "Mary Carter" agreement, or any other kind of settlement, agreement, understanding, or deal which any party or potential party to this LAWSUIT has with any other person, firm, corporation, party, or potential party with respect to the events associated with the subject matter of this LAWSUIT. This Request includes any past, present, and future settlements, deals, agreements, arrangements, understandings, or conduct by or between YOU, YOUR attorneys, agents, or representatives and any other person, entity, or such person's or entity's attorneys whatsoever, including any agreements to produce or withhold any evidence, exhibits, witnesses, or testimony.

**RESPONSE:** At this time, Plaintiff has no documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 17:**

All DOCUMENTS identified in connection with YOUR or INFANT's responses to any Interrogatories in this LAWSUIT, or referenced or used in preparing such responses.

**RESPONSE:** In response, Plaintiff refers Defendant to her response to Request No. 1.

**REQUEST FOR PRODUCTION NO. 18:**

All DOCUMENTS referenced, cited, consulted, or used in preparing the COMPLAINT.

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

**RESPONSE:** Plaintiff objects to this Request as overbroad and vague. Plaintiff further objects based upon attorney-client privilege and the attorney work product doctrine. Plaintiff is willing to confer with Defendant about the scope of this Request.

**REQUEST FOR PRODUCTION NO. 19:**

All DOCUMENTS YOU intend to introduce as exhibits at trial.

**RESPONSE:** Plaintiff objects to this Request as premature. Plaintiff further objects at this time based upon attorney-client privilege and the attorney work product doctrine.

**REQUEST FOR PRODUCTION NO. 20:**

The attached HIPAA-compliant Authorization to Disclose Medical Information and Authorization to Disclose Psychiatric Records and Psychotherapy Notes Information signed by YOU or INFANT for any hospital, medical facility, doctor, pharmacy, therapist, social worker, counselor, psychologist, or other physical or mental health care provider that has treated INFANT. Exhibit A includes the authorizations to be signed by YOU or INFANT if INFANT is not a minor and has capacity to sign the authorizations; Exhibit B includes the authorizations to be signed by YOU on behalf of INFANT if INFANT is a minor and/or does not have capacity to sign the authorizations).

**RESPONSE:** Plaintiff objects to this Request for Production because it is premature and may exceed the scope of discovery. Plaintiff further objects to the extent that relevant documents are in the possession, custody, and control of Defendants. Plaintiff also objects that this request seeks health information protected by state and federal law.

Subject to the foregoing objections, see Plaintiff's Authorizations. Plaintiff is producing Authorizations on the condition that Defendants have agreed to comply with all applicable HIPAA regulations. The parties are working toward an agreeable Protective Order that would cover these

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

Authorizations and records as well. Plaintiff reserves the right to amend and/or supplement this response.

**REQUEST FOR PRODUCTION NO. 21:**

The attached HIPAA-compliant Authorization to Disclose Medical Information (signed by YOU) directed to each hospital, medical facility, doctor, pharmacy, therapist, social worker, or other physical or mental health care provider that treated YOU in the ten (10) years preceding the events giving rise to this LAWSUIT to the present (Exhibit A).

**RESPONSE:** Plaintiff objects to this Request for Production because it is premature and may exceed the scope of discovery. Plaintiff further objects to the extent that relevant documents are in the possession, custody, and control of Defendants. Plaintiff also objects that this request seeks health information protected by state and federal law.

Subject to the foregoing objections, see Plaintiff's Authorizations. Plaintiff is producing Authorizations on the condition that Defendants have agreed to comply with all applicable HIPAA regulations. The parties are working toward an agreeable Protective Order that would cover these Authorizations and records as well. Plaintiff reserves the right to amend and/or supplement this response.

**REQUEST FOR PRODUCTION NO. 22:**

The attached HIPAA-compliant Authorization to Disclose Psychiatric Records and Psychotherapy Notes Information authorization (signed by YOU) directed to each hospital, medical facility, medical practitioner, doctor, pharmacy, therapist, social worker, or other physical or mental health care provider (including any psychiatric or psychological practitioner or facility)

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

who treated YOU on or after INFANT's date of birth for any psychiatric, psychological, and/or emotional injuries for which YOU seek recovery in the COMPLAINT (Exhibit A).

**RESPONSE:** Plaintiff objects to this Request for Production because it is premature and may exceed the scope of discovery. Plaintiff further objects to the extent that relevant documents are in the possession, custody, and control of Defendants. Plaintiff also objects that this request seeks health information protected by state and federal law.

Subject to the foregoing objections, see Plaintiff's Authorizations. Plaintiff is producing Authorizations on the condition that Defendants have agreed to comply with all applicable HIPAA regulations. The parties are working toward an agreeable Protective Order that would cover these Authorizations and records as well. Plaintiff reserves the right to amend and/or supplement this response.

**REQUEST FOR PRODUCTION NO. 23:**

The attached Authorization to Release Insurance Information, Authorization to Release Education Information and Authorization to Release Employment Information signed by YOU or INFANT directed to each insurance company, educational institution and employer identified in response to ABBOTT's Interrogatories to PLAINTIFF and any amendments thereto (Exhibits A and B).

**RESPONSE:** Plaintiff objects to this Request for Production because it is premature and may exceed the scope of discovery. Plaintiff further objects to the extent that relevant documents are in the possession, custody, and control of Defendants. Plaintiff also objects that this request seeks health information protected by state and federal law.

Subject to the foregoing objections, see Plaintiff's Authorizations. Plaintiff is producing Authorizations on the condition that Defendants have agreed to comply with all applicable HIPAA

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

regulations. The parties are working toward an agreeable Protective Order that would cover these Authorizations and records as well. Plaintiff reserves the right to amend and/or supplement this response.

**REQUEST FOR PRODUCTION NO. 24:**

To the extent YOU identified in your Interrogatory Responses any twin or other sibling of the INFANT carried in the same pregnancy, the attached HIPAA-compliant Authorization to Disclose Medical Information and Authorization to Disclose Psychiatric Records and Psychotherapy Notes Information (signed by YOU or the sibling of the INFANT on his or her own behalf) directed to each hospital, medical facility, doctor, pharmacy, therapist, social worker, counselor, psychologist, or other physical or mental health care provider that treated INFANT's sibling (Exhibits A and B).

**RESPONSE:** Plaintiff objects to this Request for Production because it is premature and may exceed the scope of discovery. Plaintiff further objects to the extent that relevant documents are in the possession, custody, and control of Defendants. Plaintiff also objects that this request seeks health information protected by state and federal law.

Subject to the foregoing objections, once a protective order has been entered in this litigation, Plaintiff will at the appropriate time execute relevant authorizations for records. Plaintiff reserves the right to amend and/or supplement this response.

**REQUEST FOR PRODUCTION NO. 25:**

All DOCUMENTS that constitute, refer to, or relate to INFANT's personal medical history and/or treatment throughout INFANT's lifetime, including any MEDICAL RECORDS, correspondence with HEALTH CARE PRACTITIONERS, research on health conditions, and personal notes.

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

**RESPONSE:** Plaintiff refers Defendant to her response to Request No. 2.

**REQUEST FOR PRODUCTION NO. 26:**

All DOCUMENTS that constitute, refer to, or relate to YOUR personal medical history and/or treatment in the ten (10) years preceding the events giving rise to this LAWSUIT to the present, including any MEDICAL RECORDS, correspondence with HEALTH CARE PRACTITIONERS, research on health conditions, and personal notes.

**RESPONSE:** Plaintiff refers Defendant to her response to Request No. 2.

**REQUEST FOR PRODUCTION NO. 27:**

All DOCUMENTS and COMMUNICATIONS, including those sent through a patient-portal system, between YOU and any HEALTH CARE PRACTITIONER, or any PERSON acting on behalf of or assisting a HEALTH CARE PRACTITIONER, in the ten (10) years preceding the events giving rise to this LAWSUIT to the present relating to YOUR personal medical history and/or treatment or INFANT's personal medical history and/or treatment.

**RESPONSE:** Plaintiff refers Defendant to her response to Request No. 2.

**REQUEST FOR PRODUCTION NO. 28:**

All DOCUMENTS and COMMUNICATIONS that constitute, refer to, or relate to YOUR use of, or treatment for, drugs or alcohol.

**RESPONSE:** Plaintiff refers Defendant to her response to Request No. 2.

**REQUEST FOR PRODUCTION NO. 29:**

All DOCUMENTS and COMMUNICATIONS from health, medical, disability, and life insurance providers, including, but not limited to, private providers, COBRA, Medicaid, and any plan of supplemental insurance from which INFANT has received insurance coverage.

**RESPONSE:** Plaintiff refers Defendant to her response to Request No. 2.

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

**REQUEST FOR PRODUCTION NO. 30:**

All DOCUMENTS and COMMUNICATIONS from health, medical, disability, and life insurance providers, including, but not limited to, private providers, COBRA, Medicaid, and any plan of supplemental insurance from which YOU have received insurance coverage.

**RESPONSE:** Plaintiff refers Defendant to her response to Request No. 2.

**REQUEST FOR PRODUCTION NO. 31:**

All DOCUMENTS that EVIDENCE YOUR and/or PARENTS' purchase of or payment for, or contemplated purchase of or contemplated payment for, any PRETERM INFANT FORMULA PRODUCTS and/or OTHER INFANT FORMULA PRODUCTS.

**RESPONSE:** Plaintiff refers Defendant to her response to Request No. 2.

**REQUEST FOR PRODUCTION NO. 32:**

All DOCUMENTS that constitute MARKETING that YOU and/or PARENTS saw or read about PRETERM INFANT FORMULA PRODUCTS and/or OTHER INFANT FORMULA PRODUCTS.

**RESPONSE:** Plaintiff has no documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 33:**

All DOCUMENTS that constitute, contain, refer to, or relate to any packaging or labeling that YOU and/or PARENTS reviewed for PRETERM INFANT FORMULA PRODUCTS and/or OTHER INFANT FORMULA PRODUCTS.

**RESPONSE:** Plaintiff has no documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 34:**

All DOCUMENTS that constitute, contain, refer to, or relate to any COMMUNICATIONS between YOU and ABBOTT.

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

**RESPONSE:** Plaintiff has no documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 35:**

All DOCUMENTS that constitute, contain, refer to, or relate to any COMMUNICATIONS between YOU and any seller, manufacturer, or supplier of PRETERM INFANT FORMULA PRODUCTS or OTHER INFANT FORMULA PRODUCTS.

**RESPONSE:** Plaintiff has no documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 36:**

All DOCUMENTS that constitute, contain, refer to, or relate to any COMMUNICATIONS between YOU and any governmental or public agency about PRETERM INFANT FORMULA PRODUCTS or OTHER INFANT FORMULA PRODUCTS.

**RESPONSE:** Plaintiff has no documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 37:**

All DOCUMENTS that constitute, contain, refer to, or relate to any COMMUNICATIONS between YOU and any governmental or public agency about ABBOTT or any other manufacturer of PRETERM INFANT FORMULA PRODUCTS or OTHER INFANT FORMULA PRODUCTS.

**RESPONSE:** Plaintiff has no documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 38:**

All DOCUMENTS that constitute, reflect, refer to, or relate to any articles, journals, notes, news alerts, or other information about PRETERM INFANT FORMULA PRODUCTS or OTHER INFANT FORMULA PRODUCTS.

**RESPONSE:** Plaintiff refers Defendant to her response to Request No. 1.

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

**REQUEST FOR PRODUCTION NO. 39:**

All DOCUMENTS that constitute, reflect, refer to, or relate to any articles, journals, notes, news alerts, or other information about ABBOTT or any other manufacturer of PRETERM INFANT FORMULA PRODUCTS or OTHER INFANT FORMULA PRODUCTS.

**RESPONSE:** Plaintiff refers Defendant to her response to Request No. 1.

**REQUEST FOR PRODUCTION NO. 40:**

All DOCUMENTS and COMMUNICATIONS contained within YOUR, PARENTS' or INFANT's social media accounts that constitute, refer to, or relate to ABBOTT or any other manufacturer of PRETERM INFANT FORMULA PRODUCTS or OTHER INFANT FORMULA PRODUCTS.

**RESPONSE:** Plaintiff has no documents responsive to this request. As discovery is ongoing, Plaintiff will supplement this request if needed.

**REQUEST FOR PRODUCTION NO. 41:**

All DOCUMENTS and COMMUNICATIONS contained within YOUR, PARENTS' or INFANT'S social media accounts that constitute, refer to, or relate to INFANT or any alleged INJURY.

**RESPONSE:** Plaintiff objects to this Request as vague and overbroad because it seeks all social media posts and documents related to Plaintiff's child. As discovery is ongoing, Plaintiff will supplement this request if needed.

**REQUEST FOR PRODUCTION NO. 42:**

All non-privileged COMMUNICATIONS and DOCUMENTS between YOU and any PERSON related to YOUR decision to initiate this LAWSUIT.

**RESPONSE:** Plaintiff refers Defendant to her response to Request No. 1.

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

**REQUEST FOR PRODUCTION NO. 43:**

All DOCUMENTS and COMMUNICATIONS relating to LITIGATION FUNDING IN CONNECTION WITH this LAWSUIT.

**RESPONSE:** Plaintiff objects to this Request on the ground that it seeks information that is irrelevant and immaterial to Plaintiff's claims.

**REQUEST FOR PRODUCTION NO. 44:**

All YOUR calendars, journals, or other DOCUMENTS that reflect YOUR daily activities for the ten (10) years preceding the events giving rise to this LAWSUIT to the present.

**RESPONSE**: Plaintiff objects that this Request is overbroad because it seeks ten years of information and contains no limitation for subject matter or relevance. Plaintiff also refers Defendant to her response to Request No. 1.

**REQUEST FOR PRODUCTION NO. 45:**

For each expert identified in response to Abbott's First Set of Interrogatories to Plaintiffs, produce ALL DOCUMENTS and/or COMMUNICATIONS that reflect or contain facts or data they generated, created, or considered, along with all notes, files, literature, and other DOCUMENTS and things created, received, examined, or considered by the witness.

**RESPONSE**: Plaintiff objects to this Request because it is premature. Plaintiff also objects to the extent that she does not yet know the identities of the experts likely to be called at trial. Further, because discovery is just beginning in this litigation, the Request is premature to the extent that Plaintiff does not yet have sufficient information to enable an expert to finalize a comprehensive opinion with respect to the facts and issues involved in this action.

Subject to the foregoing, Plaintiff will amend and/or supplement this response.

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

**REQUEST FOR PRODUCTION NO. 46:**

All DOCUMENTS that constitute, reflect, reference, or relate in any way to any tests or analyses that YOU or any experts identified in response to Abbott's First Set of Interrogatories, consultants, other retained agents, or anyone acting on YOUR behalf have performed on or with PRETERM INFANT FORMULA PRODUCTS. This Request includes but is not limited to any draft or final protocols, all data collected or generated, all photographs or videotapes taken or made, and all DOCUMENTS reflecting or recording the results and interpretations of these tests or analyses.

**RESPONSE**: Plaintiff refers Defendant to her response to Request No. 45.

Respectfully submitted,

KLINE & SPECTER, P.C.
By: /s/ Tobias L. Millrood
Tobias L. Millrood, Esq.

Dated: October 12, 2023

18

# EXHIBIT C

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

| | |
|---|---|
| **From:** | Fuchs, Ronni E. <Ronni.Fuchs@Troutman.com> |
| **Sent:** | Monday, October 16, 2023 4:04 PM |
| **To:** | Timothy Burke |
| **Cc:** | Fahey, Sean P. |
| **Subject:** | RE: NEC Phila Cases |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Tim,

I am writing to let you know that the authorizations and responses to discovery are entirely inadequate, and not consistent with what plaintiffs agreed to provide. In August, Abbott served discovery, which included requests for lists of treating physicians and blank authorizations. We granted plaintiffs an extension of time to respond to our discovery with the understanding that plaintiffs would be providing us with records in your possession, and authorizations sufficient to permit record collection. In fact, in an August email exchange (included below) regarding plaintiffs' request that Abbott provide a four week extension on discovery responses, Tobi said that plaintiffs would be providing us with records you have, and – on a rolling basis – with lists of treaters, medical, education, and insurance authorizations. He also stated that plaintiffs would provide employment records (if seeking a wage loss claim) and psychiatric authorizations (if claiming emotional injury). We received nothing until last week. And what we received was not what we were told we would receive.

First, we did not receive *any* medical records. Second, we did not receive *any* authorizations for 7 cases of the 21 in which amended complaints were filed; in 14 cases, we received authorizations to permit collection of parent records from the birth hospital only; and, in only 12 cases, we received authorizations to permit collection of child records from birth hospitals and, at most, one or two other hospitals. Your discovery responses do not list any treaters, but just refer us to the authorizations. Surely, you are not suggesting that these children did not have pediatric or other medical care, or that the mothers received no obstetric care other than in the birth hospital?

As you know, the Court entered a schedule requiring all discovery to be completed by the beginning of June 2024 and suggested we begin plaintiffs' depositions as soon as possible. The process we were discussing, where you provide either lists of treaters and blank authorizations (or even a reasonably complete set of designated authorizations) for all 21 cases, along with records in your possession, would have given us a chance to meet that deadline. But we cannot do so with what you provided.

I also ask you to review the discovery responses. The majority of the interrogatories were Standard Form Interrogatories propounded pursuant to Local Rule 4005. Despite the prohibition on objections to standard form interrogatories, plaintiffs objected to each of them. Moreover, plaintiffs only provided substantive information in response about 10 of the 68 interrogatories for each plaintiff (limited to information such as the infant's address, date of birth, and hospital of birth). We will send you a letter detailing the deficiencies in plaintiffs' responses, but I ask that we have a call later this week about these issues.

Finally, when we spoke, you indicated you were surprised that defendants filed preliminary objections to the amended complaints. I want to make it clear that defendants' preliminary objections are not filed to preserve the record but because plaintiffs did not address the critical deficiencies in the initial pleadings. For example, Judge Carpenter pointed out during the last status conference that plaintiffs had not identified the formula products administered to each infant, suggesting that plaintiffs amend their complaints to identify the product administered or otherwise explain why such identification was not possible. But universally across the amended complaints, plaintiffs use the exact same phrasing as

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

had appeared in the initial complaints regarding the product used: "Abbott and/or Mead Johnson," without explaining why product identification is impossible in any case. Likewise, even with the benefit of amendment, plaintiffs still failed to plead the existence of a misrepresentation by either Mead Johnson or Abbott, let alone whether any plaintiff saw, heard, or relied on any such misrepresentation to their detriment. These are just two examples of substantive deficiencies that existed in the initial complaints and have not been remedied in plaintiffs' pleadings.

Please let me know when you are available to discuss plaintiffs' responses to discovery.

--Ronni

**Ronni E. Fuchs**
**Partner**
Direct: 609.951.4183 | Mobile: 267.907.3719 | Internal: 812-4183
ronni.fuchs@troutman.com

**troutman pepper**
301 Carnegie Center
Suite 400
Princeton, NJ 08540
troutman.com

Troutman Pepper is a Mansfield Certified Plus Firm

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

# EXHIBIT D

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

Troutman Pepper Hamilton Sanders LLP
3000 Two Logan Square, 18th and Arch Streets
Philadelphia, PA 19103



troutman.com

**Ronni E. Fuchs**
D 609.951.4183
Ronni.Fuchs@Troutman.com

October 27, 2023

**VIA E-MAIL**

Tobi Millrood
Tobi.Millrood@klinespecter.com

Timothy Burke
Timothy.Burke@klinespecter.com

Re:  ***Preterm Infant Nutrition Litigation (PCCP Case Numbers PCCP Case Nos.***
***220302583, 220302588, 220302594, 220302601, 220302606, 220302614, 220302617,***
***220302963, 220302967, 220302969, 220302978, 220302981, 220302983, 220302986,***
***220400127, 220400136, 220400138, 220400140, 220400141, 220400142, 220400145,***
***220400153, 220400156, 220400158, 220400159, 220400162, 220400208, 220400212,***
***and 220400216) Discovery Deficiency Letter***

Counsel:

I write on behalf of Defendant Abbott Laboratories ("Abbott").  This letter pertains to Plaintiffs'
deficient Responses to Abbott's First Set of Interrogatories ("INTs"), Plaintiffs' deficient
Responses to Abbott's First Set of Requests for Production of Documents ("RFPs"), and the
limited Authorizations that Plaintiffs have provided to date.[1]  Abbott propounded these INTs and
RFPs on August 9, 2023, and agreed to Plaintiffs' request for an extension of time to respond
until October 9, 2023.  In the discussion regarding the extension, Abbott made clear that it would
grant the extension but that it needed authorizations, lists of treaters, and any records in Plaintiffs'
possession sooner than October 9 in order to prepare for Plaintiffs' depositions.  In response, on
August 31st, you said "[w]e will provide you with records we have. We will assemble a list of
treaters. We will supply med, education, insurance auths. We will supply employment records if
a wage loss claim is pursued and psych auth if we are claiming psych injury."

Despite that assurance, Abbott received nothing – no records, authorizations, or lists of treaters
prior to October 9.  On October 11 and 12, Plaintiffs provided responses to INTs and RFPs, with
a small set of authorizations for about half of the cases.  On October 16, 2023, Abbott informed
Plaintiffs of the significant deficiencies in its responses, including missing authorizations,
incomplete sets of authorizations, lack of treater lists and lack of any records from Plaintiffs.  We

---

[1] Abbott uses the term "Plaintiffs" to refer to all Plaintiffs across the 21 cases in which Amended
Complaints have been filed.  We understand that you will be filing petitions for the dismissal of the eight
cases in which Amended Complaints were not filed.

<span style="color:red">Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426</span>



received no response until October 26, when we received limited authorizations in most (but not all) of the remaining cases. At the Case Management Conference before Judge Carpenter in July 2023, there was discussion about beginning to take Plaintiffs' depositions by the end of this year. This was always going to be challenging, but in light of Plaintiffs' failure to produce any medical records, sufficient authorizations to permit the collection of records, or meaningful responses to written discovery, Plaintiffs have almost ensured that Defendants will not be in a position even to begin these depositions this calendar year.

As discussed below and in our October 16th email to you, Plaintiffs' responses are deficient, and we request that they be promptly supplemented no later than November 3, 2023. If you disagree and believe that any response is not deficient, we request a telephonic meet and confer. Please let us know your availability for a call during the week of November 6. We appreciate Plaintiffs' anticipated cooperation in resolving these deficiencies.

## I.    Authorizations

In **Request for Production Nos. 20-24**, Abbott requested signed medical, insurance, employment, education, and psychiatric/psychotherapy authorizations for both Infant and Parent, to permit Abbott to begin the collection of relevant medical records. Plaintiffs corresponded with Abbott in late August, seeking an extension of time to respond to the discovery. Abbott agreed to provide Plaintiffs with a 30-day extension of time to respond to the discovery, but with an agreement that Plaintiffs would be providing Abbott with (1) signed authorizations, (2) lists of treaters, and (3) medical records in Plaintiffs' possession.

Yet, it was not until October 11, 2023 that Plaintiffs first provided Abbott with any authorizations – and then, only in about half of the cases. Plaintiffs then provided limited authorizations in seven additional cases on October 26, 2023 (after Abbott sent correspondence following up). Plaintiffs' delay in providing even these limited authorizations – and continued delay in providing **full and complete** authorizations – prevented Abbott from adequately preparing to take Plaintiffs' depositions by the end of this year.

The medical authorizations provided are "designated" authorizations; that is, they are directed to single specific entities and therefore cannot be used to collect records from any additional providers. Abbott requested Plaintiffs to provide blank authorizations along with lists of treaters. This would have permitted Abbott to efficiently collect records. Instead, by providing authorizations for only limited providers, Plaintiffs have ensured further delay in the collection of records.

Beyond the reasons noted above, the authorizations are deficient in several other respects:

***First***, with regard to Infant authorizations that have been produced, Plaintiffs provided a single authorization in five cases, which was directed to the Infant's birth hospital. As discussed with the Court in July, the birth records do not provide information about the child's ongoing course or current condition. In ten more cases, Plaintiffs provided only two authorizations, one directed to the Infant's birth hospital and one additional hospital. In three cases, Plaintiffs provided authorizations for three or more hospitals, which consisted of the Infant's birth hospital and two or more additional hospitals. Plaintiff provided an authorization for pediatric care in only one case. In no other instance did Plaintiffs provide any medical authorizations for the Infant's pediatrician,

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

**Deficiency Letter**
**October 27, 2023**
Page 3



GI treating physician, or any other medical provider.  Plaintiffs also did not provide any insurance, education, or psychiatric/psychotherapy authorizations.  ***Plaintiffs failed to produce any Infant authorizations in Wiggins** and **Williams.***

***Second***, with regard to Parent authorizations that have been produced, Plaintiff-Parents provided only one authorization in 19 cases – that for the birth hospital.  Plaintiffs did not provide any authorizations for Plaintiff-Parents' obstetrician/ gynecologist or any other treaters.  Plaintiffs also did not provide any insurance, employment, or psychiatric/psychotherapy authorizations.  ***Plaintiffs failed to produce any Parent authorizations in Wiggins.***

Finally, Plaintiffs failed to produce lists of treaters or a single medical record in their possession.  Abbott expects Plaintiffs to produce (1) **full and complete** authorizations in **all** 21 cases, (2) lists of treaters, and (3) all medical records in Plaintiffs possession, no later than November 3, 2023.

## II.    Interrogatories (INTs)

Plaintiffs' responses to Abbott's INTs are almost entirely deficient.  Abbott first discusses deficiencies in the Standard INT responses, before reviewing deficiencies in the Supplemental INT responses.  As a threshold issue, Plaintiffs failed to verify any of their INT responses as required by Pa. R. Civ. P. 4006(a)(1).

### A.    Standard Interrogatories Pursuant to Phila. Cnty. Loc. R. 4005 (INT Nos. 1 through 41)

***First***, Plaintiffs improperly objected to each and every Standard INT.  Abbott propounded 21 Standard INTs on each Infant and Parent.  Abbott clearly indicated in the introductory paragraph that these INTs were propounded pursuant to Phila. Cnty. Loc. R. 4005.  Additionally, Abbott even cited the Standard Interrogatory category and Interrogatory Number next to each Standard INT.

Pursuant to the plain text of that rule, "The Court will not entertain objections to the standard interrogatories ***and parties who file such objections will be subject to sanctions*** including imposition of counsel fees." *See* Phila. Cnty. Loc. R. 4005(D) (emphasis added).  Notwithstanding this clear instruction and caution, Plaintiffs universally objected to each and every one of the Standard INTs that Abbott propounded in all 21 cases.

The failure to comply with Loc. R. 4005(D) is compounded by the fact that, in response to at least 26 of the 42 Standard INTs, Plaintiffs provided absolutely no response at all.[2]  These non-responses fall into three categories: refusal to respond, offers to meet and confer, and unspecific promises to supplement.  Each type of non-response is discussed below.

In response to **INT Nos. 3, 18, 19, 20, 24, 28, 29, 39, and 40**, Plaintiffs outright objected to the Standard INT and provided no further response.  This is an especially inappropriate response to Standard INTs, which, by rule, may not be objected to.

---

[2] About half of the Plaintiffs failed to respond to Standard INTs 31 and 32 as well.

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

**Deficiency Letter**
**October 27, 2023**
Page 4



In response to **INT Nos. 2, 5, 7, 8, 9, 10, 14, 15, 16, 33, 34, 35, and 36**, Plaintiffs objected to the Standard INT and offered to meet and confer. Plaintiffs provided absolutely no other substantive response to any part of the INTs that Plaintiffs did not find objectionable. Despite Plaintiffs' unfounded objections, these requests are highly relevant and appropriate, including:

- **INT No. 2**: If you claim a permanent injury resulting from the treatment, surgery or examination upon which this action is based, describe such injury fully and in detail.

- **INT No. 5**: State in detail the injuries or diseases that you allege that you suffered as a result of treatment, surgery or examination upon which this action is based.

- **INT No. 7**: Either prior to or subsequent to the treatment, surgery or examination referred to in the complaint, have you ever suffered any injuries, illness or diseases in those portions of the body claimed by you to have been affected by the treatment, surgery or examination referred to in the complaint? If so, state: (a) A description of the injuries or diseases you suffered; (b) The date and place of any accident, if such an injury or disease was caused by an accident; and (c) The names and addresses of all hospitals, doctors or practitioners who rendered treatment or examinations because of any such injuries or diseases.

- **INT No. 10**: State whether you, subsequent to the date of the treatment, surgery or examination, have been unable to perform adequately any of your customary occupational duties or social or other activities, stating with particularity (a) the duties and/or activities you have been unable to perform, (b) the periods of time you have been unable to perform, and (c) the names and last known addresses of all persons who have personal knowledge thereof.

- **INT Nos. 14 & 34**: Have you given any statement concerning this action or its subject matter? If so, state: (a) The name and last known address of each person to whom a statement was given; (b) When and where each statement was given; and (c) Please consider this a Request to Produce the statements referred to in the above answer.

In response to **INT Nos. 11, 12, 17, and 37**, Plaintiffs objected to the INTs and responded only that they will supplement their responses with unspecified information at some unspecified time in the future. This response is wholly inappropriate. These INTs seek basic information about cases that Plaintiffs themselves brought, which Plaintiffs should have had in their possession prior to filing their complaints.

Moreover, the information responsive to each of these interrogatories is uniquely within Plaintiffs' possession and relevant to the cases. For example, **INT Nos. 11 and 12** inquire as to the names and locations of witnesses and people with knowledge of the facts concerning the treatment, surgery, examination, condition, or circumstances related to the allegations in the Amended Complaints. Plaintiffs' suggestion that the investigation as to each of these areas of inquiry is premature strains credulity. Even if some information remains subject to investigation, Plaintiffs must provide the information they currently have.

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

**Deficiency Letter**
**October 27, 2023**
Page 5



***Second***, with respect to the Standard INTs to which Plaintiffs arguably "responded," the responses are overwhelmingly deficient.  In response to **INT Nos. 4, 6, 13, 21, 23, 25, 26, 27, 30, and 41**, Plaintiffs generically refer to medical authorizations, medical records, and/or other unspecified productions by Defendants or third parties.  These responses are wholly insufficient.  To begin, the authorizations do not provide any substantive information besides the name of a single hospital, which is arguably only partially responsive to **INT Nos. 6 and 27** from the above list.  Further, Plaintiffs have yet to turn over a single medical record in any of the 21 cases, despite suggesting in their response to Pennsylvania Hospital's preliminary objections that they relied on these records in preparing their Amended Complaints.  *See* Pls. Resp. to Penn POs, at pg. 13.  Lastly, Plaintiffs' vague reference to "all relevant documents that will be produced during the course of discovery" is wholly insufficient.

***Third***, Plaintiffs provided substantive information in response to no more than four Standard INTs, and, in most cases, only two Standard INTs.  In **INT Nos. 1 and 22**, Abbott requested "(a) Your full name; (b) Any other names you have used or been known by; (c) Your date and place of birth; (d) Your marital status at the time of the incident; € Your present marital status; (f) Your present home address; and (g) Your social security number."  In response, Plaintiffs provided only Parent's home address, Infant's home address, Infant's date and place of birth, and in one instance, Infant's date of death.  While Plaintiffs agreed to produce social security numbers after entry of a protective order, Plaintiffs failed to respond to the remaining components of the request and instead, objected in defiance of Rule 4005(D).

Similarly, only 10 of the 21 Plaintiffs provided any substantive response to **INT Nos. 31 and 32**.  **INT Nos. 31 and 32** sought information about the witnesses and people with knowledge of the facts concerning the treatment, surgery, examination, condition, or circumstances related to the allegations in the Amended Complaints.  Eleven of the 21 Plaintiffs objected outright to both **INT Nos. 31 and 32**, noting only that Plaintiff would supplement "if necessary."  Six of the 21 Plaintiffs responded to **INT No. 32** by providing only the name of the birth hospital and standing on their objections to **INT No. 31**.  Four of the 21 Plaintiffs responded to **INT Nos. 31 and 32** by only providing very limited information on potential witnesses, such as the name of the Infants' father and/or grandfather (*Henderson*, *McMillian*), unnamed nurses in the NICU (*Parker*), and unnamed employees of the Children's Hospital of Philadelphia (*Sanders*).  Beyond these very limited answers, Plaintiffs provided no other substantive information in response to the Standard INTs.

***Fourth***, Plaintiffs responded to Standard **INT Nos. 23, 26, and 27** by suggesting that, as discovery is ongoing, "Infant may have additional injuries that are, at this time, not known because Infant is continuing to develop and may face new, or worsened, injuries as time passes."  The potentially changing nature of Infants' injuries does not relieve Plaintiffs of their discovery obligation to respond to this Standard INT and identify any presently known injuries that are responsive thereto.  Moreover, Plaintiff Mays responded to **INT No. 22** and indicated that Infant A.R. died on August 15, 2005.  Yet, despite Infant's passing, Plaintiff Mays responded to **INT Nos. 23, 26, and 27** by claiming that "Infant is continuing to develop and may face new, or worsened, injuries as time passes."

Abbott requests that Plaintiffs amend and supplement their deficient INT responses, and withdraw all objections, so as to cure the deficiencies indicated above, no later than November 3, 2023.

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

**Deficiency Letter**
**October 27, 2023**
Page 6



---

B.    <u>Supplemental Interrogatories</u>

Abbott also propounded 27 Supplemental INTs on Plaintiffs. Much like the Standard INTs, Plaintiffs responded with a mixture of pure objections, offers to meet and confer, vague references to authorizations and medical records not yet produced, and extraordinarily limited substantive information. Each deficiency is reviewed below.

***First***, Plaintiffs objected or responded to several INTs, asserting that discovery is "early and ongoing" or "premature" (**INT Nos. 42, 43, 44, 45, 46, 47, 48, 50, 51, 53, and 63**). This objection is unfounded and does not excuse Plaintiffs from satisfying their discovery obligations. These INTs seek basic information about cases that Plaintiffs themselves brought, which Plaintiffs should have had in their possession prior to filing their complaints. Additionally, Plaintiffs' failure to produce this basic information has prevented Defendants from being in a position to take Plaintiffs' depositions.

For example, **INT No. 42** simply seeks identification of the product Infant was administered. Plaintiffs cannot continue to avoid answering basic questions that go to the heart of their claims by continuously asserting that their investigation is "ongoing."[3]

Moreover, Abbott served these requests on August 9, 2023. Despite an extension to October 9, 2023, Plaintiffs provided substantively deficient responses. These requests sought information that is particularly and uniquely within Plaintiffs' possession. For example:

- STATE whether YOU and/or PARENTS saw or read any label, packaging, product guide, or other DOCUMENTS RELATED TO THE PRETERM INFANT FORMULA PRODUCTS before they were administered to the INFANT and, if so, IDENTIFY the label, packaging, or product guide, or other DOCUMENTS you saw or read and IDENTIFY the time, place, and manner in which YOU saw or read such materials. (**INT No. 43**)

- STATE whether YOU and/or PARENTS had any COMMUNICATIONS with any HEALTH CARE PRACTITIONERS regarding the decision to administer any nutrition, including but not limited to breast milk, donor milk, or PRETERM INFANT FORMULA PRODUCTS, to the INFANT and, if so, IDENTIFY all persons with whom YOU and/or PARENTS had such COMMUNICATIONS, the date(s), time, place, and manner of those COMMUNICATIONS, and DESCRIBE the content of those COMMUNICATIONS. (**INT No. 44**).

- IDENTIFY any gifts, coupons, PRETERM INFANT FORMULA PRODUCTS, or OTHER INFANT FORMULA PRODUCTS that YOU and/or PARENTS received from any HEALTH CARE PROVIDER, including without limitation the PERSON who provided any such items

---

[3] Plaintiffs also objected to **INT No. 42** as requiring expert opinion. This objection, too, is unsupportable. The information required to respond **INT No. 42** would be uniquely in Plaintiffs' possession or, at worst, readily available to Plaintiffs through their medical records. These deficiencies are not cured by any vague promise to supplement at a later date. Rather, Plaintiffs have a plain discovery obligation to provide contemporaneous responses to these relevant requests.

<span style="color:red">Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426</span>

**Deficiency Letter**
**October 27, 2023**
Page 7



to YOU and/or PARENTS, the date YOU and/or PARENTS received such items, and the substance of any discussions about such items. (**INT No. 46**)

To the extent Plaintiffs provided any response to these interrogatories, the responses were wholly generic, lacking substantive information, and failed to answer all components of the INTs. For example, in response to **INT No. 44** about communications with HCPs regarding the decision to administer nutrition to Infant, including the persons involved, as well as the time, place, manner, and content of the communication, Plaintiffs' responses included generic phrases such as:

- "Plaintiff recalls discussing the benefits of feeding premature babies with human milk but does not recall having conversations related to consent to feed her child." (*Goodmond Rya G.*, *Goodmond Ryh G.*);

- "Plaintiff recalls signing a consent form for her child to be given formula or fortifier." (*Kajuffa*);

- "Plaintiff recalls being consulted about nutrition . . . ." (*Moment*); and

- "Plaintiff recalls having conversations related to consent to feed her child." (*Taylor*).

In each of these instances, Plaintiffs fail to provide basic information that is central to the claims they brought, including the location, time, content, and participants of these conversations.[4]

***Second***, Plaintiffs universally objected and failed to provide any further response to 14 of the 27 Supplemental INTs. (**INT Nos. 42, 48, 51, 52, 55, 56, 57, 58, 59, 60, 61, 62, 64, and 67**). Plaintiffs' failure to provide any responses to these INTs is wholly unacceptable. These INTs seek information that is highly relevant to Plaintiffs' claims and Abbott's defenses, including, among others, the identity of the formula product administered to Infant (**INT No. 42**), what additional/different warnings Plaintiffs contend Abbott should have provided regarding its preterm infant nutrition products (**INT No. 48**), the date on which Infant was diagnosed with NEC (**INT No. 52**), the identity of other pregnancies the Plaintiff-Parent has experienced and whether those Infants received preterm Infant formula (**INT Nos. 55 and 56**), the identity of persons who maintain relevant records (**INT No. 57**), Infant's non-NEC diagnoses, if any (**INT No. 58**), and Parent and Infant's educational background and employment (**INT Nos. 61 and 62**). These issues are central to the case at hand. Plaintiffs themselves placed these questions squarely at issue in this litigation. Plaintiffs have alleged their Infant ingested Abbott's formula; Plaintiffs have alleged their Infant was diagnosed with NEC; and Plaintiffs have alleged that there are alternative forms of nutrition available. Abbott is entitled to investigate and test these allegations by requesting information from Plaintiffs regarding these allegations, and Plaintiffs' claim that discovery is "ongoing" in no way relieves them of their obligation to provide complete and accurate responses to these INTs that detail the information presently known to Plaintiffs.

---

[4] Note that these same failures and lack of substantive information similarly plague Plaintiffs' responses to **INT Nos. 42, 45, 46, 47 and 53**.

Certification Due Date: 11/17/2023
Response Date: 11/27/2023
Case ID: 220302588
Control No.: 23112426

**Deficiency Letter**
**October 27, 2023**
Page 8



Abbott requests that Plaintiffs amend and supplement their deficient responses, and withdraw all unsupportable objections, so as to cure the deficiencies described above, no later than November 3, 2023.

### III.    Requests for Production of Documents (RFPs)

All Plaintiffs across all 21 cases provided identical deficient responses to each of the 46 Requests for Production propounded by Abbott.  The deficiencies in Plaintiffs' responses to these RFPs are detailed below.

*First*, in response to **RFP Nos. 1, 6, 9, 17, 38, 39, 42, and 44**, Plaintiffs directed Abbott to unspecified medical authorizations, medical records that have been **or will be** produced, and, in some instances, third-party productions.  To date, Plaintiffs have not produced a single medical record to Abbott.  Even in the cases in which Plaintiffs provided Infant authorizations, Plaintiffs generally provided authorizations for only the Infant's birth hospital and one other treating hospital, entirely omitting authorizations for pediatricians and other treaters.  For Parents, Plaintiffs generally only provided authorizations for the Infant's birth hospital, omitting any OB/GYN or other treaters.  Plaintiffs also failed to provide any insurance, educational, employment, or psychiatric/psychotherapy authorizations. Accordingly, in light of Plaintiffs' failure to timely provide Abbott with complete authorizations for all 21 cases, Plaintiffs' referral to those limited set of authorizations in an effort to respond to the above-mentioned RFPs is wholly insufficient.

Moreover, Plaintiffs' manner of response, by simply referring to the authorizations, is deficient for yet another reason.  In particular, neither the authorizations, nor the medical records that they authorize Abbott to obtain, would result in documents responsive to a majority of these requests, including, for example:

- **RFP No. 1**: All DOCUMENTS and COMMUNICATIONS that support, refute, or relate to any of YOUR allegations in the COMPLAINT.

- **RFP No. 6**: All DOCUMENTS or evidence of any kind supporting each and every act and/or omission by ABBOTT that YOU allege supports the causes of action against ABBOTT in the COMPLAINT.

- **RFP No. 17**: All DOCUMENTS identified in connection with YOUR or INFANT's responses to any Interrogatories in this LAWSUIT, or referenced or used in preparing such responses.

- **RFP No. 38**: All DOCUMENTS that constitute, reflect, refer to, or relate to any articles, journals, notes, news alerts, or other information about PRETERM INFANT FORMULA PRODUCTS or OTHER INFANT FORMULA PRODUCTS.

- **RFP No. 39**: All DOCUMENTS that constitute, reflect, refer to, or relate to any articles, journals, notes, news alerts, or other information about ABBOTT or any other manufacturer of PRETERM INFANT FORMULA PRODUCTS or OTHER INFANT FORMULA PRODUCTS.

**Deficiency Letter**
**October 27, 2023**
Page 9



- **RFP No. 42**: All non-privileged COMMUNICATIONS and DOCUMENTS between YOU and any PERSON related to YOUR decision to initiate this LAWSUIT.

- **RFP No. 44**: All YOUR calendars, journals, or other DOCUMENTS that reflect YOUR daily activities for the ten (10) years preceding the events giving rise to this LAWSUIT to the present.

*Second*, in response to **RFP Nos. 1, 2, 5, 19, 21, 22, 23, 24, and 45,** Plaintiffs objected to each RFP as "premature." This objection is unsupportable. The information responsive to each of these RFPs is uniquely within Plaintiffs' possession. These RFPs seek basic information, much of which Plaintiffs should have had in their possession at the time the Initial Complaints were filed, and none of which requires any lengthy investigation to uncover. To provide a stark example, Plaintiffs universally objected that it was premature of Abbott to seek authorizations for medical records from Plaintiffs. Notwithstanding, Plaintiffs responded to eight additional RFPs by referring Abbott to those very authorizations and medical records. Plaintiffs cannot have it both ways. Plaintiffs' failure to provide this critical and relevant information, or otherwise authorize Abbott to obtain it itself, prevents Abbott from preparing for the depositions of Plaintiffs.

*Third*, in response to **RFP Nos. 2, 20, 21, 22, 23, and 24**, Plaintiffs objected to each RFP as seeking "health information protected by state and federal law." This objection is unsupportable for several reasons. Plaintiffs have brought suit against Abbott claiming physical injury; they have placed their health and related information squarely at issue in this case, and accordingly, they have waived any claim to protection over that information. Moreover, as each of **RFP Nos. 20, 21, 22, 23, and 24** makes clear, the authorizations through which Abbott seeks permission to collect this information are HIPAA-compliant.

*Fourth*, Plaintiffs object to **RFP Nos. 8 and 9** as "not limited in time and scope." This is categorically incorrect. **RFP No. 8**, by its very terms, seeks documents "in the ten (10) years preceding the events giving rise to this LAWSUIT to the present." In addition, **RFP No. 9** seeks medical bills, statements, or invoices "for which YOU seek damages in this LAWSUIT." This request is clearly limited to and targeted at documents which detail the amount of Plaintiffs' alleged damages. There is no colorable argument that these documents are outside of the temporal scope of this litigation or otherwise "not related or relevant to the issues in this case" as Plaintiffs claim.

Abbott requests that Plaintiffs amend and supplement their deficient responses, and withdraw all unsupportable objections, so as to cure the deficiencies indicated above, no later than November 3, 2023.

*    *    *

**Deficiency Letter**
**October 27, 2023**
Page 10



It is Abbott's hope that the parties can resolve most, if not all, of the above deficiencies, or at least significantly narrow the issues that will need to be raised with the Court. Abbott requests a prompt response to this letter by November 3, 2023 and, in the absence of remediation of all deficiencies, a meet and confer during the week of November 6.

Very truly yours,

Ronni E. Fuchs

cc:      All counsel of record (via email)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I will serve a true and correct copy of the foregoing in accordance with Pa. R. Civ. P. 440 on all parties not served electronically. All other parties will be electronically served by the court in accordance with Pa. R. Civ. P. 205.4(g).

Dated: November 10, 2023

*/s/ Ronni E. Fuchs*
Ronni E. Fuchs

<u>**CERTIFICATE OF COMPLIANCE**</u>

I, Ronni E. Fuchs, hereby certify that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts, that require filing confidential information and documents differently than non-confidential information and documents.

*/s/ Ronni E. Fuchs*

# EXHIBIT A-60

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**TRIAL DIVISION - CIVIL**

Filed and Attested by the
Office of Judicial Records
10 NOV 2023 08:52 pm
P. DIVON

| | | |
|---|---|---|
| TERRAINE ABDULLAH, et al., | : | |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302583 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |
| HOLLI CARTER, et al., | : | |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302588 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |
| SHONDERA DRAYTON, et al., | : | |
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302594 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |
| JANEE HENDERSON, et al., | : | |
| Plaintiff, | : | APRIL TERM, 2022 |
| v. | : | No. 220400127 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |
| DELQUAN HINES, et al., | | |
| Plaintiff, | | APRIL TERM, 2022 |
| v. | | No. 220400136 |
| MEAD JOHNSON & COMPANY, LLC, et al., | | |
| Defendants. | | |
| SHEMIKA JOHNSON, et al., | : | |
| Plaintiff, | : | APRIL TERM, 2022 |
| v. | : | No. 220400162 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |
| CATHERINE McMILLIAN, et al., | | |
| Plaintiff, | | APRIL TERM, 2022 |
| v. | | No. 220400140 |
| MEAD JOHNSON & COMPANY, LLC, et al., | | |
| Defendants. | | |
| DAMEKA MOMENT, et al., | : | |
| Plaintiff, | : | APRIL TERM, 2022 |
| v. | : | No. 220400142 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |

| | |
|---|---|
| Defendants. : | |
| LOREN SANDERS, et al., : <br> Plaintiff, : <br> v. : <br> MEAD JOHNSON & COMPANY, LLC, et al., : <br> Defendants. : | APRIL TERM, 2022 <br> No. 220400153 |
| SAMAYA SHORT, et al., : <br> Plaintiff, : <br> v. : <br> MEAD JOHNSON & COMPANY, LLC, et al., : <br> Defendants. : | APRIL TERM, 2022 <br> No. 220400159 |
| ALICE STILLS, et al., : <br> Plaintiff, : <br> v. : <br> MEAD JOHNSON & COMPANY, LLC, et al., : <br> Defendants. : | MARCH TERM, 2022 <br> No. 220302617 |
| CHRISTINA TAYLOR, et al., : <br> Plaintiff, : <br> v. : <br> MEAD JOHNSON & COMPANY, LLC, et al., : <br> Defendants. : | MARCH TERM, 2022 <br> No. 220302606 |
| NATISHA THOMAS, et al., : <br> Plaintiff, : <br> v. : <br> MEAD JOHNSON & COMPANY, LLC, et al., : <br> Defendants. : | MARCH TERM, 2022 <br> No. 220400158 |
| TRINA WALKER-SAVAGE and CLIFTON : <br> ISAIAH SAVAGE, JR., et al., : <br> Plaintiff, : <br> v. : <br> MEAD JOHNSON & COMPANY, LLC, et al., : <br> Defendants. : | MARCH TERM, 2022 <br> No. 220400156 |
| ROBERT WHITFIELD, et al., : <br> Plaintiff, : <br> v. : <br> MEAD JOHNSON & COMPANY, LLC, et al., : <br> Defendants. : | APRIL TERM, 2022 <br> No. 220400145 |
| GINA WIEGER, et al., : <br> Plaintiff, : <br> v. : <br> MEAD JOHNSON & COMPANY, LLC, et al., : <br> Defendants. : | MARCH TERM, 2022 <br> No. 220302614 |
| GINA WIEGER, et al., : | |

Case ID: 220302588
Control No.: 23110833

|  |  |  |
|---|---|---|
| Plaintiff, | : | MARCH TERM, 2022 |
| v. | : | No. 220302601 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |  |
| Defendants. | : |  |

| MELVENIA WILLIAMS, et al., | : |  |
|---|---|---|
| Plaintiff, | : | APRIL TERM, 2022 |
| v. | : | No. 220400141 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |  |
| Defendants. | : |  |

| IVYANN WITHERSPOON, et al., | : |  |
|---|---|---|
| Plaintiff, | : | APRIL TERM, 2022 |
| v. | : | No. 220400138 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |  |
| Defendants. | : |  |

**Attorney Certification of Good Faith**
**Pursuant to Phila.Civ.R. \* 208.2(e)**

The undersigned counsel for movant hereby certifies and attests that:

√ a.    He or she has had the contacts described below with opposing counsel or unrepresented party regarding discovery matter contained in the foregoing discovery motion in an effort to resolve the specific discovery dispute(s) at issue and, further, that despite all counsel's good faith attempts to resolve the dispute(s), counsel have been unable to do so.

Description:

On August 17, 2023, Plaintiff's Counsel emailed Defense Counsel indicating the need to depose Defendant's Corporate Designee.

On September 27, 2023, Plaintiff's Counsel emailed Defense Counsel to follow up on the August 17, 2023, request to depose Defendant's Corporate Designee because Defendants never provided dates for said deposition.

On October 11, 2023, Plaintiff's Counsel emailed Defense Counsel a Notice of Deposition to depose Defendant's Corporate Designee on November 1, 2023, because Defendants never provided dates for said deposition.

On October 30, 2023, Defendants emailed Plaintiffs refusing to produce Defendant's Corporate Designee for deposition on November 1, 2023.

To date, Defense counsel has not provided any available dates for the deposition of Defendant's Corporate Designee.  On October 30., 2023 Counsel for Defendant advised Plaintiffs' Counsel that they are working diligently to obtain the information requested via

Case ID: 220302588
Control No.: 23110833

discovery and the corporate designee notices and will in contact regarding promptly rescheduling these depositions, but it has failed to do so to date.

_ b.  He or she has made good faith but unsuccessful efforts described below to contact opposing counsel or unrepresented party in effort to resolve the discovery dispute.

Description:

N/A. See above.

CERTIFIED TO THE COURT BY:

**KLINE & SPECTER, P.C.**

Date: November 10, 2023        By:    */s/ John P. O'Neill*_____
JOHN P. O'NEILL, ESQUIRE
TIMOTHY A. BURKE, ESQUIRE
Attorney ID Nos. 205677 / 320927
KLINE & SPECTER, P.C.
1525 Locust Street
Philadelphia, PA 19102
Tel: (215) 772-1000
Fax: (215) 772-1359

*Attorneys for Plaintiffs*

**_Note: The Signature of Respondent's Counsel is Not Required_**

Case ID: 220302588
Control No.: 23110833

# EXHIBIT A-61

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**TRIAL DIVISION – CIVIL SECTION**

Filed and Attested by the
Office of Judicial Records
14 NOV 2023 11:22 am
E. HAURIN

| | |
|---|---|
| HOLLI CARTER, on her own behalf and as Parent and Natural Guardian of J.C., a Minor, | : |
| *Plaintiff,* | : MARCH TERM, 2022 |
| v. | : No. 2203002588 |
| | : |
| MEAD JOHNSON & COMPANY, LLC, MEAD JOHNSON NUTRITION COMPANY, ABBOTT LABORATORIES, PENNSYLVANIA HOSPITAL OF THE UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM, *d/b/a/* PENNSYLVANIA HOSPITAL, *and* THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, *d/b/a* PENN MEDICINE. | : |
| *Defendants.* | : |

## ENTRY OF APPEARANCE

TO THE PROTHONOTARY:

Kindly enter the appearance of Noël B. Ix in the above-captioned matter as counsel for Defendant Abbott Laboratories.

November 14, 2023                    Respectfully Submitted,

                                   /s/ *Noël B. Ix*
                                   Noël B. Ix
                                   PA Bar #70077
                                   **Troutman Pepper Hamilton Sanders LLP**
                                   301 Carnegie Center, Suite 400
                                   Princeton, NJ 08540
                                   609.951.4102
                                   Noel.Ix@troutman.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he caused a copy of the foregoing Entry of

Appearance to be served upon all counsel of record via electronic filing on November 14, 2023.


*/s/ Noël B. Ix*
Noël B. Ix (PA 70077)
TROUTMAN PEPPER
HAMILTON SANDERS LLP

# EXHIBIT A-62

*Filed and Attested by the Office of Judicial Records 27 NOV 2023 04:33 pm M. TIERNEY*

| | |
|---|---|
| Holli Carter, on her own behalf and as Parent and Natural Guardian of J.C., a minor<br>　　　　　　　　　　Plaintiff<br>　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.<br>　　　　　　　　　　Defendants. | :<br>:<br>:<br>:<br>: MARCH TERM, 2022<br>: NO. 220302588<br>:<br>: |
| TERRAINE ABDULLAH, on her own behalf and as Parent and Natural Guardian of H.S., a Minor,<br>　　　　　　　　　　Plaintiffs,<br>　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　　　　　　　Defendants. | :<br>:<br>:<br>: MARCH TERM 2022<br>: NO. 220302583<br>:<br>:<br>: |
| Shondera Drayton, on her own behalf and as Parent and Natural Guardian of A.D., a minor,<br>　　　　　　　　　　Plaintiffs<br>　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.<br>　　　　　　　　　　Defendants. | :<br>:<br>:<br>: MARCH TERM, 2022<br>: NO. 220302594<br>:<br>:<br>: |
| Gina Wieger, on her own behalf and as Parent and Natural Guardian of M.P., a minor,<br>　　　　　　　　　　Plaintiffs,<br>　　v.<br>Mead Johnson & Company, LLC, et al.,<br>　　　　　　　　　　Defendants. | :<br>:<br>:<br>: MARCH TERM, 2022<br>: NO. 220302614<br>:<br>:<br>: |
| Gina Wieger, on her own behalf and as Parent and Natural Guardian of S.P., a minor,<br>　　　　　　　　　　Plaintiffs,<br>　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.<br>　　　　　　　　　　Defendants. | :<br>:<br>:<br>: MARCH TERM, 2022<br>: NO. 220302601<br>:<br>:<br>: |
| Alice Stills, on her own behalf and as Parent and Natural Guardian of M.E., a minor,<br>　　　　　　　　　　Plaintiffs,<br>　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al..<br>　　　　　　　　　　Defendants. | : MARCH TERM, 2022<br>: NO. 220302617<br>:<br>:<br>:<br>:<br>: |
| Christina Taylor, on her own behalf and as Parent and Natural Guardian of I.H., a minor,<br>　　　　　　　　　　Plaintiff,<br>　　v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>　　　　　　　　　　Defendants. | : MARCH TERM, 2022<br>: NO. 220302606<br>:<br>:<br>:<br>:<br>: |

## **ORDER**

**AND NOW**, this _____ day of _____ 2023, upon consideration of Defendants The Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a Pennsylvania Hospital and The Trustees of the University of Pennsylvania d/b/a Penn Medicine's Response to Plaintiffs' Motion to Compel the Deposition of Corporate Designee, it is hereby **ORDERED**, **ADJUDGED,** and **DECREED** that Plaintiffs' Motion to Compel the Deposition of Corporate Designee is **DENIED**.

_____
                                                  J.

Case ID: 220302588
Control No.: 23110833

**BURNS WHITE LLC**
By:    **James A. Young, Esq.**
        **Richard S. Margulies, Esq.**
        **Susan R. Engle, Esq.**
        Attorney ID Nos. 00213/62306/81671
1880 John F. Kennedy Boulevard, 10th Floor
Philadelphia, PA 19103
215-587-1625/1628
jayoung@burnswhite.com
rsmargulies@burnswhite.com

*Attorneys For Defendants,*
*The Pennsylvania Hospital of the University of*
*Pennsylvania Health System d/b/a*
*Pennsylvania Hospital and The Trustees of the*
*University of Pennsylvania d/b/a Penn*
*Medicine*

| | |
|---|---|
| Holli Carter, on her own behalf and as Parent and Natural Guardian of J.C., a minor<br><br>                              Plaintiff<br>                    v.<br>MEAD JOHNSON & COMPANY, LLC, et al.<br>                              Defendants. | :<br>:<br>:<br>:   MARCH TERM, 2022<br>:   NO. 220302588<br>:<br>:<br>: |
| TERRAINE ABDULLAH, on her own behalf and as Parent and Natural Guardian of H.S., a Minor,<br>                              Plaintiffs,<br>                    v.<br>MEAD JOHNSON & COMPANY, LLC, et al.,<br>                              Defendants. | :<br>:<br>:<br>:   MARCH TERM 2022<br>:   NO. 220302583<br>:<br>: |
| Shondera Drayton, on her own behalf and as Parent and Natural Guardian of A.D., a minor,<br>                              Plaintiffs<br>                    v.<br>MEAD JOHNSON & COMPANY, LLC, et al.<br>                              Defendants. | :<br>:<br>:   MARCH TERM, 2022<br>:   NO. 220302594<br>:<br>: |
| Gina Wieger, on her own behalf and as Parent and Natural Guardian of M.P., a minor,<br>                              Plaintiffs,<br>                    v.<br>Mead Johnson & Company, LLC, et al.,<br>                              Defendants. | :<br>:<br>:   MARCH TERM, 2022<br>:   NO. 220302614<br>:<br>: |
| Gina Wieger, on her own behalf and as Parent and Natural Guardian of S.P., a minor,<br>                              Plaintiffs,<br>                    v.<br>MEAD JOHNSON & COMPANY, LLC, et al.<br>                              Defendants. | :<br>:<br>:   MARCH TERM, 2022<br>:   NO. 220302601<br>:<br>: |

| Alice Stills, on her own behalf and as Parent and Natural Guardian of M.E., a minor, | : | |
|---|---|---|
| Plaintiffs, | : | |
| | : | MARCH TERM, 2022 |
| v. | : | NO. 220302617 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |

| Christina Taylor, on her own behalf and as Parent and Natural Guardian of I.H., a minor, | : | |
|---|---|---|
| Plaintiff, | : | |
| | : | MARCH TERM, 2022 |
| v. | : | NO. 220302606 |
| MEAD JOHNSON & COMPANY, LLC, et al., | : | |
| Defendants. | : | |

### DEFENDANTS, THE PENNSYLVANIA HOSPITAL OF THE UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM D/B/A PENNSYLVANIA HOSPITAL AND THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA D/B/A PENN MEDICINE, RESPONSE TO PLAINTIFFS' MOTION TO COMPEL THE DEPOSITION OF CORPORATE DESIGNEE

Defendants, The Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a Pennsylvania Hospital and The Trustees of the University of Pennsylvania d/b/a Penn Medicine (hereinafter "Responding Defendants"), by and through their counsel, Burns White LLC, hereby file the instant Response to Plaintiffs' Motion to Compel the Deposition of Corporate Designee, and aver in support as follows:

1. It is admitted that this paragraph summarizes the allegations made in Plaintiffs' Complaints. The substance of the allegations is denied.

2. It is admitted that this paragraph summarizes the allegations made in Plaintiffs' Complaints. The substance of the allegations is denied.

3. Admitted.

4. Admitted that Exhibit "A" was sent to defense counsel.

5. Admitted that Exhibit "B" was sent to defense counsel.

6. Admitted that Exhibit "C" was sent to defense counsel.

7. Denied as stated. It is admitted that defense counsel send the email marked as Exhibit

"D." It is denied that Responding Defendant refused to produce a witness. The deposition was unilaterally noticed and Responding Defendant was not able to coordinate a witness on such short notice without regard for the schedules of all counsel and the witness.

8. Denied. Responding Defendant has provided dates for two of its three clients, and has advised Plaintiffs' counsel that it is actively working to schedule the last of the depositions. It is expected a date will be agreed upon by all parties imminently.

9. Admitted.

10. Denied.

WHEREFORE, Defendants request that this Honorable Court sustain Defendants' Objections to Plaintiff's Motion to Compel and enter the attached proposed Order.

Respectfully submitted,

**BURNS WHITE LLC**

BY: _/s/ Susan R. Engle_____
JAMES A. YOUNG, ESQ.
RICHARD S. MARGULIES, ESQ.
SUSAN R. ENGLE, ESQ.

*Attorneys for Defendants,*
*The Pennsylvania Hospital of the University*
*of Pennsylvania Health System d/b/a*
*Pennsylvania Hospital and The Trustees of*
*the University of Pennsylvania d/b/a Penn*
*Medicine*

## <u>CERTIFICATE OF SERVICE</u>

I, Susan R. Engle, Esquire, do hereby certify that on this day I caused a true and correct copy of the foregoing Response of Defendants The Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a Pennsylvania Hospital and The Trustees of the University of Pennsylvania d/b/a Penn Medicine to Plaintiffs' Motion to Compel the Deposition of Corporate Designee to be served via the electronic filing system to all counsel of record.

BY:   <u>*/s/ Susan R. Engle*</u>

Dated:  November 27, 2023

# EXHIBIT A-63

**FILED**
20 OCT 2023 04:38 pm
Civil Administration
C. ARTWELL

| | |
|---|---|
| **HOLLI CARTER, on her own behalf** | : **COURT OF COMMON PLEAS** |
| **and as Parent and Natural Guardian of** | : **PHILADELPHIA COUNTY** |
| **J.C., a Minor** | : |
| | : **MARCH TERM, 2022** |
| Plaintiffs, | : **No. 2588** |
| v. | : |
| | : |
| **MEAD JOHNSON & COMPANY, LLC,** | : |
| **et al.,** | : |
| | : |
| Defendants. | : |

## ORDER

**AND NOW**, this _14th_ day of _December_, 2023, upon consideration of

the Motion for Admission Pro Hac Vice of Evan Glassman, Esquire, to Represent

Defendants, Mead Johnson & Company, LLC and Mead Johnson Nutrition Company, it

is hereby **ORDERED** that the Motion is **GRANTED**. This Court hereby admits Evan

Glassman, Esquire, pro hac vice in this case on behalf of Defendants, Mead Johnson &

Company, LLC and Mead Johnson Nutrition Company.

**BY THE COURT:**

_____ J.

220302588-Carter Etal Vs Mead Johnson

22030258800132

Case ID: 220302588
Control No.: 23104224

COPIES SENT PURSUANT TO Pa.R.C.P. 236(b) C. FORTE 12/14/2023

# EXHIBIT A-64

**COURT OF COMMON PLEAS OF PHILADELPHIA**
**TRIAL DIVISION – CIVIL**

Filed and Attested by the
Office of Judicial Records
22 JAN 2024 02:52 pm
E. HAURIN

| | |
|---|---|
| TERRAINE ABDULLAH, *on her own behalf and as Parent and Natural Guardian of H.S., a Minor,* : | |
| : | Case No.: 220302583 |
| Plaintiffs, : | |
| : | **JURY TRIAL DEMANDED** |
| v. : | |
| : | |
| MEAD JOHNSON & COMPANY LLC; MEAD JOHNSON NUTRITION COMPANY; ABBOTT LABORATORIES; THE PENNSYLVANIA HOSPITAL OF THE UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM, *d/b/a* PENNSYLVANIA HOSPITAL; and THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, *d/b/a* PENN MEDICINE, : | |
| : | |
| Defendants. : | |

| | |
|---|---|
| HOLLI CARTER, *on her own behalf and as Parent and Natural Guardian of J.C., a Minor,* : | |
| : | Case No.: 220302588 |
| Plaintiffs, : | |
| : | **JURY TRIAL DEMANDED** |
| v. : | |
| : | |
| MEAD JOHNSON & COMPANY LLC; MEAD JOHNSON NUTRITION COMPANY; ABBOTT LABORATORIES; THE PENNSYLVANIA HOSPITAL OF THE UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM, *d/b/a* PENNSYLVANIA HOSPITAL; and THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, *d/b/a* PENN MEDICINE, : | |
| : | |
| Defendants. : | |

| | |
|---|---|
| SHONDERA DRAYTON, *on her own behalf and as Parent and Natural Guardian of* A.D.*, a Minor,* : | |
| : | Case No.: 220302594 |
| Plaintiffs, : | |
| : | **JURY TRIAL DEMANDED** |
| v. : | |
| : | |

Page 1

MEAD JOHNSON & COMPANY LLC; MEAD    :
JOHNSON NUTRITION COMPANY; ABBOTT    :
LABORATORIES; THE PENNSYLVANIA    :
HOSPITAL OF THE UNIVERSITY OF    :
PENNSYLVANIA HEALTH SYSTEM, *d/b/a*    :
PENNSYLVANIA HOSPITAL; and THE    :
TRUSTEES OF THE UNIVERSITY OF    :
PENNSYLVANIA, *d/b/a* PENN MEDICINE,    :
   :
     Defendants.    :

BRANDY GOODMOND, *on her own behalf and as*    :
*Parent and Natural Guardian of* RYA G*., a Minor*,    :
   :  Case No.: 220400208
   :
     Plaintiffs,    :  **JURY TRIAL DEMANDED**
   :
v.    :
   :
MEAD JOHNSON & COMPANY LLC; MEAD    :
JOHNSON NUTRITION COMPANY; ABBOTT    :
LABORATORIES; THOMAS JEFFERSON    :
UNIVERSITY HOSPITALS, INC., *d/b/a* THOMAS    :
JEFFERSON UNIVERSITY HOSPITAL, and    :
THOMAS JEFFERSON UNIVERSITY, *d/b/a*,    :
JEFFERSON HEALTH SYSTEM,    :
   :
     Defendants.    :

BRANDY GOODMOND, *on her own behalf and as*    :
*Parent and Natural Guardian of* RYH G*., a Minor*,    :
   :  Case No.: 220400212
   :
     Plaintiffs,    :  **JURY TRIAL DEMANDED**
   :
v.    :
   :
MEAD JOHNSON & COMPANY LLC; MEAD    :
JOHNSON NUTRITION COMPANY; ABBOTT    :
LABORATORIES; THOMAS JEFFERSON    :
UNIVERSITY HOSPITALS, INC., *d/b/a* THOMAS    :
JEFFERSON UNIVERSITY HOSPITAL, and    :
THOMAS JEFFERSON UNIVERSITY, *d/b/a*,    :
JEFFERSON HEALTH SYSTEM,    :
   :
     Defendants.    :

TONYA GRAY, *on her own behalf and as Parent and* :

Case ID: 220302588

| | |
|---|---|
| *Natural Guardian of* J.M.*, a Minor,* | : |
| | : Case No.: 220400216 |
| Plaintiffs, | : |
| | : **JURY TRIAL DEMANDED** |
| v. | : |
| | : |
| MEAD JOHNSON & COMPANY LLC; MEAD | : |
| JOHNSON NUTRITION COMPANY; ABBOTT | : |
| LABORATORIES; THOMAS JEFFERSON | : |
| UNIVERSITY HOSPITALS, INC., *d/b/a* THOMAS | : |
| JEFFERSON UNIVERSITY HOSPITAL, and | : |
| THOMAS JEFFERSON UNIVERSITY, *d/b/a*, | : |
| JEFFERSON HEALTH SYSTEM, | : |
| | : |
| Defendants. | : |

| | |
|---|---|
| JANEE HENDERSON, *on her own behalf and as* | : |
| *Parent and Natural Guardian of* S.C.*, a Minor,* | : |
| | : Case No.: 220400127 |
| Plaintiffs, | : |
| | : **JURY TRIAL DEMANDED** |
| v. | : |
| | : |
| MEAD JOHNSON & COMPANY LLC; MEAD | : |
| JOHNSON NUTRITION COMPANY; ABBOTT | : |
| LABORATORIES; THE TRUSTEES OF THE | : |
| UNIVERSITY OF PENNSYLVANIA, *d/b/a* THE | : |
| HOSPITAL OF THE UNIVERSITY OF | : |
| PENNSYLVANIA; and THE TRUSTEES OF THE | : |
| UNIVERSITY OF PENNSYLVANIA, *d/b/a* PENN | : |
| MEDICINE, | : |
| | : |
| Defendants. | : |

| | |
|---|---|
| SHEMIKA JOHNSON, *on her own behalf and as* | : |
| *Parent and Natural Guardian of* W.J.*, a Minor,* | : |
| | : Case No.: 220400162 |
| Plaintiffs, | : |
| | : **JURY TRIAL DEMANDED** |
| v. | : |
| | : |
| MEAD JOHNSON & COMPANY LLC; MEAD | : |
| JOHNSON NUTRITION COMPANY; ABBOTT | : |
| LABORATORIES; THE TRUSTEES OF THE | : |
| UNIVERSITY OF PENNSYLVANIA, *d/b/a* THE | : |
| HOSPITAL OF THE UNIVERSITY OF | : |

Case ID: 220302588

PENNSYLVANIA; and THE TRUSTEES OF THE
UNIVERSITY OF PENNSYLVANIA, *d/b/a* PENN
MEDICINE,

          Defendants.

---

KRISTEN KAJUFFA, *on her own behalf and as
Parent and Natural Guardian of* B.K*., a Minor*,

          Plaintiffs,

v.

MEAD JOHNSON & COMPANY LLC; MEAD
JOHNSON NUTRITION COMPANY; ABBOTT
LABORATORIES; TEMPLE UNIVERSITY
HEALTH SYSTEM, *d/b/a* TEMPLE UNIVERSITY
HOSPITAL,

          Defendants.

Case No.: 220302978

**JURY TRIAL DEMANDED**

---

NAFEESAH MAYS, *on her own behalf and as Parent
and Natural Guardian of* A.R*., a Minor*,

          Plaintiffs,

v.

MEAD JOHNSON & COMPANY LLC; MEAD
JOHNSON NUTRITION COMPANY; ABBOTT
LABORATORIES; ALBERT EINSTEIN MEDICAL
CENTER, *a/k/a* EINSTEIN MEDICAL CENTER, and
ALBERT EINSTEIN HEALTHCARE NETWORK,
*d/b/a*, EINSTEIN HEALTHCARE NETWORK,

          Defendants.

Case No.: 220302963

**JURY TRIAL DEMANDED**

---

CATHERINE MCMILLIAN, *on her own behalf and as
Parent and Natural Guardian of* T.M*., a Minor*,

          Plaintiffs,

v.

MEAD JOHNSON & COMPANY LLC; MEAD

Case No.: 220400140

**JURY TRIAL DEMANDED**

Case ID: 220302588

JOHNSON NUTRITION COMPANY; ABBOTT : 
LABORATORIES; THE TRUSTEES OF THE : 
UNIVERSITY OF PENNSYLVANIA, *d/b/a* THE : 
HOSPITAL OF THE UNIVERSITY OF : 
PENNSYLVANIA; and THE TRUSTEES OF THE : 
UNIVERSITY OF PENNSYLVANIA, *d/b/a* PENN : 
MEDICINE, : 
 : 
             Defendants. : 

---

DAMEKA MOMENT, *on her own behalf and as* : 
*Parent and Natural Guardian of* A.M.*, a Minor,* : 
 : Case No.: 220400142
 : 
             Plaintiffs, : 
 : **JURY TRIAL DEMANDED**
v. : 
 : 
MEAD JOHNSON & COMPANY LLC; MEAD : 
JOHNSON NUTRITION COMPANY; ABBOTT : 
LABORATORIES; THE TRUSTEES OF THE : 
UNIVERSITY OF PENNSYLVANIA, *d/b/a* THE : 
HOSPITAL OF THE UNIVERSITY OF : 
PENNSYLVANIA; and THE TRUSTEES OF THE : 
UNIVERSITY OF PENNSYLVANIA, *d/b/a* PENN : 
MEDICINE, : 
 : 
             Defendants. : 

---

NYDIA PARKER, *on her own behalf and as Parent* : 
*and Natural Guardian of* M.H.*, a Minor,* : 
 : Case No.: 220302983
 : 
             Plaintiffs, : 
 : **JURY TRIAL DEMANDED**
v. : 
 : 
MEAD JOHNSON & COMPANY LLC; MEAD : 
JOHNSON NUTRITION COMPANY; ABBOTT : 
LABORATORIES; TEMPLE UNIVERSITY : 
HEALTH SYSTEM, *d/b/a* TEMPLE UNIVERSITY : 
HOSPITAL, : 
 : 
             Defendants. : 

---

ALEXANDRIA ROSS, *on her own behalf and as* : 
*Parent and Natural Guardian of* B.M.*, a Minor,* : 
 : Case No.: 220302981

Page 5

Case ID: 220302588

|  | : |  |
| --- | --- | --- |
| Plaintiffs, | : | **JURY TRIAL DEMANDED** |
|  | : |  |
| v. | : |  |
|  | : |  |
| MEAD JOHNSON & COMPANY LLC; MEAD | : |  |
| JOHNSON NUTRITION COMPANY; ABBOTT | : |  |
| LABORATORIES; TEMPLE UNIVERSITY | : |  |
| HEALTH SYSTEM, *d/b/a* TEMPLE UNIVERSITY | : |  |
| HOSPITAL, | : |  |
|  | : |  |
| Defendants. | : |  |

|  | : |  |
| --- | --- | --- |
| LOREN SANDERS, *on her own behalf and as Parent* | : |  |
| *and Natural Guardian of* Q.S., *a Minor*, | : |  |
|  | : | Case No.: 220400153 |
| Plaintiffs, | : |  |
|  | : | **JURY TRIAL DEMANDED** |
| v. | : |  |
|  | : |  |
| MEAD JOHNSON & COMPANY LLC; MEAD | : |  |
| JOHNSON NUTRITION COMPANY; ABBOTT | : |  |
| LABORATORIES; THE TRUSTEES OF THE | : |  |
| UNIVERSITY OF PENNSYLVANIA, *d/b/a* THE | : |  |
| HOSPITAL OF THE UNIVERSITY OF | : |  |
| PENNSYLVANIA; and THE TRUSTEES OF THE | : |  |
| UNIVERSITY OF PENNSYLVANIA, *d/b/a* PENN | : |  |
| MEDICINE, | : |  |
|  | : |  |
| Defendants. | : |  |

|  | : |  |
| --- | --- | --- |
| SAMAYA SHORT, *on her own behalf and as Parent* | : |  |
| *and Natural Guardian of* S.M., *a Minor*, | : |  |
|  | : | Case No.: 220400159 |
| Plaintiffs, | : |  |
|  | : | **JURY TRIAL DEMANDED** |
| v. | : |  |
|  | : |  |
| MEAD JOHNSON & COMPANY LLC; MEAD | : |  |
| JOHNSON NUTRITION COMPANY; ABBOTT | : |  |
| LABORATORIES; THE TRUSTEES OF THE | : |  |
| UNIVERSITY OF PENNSYLVANIA, *d/b/a* THE | : |  |
| HOSPITAL OF THE UNIVERSITY OF | : |  |
| PENNSYLVANIA; and THE TRUSTEES OF THE | : |  |
| UNIVERSITY OF PENNSYLVANIA, *d/b/a* PENN | : |  |
| MEDICINE, | : |  |
|  | : |  |

Page 6

Case ID: 220302588

| | |
|---|---|
| Defendants. | : |

ALICE STILLS, *on her own behalf and as Parent and* : 
*Natural Guardian of* M.E*., a Minor*, :

                                 : Case No.: 220302617

        Plaintiffs, :

                                 : **JURY TRIAL DEMANDED**

v. :

MEAD JOHNSON & COMPANY LLC; MEAD :
JOHNSON NUTRITION COMPANY; ABBOTT :
LABORATORIES; THE PENNSYLVANIA :
HOSPITAL OF THE UNIVERSITY OF :
PENNSYLVANIA HEALTH SYSTEM, *d/b/a* :
PENNSYLVANIA HOSPITAL; and THE :
TRUSTEES OF THE UNIVERSITY OF :
PENNSYLVANIA, *d/b/a* PENN MEDICINE, :
                                 :

        Defendants. :

CHRISTINA TAYLOR, *on her own behalf and as* :
*Parent and Natural Guardian of* I.H*., a Minor*, :

                                 : Case No.: 220302606

        Plaintiffs, :

                                 : **JURY TRIAL DEMANDED**

v. :

MEAD JOHNSON & COMPANY LLC; MEAD :
JOHNSON NUTRITION COMPANY; ABBOTT :
LABORATORIES; THE PENNSYLVANIA :
HOSPITAL OF THE UNIVERSITY OF :
PENNSYLVANIA HEALTH SYSTEM, *d/b/a* :
PENNSYLVANIA HOSPITAL; and THE :
TRUSTEES OF THE UNIVERSITY OF :
PENNSYLVANIA, *d/b/a* PENN MEDICINE, :
                                 :

        Defendants. :

NATISHA THOMAS, *on her own behalf and as* :
*Parent and Natural Guardian of* R.T*., a Minor*, :

                                 : Case No.: 220400158

        Plaintiffs, :

                                 : **JURY TRIAL DEMANDED**

v. :

MEAD JOHNSON & COMPANY LLC; MEAD :

Page 7

Case ID: 220302588

JOHNSON NUTRITION COMPANY; ABBOTT : 
LABORATORIES; THE TRUSTEES OF THE : 
UNIVERSITY OF PENNSYLVANIA, *d/b/a* THE : 
HOSPITAL OF THE UNIVERSITY OF : 
PENNSYLVANIA; and THE TRUSTEES OF THE : 
UNIVERSITY OF PENNSYLVANIA, *d/b/a* PENN : 
MEDICINE, : 
         : 
         Defendants. : 

TRINA WALKER-SAVAGE and CLIFTON ISAIAH : 
WALKER-SAVAGE, JR., : 
         : Case No.: 220400156 
         Plaintiffs, : 
         : **JURY TRIAL DEMANDED** 
v. : 
         : 
MEAD JOHNSON & COMPANY LLC; MEAD : 
JOHNSON NUTRITION COMPANY; ABBOTT : 
LABORATORIES; THE TRUSTEES OF THE : 
UNIVERSITY OF PENNSYLVANIA, *d/b/a* THE : 
HOSPITAL OF THE UNIVERSITY OF : 
PENNSYLVANIA; and THE TRUSTEES OF THE : 
UNIVERSITY OF PENNSYLVANIA, *d/b/a* PENN : 
MEDICINE, : 
         : 
         Defendants. : 

JEANNATE WATSON, *on her own behalf and as* : 
*Parent and Natural Guardian of* B.L.*, a Minor*, : 
         : Case No.: 220302967 
         Plaintiffs, : 
         : **JURY TRIAL DEMANDED** 
v. : 
         : 
MEAD JOHNSON & COMPANY LLC; MEAD : 
JOHNSON NUTRITION COMPANY; ABBOTT : 
LABORATORIES; ALBERT EINSTEIN MEDICAL : 
CENTER, *a/k/a* EINSTEIN MEDICAL CENTER, and : 
ALBERT EINSTEIN HEALTHCARE NETWORK, : 
*d/b/a*, EINSTEIN HEALTHCARE NETWORK, : 
         : 
         Defendants. : 

GINA WIEGER, *on her own behalf and as Parent and* : 
*Natural Guardian of* M.P.*, a Minor*, : 

Page 8

|  |  |  |
|---|---|---|
| Plaintiffs, | : | Case No.: 220302614 |
| | : | |
| v. | : | **JURY TRIAL DEMANDED** |
| | : | |
| | : | |
| MEAD JOHNSON & COMPANY LLC; MEAD | : | |
| JOHNSON NUTRITION COMPANY; ABBOTT | : | |
| LABORATORIES; THE PENNSYLVANIA | : | |
| HOSPITAL OF THE UNIVERSITY OF | : | |
| PENNSYLVANIA HEALTH SYSTEM, *d/b/a* | : | |
| PENNSYLVANIA HOSPITAL; and THE | : | |
| TRUSTEES OF THE UNIVERSITY OF | : | |
| PENNSYLVANIA, *d/b/a* PENN MEDICINE, | : | |
| | : | |
| Defendants. | : | |

|  |  |  |
|---|---|---|
| GINA WIEGER, *on her own behalf and as Parent and* | : | |
| *Natural Guardian of* S.P.*, a Minor*, | : | |
| | : | Case No.: 220302601 |
| Plaintiffs, | : | |
| | : | **JURY TRIAL DEMANDED** |
| v. | : | |
| | : | |
| MEAD JOHNSON & COMPANY LLC; MEAD | : | |
| JOHNSON NUTRITION COMPANY; ABBOTT | : | |
| LABORATORIES; THE PENNSYLVANIA | : | |
| HOSPITAL OF THE UNIVERSITY OF | : | |
| PENNSYLVANIA HEALTH SYSTEM, *d/b/a* | : | |
| PENNSYLVANIA HOSPITAL; and THE | : | |
| TRUSTEES OF THE UNIVERSITY OF | : | |
| PENNSYLVANIA, *d/b/a* PENN MEDICINE, | : | |
| | : | |
| Defendants. | : | |

|  |  |  |
|---|---|---|
| SHANITA WIGGINS, *on her own behalf and as* | : | |
| *Parent and Natural Guardian of* T.B.*, a Minor*, | : | |
| | : | Case No.: 220302986 |
| Plaintiffs, | : | |
| | : | **JURY TRIAL DEMANDED** |
| v. | : | |
| | : | |
| MEAD JOHNSON & COMPANY LLC; MEAD | : | |
| JOHNSON NUTRITION COMPANY; ABBOTT | : | |
| LABORATORIES; TEMPLE UNIVERSITY | : | |
| HEALTH SYSTEM, *d/b/a* TEMPLE UNIVERSITY | : | |
| HOSPITAL, | : | |

Page 9

Case ID: 220302588

|                                                                                                                                                                                                                                                                                  |   |                                            |
| -------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- | - | ------------------------------------------ |
| Defendants.                                                                                                                                                                                                                                                                      | : |                                            |
| MELVENIA WILLIAMS, *on her own behalf and as Parent and Natural Guardian of* R.W*., a Minor,*                                                                                                                                                                                    | : |                                            |
|                                                                                                                                                                                                                                                                                  | : | Case No.: 220400141                        |
| Plaintiffs,                                                                                                                                                                                                                                                                      | : | **JURY TRIAL DEMANDED**                    |
| v.                                                                                                                                                                                                                                                                               | : |                                            |
|                                                                                                                                                                                                                                                                                  | : |                                            |
| MEAD JOHNSON & COMPANY LLC; MEAD JOHNSON NUTRITION COMPANY; ABBOTT LABORATORIES; THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, *d/b/a* THE HOSPITAL OF THE UNIVERSITY OF PENNSYLVANIA; and THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, *d/b/a* PENN MEDICINE,                 | : |                                            |
|                                                                                                                                                                                                                                                                                  | : |                                            |
| Defendants.                                                                                                                                                                                                                                                                      | : |                                            |
| IVYANN WITHERSPOON, *on her own behalf and as Parent and Natural Guardian of* A.H., *a Minor,*                                                                                                                                                                                   | : |                                            |
|                                                                                                                                                                                                                                                                                  | : | Case No.: 220400138                        |
| Plaintiffs,                                                                                                                                                                                                                                                                      | : | **JURY TRIAL DEMANDED**                    |
| v.                                                                                                                                                                                                                                                                               | : |                                            |
|                                                                                                                                                                                                                                                                                  | : |                                            |
| MEAD JOHNSON & COMPANY LLC, MEAD JOHNSON NUTRITION COMPANY, ABBOTT LABORATORIES, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, *d/b/a* THE HOSPITAL OF THE UNIVERSITY OF PENNSYLVANIA and THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, *d/b/a* PENN MEDICINE,                 | : |                                            |
|                                                                                                                                                                                                                                                                                  | : |                                            |
| Defendants.                                                                                                                                                                                                                                                                      | : |                                            |

## [PROPOSED] STIPULATED PROTECTIVE ORDER

To expedite the flow of discovery material, facilitate the prompt resolution of disputes over confidentiality, adequately protect material entitled to be kept confidential, and ensure

Page 10

Case ID: 220302588

that protection is afforded only to material so entitled, plaintiffs in the above-captioned litigation ("Plaintiffs") and defendants Mead Johnson & Company, LLC, Mead Johnson Nutrition Company; Abbott Laboratories; Albert Einstein Medical Center, a/k/a Einstein Medical Center; Albert Einstein Healthcare Network, d/b/a, Einstein Healthcare Network; Mead Johnson & Company LLC; Mead Johnson Nutrition Company; Temple University Health System, d/b/a Temple University Hospital; The Pennsylvania Hospital of the University of Pennsylvania Health System, d/b/a Pennsylvania Hospital; The Trustees of the University Of Pennsylvania, d/b/a Penn Medicine; The Trustees of the University of Pennsylvania, d/b/a The Hospital of the University of Pennsylvania; Thomas Jefferson University Hospitals, Inc., d/b/a Thomas Jefferson University Hospital; Thomas Jefferson University, d/b/a, Jefferson Health System ("Defendants"), by and through their respective counsel, and pursuant to Pa. R.C.P. No. 4012, hereby stipulate and agree to the terms of this Stipulated Protective Order as follows:

IT IS HEREBY STIPULATED, subject to the approval of the Court that:

1.     **APPLICABILITY OF THE PROTECTIVE ORDER.** This Stipulated Order Governing the Designation and Handling of Confidential Materials (hereinafter "Order") shall govern for pre-trial purposes the handling of documents, depositions, deposition exhibits, interrogatory responses, responses to requests for admissions, responses to requests for production of documents, and all other discovery obtained pursuant to the Pennsylvania Rules of Civil Procedure and Rules of Evidence by or from a Party in connection with the Action (this information hereinafter referred to as "Discovery Material"). Except where federal law applies, Pennsylvania law and rules shall govern this order. All references to "Party," "Receiving Party," "Producing Party" or "Designating Party" throughout this Order are intended to include Non-parties.

Case ID: 220302588

The Parties acknowledge that this Order does not confer blanket protections on all disclosures, responses to discovery, or testimony and that the protection it affords extends only to the information or items that are entitled to protection under the terms of this Order and any other applicable law. Furthermore, the Parties acknowledge that neither this Order—nor the confidentiality designations thereunder—constitutes a ruling by this Court that any specific information is, in fact, confidential.

2.    **OTHER DEFINITIONS**

    a.  **Action**: The above-captioned actions and any other Pennsylvania Court action coordinated with them for any purposes, including discovery purposes, and any other related actions in the Philadelphia Court of Common Pleas, provided additional or different Parties to those actions agree to be bound by the terms of this Order, and those other courts that enter this Order or a substantively identical order in reciprocal fashion.

    b.  **Party**: any party to this Action.

    c.  **Non-party**: any individual, corporation, association, or other natural person or entity that is not a Party to this Action.

    d.  **Receiving Party**: a Party or Non-party that receives Discovery Material from a Producing Party.

    e.  **Producing Party**: a Party or Non-party that produces Discovery Material in this Action.

    f.  **Designating Party**: a Party or Non-party that designates information or items that it produces in disclosures or in responses to discovery or provides in the form of deposition testimony as Covered Information (as defined

Case ID: 220302588

below).  The Designating Party bears the burden of establishing good cause for the protection of all such information or items.

g. **Challenging Party**: a Party that elects to initiate a challenge to a Designating Party's confidentiality designation.

h. **TIFF**: A widely used and supported graphic file format for storing bit-mapped images, with many different compression formats and resolutions.

i. **Native Format**: An electronic document's associated file structure defined by the original creating application.  For example, the native format of an Excel workbook is a .xls or .xslx file.

3. **DESIGNATION OF MATERIAL AS "CONFIDENTIAL" OR "HIGHLY CONFIDENTIAL"**.  Any Producing Party may designate Discovery Material as "Confidential" or "Highly Confidential" under the terms of this Order if the Producing Party in good faith reasonably believes that such Discovery Material contains non-public, confidential, personal, proprietary or commercially sensitive information that requires protections provided in this Order (hereinafter referred to as "Confidential Material" or "Highly Confidential Material" as set forth below).  Confidential Material and Highly Confidential Material are collectively defined as "Covered Information."

a. **"Confidential Material."**  "Confidential Material" means material or information that constitutes, reflects, discloses or contains (i) information protected from disclosure by any applicable State or federal statute or regulation; (ii) research, design, development, financial, technical, marketing, planning, manufacturing or commercial information that the Designating Party has maintained as confidential, as such terms are used in

Case ID: 220302588

Pa. R.C.P. 4012(a)(9), and any applicable case law interpreting these rules; and (iii) trade secrets as defined by the Restatement of Torts § 757 comment. Confidential Material shall also include any Protected Data (defined below). For avoidance of all doubt, all medical records produced in this case shall be designated Confidential and treated as personal health information ("PHI") in accordance with the Health Insurance Portability and Accountability Act ("HIPAA").

    (i)    **"Protected Data."** Protected Data shall refer to any information that a Party believes in good faith to be subject to federal, state, or foreign Data Protection Laws or other regulatory privacy obligations, including but not limited to Personal Health Information ("PHI") and Personally Identifiable Information ("PII"). Protected Data constitutes highly sensitive materials requiring special protection. Examples of such Data Protection Laws include, without limitation, The Gramm-Leach-Bliley Act, 15 U.S.C. § 6801 et seq. (financial information); The Health Insurance Portability and Accountability Act and the regulations thereunder, 45 CFR Part 160 and Subparts A and E of Part 164 (medical information); and the *General Data Protection Regulation (GDPR):* Regulation (EU) 2016/679 of the European Parliament and of the Council of 27 April 2016 on the protection of natural persons with regard to the processing

Case ID: 220302588

of personal data and on the free movement of such data, and repealing Directive 95/46/EC (General Data Protection Regulation), OJ 2016 L 119/1. Certain Protected Data may compel alternative or additional protections beyond those afforded Confidential Material, in which event the Parties shall meet and confer in good faith, and, if unsuccessful, shall move the Court for appropriate relief.

b. **"Highly Confidential Material."** For purposes of this Order, Highly Confidential Material shall include, but is not limited to, Confidential Material as defined herein containing non-public product design, development, research, or testing information or extremely sensitive, highly confidential, non-public information, consisting either of trade secrets or proprietary or other highly confidential business, financial, regulatory, research, marketing, manufacturing, or other strategic information (including without limitation information regarding business plans, technical data, and non-public designs), the disclosure of which would create a substantial risk of competitive or business injury to the Producing Party. It is possible that Defendants may view certain Highly Confidential Information as requiring additional protections beyond those afforded Highly Confidential Material, in which event the Parties shall meet and confer in good faith about potential additional protections, and, if unsuccessful, Defendants shall move the Court for appropriate relief before producing the information.

(i). Certain Highly Confidential Information that contains trade secrets or

Case ID: 220302588

proprietary or other highly confidential business, financial, regulatory, research, marketing, manufacturing or other strategic information that, if shared with Defendants' competitors (including each other) would result in competitive harm, will bear the additional designation "Highly Confidential – Outside Counsel Only."  Material designated by one Defendant as "Highly Confidential – Outside Counsel Only" shall be afforded the same protections afforded to documents designated as "Highly Confidential," and in addition, shall not be made available to the other Defendants' in-house counsel or other current employees, absent written agreement by the Producing Party or by order of the Court after *in camera* review.

4. **MARKING OF DOCUMENTS.**  The designation of Discovery Material as Confidential Material or Highly Confidential Material for purposes of this Order shall be made in the following manner:

a. **TIFF Documents.**  In the case of documents or other materials containing Covered Information produced in TIFF format (apart from depositions or other pre-trial testimony), designation shall be made by affixing the legend "Confidential" or "Highly Confidential" to all pages in each document containing any Confidential Material or Highly Confidential Material respectively.

b. **Native Documents.**  With respect to documents or materials containing Covered Information produced in Native Format, the Designating Party shall include the highest level of confidentiality designation in the filename and/or on a slip sheet placeholder produced along with the native document.

c. **Designating Depositions.**  With respect to any deposition, confidential

Case ID: 220302588

treatment may be invoked on the record (before the deposition or proceeding is concluded) or within twenty-one (21) days following receipt of the transcript by identifying the specific portions of the testimony as to which protection is sought and the level of protection sought (Confidential or Highly Confidential). If that right is invoked, the deposition transcripts shall be treated as Confidential or Highly Confidential, as appropriate, for 21 days following receipt of the transcript. After the expiration of that period, the transcript shall be treated only as specific portions are actually designated.

d. **Non-Written Materials.** Any non-text Covered Information (e.g., videotape, audio tape, computer disk, etc.) may be designated as such by labeling the outside of such material as "Confidential" or "Highly Confidential." In the event a Receiving Party generates any "hard copy" transcription or printout from any such designated non-written materials, the person who generates such "hard copy" transcription or printout shall take reasonable steps to maintain the confidentiality of such materials and properly identify and stamp each page of such material as "Confidential" or "Highly Confidential" consistent with the original designation by the Producing Party.

5.        **ADVERSE EVENT PROTECTIONS**. To protect against unauthorized disclosure of Confidential Information, and to comply with all applicable state and federal laws and regulations, the producing party will redact from produced documents, materials and other things, the following items: the names, street addresses, Social Security numbers, tax identification numbers, and other personal identifying information of patients and individuals in clinical studies or adverse event reports (unless the above-referenced information relates to named plaintiffs in

Case ID: 220302588

these Actions, except that Social Security numbers and tax identification numbers of named plaintiffs will be redacted as to any documents produced in accordance with this provision). Moreover, no disclosure of Confidential Information will be required to the extent that it is prohibited by an executed research or clinical trial consent form or applicable state and federal law and regulations. Other general identifying information, however, such as patient or health provider numbers, health provider names, and adverse event reporter names, may not be redacted unless required by state or federal law. Nothing in this paragraph shall require any Party to produce personal identifying information or personal health information in a manner that does not comply with federal or state law. Further, nothing in this agreement prevents either party from moving this court to compel the production of redacted information. Pursuant to 21 C.F.R. §§ 314.430(e) & (f) and 20.63.(f), the names and other information which would identify any patients who were reported as experiencing adverse events that are not redacted shall be treated as Confidential, regardless of whether the document containing such names is designated as Confidential.

6. **DISCLOSURE OF COVERED INFORMATION.** The failure to designate Covered Information does not constitute a waiver of such claim and may be remedied by prompt supplemental written notice upon discovery of the disclosure, with the effect that such Covered Information will be subject to the protections of this Order. The Receiving Party shall exercise good faith efforts to ensure that copies made of Covered Information produced to it, and copies made by others who obtained such Covered Information directly or indirectly from the Receiving Party, include the appropriate confidentiality legend, to the same extent that the Covered Information has been marked with the appropriate confidentiality legend by the Producing Party.

7. **MATERIALS PREPARED BASED UPON COVERED INFORMATION.** Any notes, lists, memoranda, indices, compilations, or other materials prepared

Case ID: 220302588

or based on an examination of Covered Information, that quote from or paraphrase Covered Information with such specificity that the Covered Information can be identified shall be accorded the same status of confidentiality as the underlying Covered Information from which they are made, and to the extent those materials are disclosed to other Parties or Non-parties, or produced or filed in this matter, shall be designated with the appropriate confidentiality legend, and shall be subject to all of the terms of this Protective Order.

8. **NOTICE TO NON-PARTIES.** Any Party issuing a subpoena to a Non-party shall include a reference to this Protective Order with an offer to provide a copy to the Non-party upon request.

9. **GOOD-FAITH BELIEF.** For purposes of this Order, the Designating Party bears the burden of establishing the appropriate designation of all such Discovery Material. The designation of any Discovery Material as "Confidential" or "Highly Confidential" pursuant to this Order shall constitute the verification by the Designating Party and its counsel that the material constitutes "Confidential" or "Highly Confidential" as defined above.

If at any time prior to the trial of these Actions, a Designating Party realizes that previously produced Discovery Material should be designated as "Confidential" or "Highly Confidential" the Designating Party may so designate by advising all other Parties in writing and by producing replacement documents or material with the appropriate "Confidential" or "Highly Confidential" designation as described above. The designated documents or material will thereafter be treated as "Confidential" or "Highly Confidential" pursuant to this Order. Upon receipt of such designation in writing and re-production of the material with the "Confidential" or "Highly Confidential" legend, the Parties and other persons subject to this Order shall take reasonable and appropriate steps to notify any and all recipients of the

Case ID: 220302588

Discovery Material about the protected status of the newly designated "Confidential" or "Highly Confidential" Discovery Material and to retrieve the newly designated "Confidential" or "Highly Confidential" Discovery Material from any person who is not permitted by this Order to have Confidential Information.

10. **PERSONS AUTHORIZED TO RECEIVE CONFIDENTIAL MATERIAL.** Confidential Material may be disclosed only to the following "Qualified Persons":

    a. the Court, including attorneys, employees, judges, magistrates, secretaries, special masters, stenographic reporters, staff, transcribers and all other personnel necessary to assist the Court in its function, and the jury (and any appellate court or other court (and their personnel) before which the Parties appear in this Action);

    b. mediators or other individuals engaged or consulted in settlement of all or part of this Action;

    c. Court reporters, stenographers, and videographers retained to record testimony taken in this Action and those persons, if any, specifically engaged for the limited purpose of making photocopies of documents or otherwise assisting in e-discovery;

    d. counsel for the Parties other than in-house counsel, and such counsel's employees who have responsibility for the preparation and trial of the Action;

    e. in-house counsel for the Parties, and such in-house counsel's employees who have responsibility for the preparation and trial of the Action;

    f. Parties and employees or former employees of a Party to this Order but only to the extent that the specifically named individual Party's or employee's or

Case ID: 220302588

former employee's assistance or testimony is necessary to this Action;

g. litigation support services, including outside copying services, court reporters, stenographers or companies engaged in the business of supporting computerized or electronic litigation discovery or trial preparation, retained by a Party or its counsel, provided that they execute Exhibit A as described in Paragraph 12 of this Order;

h. any individual expert, consultant, investigator, or expert consulting firm retained by counsel of record in connection with this Action to the extent necessary for the individual expert, consultant, investigator, or expert consulting firm to prepare a written opinion, to prepare to testify, or to assist counsel of record in the prosecution or defense of this Action, provided, however, that: (i) the disclosure shall be made only to an individual expert, or to members, partners, employees or agents of an expert consulting firm as the expert consulting firm shall designate as the persons who will undertake the engagement on behalf of the expert consulting firm (the "Designated Expert Personnel"); (ii) the individual expert or Designated Expert Personnel use the information solely in connection with this Action; (iii) the individual and/or a representative of each expert consulting firm sign the Attestation attached on Exhibit A on behalf of any Designated Expert Personnel associated with that firm; (iv) absent notice and consent of the Designating Party or on application to and order of the Court, excluding any retention for this Action, the individual expert and each of the Designated Expert Personnel is neither a current nor former (within the past three years from the date of this Order) employee of

Case ID: 220302588

any Party or any entity which directly competes with any of the Defendants as to infant formula; and (v) the terms of Paragraph 17 of this Order are satisfied;

i.   Any person (i) who created, authored, received or reviewed such Covered Information; (ii) is or was a custodian of the Covered Information; (iii) is identified on such Covered Information; or (iv) is or was an employee of the Producing Party and is reasonably believed to have knowledge of the matters in the Covered Information (provided that any former employee agrees to be bound by the provisions of the Order by signing a copy of Exhibit A prior to being shown any Covered Information);

j.   Any employees of Defendants who are involved with the receipt, review, evaluation, and/or reporting of adverse event reports and other patient-related information to governmental and regulatory agencies to whom Defendants are legally obligated to report such information, and the governmental and regulatory agencies to whom Defendants report such information.

k.   witnesses at depositions or who are noticed for depositions to whom disclosure is in good faith reasonably necessary to conduct the Action, with the limitations that (i) witnesses shall not retain a copy of documents containing Confidential or Highly Confidential Information, except witnesses may retain a copy of all exhibits marked at their depositions in connection with review of the transcripts; (ii) pages of transcribed deposition testimony or exhibits to depositions that are designated as Confidential or Highly Confidential Information pursuant to the process set out in this Order must be separately bound by the court reporter and may not be disclosed  to anyone except as permitted under this Order; (iii)

Case ID: 220302588

witnesses noticed for depositions who are shown Confidential or Highly Confidential Information in advance of their deposition must agree to be bound by the provisions of the Order by signing a copy of Exhibit A prior to being shown Confidential or Highly Confidential Information; and (iv) witnesses at depositions must either sign a copy of Exhibit A or, if they refuse, receive an admonition that he or she will be subject to sanctions, including contempt, for violating the terms of the Protective Order.

l.  mock jurors who have agreed to be bound by the provisions of the Order by signing a copy of Exhibit A;

m.  auditors and insurers of the Parties; and

n.  any other person as may be designated by written agreement by the Producing Party or by order of the Court.

11.  **PERSONS AUTHORIZED TO RECEIVE HIGHLY CONFIDENTIAL MATERIAL.** Except as specifically provided for in this or subsequent Court orders, Highly Confidential Material, or their contents may be disclosed, summarized, described, or otherwise communicated or made available in whole or in part only to "Qualified Persons" (defined in Paragraph 10). Highly Confidential Material produced by one Defendant may not be shown to employees of any other infant formula manufacturer (other than those encompassed by Paragraph 10(e)), absent written agreement by the Producing Party or by order of the Court after *in camera* review. Highly Confidential Material that are contracts between a Defendant and one organizational customer (e.g., hospitals, but not to include retailer or consumer purchasers of Defendants' products) may not be shown to a different organizational customer of Defendants, unless the deponent is reasonably believed to have knowledge of the matter in that particular

Case ID: 220302588

Highly Confidential document, absent written agreement by the Producing Party or by order of the Court after *in camera* review. Further, the Producing Party may seek emergency relief at a deposition if a Highly Confidential Document is presented to a witness and the Producing Party believes in good faith that immediate protection is appropriate.

12. **EXECUTING THE NON-DISCLOSURE AGREEMENT.** Each person as identified in Paragraphs 11(b), (c), (g), (h), (k) and 12(a) to whom Covered Information is disclosed shall execute a non-disclosure agreement in the form annexed hereto as Exhibit A before receiving Covered Information. Copies of the executed Exhibit A shall be retained by counsel disclosing Covered Information to such person. Consistent with Paragraph 17, a non-disclosure agreement executed by a consultant shall not be available to any other Party except on a court order following a showing of exceptional circumstances.

13. **CHALLENGING CONFIDENTIALITY DESIGNATIONS.** A Party objecting in good faith to the designation of any material as Confidential or Highly Confidential shall give written notice including a brief statement of the basis for the objection to the Designating Party after receiving such material. Upon receipt of the written objection, counsel for the Designating Party shall, within ten (10) business days, provide a written response to the objecting Party explaining the basis and supporting authority for the designation. The Parties shall meet and confer in good faith to attempt to resolve the dispute without resort to Court intervention. If the objecting Party and the Designating Party cannot resolve their dispute through such meet and confer discussions, within 15 business days after the Parties have reached an impasse after meet and confer efforts, the Challenging Party shall move the Court for an order modifying or removing such designation. The Designating Party shall have 14 business days to file a response. The challenging party shall have 7 days to file a reply. The Designating Party has the burden of

Case ID: 220302588

establishing that the document is entitled to protection. Any material so designated shall remain Confidential or Highly Confidential, and shall be subject to all restrictions on its disclosure and use set forth in this Order until one of the following occurs: (1) the Designating Party withdraws such designation in writing; or (2) the Court rules that the challenged material should be re-designated. In either event, the Designating Party shall reproduce copies of the re-designated material with the appropriate confidentiality designations at the Designating Party's expense within ten business days.

14.     **SUBPOENA FOR COVERED INFORMATION.** If any Party has obtained Covered Information under the terms of this Order and receives a request to produce such Covered Information by subpoena or other compulsory process commanding the production of such Covered Information, such Party shall promptly notify the Designating Party, including in such notice the date set for the production of such subpoenaed information. Prior to the response date, the Designating Party shall provide written notice of any intent to seek a protective order. Upon receipt of such notice, the Party or person receiving the subpoena shall inform the person seeking the protected discovery material that such information is subject to the foregoing Order. No production or other disclosure of such information pursuant to the subpoena or other process shall occur until the deadline for the Designating Party to respond to written notice of the subpoena.

If the Designating Party informs the Party served with the subpoena that it has filed a motion seeking a protective order from the court where the subpoena or order issued, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" before a determination by that court, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its confidential material—and nothing

Case ID: 220302588

in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.

15.     **USE OF DISCOVERY MATERIAL.**  Covered Information shall be used solely for purposes of prosecuting, defending or attempting to resolve this Action, including any appeal (subject to any coordination order that is entered).

16.     **REDACTIONS ALLOWED.**

   a. Any Producing Party may redact from documents (i) matter that the Producing Party claims is privileged information; or (ii) any Protected Data. The Producing Party shall mark each redaction with a legend stating "REDACTED," and specify the basis for the redaction as appropriate, consistent with the privilege logging provisions of the stipulated order regarding the disclosure of privileged information. Where a document consists of more than one page, at least each page on which information has been redacted shall be so marked. If counsel for the Producing Party agrees or if the Court orders that documents initially redacted shall not be subject to redaction or shall receive alternative treatment, and the documents are subsequently produced in unredacted form, then those unredacted documents shall continue to receive the protections and treatment afforded to documents bearing the confidentiality designation assigned to it by the Producing Party.

   b. In addition to the foregoing, the following shall apply to redactions of Protected Data:

      i. Any Party may redact Protected Data that it claims, in good faith, requires protections under the terms of this Order. Protected Data,

Case ID: 220302588

however, shall not be redacted from documents to the extent it directly relates to or identifies an individual named as a Party in connection with the subject matter of this Action. Protected Data of an individual named as a Party shall otherwise receive the same protections and treatment afforded to other Protected Data under this Protective Order.

    ii.  Protected Data shall be redacted from any public filing not filed under seal.

c.  The right to challenge and process for challenging the designation of redactions shall be the same as the right to challenge and process for challenging the designation of Covered Information as set forth in Paragraph 13.

d.  Nothing herein precludes any Party from seeking the other Parties' consent or an order allowing the Party to redact nonresponsive matter from otherwise responsive documents on a case-by-case basis.

17.    **PRIVILEGED MATERIALS.** With respect to documents designated as privileged and included in a privilege log in another jurisdiction, those documents need not be added to a separate or additional privilege log in this Action. For those documents that have not previously been logged as privileged, any party intending to assert a privilege over such documents shall generate a privilege log compliant with the Pennsylvania Rules of Civil Procedure.

18.    **EXPERT MATERIALS.** As to Plaintiffs and Defendants, a testifying expert's work product and communications between a Party's attorney and testifying expert, including

Case ID: 220302588

drafts of any reports or disclosures, are protected from discovery except to the extent that the communication (i) relates to compensation for the expert's study or testimony; (ii) identifies facts or data that the Party's attorney provided and that the expert considered in forming the opinions to be expressed; or (iii) identifies assumptions that the Party's attorney provided and that the expert relied on in forming the opinions to be expressed. This paragraph, however, shall not be construed to relieve either Party of the obligation to respond to Pennsylvania Rule of Civil Procedure 4005 interrogatories. It will also not be construed to relieve the expert from producing any data analyses, formulas, or other information relied upon, considered, or generated by the testifying expert in forming his or her opinions. The identity, opinions, and work product of a consultant are discoverable only to the extent specified in under Pennsylvania law.

19. **EXCLUSION OF INDIVIDUALS FROM DEPOSITIONS.** Counsel shall have the right to exclude any person who is not authorized by this Order to receive documents or information designated as Covered Information from any deposition where testimony regarding Covered Information or the use of Covered Information is likely to arise.

20. **SECURITY OF COVERED INFORMATION.** Any person in possession of another Party's Covered Information shall exercise the same care with regard to the storage, custody, or use of Covered Information as they would apply to their own material of the same or comparable sensitivity. Receiving Parties must take reasonable precautions to protect Covered Information from loss, misuse and unauthorized access, disclosure, alteration and destruction, including but not limited to:

      a. Covered Information in electronic format shall be maintained in a secure litigation support site(s) that applies standard industry practices regarding data

Case ID: 220302588

security, including but not limited to application of access control rights to those persons entitled to access Covered Information under this Order;

b.  To whatever extent the software tracks user access, an audit trail of use and access to litigation support site(s), to the extent the litigation support software tracks user access, shall be maintained while this Action, including any appeals, is pending;

c.  Any Covered Information downloaded from the litigation support site(s) in electronic format shall be stored only on device(s) (e.g. laptop, tablet, smartphone, thumb drive, portable hard drive) that are password protected and/or encrypted with access limited to persons entitled to access Covered Information under this Order. If the user is unable to password protect and/or encrypt the device, then the Covered Information shall be password protected and/or encrypted at the file level.

d.  Covered Information in paper format is to be maintained in a secure location with access limited to persons entitled to access Covered Information under this Order; and

e.  Summaries of Covered Information, including any lists, memorandum, indices or compilations prepared or based on an examination of Covered Information, that quote from or paraphrase Covered Information in a manner that enables it to be identified shall be accorded the same status of confidentiality as the underlying Covered Information.

f.  If the recipient of Covered Information is shipping data in electronic format, the recipient shall encrypt the data prior to shipping and provide the encryption

Case ID: 220302588

key in separate correspondence. If hard copy documents are shipped, the Receiving Party will ship the documents using secure packaging tape via Federal Express or UPS and retain a tracking number for the materials. If the Receiving Party learns at any time that the Covered Information has been retrieved or viewed by unauthorized parties during shipment, it will immediately notify the Producing Party and take all reasonable measures to retrieve the improperly disclosed materials.

g.  If the Receiving Party discovers a breach of security[1] relating to the Covered Information of a Producing Party, the Receiving Party shall: (1) provide written notice to the Producing Party of the breach within 48 hours of the Receiving Party's discovery of the breach; (2) investigate the effects of the breach, undertake reasonable, industry-standard actions to remediate the effects of the breach, and provide the Producing Party with assurance reasonably satisfactory to the Receiving Party that the breach shall not recur; and (3) provide sufficient information about the breach that the Producing Party can ascertain the size and scope of the breach. The Receiving Party agrees to cooperate with the Producing Party or law enforcement in investigating any such security incident.

21.     **USE IN FILINGS AND COURT PROCEEDINGS.** Any Party seeking to file or attach to a filing or introduce at a court proceeding any documents designated as "Confidential" or "Highly Confidential" shall comply with the Court's procedures for filing under seal.

---

[1] Breach is defined to include, but is not limited to, the confirmed or suspected: (i) disclosure or use of Covered Information by or to an unauthorized person; and/or (ii) the loss, theft or hacking of a device containing Covered Information.

Case ID: 220302588

22.      **IMPROPER DISCLOSURE OF COVERED INFORMATION.**  Disclosure of Covered Information other than in accordance with the terms of this Order may subject a Party to such sanctions and remedies as the Court may deem appropriate.

23.      **FINAL TERMINATION.**  Upon termination of the Action, including, for example, a voluntary dismissal or an exhaustion of any and all appeals, counsel for each Party shall, upon request of the Producing Party, return all Covered Information, including any copies, excerpts and summaries thereof, or shall destroy the same at the option of the Receiving Party and provide written confirmation of destruction, and shall purge all such information from all machine-readable media on which the Covered Information resides.  Notwithstanding the foregoing, counsel for each Party and the in-house counsel of each Defendant designated under Paragraph 10(e) may retain all pleadings, briefs, memoranda, exhibits to any pleading, discovery responses, deposition transcripts, deposition exhibits, expert reports, motions, trial exhibits, and other documents filed with the Court that refer to or incorporate Covered Information, and will continue to be bound by this Order with respect to all such retained information.  Further, attorney work- product materials that contain Covered Information need not be destroyed, but, if they are not destroyed, the person in possession of the attorney work-product will continue to be bound by this Order with respect to all such retained information.

24.      **PROTECTIVE ORDER REMAINS IN FORCE.**  This Protective Order shall remain in force and effect until modified, superseded, or terminated by consent of the Parties or by order of the Court made upon reasonable written notice.  Unless otherwise ordered or agreed upon by the Parties, this Protective Order shall survive the termination of this Action.  The Court retains jurisdiction even after termination of this Action to enforce this Protective Order and to make such amendments, modifications, deletions and additions to this Protective Order as the

Case ID: 220302588

Court may from time to time deem appropriate.

25. **MODIFYING THIS ORDER.** Nothing in this Protective Order shall be construed to prohibit the Parties from agreeing to modify any provision of this Order or seeking relief from the Court. Nor shall anything in this Order or any Party's compliance herewith be construed as a waiver of any Party's rights under applicable law.

**APPROVED BY:**

<u>**PLAINTIFFS:**</u>

> By: <u>*/s/ Timothy A. Burke*</u>
> **KLINE & SPECTER**
> Thomas Kline
> Tobi Millrood
> Elizabeth Crawford
> Timothy Burke
>
> **KELLER POSTMAN**
> Ben Whiting *(Pro Hac Vice)*
> Mark Weinstein

<u>**DEFENDANTS:**</u>

**Abbott Laboratories**

> By: <u>*/s/ Sean P. Fahey*</u>
> **TROUTMAN PEPPER HAMILTON SANDERS LLP**
> Sean P. Fahey
> Ronni E. Fuchs
>
> **CAMPBELL CONROY & O'NEIL, P.C.**
> Joseph E. O'Neil
> Ryan O'Neil
>
> **JONES DAY**
> Marques Hillman Richeson *(Pro Hac Vice)*
> Jennifer B. Flannery

Case ID: 220302588

**Mead Johnson & Company, LLC and Mead Johnson Nutrition Company**

By: */s/ Kenneth A. Murphy*
**TUCKER LAW GROUP, LLC**
Kenneth A. Murphy
Heather R. Olson

**WELSH & RECKER, P.C.**
Catherine M. Recker
Amy B. Carver
Richard D. Walk, III

**The Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a Pennsylvania Hospital and The Trustees of the University of Pennsylvania d/b/a Penn Medicine**

By: */s/ Richard S. Margulies*
**BURNS WHITE LLC**
Richard S. Margulies
James A. Young
Susan R. Engle

By: */s/ Gabor Ovari*
**MARSHALL DENNEHEY WARNER COLEMAN GOGGIN**
Gabor Ovari
Kathleen Karmer

**Temple University Health System, Inc. d/b/a/ Temple University Hospital**

By: */s/ Richard S. Margulies*
**BURNS WHITE LLC**
Richard S. Margulies
James A. Young
Susan R. Engle

**Albert Einstein Medical Center a/k/a Einstein Medical Center and Albert Einstein Healthcare Network d/b/a Einstein Healthcare Network**

Case ID: 220302588

By: */s/ Brooke Scicchitano*
**ECKERT SEAMANS CHERIN &
MELLOT**
Donald J. Brooks, Jr.
Brooke Scicchitano

**Thomas Jefferson University Hospitals, Inc.,
d/b/a Thomas Jefferson University Hospital
and Thomas Jefferson University d/b/a
Jefferson Health System**

By: */s/ Brooke Scicchitano*
**ECKERT SEAMANS CHERIN &
MELLOT**
Donald J. Brooks, Jr.
Brooke Scicchitano

**IT IS SO ORDERED:**

**DATED:**  _____

J.

Case ID: 220302588

**EXHIBIT A**

**ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND**

I, _____ [*print or type full name*], of

_____ [*print or type full address*],

have read and understand the Stipulated Protective Order that was issued by the Philadelphia Court

of Common Pleas on _____ [*insert date*] in the Action, as

defined in Paragraph 2(a) of the Protective Order.

I agree to comply with and to be bound by all the terms of this Stipulated Protective Order.

In compliance with this Order, I will not disclose in any manner any information or item that is

subject to this Stipulated Protective Order to any person or entity except in strict compliance with

the provisions of this Order.

I further agree to submit to the jurisdiction of the Philadelphia Court of Common Pleas for the

purpose of enforcing the terms of this Stipulated Protective Order, even if such enforcement

proceedings occur after termination of this action.

I declare under penalty of perjury under the laws of the Commonwealth of Pennsylvania

that the foregoing is true and correct. Signed this _____ day of _____

20_____, at _____ [*insert city and

state where sworn and signed*].


Signature:_____

# EXHIBIT A-65

**TUCKER LAW GROUP, LLC**
Kenneth A. Murphy, Esquire
Heather R. Olson, Esquire
Ten Penn Center
1801 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 875-0609
kmurphy@tlgattorneys.com

**ATTORNEYS FOR MEAD JOHNSON &
COMPANY, LLC AND MEAD
JOHNSON NUTRITION COMPANY**

*Filed and Attested by the
Office of Judicial Records
09 MAR 2022 10:18 am
B. MERCEDES*

| | |
|---|---|
| HOLLI CARTER, on her own behalf and as Parent and Natural Guardian of J.C., a Minor | : COURT OF COMMON PLEAS<br>: PHILADELPHIA COUNTY<br>:<br>: MARCH TERM, 2022 |
| Plaintiffs, | : No. 2588 |
| v. | : |
| MEAD JOHNSON & COMPANY, LLC, et al., | : |
| Defendants. | : |

## WITHDRAWAL OF APPEARANCE

**TO THE PROTHONOTARY:**

Kindly withdraw the appearance of Heather R. Olson, Esquire as counsel for

Defendants, Mead Johnson & Company, LLC and Mead Johnson Nutrition Company in

the above-referenced matter.

Respectfully submitted,

**TUCKER LAW GROUP, LLC**

Dated: February 13, 2024

/s/ Heather R. Olson
Heather R. Olson, Esquire
*Counsel for Defendants, Mead Johnson &
Company, LLC and Mead Johnson Nutrition
Company*

Case ID: 220302588

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania, Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Dated: February 13, 2024          /s/ Heather R. Olson_____
                                  Heather R. Olson, Esquire

## <u>CERTIFICATE OF SERVICE</u>

I, Heather R. Olson, Esquire, hereby certify that I caused to be served a true and correct copy of the foregoing document to all counsel of record via the Court's electronic filing system.

/s/ Heather R. Olson
Heather R. Olson, Esquire

Dated: February 13, 2024

# EXHIBIT A-66

Holli Carter, on her own behalf and as Parent and Natural Guardian of J.C., a minor

        Plaintiff

v.

MEAD JOHNSON & COMPANY, LLC, et al.

        Defendants.

COURT OF COMMON PLEAS
PHILADELPHIA

CIVIL DIVISION

MARCH TERM, 2022
NO. 2588

*Filed and Attested by the Office of Judicial Records 20 MAR 2023 01:29 pm E. GILLIAM*

## ORDER

**AND NOW**, this 20th day of March 2023, upon consideration of the Preliminary Objections of Defendants The Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a Pennsylvania Hospital and The Trustees of the University of Pennsylvania d/b/a Penn Medicine to Plaintiffs' Amended Complaint, and any Response thereto, it is hereby **ORDERED** that the Preliminary Objections are **SUSTAINED**. It is further **ORDERED** that ~~all claims~~ Plaintiff shall file an Amended Complaint against Defendants the Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a Pennsylvania Hospital and The Trustees of the University of Pennsylvania d/b/a Penn Medicine ~~are hereby~~ ~~DISMISSED~~ ~~with prejudice.~~ Setting forth the claims and damages of this professional negligence action with specificity.

BY THE COURT:

                             J.

220302588-Carter Etal Vs Mead Johnson



22030258800141

Case ID: 220302588
Control No.: 23096253

# EXHIBIT A-67

*Carter v. Mead Johnson*

*CASE ID 220302588*

## **ORDER OF THE COURT**

On this 22 day of ___March___ , 2024, upon consideration of defendant Abbott

Laboratories' preliminary objections to plaintiffs' amended complaints, its brief in support, and

any response thereto, it is hereby ORDERED that defendant Abbott Laboratories' preliminary

objections to plaintiffs' amended complaints are SUSTAINED. It is further ORDERED that

Counts I through V of plaintiffs' complaints are <u>DISMISSED as to Abbott Laboratories</u>.

*The objections will be decided*

### BY THE COURT:

_____

220302588-Carter Etal Vs Mead Johnson



22030258800142

Case ID: 220302588
Control No.: 23096752

# EXHIBIT A-68

BURNS WHITE LLC

By:    James A. Young, Esquire
       Richard S. Margulies, Esquire
       Kyle J. Generelli, Esquire
Attorney ID Nos. 00213 / 62306 / 333291
1880 John F. Kennedy Boulevard, 10th Floor
Philadelphia, PA  19103
(215) 587-1600
jayoung@burnswhite.com
rsmargulies@burnswhite.com
kjgenerelli@burnswhite.com

*Attorneys for Defendant*
The Pennsylvania Hospital of the
University of Pennsylvania Health
System d/b/a Pennsylvania Hospital and
The Trustees of the University of
Pennsylvania d/b/a Penn Medicine

---

| | |
|---|---|
| HOLLI CARTER, on her own behalf and as Parent and Natural Guardian of J.C., a minor | COURT OF COMMON PLEAS PHILADELPHIA COUNTY |
| Plaintiffs, | |
| v. | MARCH TERM 2022 |
| | NO. 2588 |
| MEAD JOHNSON & COMPANY, LLC, et al. | |
| Defendants. | |

## WITHDRAWAL OF APPEARANCE

TO THE PROTHONOTARY:

    Kindly withdraw **only** the appearance of Susan Engle, Esquire as counsel on behalf of Defendants, The Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a Pennsylvania Hospital and The Trustees of the University of Pennsylvania d/b/a Penn Medicine, in the above-referenced matter.

                        **BURNS WHITE LLC**

                  BY:    */s/ Susan R. Engle*
                        Susan R. Engle, Esquire

## ENTRY OF APPEARANCE

TO THE PROTHONOTARY:

    Kindly enter the appearance of Kyle J. Generelli, Esquire as co-counsel on behalf of Defendants, The Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a Pennsylvania Hospital and The Trustees of the University of Pennsylvania d/b/a Penn Medicine, in the above-captioned matter.

                        **BURNS WHITE LLC**

Date: April 2, 2024        BY:    */s/ Kyle J. Generelli*
                        Kyle J. Generelli, Esquire

*Filed and Attested by the
Office of Judicial Records
04 APR 2024 03:21 pm
S. RICE*

<u>**CERTIFICATE OF SERVICE**</u>

I, Kyle J. Generelli, Esquire, hereby certify that a true and correct copy of the foregoing

*Withdrawal of Appearance/Entry of Appearance* was served via the Court's electronic filing on all

counsel of record.


<u>*/s/ Kyle J. Generelli*</u>
Kyle J. Generelli, Esquire

Date: <u>April 2, 2024</u>

# EXHIBIT A-69

PHILADELPHIA COURT OF COMMON PLEAS
# PETITION/MOTION COVER SHEET

| CONTROL NUMBER: |
| 24041702 |
| **(RESPONDING PARTIES MUST INCLUDE THIS NUMBER ON ALL FILINGS)** |

### FOR COURT USE ONLY

| ASSIGNED TO JUDGE: | ANSWER/RESPONSE DATE:<br>04/25/2024 |

*Do not send Judge courtesy copy of Petition/Motion/Answer/Response.*
*Status may be obtained online at http://courts.phila.gov*

<u>March</u> Term, <u>2022</u>
    *Month*            *Year*
No. _____ 02588 _____

Name of Filing Party:
<u>MEAD JOHNSON & COMPANY LLC-DFT</u>
<u>MEAD JOHNSON NUTRITION COMPANY-DFT</u>

<u>CARTER ETAL VS MEAD JOHNSON & COMPANY,</u>
<u>LLC, ETAL</u>

**INDICATE NATURE OF DOCUMENT FILED:**
☐ Petition *(Attach Rule to Show Cause)*   ☑ Motion
☐ Answer to Petition   ☐ Response to Motion

**Has another petition/motion been decided in this case?** ☐ Yes ☐ No
**Is another petition/motion pending?** ☐ Yes ☐ No
*If the answer to either question is yes, you must identify the judge(s):*

_____

| TYPE OF PETITION/MOTION (see list on reverse side)<br>MOT-FOR ADMISSION PRO HAC VICE | PETITION/MOTION CODE<br>(see list on reverse side)<br>MTPHV |

ANSWER / RESPONSE FILED TO (Please insert the title of the corresponding petition/motion to which you are responding):

---

**I. CASE PROGRAM**

DAY FORWARD/MAJOR JURY PROGRAM

Name of Judicial Team Leader: <u>JUDGE LINDA</u>
<u>CARPENTER</u>
Applicable Petition/Motion Deadline: <u>N/A</u>
Has deadline been previously extended by the Court: <u>N/A</u>

**II. PARTIES** *(required for proof of service)*
(Name, address and **telephone number** of all counsel of record and unrepresented parties. Attach a stamped addressed envelope for each attorney of record and unrepresented party.)

JAMES A YOUNG
    BURNS WHITE LLC 1880 JOHN F. KENNEDY
    BOULEVARD 10TH FLOOR , PHILADELPHIA
    PA 19103
RICHARD S MARGULIES
    BURNS WHITE LLC 1880 JFK BLVD., 10TH
    FLR , PHILADELPHIA PA 19103
RONNI E FUCHS
    301 CARNEGIE CENTER SUITE 400 ,
    PRINCETON NJ 08540
KENNETH A MURPHY
    TUCKER LAW GROUP, LLC 1801 MARKET
    STREET SUITE 2500 , PHILADELPHIA PA
    19103-6996
MARQUES HILLMAN RICHESON
    JONES DAY 901 LAKESIDE AVENUE NORTH
    POINT , CLEVELAND OH 44114

**III. OTHER**

By filing this document and signing below, the moving party certifies that this motion, petition, answer or response along with all documents filed, will be served upon all counsel and unrepresented parties as required by rules of Court (see PA. R.C.P. 206.6, Note to 208.2(a), and 440). Furthermore, moving party verifies that the answers made herein are true and correct and understands that sanctions may be imposed for inaccurate or incomplete answers.

_____   April 5, 2024   CATHERINE M. RECKER   _____
*(Attorney Signature/Unrepresented Party)*   *(Date)*   *(Print Name)*   *(Attorney I.D. No.)*

**The Petition, Motion and Answer or Response, if any, will be forwarded to the Court after the Answer/Response Date.**
**No extension of the Answer/Response Date will be granted even if the parties so stipulate.**

30-1061B E-File# 2404015624
05-APR-24 15:40:55

MEAGHANN C PORTH
  CAMPBELL CONROY & ONEIL PC 1205
  WESTLAKES DR #330 , BERWYN PA 19312
RICHARD D WALK
  WELSH & RECKER 306 WALNUT ST. ,
  PHILADELPHIA PA 19106
BENJAMIN WHITING
  KELLER POSTMAN 150 N. RIVERSIDE PLAZA
  SUITE 1400 , CHICAGO IL 60606
EVAN GLASSMAN
  STEPTOE & JOHNSON, LLP 1114 AVENUE ON
  THE AMERICAS , NEW YORK NY 10036

**FILED**
05 APR 2024 03:16 pm
Civil Administration
J. BOYD

| | |
|---|---|
| **HOLLI CARTER, on her own behalf** **and as Parent and Natural Guardian of** **J.C., a minor** | : **COURT OF COMMON PLEAS** : **PHILADELPHIA COUNTY** : |
| Plaintiffs, | : **APRIL TERM, 2022** : **No. 02588** : |
| v. | : : |
| **MEAD JOHNSON & COMPANY, LLC,** **et al.**, | : : : |
| Defendants. | : : |

## ORDER

**AND NOW**, this _____ day of _____, 2024, upon consideration of the Motion for Admission Pro Hac Vice of T. Allon Renfro, Esquire, to Represent Defendants, Mead Johnson & Company, LLC and Mead Johnson Nutrition Company, it is hereby **ORDERED** that the Motion is **GRANTED**.  This Court hereby admits T. Allon Renfro, Esquire, pro hac vice in this case on behalf of Defendants, Mead Johnson & Company, LLC and Mead Johnson Nutrition Company.

**BY THE COURT**:

_____
J.

**WELSH & RECKER, P.C.**
Catherine M. Recker (PA Bar No. 56813)
Amy B. Carver (PA Bar No. 84819)
Richard D. Walk, III (PA Bar No. 329420)
306 Walnut St.
Philadelphia, PA 19106
Tel:    (215) 972-6430
Fax:    (985) 617-1021
cmrecker@welshrecker.com
abcarver@welshrecker.com
rwalk@welshrecker.com

**ATTORNEYS FOR DEFENDANTS MEAD JOHNSON & COMPANY, LLC AND MEAD JOHNSON NUTRITION COMPANY**

| | |
|---|---|
| **HOLLI CARTER, on her own behalf and as Parent and Natural Guardian of J.C., a minor** | **COURT OF COMMON PLEAS PHILADELPHIA COUNTY** |
| Plaintiffs, | **APRIL TERM, 2022** <br> **No. 02588** |
| v. | |
| **MEAD JOHNSON & COMPANY, LLC, et al.**, | |
| Defendants. | |

## MOTION FOR ADMISSION *PRO HAC VICE* OF T. ALLON RENFRO, ESQUIRE, TO REPRESENT MEAD JOHNSON DEFENDANTS

Defendants, Mead Johnson & Company, LLC and Mead Johnson Nutrition Company (collectively, the "Mead Johnson Defendants"), by and through their counsel, Welsh & Recker, P.C., hereby move this Court for an order pursuant to Pa. R. C. P. 1012.1(b) and (e), Rule 301 of the Pennsylvania Bar Admission Rules, and the Pennsylvania Interest on Lawyer Trust Account Regulations for pro hac vice Admission (204 Pa. Code § 81.501 et seq.) admitting T. Allon Renfro, Esquire, to the bar of this Court, *pro hac vice*, for the purpose of representing the Mead Johnson Defendants, and aver the following in support thereof:

1.      Mr. Renfro is a partner of the law firm of Swanson, Martin, & Bell, LLP and a resident in its Chicago office, located at 330 N. Wabash Avenue Suite 3300,

Chicago, IL 60611. Mr. Renfro has an attorney-client relationship with Mead Johnson & Company, LLC and Mead Johnson Nutrition Company, and has special skills, knowledge and experience relating to this case. The efficient administration, prosecution and resolution of this case will be materially advanced by the admission *pro hac vice* of Mr. Renfro. A Verification Statement from Mr. Renfro, is attached hereto as Exhibit A.

2.    Mr. Renfro is a member in good standing in the state of Indiana and has been admitted to practice since 2011. See Exhibit A.

3.    Mr. Renfro's law firm serves as national trial counsel for the Mead Johnson Defendants. He is familiar with the complex, technical issues presented in this matter, and his participation in this case will help clarify the issues before the Court. See Exhibit A.

4.    The Mead Johnson Defendants have specifically requested that Mr. Renfro be permitted to participate in this matter and represent its interests in this matter. See Exhibit A.

5.    Mr. Renfro is not presently suspended or disbarred in any Court, nor is he currently subject to any disciplinary proceedings by any organization authorized to discipline attorneys at law. Further, Mr. Renfro has never received any public discipline, including, but not limited to, suspension or disbarment by any organization with the authority to discipline attorneys at law. Exhibit A.

6.    Mr. Renfro is familiar with Pennsylvania Bar Admission Rule 301 and has agreed to abide by the Rules of Professional Conduct applicable to Pennsylvania lawyers. Mr. Renfro will abide by the Rules of Court, including all disciplinary rules and, if

Case ID: 220302588
Control No.: 24041702

this motion is granted, he will serve as associate counsel with Catherine M. Recker, Esquire, counsel of record for the Mead Johnson Defendants in this matter.

7.   Mr. Renfro has applied to the Pennsylvania Interest on Lawyers' Trust Account Board (Pennsylvania IOLTA Board) and paid the appropriate fee required under 204 Pa. Code § 81.503. to be admitted pro hac vice.  Our office received a copy of the fee payment certification letter from the IOLTA Board, a copy of which is attached as Exhibit B.

8.   Mr. Renfro will be associated with Catherine M. Recker, Esquire, of Welsh & Recker, P.C., at all stages of this action.  Ms. Recker, after reasonable investigation, believes that Mr. Renfro is a reputable and competent attorney and recommends that he be considered for admission *pro hac vice*. A true Verification Statement from Ms. Recker pursuant to Pa. R. C. P. 1012.1(d)(2) is attached hereto as Exhibit C.

9.   Catherine M. Recker, Esquire, of Welsh & Recker, P.C., is a member in good standing of the Bar of the Commonwealth of Pennsylvania. Welsh & Recker and Catherine M. Recker, Esquire will be counsel of record for the Mead Johnson Defendants and will continue to participate fully in this litigation and will sign, serve, and accept service of all papers on the Mead Johnson Defendants' behalf.

10.  All the requirements to satisfy the applicable rules of Court are met.

11.  There is no good cause for denial of this motion.

**WHEREFORE**, it is respectfully requested that this Court enter the attached Order granting T. Allon Renfro, Esquire leave to appear as counsel *pro hac vice* for Defendants, Mead Johnson & Company, LLC and Mead Johnson Nutrition Company.

Case ID: 220302588
Control No.: 24041702

Respectfully submitted,

**WELSH & RECKER, P.C.**

Date: April 5, 2024        /s/ Catherine M. Recker
                    Catherine M. Recker (PA Bar No. 56813)
                    Amy B. Carver (PA Bar No. 84819)
                    Richard D. Walk, III (PA Bar No. 329420)
                    306 Walnut St.
                    Philadelphia, PA 19106
                    Tel:   (215) 972-6430
                    Fax:   (985) 617-1021
                    cmrecker@welshrecker.com
                    abcarver@welshrecker.com
                    rwalk@welshrecker.com

Case ID: 220302588
Control No.: 24041702

### **CERTIFICATE OF SERVICE**

I, Catherine M. Recker, Esquire certify that on this date, I caused a copy of the foregoing Motion for *Pro Hac Vice* admission of T. Allon Renfro to be electronically filed through the Court's electronic filing system and that such filing generates a notice of that constitutes service on all counsel of record.

**WELSH & RECKER, P.C.**

Date: April 5, 2024                    /s/ Catherine M. Recker
                                                  Catherine M. Recker, Esquire

# EXHIBIT A

Case ID: 220302588
Control No.: 24041702

## <u>VERIFICATION OF T. ALLON RENFRO, ESQUIRE</u>

I, T. Allon Renfro, Esquire, hereby submit this Verification Statement in support of the attached Motion for Admission *pro hac vice* to represent Defendants, Mead Johnson & Company, LLC and Mead Johnson Nutrition Company (collectively, the "Mead Johnson Defendants"), in this action in the Court of Common Pleas of Philadelphia County, Pennsylvania. In support of this Motion made pursuant to pursuant to Pa. R. C. P. 1012.1(b) and (e), Rule 301 of the Pennsylvania Bar Admission Rules, and the Pennsylvania Interest on Lawyer Trust Account Regulations for pro hac vice Admission (204 Pa. Code § 81.501 et seq.), I swear and affirm that the following is true and correct based upon my personal knowledge:

1. I am a partner of the law firm Swanson, Martin & Bell, LLP and resident in its Chicago office, located at 330 N. Wabash Avenue Suite 3300, Chicago, IL 60611. Telephone: (312) 222-8525; email address: trenfro@smbtrials.com.

2. I have been licensed to practice law in the following jurisdictions with the corresponding bar license number: State of Indiana (30099-53) State of Illinois (6309991) Additionally, I have been admitted to practice in the following courts: U.S. District Court, Northern District of Indiana, U.S. District Court, Southern District of Indiana, U.S. District Court, Northern District of Illinois, U.S. District Court, Southern District of Illinois, U.S. District Court, Eastern District of Wisconsin.

3. I am a member in good standing of all Bars to which I am admitted.

4. With respect to each jurisdiction identified in Paragraph 2 above, I have never been suspended, disbarred, or otherwise disciplined by any court, nor am I the subject of any disciplinary proceedings.

5. I am involved in the following pending actions in the Philadelphia County Court of Common Pleas in which I am applying for admission *pro hac vice:*

| Case Name | Case Number |
|---|---|
| Carter, et al. v. Mead Johnson & Company, LLC, et al. | 220302588 |
| Wieger, at al. v. Mead Johnson & Company, LLC, et al. | 220302614 |
| Wieger, et al. v. Mead Johnson & Company, LLC, et al. | 220302601 |
| Taylor, et al. v. Mead Johnson & Company, LLC, et al. | 220302606 |
| Stills, et al. v. Mead Johnson & Company, LLC, et al. | 220302617 |
| Mays, at al. v. Mead Johnson & Company, LLC, et al. | 220302963 |
| Watson, et al. v. Mead Johnson & Company, LLC, et al. | 220302967 |
| Kajuffa, et al. v. Mead Johnson & Company, LLC, et al. | 220302978 |
| Ross, et al. v. Mead Johnson & Company, LLC, et al. | 220302981 |
| Parker, et al. v. Mead Johnson & Company, LLC, et al. | 220302983 |
| Wiggins, at al. v. Mead Johnson & Company, LLC, et al. | 220302986 |
| Henderson, et al. v. Mead Johnson & Company, LLC, et al. | 220400127 |
| McMillian, et al. v. Mead Johnson & Company, LLC, et al. | 220400140 |
| Williams, et al. v. Mead Johnson & Company, LLC, et al. | 220400141 |
| Moment, et al. v. Mead Johnson & Company, LLC, et al. | 220400142 |
| Sanders, at al. v. Mead Johnson & Company, LLC, et al. | 220400153 |
| Walker-Savage, et al. v. Mead Johnson & Company, LLC, et al. | 220400156 |

Case ID: 220302588
Control No.: 24041702

| Thomas, et al. v. Mead Johnson & Company, LLC, et al. | 220400158 |
| Short, et al. v. Mead Johnson & Company, LLC, et al. | 220400159 |
| Goodmond, et al. v. Mead Johnson & Company, LLC, et al. | 220400208 |
| Goodmond, at al. v. Mead Johnson & Company, LLC, et al. | 220400212 |

6. If admitted, I agree to comply with and be bound by the applicable statues, case law, and procedural rules of the Commonwealth of Pennsylvania, including the Pennsylvania Rules of Professional Conduct.

7. I do not have any pending *pro hac vice* admissions that I have applied for in any other court jurisdictions.

8. If admitted, I agree to subject myself to the jurisdiction of the Pennsylvania courts and the Pennsylvania Disciplinary Board with respect to acts or omissions occurring during my appearance in this matter for which admission *pro hac vice* is sought.

9. I respectfully submit that there is a good cause for my admission *pro hac vice* based upon my personal knowledge.

10. Further, I have consented to the appointment of Catherine M. Recker, Esquire, of Welsh & Recker, P.C., as the agent upon whom services of process shall be made for all actions, including disciplinary actions, that may arise out of the practice of law in this matter for which admission *pro hac vice* is being sought.

I declare under the penalty of perjury the foregoing is true and correct. I hereby state that the facts above are true and correct to the best of my knowledge, information,

Case ID: 220302588
Control No.: 24041702

and belief.  I understand that statements herein are made subject to the penalties of 18

Pa. CS § 4904 (relating to unsworn falsification to authorities).


Date: April 5, 2024　　　　　/s/ T. Allon Renfro_____
　　　　　　　　　　　　　　T. Allon Renfro, Esquire

4

Case ID: 220302588
Control No.: 24041702

# EXHIBIT B

Case ID: 220302588
Control No.: 24041702



SUPREME COURT OF PENNSYLVANIA
# PENNSYLVANIA INTEREST ON
# LAWYERS TRUST ACCOUNT BOARD

April 03, 2024

TIMOTHY ALLON RENFRO, Esq.
SWANSON, MARTIN & BELL, LLP
330 N. WABASH, SUITE 3300
CHICAGO, IL 60611

SENT TO TIMOTHY ALLON RENFRO VIA Email: TRENFRO@SMBTRIALS.COM

Dear Attorney RENFRO:

This letter serves as the fee payment certification referenced in 204 Pa Code §81.503 and acknowledges receipt of the $375.00 fee paid by Online Payment on this date related to your pursuit for admission *pro hac vice* in the case identified as Holli Carter v. Mead Johnson & Company, LLC, no. 220302588, filed in Court of Common Pleas of Philadelphia County.

You should refer to Pa Rule of Civil Procedure 1012.1, local court rules, and other regulations of 204 Pa Code §81.501 et. seq. concerning additional requirements related to seeking *pro hac vice* admission.

Sincerely,

Stephanie S. Libhart
Executive Director

cc: CATHERINE M. RECKER, Esq.

cmrecker@welshrecker.com

Pennsylvania Judicial Center
601 Commonwealth Ave., Ste. 2400
PO Box 62445, Harrisburg, PA 17106-2445
717/238-2001 · 888/PA-IOLTA (724-6582) · 717/238-2003 FAX
paiolta@pacourts.us · www.paiolta.org

Administering Pennsylvania's Interest On Lawyers Trust Account (IOLTA) Program

Case ID: 220302588
Control No.: 24041702

# EXHIBIT C

Case ID: 220302588
Control No.: 24041702

**WELSH AND RECKER, P.C.**
Catherine M. Recker (PA Bar No. 56813)
Amy B. Carver (PA Bar No. 84819)
Richard D. Walk, III (PA Bar No. 329420)
306 Walnut St.
Philadelphia, PA 19106
Tel:    (215) 972-6430
Fax:    (985) 617-1021
cmrecker@welshrecker.com
abcarver@welshrecker.com
rwalk@welshrecker.com

**ATTORNEYS FOR DEFENDANTS MEAD JOHNSON & COMPANY, LLC AND MEAD JOHNSON NUTRITION COMPANY**

| | |
|---|---|
| **HOLLI CARTER, on her own behalf and as Parent and Natural Guardian of J.C., a minor** | : **COURT OF COMMON PLEAS**<br>: **PHILADELPHIA COUNTY**<br>:<br>: **APRIL TERM, 2022** |
| Plaintiffs, | : **No. 02588**<br>: |
| v. | :<br>: |
| **MEAD JOHNSON & COMPANY, LLC, et al.,** | :<br>:<br>: |
| Defendants. | :<br>: |

## VERIFICATION OF CATHERINE M. RECKER, ESQUIRE

COMMONWEALTH OF PENNSYLVANIA          )
                                                                           ) ss:
COUNTY OF PHILADELPHIA                        )

I, Catherine M. Recker, hereby submit this Verification Statement in support of the attached Motion to Admit T. Allon Renfro, Esquire *pro hac vice* to represent Defendants, Mead Johnson & Company, LLC and Mead Johnson Nutrition Company (collectively, the Mead Johnson Defendants), in this matter.

1.     I am a Partner at Welsh & Recker, P.C., located at 306 Walnut St., Philadelphia, PA 19106.

2.     I have been licensed to practice law in the following jurisdictions with the corresponding bar license number: The Commonwealth of Pennsylvania

(#56813), the State of New Jersey (#044221989). Additionally, I have been admitted to practice in the following courts: U.S. District Court, Eastern District of Pennsylvania, U.S. District Court, Middle District of Pennsylvania, U.S. District Court, Western District of Pennsylvania, U.S. District Court, District of New Jersey, U.S. District Court, Southern District of New York, U.S. Court of Appeals, Third Circuit, U.S. Court of Appeals, Fourth Circuit, United States Supreme Court.

3. I am a member in good standing of the Bar of the Commonwealth of Pennsylvania and the other courts to which I am admitted.

4. I am licensed to practice law in all the jurisdictions that I have been admitted and am counsel of record representing the Mead Johnson Defendants in this matter.

5. I hereby certify and affirm that after reasonable investigation and on personal knowledge, I believe that T. Allon Renfro, is a reputable and competent attorney, and I am in a position to recommend that this candidate be admitted *pro hac vice* for practice in the Commonwealth of Pennsylvania to represent the Mead Johnson Defendants in this matter.

6. I am not currently acting as the sponsor of any other candidate for admission pro hac vice in Pennsylvania.

7. If applicable, at the conclusion of this matter, I affirm that any proceeds from the settlement of this cause of action in which Mr. Renfro is granted admission *pro hac vice* shall be received, held, distributed, and accounted

Case ID: 220302588
Control No.: 24041702

for in accordance with Rule 301 of the Pennsylvania Rules of Professional Conduct, including the IOLTA provisions thereof, if applicable.

I declare under the penalty of perjury the foregoing is true and correct. I hereby state that the facts above are true and correct to the best of my knowledge, information, and belief. I understand that statements herein are made subject to the penalties of 18 Pa. CS §4904 (relating to unsworn falsification to authorities).

**WELSH & RECKER, P.C.**

By:     /s/ Catherine M. Recker
        Catherine M. Recker, Esquire

Date: April 5, 2024

3

Case ID: 220302588
Control No.: 24041702

# EXHIBIT A-70

BURNS WHITE LLC
By:    James A. Young, Esquire
       Richard S. Margulies, Esquire
       Douglas A. Brockman, Esquire
       Kyle J. Generelli, Esquire
Attorney ID Nos. 00213/62306/67185/333291
1880 John F. Kennedy Boulevard, 10th Floor
Philadelphia, PA 19103
(215) 587-1600
jayoung@burnswhite.com; rsmargulies@burnswhite.com
dabrockman@burnswhite.com; kjgenerelli@burnswhite.com

*Attorneys for Defendants,*
*The Pennsylvania Hospital of the*
*University of Pennsylvania Health*
*System d/b/a Pennsylvania Hospital and*
*The Trustees of the University of*
*Pennsylvania d/b/a Penn Medicine*

| | |
|---|---|
| HOLLI CARTER, on her own behalf and as Parent and Natural Guardian of J.C., a minor | : COURT OF COMMON PLEAS |
| Plaintiffs, | : PHILADELPHIA COUNTY |
| | : |
| v. | : MARCH TERM 2022 |
| | : NO. 2588 |
| MEAD JOHNSON & COMPANY, LLC, et al. | : |
| Defendants. | : |

## WITHDRAWAL OF APPEARANCE

TO THE PROTHONOTARY:

Kindly withdraw **only** the appearance of Kyle J. Generelli, Esquire as counsel on behalf of

Defendants, The Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a

Pennsylvania Hospital and The Trustees of the University of Pennsylvania d/b/a Penn Medicine,

in the above-referenced matter.

                         **BURNS WHITE LLC**
                  BY:    */s/ Kyle J. Generelli*
                         Kyle J. Generelli, Esquire

## ENTRY OF APPEARANCE

TO THE PROTHONOTARY:

Kindly enter the appearance of Douglas A. Brockman, Esquire as co-counsel on behalf of

Defendants, The Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a

Pennsylvania Hospital and The Trustees of the University of Pennsylvania d/b/a Penn Medicine,

in the above-captioned matter.

|  |  |
|---|---|
|  | **BURNS WHITE LLC** |
| Date: <u>April 25, 2024</u> | BY: <u>*/s/ Douglas A. Brockman*</u> |
|  | Douglas A. Brockman, Esquire |

Case ID: 220302588

<u>**CERTIFICATE OF SERVICE**</u>

I, Kyle J. Generelli, Esquire, hereby certify that a true and correct copy of the foregoing

*Withdrawal of Appearance/Entry of Appearance* was served via the Court's electronic filing on all

counsel of record.

<u>*/s/ Kyle J. Generelli*</u>
Kyle J. Generelli, Esquire

Date: <u>April 25, 2024</u>

Case ID: 220302588

# EXHIBIT A-71

**FILED**
05 APR 2024 03:16 pm
**Civil Administration**
J. BOYD

| | |
|---|---|
| **HOLLI CARTER, on her own behalf and as Parent and Natural Guardian of J.C., a minor** : | **COURT OF COMMON PLEAS PHILADELPHIA COUNTY** |
| : | |
| : | **APRIL TERM, 2022** |
| Plaintiffs, : | **No. 02588** |
| v. : | |
| : | |
| **MEAD JOHNSON & COMPANY, LLC, et al.,** : | |
| : | **UNCONTESTED** |
| Defendants. : | |

## ORDER

**AND NOW**, this $29T$ day of $APRIL$, 2024, upon consideration of

the Motion for Admission Pro Hac Vice of T. Allon Renfro, Esquire, to Represent

Defendants, Mead Johnson & Company, LLC and Mead Johnson Nutrition Company, it

is hereby **ORDERED** that the Motion is **GRANTED**. This Court hereby admits T. Allon

Renfro, Esquire, pro hac vice in this case on behalf of Defendants, Mead Johnson &

Company, LLC and Mead Johnson Nutrition Company.

BY THE COURT:



J.

220302588-Carter Etal Vs Mead Johnson

22030258800149

Case ID: 220302588
Control No.: 24041702

# EXHIBIT A-72

Filed and Attested by the
Office of Judicial Records
15 JUN 2023 06:37 pm
A. STAMATO

HOLLI CARTER, on her own behalf
and as Parent and Natural Guardian of
J.C., a Minor

      Plaintiff,

  v.

MEAD JOHNSON & COMPANY, LLC,
et al.,

      Defendants.

:
:
:
:
:
:
:
:
:
:
:
:

PHILADELPHIA COUNTY COURT OF
COMMON PLEAS

MARCH TERM, 2022
No. 220302588

## ORDER

**AND NOW**, this 20th day of May, 2024, upon consideration of Defendants Mead Johnson

& Company, LLC and Mead Johnson Nutrition Company's Preliminary Objections to Plaintiffs'

Complaint, is hereby **ORDERED** that the Motion is **MOOT** without prejudice to Defendant to

file renewed Preliminary Objections to the Amended Complaint. Plaintiff shall have sixty (60)

days from the date of this Order to file an Amended Complaint.

BY THE COURT:

CARPENTER, J.

ORDER-Carter Etal Vs Mead Johnson

22030258800154

Case ID: 220302588
Control No.: 23063373

# EXHIBIT A-73

**KLINE & SPECTER, P.C.**
By:
    Thomas R. Klein, Esq.
    Tobias L. Millrood, Esq.
    Elizabeth A. Crawford, Esq.
    Timothy A. Burke, Esq.
    John P. O'Neill, Esq.
Attorney I.D. Nos.: 28895 / 77764 / 313702 /
320927 / 205677
125 Locust Street, 19th Floor
Philadelphia, PA 19102
Telephone: (215) 772-1000
Thomas.kline@klinespecter.com
Tobi.millrood@klinespecter.com
Elizabeth.crawford@klinespecter.com
Timothy.burke@klinespecter.com
Jack.oneill@klinespecter.com



Filed and Attested by the
Office of Judicial Records
17 AUG 2024 04:41 pm
S. GILLIAM

| | |
|---|---|
| HOLLI CARTER, on her own behalf and as Parent and Natural Guardian of J.C., a Minor,<br><br>           *Plaintiff,*<br><br>   v.<br><br>MEAD JOHNSON & COMPANY, LLC, MEAD JOHNSON NUTRITION COMPANY, ABBOTT LABORATORIES, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA d/b/a PENN MEDICINE, and THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA d/b/a PENNSYLVANIA HOSPITAL,<br><br>           *Defendants.* | **IN THE COURT OF COMMON PLEAS PHILADELPHIA COUNTY**<br><br>**CIVIL TRIAL DIVISION**<br><br>**MARCH TERM 2022**<br>**NO. 02588** |

**NOTICE TO DEFEND**

| NOTICE | ADVISO |
|---|---|
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. | Le han demandado a used en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte pueda decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted. |
| YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER. | LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE, SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL. |
| IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE. | |
| | Colegio de Abogados del Lackawanna 233 Penn Avenue, Scranton, PA 18503 (570) 961-2714 |
| Lackawanna Bar Association 233 Penn Avenue Scranton, PA 18503 (570) 961-2714 | |

Case ID: 220302588

**KLINE & SPECTER, P.C.**
By:
    Tobias L. Millrood, Esq.
    Elizabeth A. Crawford, Esq.
    Timothy A. Burke, Esq.
    John P. O'Neill, Esq.
Attorney I.D. Nos.: 77764 / 313702 / 320927 /
205677
125 Locust Street, 19th Floor
Philadelphia, PA 19102
Telephone: (215) 772-1000
Tobi.millrood@klinespecter.com
Elizabeth.crawford@klinespecter.com
Jack.oneill@klinespecter.com

| | |
|---|---|
| HOLLI CARTER, on her own behalf and as Parent and Natural Guardian of J.C., a Minor,<br><br>            *Plaintiff*,<br><br>   v.<br><br>MEAD JOHNSON & COMPANY, LLC, MEAD JOHNSON NUTRITION COMPANY, ABBOTT LABORATORIES, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA d/b/a PENN MEDICINE, and PENNSYLVANIA HOSPITAL OF THE UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM d/b/a PENNSYLVANIA HOSPITAL,<br><br>            *Defendants*. | : **IN THE COURT OF COMMON PLEAS**<br>: **PHILADELPHIA COUNTY**<br>:<br>: **CIVIL TRIAL DIVISION**<br>:<br>: **MARCH TERM 2022**<br>: **NO.  02588**<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## <u>SECOND AMENDED COMPLAINT</u>

Plaintiff brings this Second Amended Complaint and Demand for Jury Trial (the "Second

Amended Complaint") against Mead Johnson & Company, LLC, Mead Johnson Nutrition

Company, and Abbott Laboratories (collectively "the Defendant Manufacturers"), and The

Trustees of the University of Pennsylvania d/b/a Penn Medicine and Pennsylvania Hospital of the

University of Pennsylvania Health System d/b/a Pennsylvania Hospital (collectively "Penn

1

Case ID: 220302588

Medicine" or "Pennsylvania Hospital"), together "Defendants."    Plaintiff alleges the following upon personal knowledge as to Plaintiff's own acts and experiences and upon information and belief, including investigation conducted by Plaintiff's attorneys, as to all other matters.

## I.    INTRODUCTION

1.    This action arises out of the injuries suffered by a premature infant (the "Injured Infant") who was given the Defendant Manufacturers' cow's milk-based infant feeding products at Pennsylvania Hospital.  Pennsylvania Hospital, managed by Penn Medicine, acquired and supplied the Defendant Manufacturers' products to the Injured Infant and negligently failed to warn of their unreasonably dangerous properties in a reasonable manner.    This caused the Injured Infant to develop necrotizing enterocolitis ("NEC"), a life-altering and potentially deadly disease that largely affects premature babies who are given cow's milk-based feeding products.    As a result, the Injured Infant was seriously injured, resulting in long term health effects and accompanying harm to their parent ("the Plaintiff Parent").

2.    Plaintiff brings these causes of action against Defendants to recover for injuries that are the direct and proximate result of the Injured Infant's consumption of the Defendant Manufacturers' unreasonably dangerous cow's milk-based infant feeding products, which were acquired and supplied without adequate warning to the Injured Infant at Pennsylvania Hospital, owned and operated by Penn Medicine.

## II.    PARTIES

3.    Plaintiff Holli Carter is a natural adult person and a resident of New Jersey.  Ms. Carter is the parent and natural guardian of J.C., a minor.  Ms. Carter's address is 16 Carmen Drive, Cape May Court House, New Jersey 08210-2563.

4.    Defendant Mead Johnson Nutrition Company is a corporation, incorporated under the laws

Case ID: 220302588

of the State of Delaware. Its principal place of business is Illinois. Defendant Mead Johnson & Company, LLC, is a limited liability company, organized under the laws of the State of Delaware. Its citizenship is that of its sole member, Mead Johnson Nutrition Company. Defendants Mead Johnson Nutrition Company and Mead Johnson & Company, LLC, (together, "Mead") are manufacturers of cow's milk-based infant feeding products and market many of these products under the "Enfamil" brand name.

5. Defendant Abbott Laboratories ("Abbott") is a corporation, incorporated under the laws of the State of Illinois. Its principal place of business is in Illinois. Abbott is a manufacturer of cow's milk-based infant feeding products and markets many of its products under the "Similac" brand name.

6. Defendant The Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a Pennsylvania Hospital is a non-profit corporation incorporated and registered to do business under the laws of the Commonwealth of Pennsylvania. Its principal place of business is Philadelphia, Pennsylvania. Pennsylvania Hospital is a registered name of The Pennsylvania Hospital of the University of Pennsylvania Health System. The sole member of The Pennsylvania Hospital of the University of Pennsylvania Health System is The Trustees of the University of Pennsylvania.

7. Defendant The Trustees of the University of Pennsylvania d/b/a Penn Medicine is a non-profit corporation registered to do business in the Commonwealth of Pennsylvania. Its principal place of business is Philadelphia, Pennsylvania. Penn Medicine is a registered name of The Trustees of the University of Pennsylvania.

### III.     JURISDICTION AND VENUE

8. This Court has jurisdiction in this matter pursuant to 42 Pa. C.S.A. § 931. Defendants

Case ID: 220302588

conduct authorized business in the Commonwealth of Pennsylvania. They have sufficient minimum contacts with and purposefully avail themselves of the markets of this Commonwealth. This suit arises out of Defendants' forum-related activities, such that the Court of Common Pleas of Philadelphia County's exercise of jurisdiction would be consistent with traditional notions of fair play and substantial justice.

9.      Venue is proper in the Court of Common Pleas of Philadelphia County pursuant to Rules 1006(b), 1006(c)(1), and 2179(a) of the Pennsylvania Rules of Civil Procedure because Defendants are corporations or similar entities that regularly conduct business in Philadelphia County, which is also the county where Plaintiff's causes of action arose, and the county where the occurrences took place out of which Plaintiff's causes of action arose.

10.     This action is not subject to the Compulsory Arbitration Program of the Court of Common Pleas of Philadelphia County because the amount in controversy, excluding interest and costs, is in excess of $50,000.

## IV.    FACTUAL ALLEGATIONS

### *J.C.'s NEC Diagnosis*

11.     J.C. was born prematurely at Pennsylvania Hospital in Philadelphia, Pennsylvania on October 6, 2014.

12.     At birth, J.C.'s gestational age was approximately 24 weeks and he weighed 655 grams.

13.     J.C. was fed breast milk from October 11, 2014 until October 22, 2014.

14.     On October 23, 2014 the Pennsylvania Hospital NICU physicians changed J.C.'s nutritional orders to be breast milk fortified with bovine-based human milk fortifier ("HMF"), fortified to 24 cal/oz. Upon in formation and belief, J.C. was exclusively fed this fortified breast milk from October 23, 2014 to October 31, 2014.

4

Case ID: 220302588

15.     Upon information and belief, the bovine based Human Milk Fortifier that was fed to infant J.C. was "Similac Human Milk Fortifier Powder 24 cal/oz", manufactured by Defendant Abbott.

16.     Upon information and belief, J.C. was fed Similac and/or Enfamil cow's milk-based products by staff at Pennsylvania Hospital after his birth despite the fact that Pennsylvania Hospital knew or should have known that cow's milk-based products increase the risk of NEC and that human milk decreases the risk of NEC.

17.     On November 1, 2014 J.C. was diagnosed with stage I necrotizing enterocolitis ("NEC") after he developed sepsis, gaseous distention and ileus replogle. He was treated for fourteen days for Stage I Medical NEC with vancomycin and zosyn from November 1, 2014 to November 14, 2014.

18.     Upon information and belief, J.C. developed NEC after ingesting Defendant Manufacturers' products.

19.     J.C. was discharged from the Pennsylvania Hospital NICU on February 22, 2015.

20.     At discharge Plaintiff Holli Carter was instructed to continue feeding J.C. with fortified breast milk to 24 calories and was provided with Abbott's Similac Human Milk Fortifier samples by Defendant Hospital at the time of discharge for use going forward, along with instructions as to how to procure that herself going forward.

21.     J.C.'s diagnosis of NEC occurred during his course of treatment at Defendant Hospital's NICU.  J.C. suffered injuries including a diagnosis of NEC, treatment with antibiotics and blood transfusions, and suffers from developmental delay secondary to NEC.

### Cow's Milk-Based Feeding Products Are Known to Cause NEC

22.     NEC is a devastating disease that is the most frequent and lethal gastrointestinal disorder affecting preterm infants.   NEC develops when harmful bacteria breach the walls of the intestine,

Case ID: 220302588

causing portions of the intestine to become inflamed and often to die. Once NEC develops, the condition can progress rapidly from mild feeding intolerance to systemic and fatal sepsis. Up to 30 percent of NEC-diagnosed infants die from the disease.

23. Preterm and low-birth-weight infants are especially susceptible to NEC because of their underdeveloped digestive systems. Extensive scientific research, including numerous randomized controlled trials, has confirmed that cow's milk-based feeding products cause NEC in preterm and low-birth-weight infants, which in turn may lead to other medical complications, surgeries, long-term health problems, and death.

### Safer, Nutritionally Superior Alternatives to Cow's Milk-Based Products Exist

24. A range of options are available that allow preterm and low-birth-weight infants to be fed exclusively human milk-based nutrition. For example, in addition to the mother's own milk, an established network delivers pasteurized donor breast milk to hospitals nationwide. Moreover, hospitals have access to shelf-stable formula and fortifiers derived from pasteurized breast milk.

25. A diet based exclusively on breast milk and breast milk fortifiers provides all the nutrition necessary to support premature and low-birth-weight infants without the elevated risk of NEC associated with cow's milk-based products.

26. The Defendant Manufacturers' products not only pose a threat to infants' health, but also displace the human milk they could otherwise receive. This displacement only increases infants' vulnerability to NEC.

27. Human milk-based nutrition nourishes infants while creating a significantly lower risk of NEC.

28. At the time the Injured Infant was fed the Defendant Manufacturers' products, the science clearly demonstrated to Defendants that these products cause NEC and greatly increase the

6

likelihood that a baby will develop NEC, leading to severe injury and often death.

29.     Despite the scientific evidence that the Defendant Manufacturers' cow's milk-based products present a dire threat to the health and development of preterm infants, the Defendant Manufacturers have made no changes to their products or the products' packaging, guidelines, instructions, or warnings.    Instead, they have continued to sell their unreasonably dangerous products.    In addition, they incentivize hospitals that know the risks to use their products by providing them to the hospital for free or at a significant discount, in order that vulnerable infants and their families will become accustomed to using their products before discharge.  And, in fact, the Defendant Manufacturers offer contracts to hospitals—which the hospitals accept—that actually *prevent* the health care providers from offering alternative products—even safer ones— on pain of risking the hospital's advantageous formula pricing strategy.

30.     Despite the scientific evidence that the Defendant Manufacturers' cow's milk-based products present a dire threat to the health and development of preterm infants and Pennsylvania Hospital knew or should have known of that threat, staff of Pennsylvania Hospital fed  Similac and/or  Enfamil  cow's  milk-based products after her birth instead of mother's human milk and/or donor human milk.

31.     Despite the scientific evidence that the Defendant Manufacturers' cow's milk-based products present a dire threat to the health and development of preterm infants and Pennsylvania Hospital knew or should have known of that threat, staff of Pennsylvania Hospital did not properly warn Ms. Wiger of those risks and alternatives to have avoided the cow's milk-based products.

### *Ms. Carter Discovers Her Claim*

32.     Because of the Defendants' concealment and misrepresentations, described more fully herein, Ms. Carter did not know, and had no reason to know or suspect, that J.C.'s NEC could

7

have been caused by the Defendant Manufacturers' products.

*Despite Exercising Diligence, a Reasonable Investigation Did Not Reveal and Would Not Have Revealed a Factual Basis Earlier Because Defendants Hid the Cause of NEC from Ms. Carter*

33. Despite exercising reasonable diligence, Ms. Carter was unable to have made the discovery earlier via a reasonable investigation because the Defendants in this litigation concealed the wrongful cause of J.C.'s injuries.

34. Amidst the physical and emotional trauma of preterm childbirth, and having her child in the neonatal intensive care unit, shortly after learning of J.C.'s NEC diagnosis, Ms. Carter undertook an investigation into the cause of the NEC by asking the doctors the cause of her NEC.

35. The health care providers at Penn Medicine responded only that J.C. had gotten NEC because she was born premature. Penn Medicine's response did not indicate that her NEC was caused by the Defendant Manufacturers' products.

36. Not one person at Penn Medicine mentioned that the Defendant Manufacturers' formula products could have caused J.C.'s injuries. Penn Medicine's response at the time did not give Ms. Carter any reason to suspect any wrongdoing on the part of the Defendants.

37. Ms. Carter is a layperson with no medical background or training that would have given her any reason to doubt the response she received from her Penn Medicine health care providers at the time.

38. Given that Penn Medicine's health care providers were in charge of the care of her newborn infant, Ms. Carter had no reason to doubt their word.

39. Additionally, the risk of necrotizing enterocolitis was not disclosed on the labeling or packaging of *any* of the Defendant Manufacturers' products.

Case ID: 220302588

40. What is more, necrotizing enterocolitis is a disease that can occur in children who are *not* fed the Defendant Manufacturers' products, and the Defendant Manufacturers have worked to mislead parents into a false sense of security about the use of those products. Publicly disseminated materials from each Defendant Manufacturer disguise the role their products play in causing the disease—and affirmatively say, even today, that their products are safe and do not cause NEC. In fact, some publicly disseminated materials from the formula manufacturers even suggest that formula may help *reduce* the risk of this terrible and potentially fatal disease.

41. For example, Abbott's website stays that "[t]he specific cause of NEC is unknown, but it's most often seen in very low birth weight premature babies," and that "about 10% of babies who are born prematurely develop NEC." The website suggests that "new preliminary studies" suggest for the first time that "NEC prevention may . . . be possible" with the use of human milk oligosaccharides to "dramatically curb intestinal inflammation" and reduce the risk of NEC. Abbott states that these human milk oligosaccharides are found in "certain Similac formulas" although they are "not currently available in Similac's premature infant formulas."[1] Likewise, the website for Mead Johnson's products states that necrotizing enterocolitis is "one of the most common and serious intestinal disease[s] among premature babies." And it deflects responsibility from Mead Johnson's products: "Necrotizing enterocolitis happens when tissue in the small or large intestine is injured or inflamed."[2]

42. Because of the misleading information distributed by the Defendant Manufacturers, as further detailed *infra*, any research conducted by Ms. Carter immediately after J.C.'s diagnosis, or

---

[1] The Role of HMOs in Reducing NEC, https://www.nutritionnews.abbott/pregnancy-childhood/prenatal-breastfeeding/the-promising-role-of-hmos-in-reducing-risk-of-nec/ (last visited July 28, 2023).

[2] Special Feeding Concerns for Preemies, https://www.enfamil.com/articles/special-feeding-concerns-for-preemies/ (last visited July 29, 2023).

Case ID: 220302588

at any time prior to seeing an advertisement, would not have led a reasonable person to suspect that the Defendant Manufacturers' products could have caused J.C.'s injuries.

43. Ms. Carter also did not know, and had no reason to know or suspect, that Penn Medicine breached its duty of care by distributing the Defendant Manufacturers' products to her. Not only was Ms. Carter unaware that the Defendant Manufacturers' products caused J.C.'s injuries, but the Defendant Manufacturers' distribution agreements with Penn Medicine—which allowed Penn Medicine to secure sweetheart deals for otherwise expensive premature infant formula in exchange for product placement and access to the hospital staff—were also not public or knowable to Ms. Carter, nor could any reasonable investigation outside of litigation have uncovered the terms of those agreements.

### *Despite Exercising Reasonable Diligence, the Defendants' Fraudulently Concealed the Risks of NEC from Defendant Manufacturers' Products to Divert, Prevent, and Mislead Plaintiff Regarding the Cause of Her Child's NEC Diagnosis*

44. In addition to the averments above, the Defendants have acted in concert to fraudulently convey false and misleading information concerning the risk of NEC, and potentially death, caused by Defendant Manufacturers' preterm infant formula products.

45. The Defendants' actions as set forth herein constitute knowing misrepresentation, omission, suppression, and concealment of material facts, made with the intent that Plaintiff would rely upon such concealment, suppression, or omission, in connection with the use of Defendants' preterm infant products.

46. Plaintiff did not know, and could not learn, the truth concerning the uses, risks and benefits of Defendant Manufacturers' preterm infant products due to Defendants' deliberate misrepresentations and concealment, suppression and omission of material facts and important information regarding the risks of NEC, and potentially death, from the products.

Case ID: 220302588

47.     Moreover, Defendant Hospital further participated in the intentional concealment—on information and belief, it allowed the Defendant Manufacturers' sales representatives into its hospital to provide samples and free products that did not warn of their serious dangers, and to provide "education" to its NICU staff that was incomplete as to the true risks of feeding their patients the Defendant Manufacturers' products.

48.     Based upon information and belief, during the relevant time period, Pennsylvania Hospital, Penn Medicine, and the Hospital of the University of Pennsylvania stocked formula products from both Abbott and Mead.

49.     Additionally, Defendant Hospital failed to inform Ms. Carter that the Defendant Manufacturers' products caused Plaintiff's NEC, even when she directly asked the cause. As noted above, after learning of Plaintiff's NEC diagnosis, Ms. Carter was understandably concerned about the degrading health of her newborn infant. As any concerned parent would do, Ms. Carter asked Plaintiff's health care providers at Defendant Hospital why a premature infant like J.C. was suddenly diagnosed with a terrible disease like necrotizing enterocolitis; that is, she asked Defendant Hospital what caused Plaintiff's injury. But even though Defendant Hospital knew of the increased risk of NEC from formula, it did not disclose that the formula provided to J.C. could increase the risk of NEC to preterm infants, responding only that J.C. had gotten NEC solely because she was born premature. Not one person at the NICU mentioned that the Defendant Manufacturers' formula products could have been the cause of Plaintiff's injuries.

50.     Defendant Hospital was aware that the Defendant Manufacturers' products caused NEC in premature infants. Defendant Hospital was also aware that the Defendant Manufacturers did not provide warnings on their products. However, Defendant Hospital did not warn Ms. Carter of the risks of the products. Instead, and notwithstanding the sweetheart deal Defendant Hospital agreed

11

Case ID: 220302588

to in exchange for preterm infant formula at little to no cost, Defendant Hospital repeatedly informed Ms. Carter that it would do everything it could possibly do to keep her infant safe. Though this was clearly not true given the known risks of preterm formula for babies like J.C., it was enough for Ms. Carter to trust that Defendant Hospital was providing preterm formula in the best interest of her child.

51.     Defendants' affirmative acts of fraud and concealment, as averred herein, diverted, prevented, and/or mislead Plaintiff from discovering the medical cause of her child's NEC diagnosis.

### *The Defendant Manufacturers' False and Misleading Marketing Regarding Cow's Milk-Based Infant Products*

52.     Abbott and Mead have aggressively marketed their cow's milk-based products as medically endorsed and nutritionally equivalent alternatives to breast milk, including prior to the Injured Infant's birth.

53.     Abbott's and Mead's marketing approach includes targeting the parents of preterm infants while they are still in the hospital with messages that the Defendant Manufacturers' cow's milk formulas and fortifiers are necessary for the growth and development of their vulnerable children. Often these tactics implicitly discourage mothers from breastfeeding, which reduces the mother's supply of breast milk. None of the Defendant Manufacturers' marketing materials, including their promotional websites, reference the science showing how significantly their products increase the risk of NEC.

54.     For example, upon information and belief, Mead creates information booklets for parents of premature infants to help answer some of their questions and concerns about having a premature infant in the NICU that it provides to hospitals for dissemination to parents.  While Mead's booklets explain feeding options for premature infants, including formula, they do not mention

12

Case ID: 220302588

that Mead's premature formula and fortifier products increase the risk of premature infants developing necrotizing enterocolitis. Instead, the booklets advise parents that sometimes a combination of breast milk and formula may be best and that premature infants will be happy and healthy or nourished and healthy regardless of whether they are receiving breast milk or formula.

55. Similarly, upon information and belief, Abbott publishes a pediatric nutrition product guide that is available online for anyone, including parents, to access wherein Abbott advises that "human milk alone does not meet all the nutritional needs of preterm infants" and that the formulations of its products, which are based on decades of research and scientific publications, are "specially designed to meet the nutritional requirements of preterm infants and can be fed with confidence to most of the preterm infants in the NICU." Nowhere in its product guide does Abbott reference that its products increase the risk of necrotizing enterocolitis.

56. Abbott also has a consumer-facing website accessible to anyone online, including parents, that specifically discusses nutrition for premature infants, wherein Abbott tells parents of premature infants that "your baby's nutrient needs are greater than what breast milk alone can provide" and that a "human milk fortifier" may be added to breastmilk to "add[] proteins, vitamins, and minerals to help support a preemie's high nutrition needs for growth and development." Nowhere in its discussion of preterm infant fortifiers or formulas does Abbott state that its products increase the risk of necrotizing enterocolitis or that they pose more of a risk that just providing preterm infants with breast milk only. Nor does Abbott disclose that the "human milk fortifier" is actually a cow's milk based product and not a human milk-based product, which misleads consumers.

57. Upon information and belief, both Mead and Abbott also provide materials and programs to the hospitals and the physicians and medical staff who are treating premature infants about the

13

manufacturers' preterm products. Upon information and belief, these materials represent that the manufacturers' preterm products are safe and necessary for preterm infants. Mead and Abbott rely on the physicians and medical staff to not only use their products in the NICU, but to convey these messages to the parents of premature infants in their care.

58.     Undoubtedly aware of the impact of their advertising, the Defendant Manufacturers, along with other formula manufacturers, are willing to spend massive sums to disseminate their message.

59.     Recognizing the abuse and dangers of infant formula marketing, in 1981, the World Health Assembly—the decision-making body of the World Health Organization—developed the International Code of Marketing of Breast-milk Substitutes ("the Code"), which required companies to acknowledge the superiority of breast milk, the negative effect on breastfeeding of introducing partial bottle-feeding, and the difficulty of reversing the decision not to breastfeed. The Code also forbade advertising or other forms of promotion of formula to the general public, as well as providing sample products to mothers or members of their families.

60.     While Abbott and Mead acknowledge the Code on their websites and claim to support the effort to encourage mothers to breastfeed for as long as possible, this is little more than lip service. Instead, the Defendant Manufacturers' aggressive marketing exploits new parents' darkest fears— that the nutrition they are supplying to their child will not provide the best chance of survival— while wholly failing to warn that their products come with a significantly increased risk of NEC.

61.     For example, Abbott's website, on a paged titled "Infant Formula Marketing," states: "We agree with the World Health Organization that breastfeeding provides the best nutrition for babies, and we support its goal to increase breastfeeding. We also recognize that for infants who aren't breastfed—for medical reasons or otherwise—infant formula is the only appropriate, safe

14

alternative to meet babies' nutritional needs." This statement ignores the existence of donor milk, as well as human milk-based formula.

62.     Abbott markets and sells multiple products specifically targeting preterm and low-birthweight infants, including Liquid Protein Fortifier, Similac NeoSure, Similac Human Milk Fortifiers, Similac Special Care 20, Similac Special Care 24, Similac Special Care 24 High Protein, and Similac Special Care 30. In advertising these products, Abbott emphasizes the products' purported ability to assist underdeveloped babies in reaching their growth targets. For example, on the since-edited webpage regarding Similac NeoSure, Abbott noted: "Your premature baby didn't get her full 9 months in the womb, so her body is working hard to catch up. During her first full year, feed her Similac NeoSure, a nutrient-enriched formula for babies who were born prematurely, and help support her development." Yet, no mention was made of the accompanying significantly increased risk of NEC. At some point, the website was edited to remove this statement. However, upon information and belief, the statement remained on the website until at least December 2020.

63.     Abbott's website also contains product information and a downloadable guide for each of its products specifically targeting preterm and low-birth-weight infants, including Liquid Protein Fortifier, Similac NeoSure, Similac Human Milk Fortifiers, Similac Special Care 20, Similac Special Care 24, Similac Special Care 24 High Protein, and Similac Special Care 30.  None of these pages or guides contain any mention of NEC or that the products specifically increase the risk of NEC.  Indeed, a search of Abbott's website for "necrotizing enterocolitis" returns no hits. Instead, Abbott states that "enteral feeding" – which includes breast milk and donor milk – have been "associated with" things like "[s]pitting up, abdominal distension" or "other signs of intestinal dysfunction."  This statement is entirely misleading, as it improperly indicates that the

15

risk of things like "spitting up" are the same for premature infants using Abbott's products and premature infants receiving breast milk or donor milk, equates formula to non-cow's milk-based feeding options like breast milk and donor milk, fails to mention NEC, and minimizes the risk of its products.

64.    Mead markets and sells multiple products specifically targeting premature infants, including Enfamil NeuroPro EnfaCare Infant Formula, Enfamil Premature Infant Formula 24 Cal High Protein, Enfamil Premature Infant Formula 30 Cal with Iron, Enfamil Premature Infant Formula 24 Cal with Iron, Enfamil Premature Infant Formula 20 Cal with Iron, Enfamil 24 Cal Infant Formula, and Enfamil Human Milk Fortifier (acidified liquid and powder). In advertising these products, Mead emphasizes the purported similarities between its formula and breast milk, while failing to include any information about the nutritional deficits and dangers that accompany formula use. For example, the since-edited webpage for Enfamil Enfacare stated: "Premature babies fed Enfamil® formulas during the first year have achieved catch-up growth similar to that of full term, breastfed infants" and noted that Enfamil formulas include "expert-recommended levels of DHA and ARA (important fatty acids found naturally in breast milk) to support brain and eye development."

65.    One Enfamil advertisement, introducing a new product line called Enfamil NeuroPro, is entirely focused on favorably comparing Enfamil's formula to breast milk, without any mention of the product's extreme risks. Indeed, the terms "human milk" and "breast milk" are used 13 times in the advertisement, including in such statements as "for decades human milk has inspired the advancements in Enfamil formulas and now through extensive global research, we are taking an even closer look at human milk" and "only Enfamil NeuroPro has a fat blend of MFGM and DHA previously found only in breast milk." The webpage for the product has made similar manipulative

Case ID: 220302588

claims, stating "Enfamil is backed by decades of breast milk research and multiple clinical studies" and it claims that "to create our best formulas, we collaborated on some of the most extensive breast milk studies to date[.]"

66.     Mead's website also contains product information for each of its products specifically targeting preterm and low-birth-weight infants, including Enfamil NeuroPro EnfaCare Infant Formula, Enfamil Premature Infant Formula 24 Cal High Protein, Enfamil Premature Infant Formula 30 Cal with Iron, Enfamil Premature Infant Formula 24 Cal with Iron, Enfamil Premature Infant Formula 20 Cal with Iron, Enfamil 24 Cal Infant Formula, and Enfamil Human Milk Fortifier (acidified liquid and powder). None of these pages contain any mention of NEC or that the products specifically increase the risk of NEC.  Indeed, a search of Mead's website for "necrotizing enterocolitis" returns no hits. Instead, Mead advertises on its website that it "has led the way in developing safe, high-quality, innovative products" – including preterm products – "to help meet the nutritional needs of infants."

67.     Formula manufacturers have long used their relationships with hospitals and the discharge process to encourage parents to substitute formula for breast milk.  They offer free or reduced-cost formula to hospitals for use with infants before discharge.  And they offer free formula, coupons, and even entire gift baskets to parents before their infants' discharge from the NICU or hospital.

68.     Here, S.P was discharged from CHOP with the recommendation to continue use of Abbott's Similac Special Care 24 formula.

69.     Through this early targeting, the Defendant Manufacturers create brand loyalty under the guise of a "medical blessing," in hopes that new parents continue to use formula after they leave the hospital, resulting in increased expense for parents, significantly increased risk for babies, and increased profit for the Defendant Manufacturers.  The Defendant Manufacturers' giveaways and

Case ID: 220302588

gift baskets send confusing signals to mothers who are simultaneously being encouraged to breastfeed by their healthcare professionals, and they have been shown to negatively impact breastfeeding rates.

70.     Further, when the Defendant Manufacturers recognized a shift in the medical community towards an exclusive breast milk-based diet for premature infants, Abbott developed a product called "Similac Human Milk Fortifier," and Mead developed "Enfamil Human Milk Fortifier." These names are misleading in that they suggest that the products are derived from breast milk, when, in fact, they are cow's milk-based products.   The packaging appears as:



71.     The Defendant Manufacturers have designed powerful misleading marketing campaigns to deceive parents into believing that: (1) cow's milk-based products are safe, including for preterm infants; (2) cow's milk-based products are equal, or even superior, substitutes to breast milk; (3) cow's milk-based products are necessary for proper growth and development of preterm infants; and (4) physicians consider the Defendant Manufacturers' cow's milk-based products to be a first choice.   This marketing scheme is employed despite all Defendants knowing of and failing to warn of the extreme risk of NEC and death that cow's milk-based products pose to preterm infants like

18

Case ID: 220302588

the Injured Infant.

72.     The Defendant Manufacturers have also designed powerful marketing campaigns to both the general public and health care providers at hospitals like Pennsylvania Hospital. The Defendant Manufacturers know that sales made to hospitals are key drivers of brand loyalty, and thus are a key opportunity to drive better downstream business—*i.e.*, retail purchases by parents after they have left the hospital. On information and belief, the Defendant Manufacturers know that the formula products used in a hospital's NICU are related to getting and keeping the overall hospital contracts. And the Defendant Manufacturers know that, just like any celebrity endorsement, when mothers of newborn infants see medical professionals using a certain brand, the mothers are more likely to continue to purchase that same brand after discharge. The Defendant Manufacturers are thus heavily motivated to ensure that NICU departments are using their products.

73.     Abbott and Mead Johnson focus their sales teams and training heavily on hospital NICU departments. They train their sales representatives how to increase the number of babies on their formula, and they emphasize the need to be the dominant formula manufacturer in the NICU so they can own that profitable ground and secure a great return on their substantial investment in NICU formula and other products.

74.     To leverage hospitals' NICUs and secure babies in the hospital and at retail, the Manufacturer Defendants pull out all the stops to convince hospitals, including Defendant Hospital, to purchase their products. For example: Abbott and Mead Johnson provide samples of their products to hospitals for free.

75.     On information and belief, to get the hospitals on board with supplying their formula for premature infants, Abbott and Mead Johnson work with hospitals to secure contracts that have

special pricing discounts if a certain level of the formula-fed babies in the hospital receive just that one manufacturer's products; similar to a restaurant being a Coke or Pepsi restaurant. And notwithstanding the increased risk of the Defendant Manufacturers' products for the hospitals' most fragile patients—the preterm infants—the decision makers at these hospitals seek out these types of contracts to better the hospitals' own bottom lines.

76.     On information and belief, Abbott and Mead Johnson also seek promises and/or assurances that the full range of health care providers at the hospitals, including the nurse practitioners and other staff who would pull the infant formula off the shelf, are grabbing the respective company's own formula products to give to the preterm infants. The goal of this tactic was to ensure that the Defendant Manufacturers and key people at the hospital would be sending a shared message that the preterm infant formula products were safe and without risk, even though that is not what the science said.

77.     On information and belief, Abbott and Mead Johnson also seek promises and/or assurances that the full range of health care providers at the hospitals, including the nurse practitioners and other staff who would pull the infant formula off the shelf, are grabbing the respective companies' own formula products to give to the preterm infants. The goal of this tactic was to ensure that the Defendant Manufacturers and key people at the hospital would be sending a shared message that the preterm infant formula products were safe and without risk, even though that is not what the science said.

78.     On information and belief, prior to J.C.'s birth, Abbott sent sales representatives to Defendant Hospital. Those sales representatives provided information about Abbott's products to Defendant Hospital's staff via conversations, presentations, and written pamphlets. This information indicated that Abbott's products were safe to give to preterm infants like J.C. Abbott

Case ID: 220302588

maintains call logs that detail which sales representatives visited the hospitals, which days they visited, and which products they discussed. These sales representatives did not disclose that Abbott's products could cause NEC in preterm infants.

79. On information and belief, prior to J.C.'s birth, Mead Johnson sent sales representatives to Defendant Hospital. Those sales representatives provided information about Mead Johnson's products to Defendant Hospital's staff via conversations, presentations, and written pamphlets. This information indicated that Mead Johnson's products were safe to give to preterm infants like J.C. Mead Johnson maintains call logs that detail which sales representatives visited the hospitals, which days they visited, and which products they discussed. These sales representatives did not disclose that Mead Johnson's products could cause NEC in preterm infants.

80. Mead Johnson and Abbott believed and intended that the misrepresentations that its sale representatives shared with Defendant Hospital would be used to make feeding decisions for preterm infants like J.C.

### *The Defendant Manufacturers' Inadequate Warnings*

81. Although Mead promotes an aggressive marketing campaign designed to convince parents that its cow's milk-based products are safe and necessary for the growth of a premature infant, the product is in fact extremely dangerous for premature infants. Enfamil products significantly increase the chances of a premature infant developing potentially fatal NEC.

82. The Enfamil products Mead markets specifically for premature infants are commercially available at retail locations and online. No prescription is necessary.

83. Despite knowing of the risk of NEC, the packaging of Mead's products does not warn of the significantly increased risk of NEC (and resulting medical conditions, and/or death) associated with Mead's products, or of the magnitude of this increased risk. Mead likewise did not provide instructions or guidance for how to avoid NEC.

21

Case ID: 220302588

84. Mead cites no medical literature or research to guide the use of its products.

85. Despite knowing of the risk of NEC, Mead did not warn of the significantly increased risk of NEC (and resulting medical conditions, and/or death) associated with its products, or of the magnitude of this increased risk. Mead likewise did not provide instructions or guidance for how to avoid NEC.

86. Mead deceived the public, parents, physicians, other medical professionals, and medical staff into believing that Enfamil products were a safe and necessary alternative, supplement and/or substitute to breast milk.

87. Mead Johnson failed to provide, and continues to fail to provide, a full accounting of the risk of NEC as documented, by underrepresenting and misrepresenting the risk to the public and the medical community.

88. Despite knowing that its products were being fed to premature infants, often without the parents' informed consent, Mead failed to require or recommend that medical professionals inform parents of the significant risk of NEC or to require that parental consent be obtained prior to the products being fed to their babies. Like Mead, Abbott promotes an aggressive marketing campaign designed to make parents believe that its products are safe and necessary for the growth of premature infants, despite the products in fact being extremely dangerous for premature infants. Abbott's products significantly increase the chances of a premature infant getting potentially fatal NEC.

89. The products Abbott markets specifically for premature infants are available at retail locations and online. No prescription is necessary.

90. Despite knowing of the risk of NEC, Abbott did not warn of the significantly increased risk of NEC (and resulting medical conditions, and/or death) associated with its products, or of the

22

Case ID: 220302588

magnitude of this increased risk. Abbott likewise did not provide instructions or guidance for how to avoid NEC.

91.     Abbott deceived the public, parents, physicians, other medical professionals, and medical staff into believing that its products were a safe and necessary alternative, supplement and/or substitute to breast milk.

92.     Despite knowing of studies documenting an increased risk of NEC from its products, Abbott did not act to make parents or the medical community aware of those risks, and instead took steps to conceal or prevent those risks from becoming public.  Despite knowing that its products were being fed to premature infants, often without the parents' informed consent, Abbott failed to require or recommend that medical professionals inform parents of the significant risk of NEC or to require that parental consent be obtained prior to the products being fed to their babies.

### Penn Medicine's Failure to Warn

93.     On information and belief, Penn Medicine, which operates Pennsylvania Hospital, was aware of the significantly increased risk of NEC and death associated with providing Abbott's and Mead's cow's milk-based products to its premature infant patients.  It knew or should have known that feeding these cow's milk-based products can cause NEC in premature infants who otherwise would not have developed this devastating condition. It also knew or should have known that human milk decreases the risk of NEC for premature infants.  However, instead of warning of the dangers, or supplying human milk-based feeding products to preterm infants like the Injured Infant, Penn Medicine has continued to source, distribute, and supply the Defendant Manufacturers' products in its hospitals without any adequate warning. Further, the Defendant Hospital created a study putting infants, such as J.C. at great risk by providing them with bovine based formula instead of exclusive human milk-based products.

Case ID: 220302588

94.     To that end, Penn Medicine has participated in studies designed to increase the use of donor milk while, at the same time, reducing formula feeding in neonates. The University of Pennsylvania School of Nursing, an affiliate of Penn Medicine, has conducted extensive research into the risks associated with feeding formula to premature infants.   It recently partnered with the National Institute of Nursing Research to publish clinical determinations based on its experience "changing hospital systems and influencing policy," and its findings were unequivocal:

> This is what we know about the science of human milk: it reduces the risk of necrotizing enterocolitis, reduces the risk of infection, [and] creates greater enteral feed tolerance and more rapid weaning from intravenous nutrition. . . .

95.     Other Penn Medicine research has similarly concluded that "[h]uman milk decreases the incidence and severity of . . . necrotizing enterocolitis (NEC)."

96.     Given it was known that human milk decreases the incidence and severity of NEC, it was also known or should have been known that cows milk-based formula increases the incidence and severity of NEC.

97.     Penn Medicine also purports to adhere to the tenets of the "Baby Friendly Hospital Initiative," which seeks to increase rates of breastfeeding initiation, exclusivity, and diet duration. The "Baby Friendly Hospital Initiative" specifically targets a reduction in the rates of NEC in preterm infants by encouraging implementation of exclusive breast milk diets among new mothers. Although Pennsylvania Hospital has maintained its "Baby Friendly" designation for years, it has not eliminated or restricted the use of formula or fortifier for preterm infants in its hospitals.

98.     Given it was known since at least the early 2000s, and as far back as the 1990s, that human milk decreases the incidence and severity of NEC, it was also known or should have been known that cows milk-based formula increases the incidence and severity of NEC.

99.     Penn Medicine also purports to adhere to the tenets of the "Baby Friendly Hospital Initiative," which seeks to increase rates of breastfeeding initiation, exclusivity, and diet duration.

24

Case ID: 220302588

The "Baby Friendly Hospital Initiative" specifically targets a reduction in the rates of NEC in preterm infants by encouraging implementation of exclusive breast milk diets among new mothers. Although Pennsylvania Hospital has maintained its "Baby Friendly" designation for years, it has not eliminated or restricted the use of formula or fortifier for preterm infants in its hospitals.

100. Finally, medical providers and staff at Penn Medicine have acknowledged the risks associated with providing the Defendant Manufacturers' cow's milk-based products to premature infant patients instead of breast milk-based nutrition. In an internal newsletter from 2012 touting donor milk programs, Penn Medicine acknowledged the benefits of a human milk-based diet, quoting a staff lactation consultant:

> Donor milk is not inexpensive. It costs about $4.25 per ounce, but the return on investment is huge. "Preemies given mother's milk get discharged three to four days sooner and also have a six to 10 times lower risk of getting a gastrointestinal complication called necrotizing enterocolitis," Carpenter said, adding that the infection can cost up to $250,000 to treat. The average cost to provide a preemie with donor milk: $125.

101. These statements demonstrate that Penn Medicine knew or should have known of the high increased risk of NEC for premature infants posed by the Defendant Manufacturers' products.

102. Although Penn Medicine knew or should have known of the serious danger of the Defendant Manufacturers' products, it has continued to purchase, supply, and distribute these products to preterm infants without providing full and adequate warnings of the attendant risks to parents, healthcare professionals, and other medical staff at its relevant facilities. As a result, the Injured Infant was fed the Defendant Manufacturers' cow's milk-based products at Pennsylvania Hospital, causing their injuries. This occurred even though hospitals across the country, including Pennsylvania Hospital, warn and obtain consent from parents before providing other safer forms of nutrition, such as donor breast milk.

Case ID: 220302588

103.  Penn Medicine's failure to warn of the risks posed by the Defendant Manufacturers' products is entrenched (and compounded) by the financial benefits it accrues from its relationships with the Defendant Manufacturers.  On information and belief, it has received the Defendant Manufacturers' cow's milk-based products for free and/or at a significant discount, and has granted their sales representatives access to its healthcare professionals and medical staff.  These sales representatives have provided deceptive information that Penn Medicine reasonably knew or should have known would ultimately reach parents through those staff.  This arrangement dovetails with the Defendant Manufacturers' own marketing strategies" and use of salespersons.

### *Safer Alternative Designs*

104.  The Defendant Manufacturers' cow's milk-based products made specifically for premature infants are unreasonably unsafe for those infants.   The Defendant Manufacturers could have used pasteurized breast milk instead of cow's milk in their products, which would have produced a safer product.

105.  Prolacta Bioscience manufactures and sells breast milk-based feeding products, specifically designed for preterm infants, which contain no cow's milk.  This alternative design provides all the necessary nutrition for growth and development that cow's milk-based products provide, without the same unreasonably dangerous and deadly effects.

106.  On information and belief, Abbott and Mead were aware of the significantly increased risk of NEC and death associated with their cow's milk-based products, and instead of warning of the dangers, or removing them altogether, Abbott and Mead have continued to use cow's milk as the foundation of their products.

Case ID: 220302588

## CAUSES OF ACTION
## COUNT I:  STRICT LIABILITY FOR DESIGN DEFECT
### (Against Abbott and Mead)

107.  Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

108.  Abbott and Mead, as the manufacturers and/or sellers of the products at issue in this litigation, owed a duty to the consuming public in general, and the Plaintiff Parent in particular, to manufacture, sell, and distribute their products in a manner that was not unreasonably dangerous.

109.  Abbott and Mead also owed a duty to the consuming public in general, and the Plaintiff Parent in particular, to manufacture, sell, and distribute their products in a manner that was merchantable and reasonably suited for their intended use.

110.  Abbott and Mead knew that their products would be used to feed premature infants like the Injured Infant and knew (or reasonably should have known) that use of their cow's milk-based products significantly increased the risk of NEC, serious injury, and death, and that such use was therefore unreasonably dangerous to premature infants, not reasonably suited for the use intended, not merchantable, and had risks that exceeded a reasonable buyer's expectations.   Nonetheless, they continued to sell and market their defective products as appropriate for premature infants.

111.  The Injured Infant ingested Abbott and/or Mead's unreasonably dangerous cow's milk-based products.  The risks of feeding those products to the Injured Infant outweighed the benefits. An ordinary consumer would not expect those products to carry a significant risk of serious injury and death from NEC.

112.  Abbott and Mead knew (or reasonably should have known) that breast milk-based nutrition did not carry the same risks of NEC, serious injury, and death that their products do.

113.  Abbott's and Mead's products contained cow's milk at the time they left the manufacturing

27

facility.

114.  Abbott and Mead did not develop a human-milk based product that was safer for premature infants and did not reformulate their products to reduce the risk of NEC, serious injury, and death, even though doing so was economically and technologically feasible and even though pasteurized breast milk was an available alternative.

115.  Abbott's and/or Mead's products were fed to the Injured Infant, which caused and/or increased the risk of their NEC and injuries.

116.  As a further direct result, the Plaintiff Parent suffered significant emotional distress, loss of income, and/or other harms.  Her life has been significantly affected by the Injured Infant's injuries.

WHEREFORE, Plaintiff demands judgment against the Defendant Manufacturers, individually, jointly and severally, as follows:

    a.    For compensatory damages in an amount to be proven at trial and in excess of $50,000 and this Court's arbitrational limit;

    b.    For damages for past, present, and future emotional distress, loss of enjoyment of life, pain and suffering, mental anguish, and other non-economic losses sustained as a result of the Defendants Manufacturers' conduct;

    c.    For past, present, and future out-of-pocket costs, lost income and/or lost revenue, and/or lost profits, and/or lost business opportunity, lost earning capacity, and costs related to medical or mental health treatment which have or may be recommended;

    d.    For punitive damages in excess of $50,000 and this Court's arbitrational

28

Case ID: 220302588

limit resulting from the Defendant Manufacturers' oppressive, fraudulent, and/or malicious conduct, as permitted by law;

e.  For interest as permitted by law;

f.  For attorney's fees, expenses, and recoverable costs incurred in connection with this action; and

g.  For such other and further relief as the Court deems proper.

## COUNT II: STRICT LIABILITY FOR FAILURE TO WARN
### (Against Abbott and Mead)

117. Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

118. Abbott and Mead, as the manufacturers and/or sellers of the infant products at issue in this litigation, owed a duty to the consuming public in general, and the Plaintiff Parent in particular, to provide adequate warnings or instructions about the dangers and risks associated with the use of their products with preterm infants, specifically including but not limited to the risk of NEC, serious injury, and death.

119. Abbott's and Mead's duty to warn is part of their general duty to design, manufacture, and sell their infant products in a manner that is reasonably safe for their foreseeable uses. By designing their products with cow's milk-based ingredients, Abbott and Mead undertook a duty to warn of the unreasonable risk of harm posed by those ingredients, specifically including the significantly increased risk of NEC, severe injury, and death. The failure to warn makes the products at issue in this litigation unreasonably dangerous.

120. Specifically, Abbott and Mead breached their duty to warn of the foreseeable risks of the infant products at issue in this litigation because they knew or should have known that their cow's milk-based premature infant products would be fed to premature infants like the Injured

29

Infant, and that their products might cause the Injured Infant to develop NEC, severe injury, or death, yet they failed to provide adequate warnings of those risks. Among other risks, the Defendant Manufacturers:

    a. Failed to warn that cow's milk-based products significantly increase the risk of NEC, severe injury, and death for the Injured Infant; and/or

    b. Failed to warn that cow's milk-based products are unsafe and/or contraindicated for premature infants like the Injured Infant; and/or

    c. Inserted warnings and instructions on their products that are severely inadequate, vague, confusing, and provide a false sense of security in that they warn and instruct specifically on certain conditions, but do not warn of the significantly increased risk of NEC and death; and/or

    d. "Black box"-type warning that their cow's milk-based products are known to significantly increase the risk of NEC and death when compared to breast milk in premature infant; and/or

    e. Failed to disclose well-researched and well-established studies that linked cow's milk-based products to NEC and death in premature infants; and/or

    f. Failed to insert a warning or instruction to healthcare professionals and other medical staff in the hospital that parents should be provided information necessary to make an informed choice about whether to allow their babies to be fed the Defendant Manufacturers' products, notwithstanding their substantial risks; and/or

    g. Failed to provide a warning in a method reasonably calculated or expected to reach the parents of newborns, like the Plaintiff Parent; and/or

    h. Failed to provide statistical evidence showing the magnitude of increased risk of

Case ID: 220302588

NEC in premature infants associated with cow's milk-based products.

121. Abbott's and Mead's products contained cow's milk at the time they left the manufacturing facility.

122. As a direct and proximate result of the inadequacy of the warnings and the pervasive marketing campaigns suggesting the safety and necessity of the Defendant Manufacturers' products, the Injured Infant were fed cow's milk-based products, which caused and/or increased risk of their developing NEC.

123. The unwarned-of risks are not of a kind that an ordinary consumer would expect. Had physicians and medical staff known of the extreme risk associated with feeding premature infants cow's milk-based formula, they would not have fed the Injured Infant those products. Had the Plaintiff Parent known of the significant risks of feeding the Injured Infant cow's milk-based formula, they would not have allowed such products to be fed to the Injured Infant.

124. As a further direct result, the Plaintiff Parent suffered significant emotional distress, loss of income, and/or other harms. Her life has been significantly affected by the Injured Infant's injuries.

WHEREFORE, Plaintiff demands judgment against the Defendant Manufacturers, individually, jointly and severally, as follows:

    a. For compensatory damages in an amount to be proven at trial and in excess of $50,000 and this Court's arbitrational limit;

    b. For damages for past, present, and future emotional distress, loss of enjoyment of life, pain and suffering, mental anguish, and other non-economic losses sustained as a result of the Defendants Manufacturers' conduct;

    c. For past, present, and future out-of-pocket costs, lost income and/or lost revenue,

Case ID: 220302588

and/or lost profits, and/or lost business opportunity, lost earning capacity, and costs related to medical or mental health treatment which have or may be recommended;

d.  For punitive damages in excess of $50,000 and this Court's arbitrational limit resulting from the Defendants Manufacturers' oppressive, fraudulent, and/or malicious conduct, as permitted by law;

e.  For interest as permitted by law;

f.  For attorney's fees, expenses, and recoverable costs incurred in connection with this action; and

g.  For such other and further relief as the Court deems proper.

### COUNT III:  NEGLIGENCE
### (Against Abbott and Mead)

125.  Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

126.  Abbott and Mead, as the manufacturers and/or sellers of the products at issue in this litigation, owed a duty to the consuming public in general, and the Plaintiff Parent in particular, to exercise reasonable care to design, test, manufacture, inspect, and distribute a product free of unreasonable risk of harm to users, when such products are used in their intended manner and for their intended purpose.

127.  At all times relevant to this action, the Injured Infant's healthcare professionals and medical staff used the products at issue in their intended manner and for their intended purpose.

128.  Abbott and Mead, directly or indirectly, negligently, and/or defectively made, created, manufactured, designed, assembled, tested, marketed, sold, and/or distributed the cow's milk-based infant products at issue in this litigation and thereby breached their duty to the general public and the Plaintiff Parent.

32

Case ID: 220302588

129. Specifically, although Abbott and Mead knew or reasonably should have known at the time of production that their cow's milk-based infant products significantly increased the risk of NEC, serious injury, and death, they failed to act in a reasonably prudent manner and breached their duty by:

a. Failing to warn that cow's milk-based products significantly increase the risk of NEC, severe injury, and death for the Injured Infant; and/or

b. Failing to warn that cow's milk-based products are unsafe and/or contraindicated for premature infants like the Injured Infant; and/or

c. Inserting warnings and instructions that are severely inadequate, vague, confusing, and provide a false sense of security in that they warn and instruct specifically on certain conditions, but do not warn of the significantly increased risk of NEC and death; and/or

d. Failing to insert a large and prominent "black box"-type warning that their cow's milk-based products are known to significantly increase the risk of NEC and death when compared to breast milk in premature infants; and/or

e. Failing to provide well-researched and well-established studies that linked cow's milk-based products to NEC and death in premature infants; and/or

f. Failing to insert a warning or instruction to healthcare professionals and other medical staff in the hospital that parents should be provided information necessary to make an informed choice about whether to allow their babies to be fed the Defendant Manufacturers' products, notwithstanding their substantial risks; and/or

g. Failing to provide a warning in a method reasonably calculated/expected to reach the parents of newborns, like the Plaintiff Parent; and/or

Case ID: 220302588

    h.  Failing to provide statistical evidence showing the magnitude of increased risk of NEC in premature infants associated with cow's milk-based products.

130.  In addition, although Abbott and Mead knew or reasonably should have known at the time of production that their cow's milk-based products significantly increased the risk of NEC, serious injury, and death, they failed to act in a reasonably prudent manner and breached their duty by failing to perform the necessary process of data collection, detection, assessment, monitoring, prevention, and reporting or disclosure of adverse outcomes in infants who ingest their products.

131.  As a direct and proximate result of the Defendant Manufacturers' failure to act in a reasonably prudent manner and their breach of duty, the Injured Infant was fed cow's milk-based products, which caused and/or increased the risk of their developing NEC.

132.  Had Abbott and Mead satisfied their duties to the consuming public in general, the Injured Infant would not have been exposed to their unreasonably dangerous cow's milk-based products.

133.  As a further direct result, the Plaintiff Parent suffered significant emotional distress, loss of income, and/or other harms. Her life has been significantly affected by the Injured Infant's injuries.

    WHEREFORE, Plaintiff demands judgment against the Defendant Manufacturers, individually, jointly and severally, as follows:

    a.  For compensatory damages in an amount to be proven at trial and in excess of $50,000 and this Court's arbitrational limit;

    b.  For damages for past, present, and future emotional distress, loss of enjoyment of life, pain and suffering, mental anguish, and other non-economic losses sustained as a result of the Defendants Manufacturers' conduct;

    c.  For past, present, and future out-of-pocket costs, lost income and/or lost revenue, and/or lost profits, and/or lost business opportunity, lost earning capacity, and costs

34

Case ID: 220302588

related to medical or mental health treatment which have or may be recommended;

d.  For punitive damages in excess of $50,000 and this Court's arbitrational limit resulting from the Defendants Manufacturers' oppressive, fraudulent, and/or malicious conduct, as permitted by law;

e.  For interest as permitted by law;

f.  For attorney's fees, expenses, and recoverable costs incurred in connection with this action; and

g.  For such other and further relief as the Court deems proper.

## COUNT IV:  INTENTIONAL MISREPRESENTATION
### (Against Abbott and Mead)

134.  Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

135.  At all times relevant to this action, the Injured Infant consumed the Defendant Manufacturers' products in their intended manner and for their intended purpose.

136.  Abbott and Mead, as the manufacturers and/or sellers of the infant products at issue in this litigation, owed a duty to the consuming public in general, and the Plaintiff Parent in particular, to provide truthful, accurate, fulsome information about the risks and benefits of using their products when used in the intended manner and for the intended purpose.

137.  Abbott and Mead breached their duty through misrepresentations made to consumers in their advertising and promotional materials, as described in previous paragraphs and incorporated herein, each of whom were foreseeable and intended recipients of this information.

138.  Specifically, upon information and belief, Abbott and Mead made the following false statements of material fact on an ongoing and repeated basis to the public, including patient consumers and parents like Plaintiff Parent and prior to the time the Injured Infant was fed their

Case ID: 220302588

products:

a. That their cow's milk-based products were safe and beneficial for premature infants when they knew or should have known that their products were unreasonably dangerous and cause NEC, serious injury, and death in premature infants; and/or

b. That their cow's milk-based products were necessary to the growth and nutrition of premature infants, when they knew or should have known that their products were not necessary to achieve adequate growth; and/or

c. That their products have no serious side effects, when they knew or should have known the contrary to be true; and/or

d. That cow's milk-based products were safe for premature infants; and/or

e. That cow's milk-based products were necessary for optimum growth; and/or

f. That cow's milk-based products were similar or equivalent to breast milk; and/or

g. That their products were safe and more like breast milk than other infant products and that they had removed the harmful ingredients of cow's milk when, in fact, the cow's milk in their products was still capable of causing NEC, serious injury, and death; and/or

h. That their products were safe for and provided better nutrition and growth to premature infants than donor milk, a non-cow's milk-based alternative to breast milk; and/or

i. That their products can fed with confidence to most of the preterm infants in the NICU and/or that premature infants would be happy and health or nourished and health on their products; and/or

j. That their products were based on up-to-date science, which made them safe for

36

Case ID: 220302588

premature infants; and/or

k. Omitting the material fact that their products significantly increased the risk of NEC in premature infants, including omitting this material fact from their publicly available product information, marketing materials, and websites.

139. Abbott and Mead had actual knowledge, or, at a minimum, a reckless indifference, to whether the aforementioned misrepresentations were false.

140. In addition to the above, Abbott and Mead, upon information and belief, also made the following false statements of material fact to Plaintiff Parent:

a. Omitting from coupons, gift bags, other promotional materials, and the packaging and labeling of their product samples provided to Plaintiff Parent that their products significantly increased the risk of NEC in premature infants; and/or

b. Omitting from the packaging and labeling of their products provided to Injured Infant that their products significantly increased the risk of NEC in premature infants; and/or

c. Representing that their cow's milk-based products were safe and beneficial for premature infants on coupons, gift bags, other promotional materials, and the packaging and labeling of their product samples provided to Plaintiff Parent when they knew or should have known that their products were unreasonably dangerous and cause NEC, serious injury, and death in premature infants; and/or

d. Representing that their cow's milk-based products were safe and beneficial for premature infants on the packaging and labeling of their products provided to Injured Infant when they knew or should have known that their products were

37

Case ID: 220302588

unreasonably dangerous and cause NEC, serious injury, and death in premature infants; and/or

e.  Representing that their cow's milk-based products were necessary to the growth and nutrition of premature infants on coupons, gift bags, other promotional materials, and the packaging and labeling of their product samples provided to Plaintiff Parent when they knew or should have known that their products were not necessary to achieve adequate growth; and/or

f.  Representing that their cow's milk-based products were necessary to the growth and nutrition of premature infants on the packaging and labeling of their products provided to Injured Infant when they knew or should have known that their products were not necessary to achieve adequate growth; and/or

g.  Representing that their cow's milk-based products were similar or equivalent to breast milk on coupons, gift bags, other promotional materials, and the packaging and labeling of their product samples provided to Plaintiff Parent; and/or

h.  Representing that their cow's milk-based products were similar or equivalent to breast milk on the packaging and labeling of their products provided to Injured Infant; and/or

i.  Representing that their cow's milk-based products could be fed with confidence to premature infants and/or that premature infants would be healthy regardless of whether they were fed their cow's milk-based products or breast milk on coupons, gift bags, other promotional materials, and the packaging and labeling of their product samples provided to Plaintiff Parent; and/or

Case ID: 220302588

j.  Representing that their cow's milk-based products could be fed with confidence to premature infants and/or that premature infants would be healthy regardless of whether they were fed their cow's milk-based products or breast milk on the packaging and labeling of their products provided to Injured Infant; and/or

k.  Representing that their cow's milk-based products have no serious side effects on coupons, gift bags, other promotional materials, and the packaging and labeling of their product samples provided to Plaintiff Parent when they knew or should have known the contrary to be true; and/or

l.  Representing that their cow's milk-based products have no serious side effects on the packaging and labeling of their products provided to Injured Infant when they knew or should have known the contrary to be true; and/or

m.  Representing that their cow's milk-based products were similar or equivalent to breast milk on coupons, gift bags, other promotional materials, and the packaging and labeling of their product samples provided to Plaintiff Parent when they knew or should have known the contrary to be true; and/or

n.  Representing that their cow's milk-based products were similar or equivalent to breast milk on the packaging and labeling of their products provided to Injured Infant when they knew or should have known the contrary to be true; and/or

o.  Representing that their cow's milk-based products were safe for premature infants on coupons, gift bags, other promotional materials, and the packaging and labeling of their product samples provided to Plaintiff Parent; and/or

p.  Representing that their cow's milk-based products were safe for premature infants on the packaging and labeling of their products provided to Injured Infant; and/or

39

q. Representing that their cow's milk-based products were necessary for optimum growth on coupons, gift bags, other promotional materials, and the packaging and labeling of their product samples provided to Plaintiff Parent; and/or

r. Representing that their cow's milk-based products were necessary for optimum growth on the packaging and labeling of their products provided to Injured Infant; and/or

s. Representing that their products were based on up-to-date science, which made them safe for premature infants on coupons, gift bags, other promotional materials, and the packaging and labeling of their product samples provided to Plaintiff Parent; and/or

t. Representing that their products were based on up-to-date science, which made them safe for premature infants on the packaging and labeling of their products provided to Injured Infant.

141. The Plaintiff Parent was not aware that these misrepresentations were false and justifiably relied on them. The Defendant Manufacturers' misrepresentations induced the Plaintiff Parent to allow their children to be fed Abbott's and Mead's infant products, in reliance on all the messaging they received about formula feeding, including, directly or indirectly, the Defendant Manufacturers' messaging. Had Abbott and Mead not committed these intentional misrepresentations, the Injured Infant would not have been exposed to the Defendant Manufacturers' unreasonably dangerous cow's milk-based products.

142. As a direct and proximate result, Abbott's and Mead's products were fed to the Injured Infant, which caused and/or increased risk of their developing NEC and subsequent injuries.

143. As a further direct result, the Plaintiff Parent suffered significant emotional distress, loss

40

Case ID: 220302588

of income, and/or other harms. Her life has been significantly affected by the Injured Infant's injuries.

WHEREFORE, Plaintiff demands judgment against the Defendant Manufacturers, individually, jointly and severally, as follows:

a. For compensatory damages in an amount to be proven at trial and in excess of $50,000 and this Court's arbitrational limit;

b. For damages for past, present, and future emotional distress, loss of enjoyment of life, pain and suffering, mental anguish, and other non-economic losses sustained as a result of the Defendants Manufacturers' conduct;

c. For past, present, and future out-of-pocket costs, lost income and/or lost revenue, and/or lost profits, and/or lost business opportunity, lost earning capacity, and costs related to medical or mental health treatment which have or may be recommended;

d. For punitive damages in excess of $50,000 and this Court's arbitrational limit resulting from the Defendant Manufacturers' oppressive, fraudulent, and/or malicious conduct, as permitted by law;

e. For interest as permitted by law;

f. For attorney's fees, expenses, and recoverable costs incurred in connection with this action; and

g. For such other and further relief as the Court deems proper.

### COUNT V: NEGLIGENT MISREPRESENTATIONS
### (Against Abbott and Mead)

144. Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

145. At all times relevant to this action, the Injured Infant consumed the products at issue in

41

their intended manner and for their intended purpose.

146. Abbott and Mead, as the manufacturers and/or sellers of the products at issue in this litigation, owed a duty to the consuming public in general, and the Plaintiff Parent in particular, to provide truthful, accurate, and complete information about the risks and benefits of using their products when used in the intended manner and for the intended purpose.

147. In the course of their business, Abbott and Mead breached their duty through misrepresentations made to consumers, in their advertising and promotional materials, as described in previous paragraphs and incorporated herein, each of whom were foreseeable recipients of this information.

148. Specifically, upon information and belief, Abbott and Mead made the following false statements of material fact on an ongoing and repeated basis to the public, including consumers, and parents like Plaintiff Parent and prior to the time the Injured Infant was fed their products:

    a. That their cow's milk-based products were safe and beneficial for premature infants when they knew or should have known that their products were unreasonably dangerous and cause NEC, serious injury, and death in premature infants; and/or

    b. That their cow's milk-based products were necessary to the growth and nutrition of premature infants, when they knew or should have known that their products were not necessary to achieve adequate growth; and/or

    c. That their products have no serious side effects, when they knew or should have known the contrary to be true; and/or

    d. That cow's milk-based products were safe for premature infants; and/or

    e. That cow's milk-based products were necessary for optimum growth; and/or

    f. That cow's milk-based products were similar or equivalent to breast milk; and/or

42

Case ID: 220302588

g. That their products were safe and more like breast milk than other infant products and that they had removed the harmful ingredients of cow's milk when, in fact, the cow's milk in their products was still capable of causing NEC, serious injury, and death; and/or

h. That their products were safe for and provided better nutrition and growth to premature infants that donor milk, a non-cow's milk-based alternative to breast milk; and/or

i. Thet their products can be fed with confidence to most of the preterm infants in the NICU and/or that premature infants would be happy and healthy or nourished and health on their products; and/or

j. That their products were based on up-to-date science, which made them safe for premature infants; and/or

k. Omitting the material fact that their products significantly increased the risk of NEC in premature infants, including omitting this material fact from their publicly available product information, marketing materials, and websites.

149. In addition to the above, Abbott and Mead, upon information and belief, also made the following false statements of material fact to Plaintiff Parent.

a. Omitting from coupons, gift bags, other promotional materials, and the packaging and labeling of their product samples provided to Plaintiff Parent that their products significantly increased the risk of NEC in premature infants; and/or

b. Omitting from the packaging and labeling of their products provided to Injured Infant that their products significantly increased the risk of NEC in premature infants; and/or

43

Case ID: 220302588

c.  Representing that their cow's milk-based products were safe and beneficial for premature infants on coupons, gift bags, other promotional materials, and the packaging and labeling of their product samples provided to Plaintiff Parent when they knew or should have known that their products were unreasonably dangerous and cause NEC, serious injury, and death in premature infants; and/or

d.  Representing that their cow's milk-based products were safe and beneficial for premature infants on the packaging and labeling of their products provided to Injured Infant when they knew or should have known that their products were unreasonably dangerous and cause NEC, serious injury, and death in premature infants; and/or

e.  Representing that their cow's milk-based products were necessary to the growth and nutrition of premature infants on coupons, gift bags, other promotional materials, and the packaging and labeling of their product samples provided to Plaintiff Parent when they knew or should have known that their products were not necessary to achieve adequate growth; and/or

f.  Representing that their cow's milk-based products were necessary to the growth and nutrition of premature infants on the packaging and labeling of their products provided to Injured Infant when they knew or should have known that their products were not necessary to achieve adequate growth; and/or

g.  Representing that their cow's milk-based products were similar or equivalent to breast milk on coupons, gift bags, other promotional materials, and the packaging and labeling of their product samples provided to Plaintiff Parent; and/or

44

h.  Representing that their cow's milk-based products were similar or equivalent to breast milk on the packaging and labeling of their products provided to Injured Infant; and/or

i.  Representing that their cow's milk-based products could be fed with confidence to premature infants and/or that premature infants would be healthy regardless of whether they were fed their cow's milk-based products or breast milk on coupons, gift bags, other promotional materials, and the packaging and labeling of their product samples provided to Plaintiff Parent; and/or

j.  Representing that their cow's milk-based products could be fed with confidence to premature infants and/or that premature infants would be healthy regardless of whether they were fed their cow's milk-based products or breast milk on the packaging and labeling of their products provided to Injured Infant; and/or

k.  Representing that their cow's milk-based products have no serious side effects on coupons, gift bags, other promotional materials, and the packaging and labeling of their product samples provided to Plaintiff Parent when they knew or should have known the contrary to be true; and/or

l.  Representing that their cow's milk-based products have no serious side effects on the packaging and labeling of their products provided to Injured Infant when they knew or should have known the contrary to be true; and/or

m.  Representing that their cow's milk-based products were similar or equivalent to breast milk on coupons, gift bags, other promotional materials, and the packaging and labeling of their product samples provided to Plaintiff Parent when they knew or should have known the contrary to be true; and/or

Case ID: 220302588

n.  Representing that their cow's milk-based products were similar or equivalent to breast milk on the packaging and labeling of their products provided to Injured Infant when they knew or should have known the contrary to be true; and/or

o.  Representing that their cow's milk-based products were safe for premature infants on coupons, gift bags, other promotional materials, and the packaging and labeling of their product samples provided to Plaintiff Parent; and/or

p.  Representing that their cow's milk-based products were safe for premature infants on the packaging and labeling of their products provided to Injured Infant; and/or

q.  Representing that their cow's milk-based products were necessary for optimum growth on coupons, gift bags, other promotional materials, and the packaging and labeling of their product samples provided to Plaintiff Parent; and/or

r.  Representing that their cow's milk-based products were necessary for optimum growth on the packaging and labeling of their products provided to Injured Infant; and/or

s.  Representing that their products were based on up-to-date science, which made them safe for premature infants on coupons, gift bags, other promotional materials, and the packaging and labeling of their product samples provided to Plaintiff Parent; and/or

t.  Representing that their products were based on up-to-date science, which made them safe for premature infants on the packaging and labeling of their products provided to Injured Infant.

150.  Abbott and Mead were negligent or careless in not determining those representations to be false.

46

151.   The Defendant Manufacturers' misrepresentations induced, and were intended to induce, the Plaintiff Parent to allow their child to be fed Abbott's and Mead's infant products, in justifiable reliance on all the messaging they received about formula feeding, including, directly or indirectly, the Defendant Manufacturers' messaging.   Had Abbott and Mead not committed these negligent misrepresentations, the Injured Infant would not have been exposed to their unreasonably dangerous cow's milk-based products.

152.   As a direct and proximate result, Abbott's and Mead's products were fed to the Injured Infant, which caused and/or increased of their developing NEC and subsequent injuries.

153.   As a further direct result, the Plaintiff Parent suffered significant emotional distress, loss of income, and/or other harms.   Her life has been significantly affected by the Injured Infant's injuries.

WHEREFORE, Plaintiff demands judgment against the Defendant Manufacturers, individually, jointly and severally, as follows:

a.   For compensatory damages in an amount to be proven at trial and in excess of $50,000 and this Court's arbitrational limit;

b.   For damages for past, present, and future emotional distress, loss of enjoyment of life, pain and suffering, mental anguish, and other non-economic losses sustained as a result of the Defendants Manufacturers' conduct;

c.   For past, present, and future out-of-pocket costs, lost income and/or lost revenue, and/or lost profits, and/or lost business opportunity, lost earning capacity, and costs related to medical or mental health treatment which have or may be recommended;

d.   For punitive damages in excess of $50,000 and this Court's arbitrational limit resulting from the Defendant Manufacturers' oppressive, fraudulent, and/or

Case ID: 220302588

malicious conduct, as permitted by law;

e. For interest as permitted by law;

f. For attorney's fees, expenses, and recoverable costs incurred in connection with this action; and

g. For such other and further relief as the Court deems proper.

## COUNT VI:  FAILURE TO WARN
### (Against Penn Medicine and Pennsylvania Hospital)

154. Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

155. Penn Medicine and Pennsylvania Hospital as purchaser, supplier, and/or distributor of the products at issue in this litigation, owed a duty to the consuming public in general, and the Plaintiff Parent in particular, to purchase, supply, and distribute products that were free of unreasonable risk of harm when used in their intended manner and for their intended purpose, and/or to formulate, adopt, and enforce adequate rules and policies for the same.

156. At all times relevant to this action, the Injured Infant used the cow's milk-based products purchased, supplied, and/or distributed by Penn Medicine and Pennsylvania Hospital in their intended manner and for their intended purpose.

157. Penn Medicine and Pennsylvania Hospital employed or contracted with the healthcare professionals and medical staff at Pennsylvania Hospital, managing these individuals during their treatment of the Injured Infant.

158. Penn Medicine and Pennsylvania Hospital negligently, outrageously, and recklessly supplied and distributed the Defendant Manufacturers' milk-based infant feeding products to these healthcare professionals and medical staff for use on premature infants, including the Injured Infant.

48

Case ID: 220302588

159. Moreover, at all relevant times, Penn Medicine and Pennsylvania Hospital knowingly authorized the Defendant Manufacturers' sales representatives to market, advertise, distribute, and/or sell their products at Pennsylvania Hospital. The Defendant Manufacturers' sales representatives were encouraged to interact with Pennsylvania Hospital's healthcare professionals and medical staff. These interactions provided the Defendant Manufacturers' sales representatives an opportunity to co-opt Pennsylvania Hospital's healthcare professionals and medical staff into assisting with the marketing, distribution, and/or sale of the Defendant Manufacturers' unreasonably dangerous products to consumers, such as the Plaintiff Parent.

160. Penn Medicine and Pennsylvania also knowingly, and intentionally, allowed the Defendant Manufacturers' sales representatives to routinely misrepresent the risks and benefits of Defendants' products to Pennsylvania Hospital's healthcare professionals and medical staff, including the misrepresentation that premature babies would not grow adequately with human milk and human milk products and that use of donor milk was not advised for premature infants.

161. Penn Medicine and Pennsylvania Hospital knew or reasonably should have known at the time that they acquired, distributed, and supplied the Defendant Manufacturers' cow's milk-based infant products that these products significantly increased the risk of NEC, serious injury, and death.

162. Nonetheless, Penn Medicine and Pennsylvania Hospital acted negligently, outrageously, and recklessly, and breached its duty by:

    a.  Failing to warn that cow's milk-based products significantly increase the risk of NEC, severe injury, and death in those babies; and/or

    b.  Failing to warn that cow's milk-based products are unsafe and/or contraindicated for premature infants like the Injured Infant; and/or

49

c. Failing to warn or instruct its healthcare professionals and medical staff on the information that should be provided to parents in order to make an informed choice about whether to allow their babies to be fed the Defendant Manufacturers' products, notwithstanding their substantial risk; and/or

d. Failing to provide its healthcare professionals and medical staff with the well-researched and well-established studies that link cow's milk-based products to NEC and death in premature infants; and/or

e. Failing to provide a warning in a method reasonably calculated/expected to reach the parents of newborns; and/or

f. Failing to provide statistical evidence showing the magnitude of increased risk of NEC in premature infants associated with cow's milk-based products; and/or

g. Failing to prevent the Defendant Manufacturers' sales representatives from misrepresenting to Pennsylvania Hospital's healthcare professionals and medical staff that premature babies would not grow adequately with human milk and human milk products and that use of donor milk was not advised for premature infants.

163. Reasonable hospitals under the same or similar circumstances would have warned of the above risks, would have instructed their healthcare professionals and medical staff—as well as patients—on the safe use of the Defendant Manufacturers' products, and would have restricted the ability of the Defendant Manufacturers' sales representatives to market the Defendant Manufacturers' unreasonably dangerous products without adequate warning.

164. Penn Medicine and Pennsylvania Hospital knew or reasonably should have known that its medical professionals and the parents of premature infants, including the Plaintiff Parent, would not have realized the risks associated with feeding cow's milk-based formula to premature infants.

Case ID: 220302588

165. Had Penn Medicine and Pennsylvania Hospital exercised reasonable care by satisfying its duty to warn its medical providers and patients about the Defendant Manufacturers' unreasonably dangerous products, the Injured Infant would not have been exposed to the Defendant Manufacturers' cow's milk-based products.

166. As a direct and proximate result of Penn Medicine and Pennsylvania Hospital's failure to warn of the danger posed by the Defendant Manufacturers' unreasonably dangerous cow's milk-based products, the Injured Infant was fed the Defendant Manufacturers' cow's milk-based products, which caused and/or increased the risk of developing NEC and significant injuries.

167. As a further direct and proximate result of Penn Medicine and Pennsylvania Hospital's failure to warn of the Defendant Manufacturers' unreasonably dangerous products, the Plaintiff Parent suffered significant emotional distress, loss of income, and/or other harms. Her life has been significantly affected by the Injured Infant's injuries.

WHEREFORE, Plaintiff demands judgment against Penn Medicine and Pennsylvania Hospital, individually, jointly and severally, as follows:

a. For compensatory damages in an amount to be proven at trial and in excess of $50,000 and this Court's arbitrational limit;

b. For damages for past, present, and future emotional distress, loss of enjoyment of life, pain and suffering, mental anguish, and other non-economic losses sustained as a result of Penn Medicine's conduct;

c. For past, present, and future out-of-pocket costs, lost income and/or lost revenue, and/or lost profits, and/or lost business opportunity, lost earning capacity, and costs related to medical or mental health treatment which have or may be recommended;

d. For punitive damages in excess of $50,000 and this Court's arbitrational limit

51

resulting from Penn Medicine and Pennsylvania Hospital's oppressive, outrageous, reckless, and/or malicious conduct, as permitted by law;

e. For interest as permitted by law;

f. For attorney's fees, expenses, and recoverable costs incurred in connection with this action; and

g. For such other and further relief as the Court deems proper.

### COUNT VII: CORPORATE LIABILITY OF HEALTH-CARE PROVIDER
### (Against Penn Medicine and Pennsylvania Hospital)

168. Plaintiff incorporates by references each of the preceding paragraphs as if fully set forth herein.

169. At all relevant times, Penn Medicine and Pennsylvania Hospital owed a duty of care to the Injured Infant to ensure their safety and well-being while the Injured Infant was under the care of Pennsylvania Hospital staff. Specifically, Penn Medicine and Pennsylvania Hospital had a duty to the Injured Infant to formulate, adopt, and enforce adequate rules and policies to ensure quality care for the Injured Infant. Further, Penn Medicine and Pennsylvania Hospital owed a duty to the Injured Infant to oversee its healthcare professionals and medical staff that provided patient care to the Injured Infant.

170. Penn Medicine and Pennsylvania Hospital owed a duty to its patients, and the Injured Infant in particular, to formulate, adopt, and enforce adequate rules and policies for the purchase, supply, distribution, and use of products that were free of unreasonable risk of harm when used in their intended manner and for their intended purpose and ensured quality care for the Injured Infant.

171. At all times relevant to this action, the Injured Infant used the cow's milk-based products purchased, supplied, and/or distributed by Penn Medicine and Pennsylvania Hospital in their intended manner and for their intended purpose.

52

172. Moreover, at all relevant times, Penn Medicine and Pennsylvania Hospital knowingly authorized the Defendant Manufacturers' sales representatives to market, advertise, distribute, and/or sell their products at Pennsylvania Hospital. The Defendant Manufacturers' sales representatives were encouraged to interact with Pennsylvania Hospital's healthcare professionals and medical staff. These interactions provided the Defendant Manufacturers' sales representatives an opportunity to co-opt Pennsylvania Hospital's healthcare professionals and medical staff into assisting with the marketing, distribution, and/or sale of the Defendant Manufacturers' unreasonably dangerous products.

173. Penn Medicine and Pennsylvania Hospital also knowingly allowed the Defendant Manufacturers' sales representatives to routinely misrepresent the risks and benefits of Defendants' products to Pennsylvania Hospital's healthcare professionals and medical staff, including the misrepresentation that premature babies would not grow adequately with human milk and human milk products and that use of donor milk was not advised for premature infants.

174. Penn Medicine and Pennsylvania Hospital knew or reasonably should have known at the time that it formulated, adopted, and enforced its rules for the acquisition, distribution, and supply of the Defendant Manufacturers' cow's milk-based infant products, including the access afforded the Defendant Manufacturer's sales representatives, that these products significantly increased the risk of NEC, serious injury, and death for premature infants.

175. Since prior to 2000, Penn Medicine and Pennsylvania Hospital knew or reasonably should have known that premature babies are increased risk for NEC.

176. Since prior to 2000, Penn Medicine and Pennsylvania Hospital knew or reasonably should have known that NEC increases the risk of permanent injury and death.

177. Since 2000, Penn Medicine and Pennsylvania Hospital knew or reasonably should have

Case ID: 220302588

known prior to that human milk (mother's milk) was safest and best for premature infants.

178. Since 2000, Penn Medicine and Pennsylvania Hospital knew or reasonably should have known that human milk (mother's milk) decreased the risk of NEC, serious injury, and death for premature infants.

179. By no later than 2012, Penn Medicine and Pennsylvania Hospital knew or reasonably should have known that donor human milk decreased the risk of NEC, serious injury, and death for premature infants.

180. Penn Medicine and Pennsylvania Hospital knew or reasonably should have known that its medical professionals and the parents of premature infants, including the Plaintiff Parent, would not have realized the risks associated with feeding cow's milk-based formula to premature infants.

181. Nonetheless, Penn Medicine and Pennsylvania Hospital acted negligently, outrageously, and recklessly, and breached its duty by:

    a. Failing to formulate, adopt, and enforce adequate rules and policies that would have required human milk (mother's milk and/or donor milk) to be recommended to premature babies; and/or

    b. Failing to formulate, adopt, and enforce adequate rules and policies that would have restricted or prevented the use of cow's milk-based products for feeding premature babies; and/or

    c. Failing to formulae, adopt, and enforce adequate rules and policies that informed the Plaintiff Parent that human milk (mother's milk and/or donor milk) significantly decrease the risk of NEC, severe injury, and death in premature babies, like the Injured Infant; and/or

    d. Failing to formulate, adopt, and enforce adequate rules and policies that warned the

Case ID: 220302588

Plaintiff Parent that cow's milk-based products significantly increase the risk of NEC, severe injury, and death in premature babies, like the Injured Infant; and/or

e.  Failing to formulate, adopt, and enforce adequate rules and policies that discussed the risks of cow's milk-based products significantly increasing the risk of NEC, severe injury, and death in premature babies, like the Injured Infant; and/or

f.  Failing to formulate, adopt, and enforce adequate rules and policies that warned its healthcare professionals and medical staff that cow's milk-based products are unsafe and/or contraindicated for premature babies like the Injured Infant; and/or

g.  Failing to formulate, adopt, and enforce adequate rules and policies to instruct its healthcare professionals and medical staff on the information that should be provided to parents in order to make an informed choice about whether to allow their babies to be fed the Defendant Manufacturers' products, notwithstanding their substantial risk; and/or

h.  Failing to formulate, adopt, and enforce adequate rules and policies to provide its healthcare professionals and medical staff with the well-researched and well-established studies that link cow's milk-based products to NEC and death in premature infants; and/or

i.  Failing to formulate, adopt, and enforce adequate rules and policies to ensure a warning in a method reasonably calculated/expected to reach the parents of premature newborns, like the Plaintiff Parent; and/or

j.  Failing to formulate, adopt, and enforce adequate rules and policies to prevent the Defendant Manufacturers' sales representative from misrepresenting to Pennsylvania Hospital's healthcare professionals and medical staff that premature

Case ID: 220302588

babies would not grow adequately with human milk and human milk products and/or that use of donor milk was not advised for premature infants; and/or

k. Failing to establish a donor milk program that was sufficient to meet the needs of the premature babies, like the Injured Infant.

l. Failing to formulate, adopt, and enforce adequate rules and policies regarding the feeding of premature infants leaving it to the discretion of the medical team and parent without a discussion of risks and benefits.

m. Allowing parental preference to be the standard for feeding premature infants;

n. Failing to follow the American Academy of Pediatrics recommendations relating to feeding premature infants;

o. Failing to follow the American Academy of Pediatrics recommendations to use donor milk if mother's milk was unavailable instead of cow's milk-based products;

p. Failing to recommend donor milk if mother's milk was unavailable by no later than 2012; and

q. Failing to transfer to a hospital by no later than 2012 where donor milk was available if there was no donor milk available.

182. A reasonable hospital under the same or similar circumstances would have formulated, adopted, and enforced adequate policies, and rules to restrict the feeding of cow's milk-based products to premature babies, including developing an adequate donor milk program, instructing its healthcare professionals and medical staff on the safe use of Defendants Manufacturers' cow's milk-based products, and restricting the marketing of the Defendant Manufacturers' unreasonably dangerous products to its healthcare professionals, medical staff, and parents of premature infants under its care.

Case ID: 220302588

183. Had Penn Medicine and Pennsylvania Hospital exercised reasonable care by satisfying its duty to formulate, adopt, and enforce adequate rules and policies to ensure the quality care of its patients, the Injured Infant would not have been exposed to the Defendant Manufacturers' cow's milk-based products.

184. As a direct and proximate result of Penn Medicine and Pennsylvania Hospital failure to formulate and enforce adequate policies and rules related to the danger posed by the Defendant Manufacturers' unreasonably dangerous cow's milk-based products, the Injured Infant was fed the Defendant Manufacturers' cow's milk-based products, which caused and/or increased the risk of developing NEC and significant injuries.

185. As a further direct and proximate result of Penn Medicine and Pennsylvania Hospital negligent, reckless, and outrageous conduct the Plaintiff Parent suffered significant emotional distress, loss of income, and/or other harms. Her life has been significantly affected by the Injured Infant's injuries.

186. In the alternative, Penn Medicine and Pennsylvania Hospital owed a duty to its patients, and the Injured Infant in particular, to oversee the practicing healthcare professionals and medical staff that provided the products at issue to infants under Pennsylvania Hospital's care, including the Injured Infant.

187. Penn Medicine and Pennsylvania Hospital employed or contracted with the healthcare professionals and medical staff at Pennsylvania Hospital and was responsible for overseeing those individuals during their treatment of the Injured Infant.

188. Nonetheless, Penn Medicine and Pennsylvania Hospital acted negligently, recklessly, and outrageously breached its duty by:

    a. Failing to oversee its healthcare professionals and medical staff on their use of

Case ID: 220302588

cow's milk-based products for feeding premature babies; and/or

b.  Failing to warn or instruct its healthcare professionals and medical staff that cow's milk-based products significantly increase the risk of NEC, severe injury, and death in those babies; and/or

c.  Failing to warn or instruct its healthcare professionals and medical staff that cow's milk-based products are unsafe and/or contraindicated for premature babies like the Injured Infant; and/or

d.  Failing to oversee its healthcare professionals and medical staff to restrict their feeding of cow's milk-based products to premature babies; and/or

e.  Failing to warn or instruct its healthcare professionals and medical staff on the information that should be provided to parents in order to make an informed choice about whether to allow their babies to be fed the Defendant Manufacturers' products, notwithstanding their substantial risk; and/or

f.  Failing to provide its healthcare professionals and medical staff with the well-researched and well-established studies that link cow's milk-based products to NEC and death in premature infants; and/or

g.  Failing to provide its healthcare professionals and medical staff with warnings about the dangers of the Defendants' Manufacturers products in a method reasonably calculated/expected to reach the parents of newborns; and/or

h.  Failing to provide statistical evidence to its healthcare professionals and medical staff showing the magnitude of increased risk of NEC in premature infants associated with cow's milk-based products; and/or

i.  Failing to oversee its healthcare professionals and medical staff to ensure that the

58

Case ID: 220302588

Defendant Manufacturers' sales representatives' misrepresentations that premature babies would not grow adequately with human milk and human milk products and that use of donor milk was not advised for premature infants had not influenced the use and/or misuse of the Defendant Manufacturers' products.

189.  A reasonable hospital under the same or similar circumstances would have warned of the above risks, would have instructed its healthcare professionals and medical staff on the safe use of the Defendant Manufacturers' products, and would have restricted the ability of the Defendant Manufacturers' sales representatives to market the Defendant Manufacturers' unreasonably dangerous products without adequate warning.

190.  A reasonable hospital under the same or similar circumstances would have overseen and managed its healthcare professionals and medical staff to ensure that they received proper training and updating on the risks associated with feeding cow's milk-based formula to premature infants.

191.  Had Penn Medicine and Pennsylvania Hospital exercised reasonable care by satisfying its duty to oversee its healthcare professionals and medical staff who provide patient care, the Injured Infant would not have been exposed to the Defendant Manufacturers' cow's milk-based products.

192.  As a direct and proximate result of Penn Medicine and Pennsylvania Hospital's failure to oversee its healthcare professionals and medical staff on the danger posed by the Defendant Manufacturers' unreasonably dangerous cow's milk-based products, the Injured Infant was fed the Defendant Manufacturers' cow's milk-based products, which caused and/or increased the risk of developing NEC and significant injuries.

193.  As a further direct and proximate result of Penn Medicine and Pennsylvania Hospital's negligent and reckless conduct, the Plaintiff Parent suffered significant emotional distress, loss of income, and/or other harms.   Her life has been significantly affected by the Injured Infant's

Case ID: 220302588

injuries.

WHEREFORE, Plaintiff demands judgment against Penn Medicine and Pennsylvania Hospital, individually, jointly and severally, as follows:

a. For compensatory damages in an amount to be proven at trial and in excess of $50,000 and this Court's arbitrational limit;

b. For damages for past, present, and future emotional distress, loss of enjoyment of life, pain and suffering, mental anguish, and other non-economic losses sustained as a result of Penn Medicine and Pennsylvania Hospital's conduct;

c. For past, present, and future out-of-pocket costs, lost income and/or lost revenue, and/or lost profits, and/or lost business opportunity, lost earning capacity, and costs related to medical or mental health treatment which have or may be recommended;

d. For punitive damages in excess of $50,000 and this Court's arbitrational limit resulting from Penn Medicine's oppressive, fraudulent, and/or malicious conduct, as permitted by law;

e. For interest as permitted by law;

f. For attorney's fees, expenses, and recoverable costs incurred in connection with this action; and

g. For such other and further relief as the Court deems proper.

### DEMAND FOR JURY TRIAL

194. Plaintiff hereby demands a jury trial for all claims triable.

Dated: <u>July 16, 2024</u>

Respectfully submitted,

**KLINE & SPECTER, P.C.**

Case ID: 220302588

By:    */s/ Tobias L. Millrood*
        Tobias L. Millrood, Esq.
        Elizabeth A. Crawford, Esq.
        Timothy A. Burke, Esq.
        John P. O'Neill, Esq.

        Benjamin Whiting, Esq. (pro hac vice)
        **KELLER POSTMAN LLC**
        150 N. Riverside Plaza, Suite 4100
        Chicago, IL 60606
        Telephone: (312) 741-5220
        Fax: (312) 971-3502

        *Attorneys for Plaintiffs*

Case ID: 220302588

# EXHIBIT A-74

BURNS WHITE LLC
By:   James A. Young, Esquire
      Richard S. Margulies, Esquire
      Douglas A. Brockman, Esquire
      Meredith A. Lowry, Esquire
Attorney ID Nos. 00213/62306/67185/321131
1835 Market Street, Suite 2700
Philadelphia, PA 19103
(215) 587-1600
jayoung@burnswhite.com; rsmargulies@burnswhite.com
dabrockman@burnswhite.com; malowry@burnswhite.com

*Attorneys for Defendants,*
*The Pennsylvania Hospital of the*
*University of Pennsylvania Health*
*System d/b/a Pennsylvania Hospital and*
*The Trustees of the University of*
*Pennsylvania d/b/a Penn Medicine*

| | | |
|---|---|---|
| HOLLI CARTER, on her own behalf and as Parent and Natural Guardian of J.C., a minor | : : : | COURT OF COMMON PLEAS PHILADELPHIA COUNTY |
| Plaintiffs, | : : | |
| v. | : : | MARCH TERM 2022 NO. 2588 |
| MEAD JOHNSON & COMPANY, LLC, et al. | : | |
| Defendants. | : | |

## <u>ENTRY OF APPEARANCE</u>

TO THE PROTHONOTARY:

      Kindly enter the appearance of Meredith A. Lowry, Esquire as co-counsel on behalf of

Defendants, The Pennsylvania Hospital of the University of Pennsylvania Health System d/b/a

Pennsylvania Hospital and The Trustees of the University of Pennsylvania d/b/a Penn Medicine,

in the above-captioned matter.

Date: July 22, 2024

                             **BURNS WHITE LLC**

                             BY: *<u>/s/ Meredith A. Lowry</u>*
                                Meredith A. Lowry, Esquire

Case ID: 220302588

## <u>CERTIFICATE OF SERVICE</u>

I, Meredith A. Lowry, Esquire, hereby certify that a true and correct copy of the foregoing

*Entry of Appearance* was served via the Court's electronic filing on all counsel of record.

<u>/s/ Meredith A. Lowry</u>
Meredith A. Lowry, Esquire

Date: <u>July 22, 2024</u>